# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAYNE VAN SCOY, | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim-Defendant, | ) | Case No. 05-108 (KAJ) |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| VAN SCOY DIAMOND MINE OF | ) | |
| DELAWARE, INC., a Delaware corporation, | ) | |
| KURT VAN SCOY, and DONNA VAN SCOY, | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaim-Plaintiffs. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS VAN SCOY DIAMOND MINE OF DELAWARE, INC., KURT VAN SCOY AND DONNA VAN SCOY, <u>MOTION FOR SUMMARY JUDGMENT</u>

FOX ROTHSCHILD, LLP
Sharon Oras Morgan
Delaware Bar No. 4287
919 North Market Street
Suite 1300
Wilmington, DE 19801
Telephone: (302) 622-4246
Facsimile:  (302) 656-8920
E-mail: smorgan@foxrothschild.com
Attorneys for Defendants and
Counterclaim Plaintiffs

OF COUNSEL:

Charles N. Quinn Esquire
Fox Rothschild, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2135
Facsimile:  (215) 299-2150

Dated: October 25, 2005
Public Version Filed: November 1, 2005

# TABLE OF CONTENTS

<u>Page</u>

Table of Citations ............................................................ ii

I.      Statement of Proceedings ........................................... 1

II.     Summary of Argument ............................................... 2

III.    Facts ...................................................................... 4

IV.     Argument .................................................................. 9

      A.      Plaintiff Wayne Van Scoy Waited 4 Years to
           To Sue His Brother Kurt Van Scoy and Sister
           In Law Donna Van Scoy, and His Claim is
           Barred by the Doctrine of Laches ....................... 9

      B.      Kurt Van Scoy and Donna Van Scoy Cannot be Held
           Liable for the Acts of a Corporation and Should be
           Dismissed from this Action ............................. 14

      C.      Any Damages to Which Plaintiff May be Entitled are
           Limited by the 3 Year Statute of Limitations............ 16

V.      Conclusion .............................................................. 18

## **TABLE OF CITATIONS**

**Cases**                                                                                      **Page**

*Allen v. Howmedica Leibinger, Inc.,*
197 F.Supp.2d 101 (D.Del.2002)………………………………………………    9

*Autozone, Inc. v. Tri-State Auto Outlet, Inc.*
2005 WL 1353797 (D.Del. June 7, 2005)…………………………………….    10, 17

*Joint Stock Soc'y v. UDV N. Am., Inc.,*
53 F.Supp.2d 692, 712 (D.Del.1999)…………………………………….......    10

*Harco v. Green Farms, Inc.,*
1989 WL 110537 (Del. Ch.), 15 Del. J. Corp. L. 1030………………………    15

*Harper v. Delaware Valley Broadcasters, Inc.,*
7436 F. Supp. 1076, 1085 (D.Del. 1990)…………………………………...    15, 16

*Nationwide Mutual Ins. Co. v. Starr,*
575 A.2d 1083, 1088 (Del. 1990)……………………………………………..    15

*Santana Prods. Inc v. Bobrick Washroom Equip., Inc.*
401 F.3d 123, 138 (3d Cir. 2005)………………………………………………    9

*United States v. Golden Acres, Inc.*
702 F. Supp. 1097, 1104, (1988)………………………………………………    10

WM1A 66669v1 11/01/05

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAYNE VAN SCOY, | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VAN SCOY DIAMOND MINE OF | ) | Case No. 05-108 (KAJ) |
| DELAWARE, INC., a Delaware corporation, | ) | |
| KURT VAN SCOY, and DONNA VAN SCOY, | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaim-Plaintiffs. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS VAN SCOY DIAMOND
MINE OF DELAWARE, INC., KURT VAN SCOY AND DONNA VAN SCOY,
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**I.     <u>STATEMENT OF THE PROCEEDING</u>**

On February 23, 2005 Plaintiff Wayne Van Scoy instituted this trademark infringement suit

pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, against his brother, Defendant Kurt Van

Scoy, his sister-in-law, Defendant Donna Van Scoy, and the company they formed that owns and

operates a retail jewelry business, defendant Van Scoy Diamond Mine of Delaware, Inc.

(collectively, "Defendants") (D.I. 1)  On March 15, 2005, Defendants filed an Answer with

Affirmative Defenses, along with a Counterclaim for a Declaration of Invalidity and

Unenforceability of the Trademarks. (D. I. 6 )  The parties have exchanged and responded to

Interrogatories, Requests for Production of Documents and Requests for Admissions.

Depositions of all noticed parties and non-party witnesses have been taken.   Pursuant to this

Court's Scheduling Order of April 26, 2005 (D.I. 16), discovery  closed on October 7, 2005.

1

Defendants seek summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure on the basis that Plaintiff Wayne Van Scoy unjustifiably waited too long to bring suit, and his claims are barred by the doctrine of Laches.  Alternatively, Defendants Kurt Van Scoy and Donna Van Scoy seek summary judgment in their favor on the basis that they have no personal liability, and that Plaintiff Wayne Van Scoy cannot prove, as a matter of law, that they are personally liable for the alleged acts of defendant company Van Scoy Diamond Mine of Delaware, Inc.  Finally, Defendants alternatively seek partial summary judgment limiting Plaintiff's potential recovery for damages pursuant to the applicable statute of limitations.

## II.    **SUMMARY OF ARGUMENT**

1.    Plaintiff Wayne Van Scoy is asserting that his brother, Defendant Kurt Van Scoy, and Kurt's wife, Defendant Donna Van Scoy, individually and through a separate corporate entity, defendant Van Scoy Diamond Mine of Delaware, Inc.,  violated the Lanham Act by operating a jewelry store trading as "Van Scoy Diamond Mine", a family name that was registered as a trademark in 1980 by Wayne and Kurt's father, Thomas Van Scoy,  and has been used by various  family members and other individuals and entities since 1976.

2.    Plaintiff Wayne Van Scoy has taken the position that on January 4, 2001, he obtained all right and title to the trademark "Van Scoy Diamond Mine"  in the bankruptcy proceeding of his father, Thomas Van Scoy.  He has also taken the position that the store owned and operated by Van Scoy Diamond Mine of Delaware, Inc. infringes that trademark through operating under the name "Van Scoy Diamond Mine".[1]

3.    From at least January 4, 2001 to the present, at least two unrelated non-party entities (operated by Mark Maurer and Lew Hill, respectively) engaging in the retail diamond

---

[1] Defendants do not concede that  Plaintiff owns a trademark, nor do they concede that any trademark he might own is enforceable.

and jewelry business, have been trading as or advertising under the name "Van Scoy Diamond Mine" or some name substantially similar thereto.

4.    Despite the fact that Plaintiff Wayne Van Scoy being aware that defendant Van Scoy Diamond Mine of Delaware, Inc. has been trading as "Van Scoy Diamond Mine" since at least 1996 and at all times thereafter, he waited until February 23, 2005 to bring this action.

5.    Plaintiff Wayne Van Scoy alleges that he obtained all right and title to the trademark "Van Scoy Diamond Mine" on January 4, 2001. However, he made no attempt to enforce the trademark against either Van Scoy Diamond Mine of Delaware, Inc. or any other entity using that trademark or other substantially similar name. Instead, without justification he waited over 4 years to bring this action. Plaintiff Wayne Van Scoy inexcusably delayed in bringing this suit, and his claims are therefore barred by the doctrine of laches.

6.    Plaintiff Wayne Van Scoy initiated this action against only one of the businesses currently using the alleged trademark. Instead of joining in this suit the other alleged offending entities, Wayne Van Scoy sued his brother Kurt Van Scoy and sister-in-law Donna Van Scoy individually, allegedly because of their roles as officers and employees of Van Scoy Diamond Mine of Delaware, Inc. The record is devoid of any evidence that either Kurt Van Scoy or Donna Van Scoy ever used the alleged trademark or any variation thereof in any individual capacity. The record is also devoid of any evidence that either Kurt Van Scoy or Donna Van Scoy acted as an "alter ego" of or otherwise engaged in any activity that would subject them to liability for the acts of defendant company Van Scoy Diamond Mine of Delaware, Inc. Because no legal or factual basis exists for their joinder, Defendants Kurt Van Scoy and Donna Van Scoy alternatively seek summary judgment on all counts of the Complaint.

3

7.  Alternatively, to the extent Plaintiff Wayne Van Scoy is found to have any recoverable damages against any of the named defendants, such damages are limited to a three year period under the applicable statute of limitations pertaining to trademark infringement cases.  Accordingly, Defendants seek summary judgment limiting any award of damages to those accrued after February 23, 2002, three years prior to the date of filing of this action.

## III.  <u>FACTS</u>

This action involves a dispute between two brothers, Plaintiff Wayne Van Scoy and Defendant Kurt Van Scoy, over the use of the name, "Van Scoy Diamond Mine", that was first used by their father, Thomas Van Scoy ("Mr. Van Scoy"), on November 1, 1976 and registered as a trademark with the United States  Patent and Trademark Office on October 21, 1980. (See copy of registration attached hereto as Exhibit "A", A-1) That trademark was used, licensed and and franchised by Mr. Van Scoy at as many as 40 locations  along on the East Coast (including Pennsylvania and Delaware) in the late 1980's and early 1990's, but as a result of declining business was only in use at one store, located on Mundy Street in Wilkes-Barre, PA (The "Mundy Street Store"), at the time he filed bankruptcy in 1994. (See  October 3, 2005 Deposition of Kurt Van Scoy, 30 (b)(6) Representative of Van Scoy Diamond Mine of Delaware, Inc., attached hereto as Exhibit "B", B-4 at 114:6-9 )  Mr. Van Scoy commenced  a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Middle District of Pennsylvania on September 23, 1994, case no. 5-94-01241, which date it was converted to a chapter 11 case on November 29, 1994. ("Van Scoy Bankruptcy") (See Bankruptcy Docket, attached hereto as Exhibit "C" )  The Chapter 13 case was converted to Chapter 7 on December 29, 1994.

Defendant Van Scoy Diamond Mine of Delaware, Inc. was incorporated on October 21, 1994 by defendants Kurt Van Scoy and Donna Van Scoy.  (See DE Secretary of State website

printout attached hereto as Exhibit "D", D-1) On November 12, 1994, Van Scoy Diamond Mine

of Delaware, Inc., opened a retail diamond and jewelry store at 1117 Churchmans Road in

Newark, Delaware (the "Delaware Store Location"), trading as "Van Scoy Diamond Mine".

(See Exhibit "B", B-5 at 132:21-22 ). This is the same location at which Mr. Van Scoy had

previously established a jewelry store and operated a Delaware store, which also traded under the

name "Van Scoy Diamond Mine."

In anticipation of the re-opening of that store in October of 1994, Mr. Van Scoy assisted

his son Kurt, the President of Van Scoy Diamond Mine, Inc., in selecting the name under which

to trade, and gave to Kurt a sign saying "Diamond Mine" that Mr. Van Scoy had previously

used at the Delaware Store Location and placed adjacent to another sign reading "Van Scoy",

which had remained at the Delaware Store Location. (See Exhibit "B", B-3 at 37:15-17; see also

July 26, 2005 Deposition Transcript of Kurt Van Scoy attached hereto as Exhibit "E", E-4 & E-8

at 69:2-9 and 146:8-17) Mr. Van Scoy helped Kurt transport the sign from a warehouse in

Wilkes-Barre to the Delaware Store Location. The result was that the sign placed on the

Delaware Store Location by Mr. Van Scoy and Kurt read as "Van Scoy Diamond Mine." ( See

Exhibit "B", B-2 at 14:2 – 15:14,). Mr. Van Scoy also physically helped Kurt transport a safe

from Wilkes-Barre to the Delaware Store Location. (See Exhibit "B", B-2 at 14:4-9). Further, he

gave to Kurt pre-printed sales pads reflecting the name "Van Scoy Diamond Mine". (See

Exhibit "E", E-5 at 70:7-18) Mr. Van Scoy also helped Defendants in the operation of the

Delaware Store Location, as evidenced by his personal sale of a bracelet in 1997 and as the fact

that he helped Kurt with the advertising. (See Exhibit "B", B-1, B-2 at 13:17-14:2). All of these

activities took place while Mr. Van Scoy was the undisputed owner of the trademark.

5

Plaintiff Wayne Van Scoy knew in October, 1994, that his brother Kurt was opening the Delaware Store Location, and was present at the time Kurt and their father loaded the sign on a truck to transport it from a warehouse in Wilkes-Barre to the Delaware Store Location. (See Exhibit "B", B-2 at 15:4-9)

On March 21, 1995 Plaintiff formed and became sole officer and shareholder of Rings of Romance, Inc., a Delaware corporation (See DE Secretary of State website printout attached hereto as Exhibit "F", F-1 ). Plaintiff purchased through the Van Scoy Bankruptcy the assets of the Mundy Street Store, and thereafter started operating a jewelry store at that location, trading as "Van Scoy Diamond Mine". (See October 4, 2005 Deposition of Wayne Van Scoy 30(b)(6) representative of Rings of Romance, Inc., attached hereto as Exhibit "G", G-1 & G-2 at 13:12-20, 17:2-13. As a consequence of an injunction entered in the Van Scoy Bankruptcy on September 17, 1999, Plaintiff ceased doing business as "Van Scoy Diamond Mine", took down all signs reflecting that name, and erected two new store signs: "Van Scoy Diamond Center" and "Van Scoy Diamonds". (See Exhibit "G", G-3 & G-3.5 at 21:19-22:17) Wayne Van Scoy alleges that on January 4, 2001 that he purchased all right and title to the trademark "Van Scoy Diamond Mine" in the Van Scoy Bankruptcy.

In 2004, Plaintiff changed the sign in front of the Mundy Street Store from "Van Scoy Diamonds" to "Van Scoy Diamond Mine". (See Exhibit "G", G-4 at 27:1-7) However, the side of the Mundy Street Store still reflects the name "Van Scoy Diamond Center". (See Exhibit "G", G-4 at 27:8-15)

At all relevant times hereto, Plaintiff Wayne Van Scoy was aware that Van Scoy Diamond Mine of Delaware, Inc. was trading as "Van Scoy Diamond Mine" at the Delaware Store Location. It is undisputed that Plaintiff Wayne Van Scoy knew about the Delaware Store

Location in at least 1996 (See Exhibit "G", G-5 at 29:14-17). Furthermore, Plaintiff and his girlfriend of over 25 years, Jacqueline Savoca (who is also an employee at Plaintiff's store and was employed by Mr. Van Scoy) both testified that there were multiple conversations with Defendant Kurt Van Scoy, over a course of years, pertaining to Defendants' operation of the Delaware Store. (See August 17, 2005 Deposition of Wayne Van Scoy attached hereto as Exhibit "H", H-3 & H-3.5 at 119:10 -120:4; see also September 30, 2005 Deposition Transcript of Jacqueline Savoca attached hereto as Exhibit " I", I-4 at 37:2-14)

Kurt and Donna Van Scoy  first became aware of Wayne Van Scoy's alleged ownership of the "Van Scoy Diamond Mine" trademark on or about November 18, 2004. (See Exhibit "E", E-3 at 48:11-18)  However, Plaintiff Wayne Van Scoy took no action to enforce the trademark for a period of years, despite having knowledge of the Delaware Store Location and the name under which it trades, both before and after he allegedly took ownership of the trademark in 2001.

Wayne Van Scoy claims that the Delaware Store Location is causing him to incur damages by virtue of the competition it creates that prohibits him from being unable to establish a franchise in that same geographic area, which he alleges would cause confusion to customers. (See Exhibit "G", G-7 at 86:18-24 ). ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████ Instead, Wayne Van Scoy's eventual

decision to take action against his brother was purportedly precipitated by his perception that

Van Scoy Diamond Mine of Delaware, Inc., of which his brother Kurt is the president, was

succeeding with internet sales, an area that Wayne had been reluctant to enter. (See Exhibit "G",

G-6 at 66:7-67:9) (See also Exhibit "H", H-3 & H-3.5 at 119:20-120:4)

     The jealousy and personal animosity that forms the basis of this suit is underscored by the

fact that other retail jewelry businesses have historically and to this day continue to advertise or

trade under names that include the words "Van Scoy", none of whom have been pursued or

subject to a claim by Wayne Van Scoy. Mark Maurer testified that he operates two stores, one in

Allentown, Pennsylvania and one in Lancaster, Pennsylvania, both of which traded at one time

as "Van Scoy Diamond Mine" pursuant to a franchise agreement with Mr. Van Scoy, which

agreement was ultimately terminated and witnessed by Wayne Van Scoy. (See Deposition of

Mark Maurer attached hereto as Exhibit "L", L-1 & L-2 at 12:22 -13:2; see also Agreement

attached hereto as Exhibit "M", M-1 through M-13) Mr. Maurer testified that he currently uses

the name "Van Scoy Diamond Mine" in dealing with about 10,000 customers. (See Exhibit "L",

L-3 at 27:8-18) Plaintiff Wayne Van Scoy has never accused Mr. Maurer of trademark

infringement, likely because he has no concern about use of the alleged trademark by anyone

than his brother Kurt. In fact, Wayne Van Scoy testified to having no knowledge about Mr.

Maurer's whereabouts or current business practices, even though he knew that Mr. Maurer was

at one time a franchisee. (See Exhibit "H", H-4 at  137:9-20)

     Similarly, Lew Hill testified that he became a franchisee of Mr. Van Scoy Sr. in 1978

(See Deposition Transcript of Lew Hill attached hereto as Exhibit "N", N-2 at 41:21-24) The

franchise relationship was terminated by agreement with Mr. Van Scoy.  Mr. Hill currently operates as Van Scoy Jewelers in Wyomissing, Pennsylvania.  (See Exhibit "N", N-1 at 25:7-24) Plaintiff Wayne Van Scoy has taken no action to enforce the alleged trademark against Mr. Hill, and has no knowledge regarding the name under which he currently trades. (See Exhibit "H" at 138:22 – 139:21). The record shows that  Wayne Van Scoy has paid no attention to the use of the trademark he is now seeking to protect.

## IV.    ARGUMENT

### A.    Plaintiff Wayne Van Scoy Waited 4 Years to Sue his Brother Kurt Van Scoy and Sister-in-Law Donna Van Scoy, and His Claims are Barred by Laches

Rule 56(c) of the Federal Rules of Civil Procedure provides "that a party is entitled to summary judgment if a court determines from its examination of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Allen v. Howmedica Leibinger, Inc.,* 197 F.Supp.2d 101 (D.Del. 2002).  The record  contains undisputed evidence that Plaintiff Wayne Van Scoy did not assert his claims in a timely manner.  He is now precluded, as a matter of law, from proceeding with this action.

The Complaint asserts that Defendants engaged in trademark infringement and unfair competition, in violation of the common law and federal law.  In response, Defendants have asserted, among other things, the defense of Laches.  Laches is an affirmative defense that the plaintiff unreasonably delayed in bringing suit after the plaintiff knew of an infringement of his rights, thereby resulting in material prejudice to the defendant. *See Nationwide Mutual Ins. Co. v. Starr,* 575 A.2d 1083, 1088 (Del.1990) Laches is also a statutorily recognized defense to

trademark infringement. *See* 15 U.S.C. § 1115(b)(9). The defense serves to bar both monetary and injunctive relief. *See Joint Stock Soc'y v. UDV N. Am., Inc.,* 53 F.Supp.2d 692, 712 (D.Del.1999).

Laches consists of two elements: (1) inexcusable delay in bringing suit; and (2) prejudice to the defendant as a result of the delay. *Autozone, Inc. v. Tri-State Auto Outlet, Inc.,* 2005 WL 1353797 (D.Del. June 7, 2005) (A copy of which is attached hereto as Exhibit "O" ), *citing Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.* 401 F.3d 123, 138 (3d Cir. 2005). Once the statute of limitations expires for a cause of action, the defendant "enjoys the benefit of a presumption of inexcusable delay and prejudice." *See Autozone, supra, citing Santana,* 401 F.3d at 139. (See Exhibit " O", O-1) Under Delaware law the appropriate statute of limitations period in a trademark infringement case is three years. *Autozone, supra, citing Joint Stock Soc'y,* 53 F.Supp.2d at 713 n.18 (citing 10 Del. C. § 106).

Plaintiff Wayne Van Scoy contends that Defendants have been infringing the trademark he alleges he owns, through their operation of the Delaware Store Location, established in and continuously running since 1994. Wayne Van Scoy has clearly known about the Delaware Store Location for more than 3 years, admitting in his deposition that he has known its existence since at least 1996.

> Q.    When did you first realize that Kurt Van Scoy was running a jewelry store under the name Van Scoy Diamond Mine  - -
>
> A.    Ninety –
>
> Q.    --in Newark, Delaware?
>
> A.    '96 I saw the sign.
>
> Q.    You were there personally –

A.      Yes.

Q.      -- in 1996?

A.      Yes.

Q.      At the store?

A.      Yes

………

Q.      So you have known that he has been running a jewelry store under the mark

Van Scoy Diamond Mine since 1996?

A.      '6, yes.

(See Exhibit "H", H-1 & 2 at 117:12 – 118:24)

Plaintiff Wayne Van Scoy not only knew about the Delaware Store Location, he had multiple conversations with his brother Kurt Van Scoy about the operation of that store over a period of years.  In fact,  Plaintiff Wayne Van Scoy had many conversations with Defendant Kurt Van Scoy for several years prior to the institution of this action about his use of the name "Van Scoy Diamond Mine". (See Exhibit "H", H-1  at  117:7 )  However, over 4 years passed between the time Plaintiff Wayne Van Scoy allegedly obtained ownership of the trademark in the Van Scoy Bankruptcy and the time this action commenced.  During that entire period Plaintiff Wayne Van Scoy knew of Defendant, Van Scoy Diamond Mine of Delaware, Inc's use of the name "Van Scoy Diamond Mine", but took no action to enforce the alleged trademark, or to prohibit any of the defendants or any other person or entity  from its use.  As the record clearly establishes that the 3-year statute of limitations has passed, a presumption exists of inexcusable delay and prejudice.

It is equally clear that Plaintiff Wayne Van Scoy's delay was unjustifiable and prejudicial. Plaintiff Wayne Van Scoy testified that he delayed in enforcing the alleged trademark, and that the eventual impetus for bringing this action was Defendants' establishment of a web site.

Q.    Why did you wait until November of ninety - - of 2004 to give notice to Kurt Van Scoy regarding use of the mark Van Scoy Diamond Mine?

A.    I had been telling him, telling him, telling him, telling him. Then he opens up The Internet website, which then comes up into my area. People can go on, Click. He can ship them merchandise. Now he's interfering with my business.

(See Exhibit "H ", H-3 & H-3.5 at 119:10 – 120:4)

Defendant Van Scoy Diamond Mine of Delaware, Inc. established a website on July 12, 2002. (See Exhibit "E", E-7 at 140:18-22). Wayne Van Scoy took no action at that time. Wayne Van Scoy's own testimony reflects that the web site had nothing to do with initiation of this action. Plaintiff Wayne Van Scoy testified to having considered a web site as early as 2000, only to be stymied by indecision, hesitation and of the general perception that diamond internet businesses are not profitable. (See Exhibit "G", G-6 & G-6.5 at 66:9 – 67:21) ████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████

Wayne Van Scoy's testimony highlights the fact that the delay in bringing this action was not the result of any justifiable excuse, but rather was the result of long-simmering resentment and jealousy of his brother Kurt, whom he perceived as being more successful, in part because of

12

the website established by Van Scoy Diamond Mine of Delaware, Inc., a site that for all intents and purposes has been a loss leader.

The resentment of Kurt Van Scoy's perceived success is corroborated by the testimony of Jacqueline Savoca, employee of Rings of Romance and long-time girlfriend of Wayne Van Scoy. (See Exhibit "I", I-8 at 59:1-3). Jacqueline Savoca testified that Plaintiff did not operate a website, has never discussed a website, had no plans to start a website, yet sued Defendants because of the website. (See Exhibit "I", I-3 at 23:30-24:22 and 26:2-22). Ms. Savoca also corroborated the testimony of Plaintiff Wayne Van Scoy that he has held resentment for Kurt Van Scoy. (See Exhibit "I" I-6 through I-7 at 46:22-47:17)

Most significantly, Ms. Savoca corroborated the fact that Plaintiff Wayne Van Scoy knew about the Delaware Store Location for several years. She testified that she and Wayne Van Scoy passed the Delaware Store on several occasions when visiting Wayne and Kurt's parents at Christiana Hospital, located across the street from the Delaware Store Location. (See Exhibit "I", I-3.5 at 28:2-18). She also testified that Wayne Van Scoy had multiple conversations with Kurt Van Scoy about use of the name "Van Scoy Diamond Mine".

(See Exhibit "I", I-4 & 5, I-9 at 37: 4 – 7; 38:18 – 39:2; 58:22-24)

Q.      How many conversations did Wayne and Kurt have about the use of the

        Name before the lawsuit was filed?

A.      Many. I would say - - I don't know how many, but many.

Q.      More than ten?

A.      Probably, yeah.

Q.      Over what period of time?

---

[2] As a practical matter, the evidence in this case has revealed that Defendant Diamond Mine of Delaware, Inc. realized one internet sale only since inception of the website in 2002. That sale was the result of a personal

13

A.      Years.

Q.      By "years," more than two?

A.      Yes.

(See Exhibit "I", I-4 at 37:2-13)

Wayne Van Scoy's delay in bringing this lawsuit has resulted in a build-up of emotion

that has culminated into expensive litigation over something that could have been resolved years

ago without the need for judicial determination.  Instead, this untimely lawsuit has been brought

by Wayne Van Scoy, prejudicing all of the defendants through the cost of litigation and the

embarrassment created by negative publicity, including articles covering the "family feud".  (See

News Article attached hereto as Exhibit "P", P-1).  Plaintiff Wayne Van Scoy chose to file this

suit without justification after the passing of the Statute of Limitations and with the result of

prejudicing Kurt and Donna Van Scoy and the company that they run.  Accordingly, Defendants

seek summary judgment on all counts of the Complaint as being time barred.

**B.**     <u>**Kurt Van Scoy and Donna Van Scoy Cannot be Held Liable for the Acts of a Corporation and Should be Dismissed from this Action**</u>

Plaintiff Wayne Van Scoy has joined his brother, Defendant Kurt Van Scoy and Kurt's

wife, Donna Van Scoy, in this lawsuit under the pretext that each "is an individual who is on

information and belief at least part owner and an officer of Van Scoy Diamond Mine of

Delaware, Inc., and has directed the acts of infringement herein complained of."  (D.I. 1 at para.

3 and 4).  Although not specifically pleaded, the allegations  Plaintiff Wayne Van Scoy has made

against his brother Kurt Van Scoy and Kurt's wife Donna Van Scoy suggest and attempt to apply

the alter ego theory of liability to pierce the corporate veil of Defendant Van Scoy Diamond

Mine of Delaware, Inc., and pursue judgment against his brother and sister-in-law individually.

---

relationship between the purchaser and Defendant  Kurt Van Scoy. (See Exhibit "E" at 150:18-151:14)

WM1A 66669v1 11/01/05

"It should be noted at the outset that persuading a Delaware Court to disregard the corporate entity is a difficult task....The legal entity of a corporation will not be disturbed until sufficient reason appears." *Harco v. Green Farms, Inc.*, 1989 WL 110537 (Del.Ch.), 15 Del.J. Corp. L. 1030) ( See Opinion attached hereto as Exhibit "Q") A number of factors come into play when analyzing the alter ego theory.  In the case of *United States v. Golden Acres, Inc.*, 702 F.Supp. 1097, 1104 (1988), this court adopted the following alter ego analysis:

> [A]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation.  These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a façade for the dominant shareholder.
> *Golden Acres,* D.Del., 702 F.Supp. at 1104.

A number of decisions in this district have held that "no single factor could justify a decision to disregard the corporate entity, but that some combination of them was required, and that an overall element of injustice or unfairness must always be present, as well." *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1085 (D.Del. 1990), *citing Harco at* 110539.

The record in this case is absolutely devoid of any evidence that either Kurt or Donna Van Scoy acted in a manner that would justify disregarding the corporate form.  The document production of Van Scoy Diamond Mine of Delaware, Inc. shows that corporate formalities were observed; annual meetings and special meetings were held, corporate minutes were kept and corporate records were maintained. (See Examples of Corporate Records attached hereto as Exhibit "R", R1-4). Plaintiff has not even suggested, let alone put forth any evidence, that the company is a sham. There is absolutely no evidence that either Kurt or Donna Van Scoy siphoned corporate funds or inadequately capitalized the Company.  To the contrary, the

15

testimony of Kurt Van Scoy reflects a strong work ethic and determination. Kurt Van Scoy started working for his father in the jewelry business at age 10. In 1994 he re-opened the store that his father closed 18 months previously. (See Exhibit "E", E-22 & E-4 at 40:22-24 and 69:1-9). Kurt Van Scoy testified that the monetary problems encountered by his father had a detrimental impact upon his business and created an additional challenge for a period of time after the Delaware Store Location starting operating in 1994. (See Exhibit "E", E-6 at 71:11-24)

Under the alter ego theory, an overall element of injustice or unfairness must always be present. *Harco* at 1039.(Exhibit "Q") The unfairness and injustice in this case is the expense, time expenditure and emotional turmoil that has been created by Plaintiff Wayne Van Scoy in suing his brother and sister-in-law over a name that has been used by various family and non-family for over 25 years. The unfairness is further evidenced by naming two individuals for the actions of a corporate form. Neither Kurt Van Scoy nor Donna Van Scoy have used the name "Van Scoy Diamond Mine" individually. The name "Van Scoy Diamond Mine" name has at all relevant times been used by Defendant Van Scoy Diamond Mine of Delaware, Inc. As a matter of law, Plaintiff Wayne Van Scoy cannot prove that either Kurt Van Scoy or Donna Scoy have engaged in any conduct that would subject them to personal liability. Accordingly, summary judgment in their favor as to all counts of the Complaint is warranted.

**C.  Any  Damages to Which Plaintiff May Be Entitled are Limited by
the 3 Year Statute of Limitations**

The nature and extent of Wayne Van Scoy's alleged damages has not been articulated with any specificity in the pleadings or discovery. To the contrary, Wayne Van Scoy's claim appears to be based upon his loss of earnings in 2004, which he attributes to Van Scoy Diamond Mine of Delaware, Inc.'s use of the domain name www.vanscoydiamondmine.com. As

16

discussed more fully above, the evidence produced in discovery shows that Defendants have realized negligible business from use of the web site.

Notwithstanding Wayne Van Scoy's failure to prove any quantifiable damages, to the extent the Court determines Plaintiff Wayne Van Scoy is entitled to an award of damages and a question of fact remains as to otherwise preclude summary judgment, Defendants seek summary judgment limiting those damages to the three years prior to institution of this action. As set forth in Section "A" above, a trademark infringement case in this District is subject to a three year statute of limitations. *See Autozone, Inc. v. Tri-State Auto Outlet, Inc.*, 2005 WL 1353797 (D.Del. June 7, 2005) Plaintiff is precluded by that statute from seeking damages for more than three years prior to the institution of this action. Accordingly, Defendants seek a judgment limiting the amount of any award of damages accordingly.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants seek entry of summary judgment in their favor and against the Plaintiff, Wayne Van Scoy, on the basis that Plaintiff unduly delayed in bringing this suit and his claims are barred by Laches. Alternatively, Defendants Kurt Van Scoy and Donna Van Scoy seek entry of summary judgment in their favor on the basis that Plaintiff cannot prove under an alter ego theory they are subject to personal liability. Finally, in the event this Court finds issues of material facts to preclude summary judgment pursuant to Laches or Plaintiff's failure to prove an alter ego theory of liability, Defendants seek partial summary judgment limiting any resulting damages to three years pursuant to the applicable statute of limitations.

17

Respectfully,

 /s/ Sharon Oras Morgan
Sharon Oras Morgan
Delaware Bar No. 4287
919 North Market Street
Suite 1300
Wilmington, DE 19801
Telephone: (302) 622-4246
Facsimile:  (302) 656-8920
E-mail: smorgan@foxrothschild.com

Attorneys for Defendants and
Counterclaim Plaintiffs

OF COUNSEL:

Charles N. Quinn Esquire
Fox Rothschild, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2135
Facsimile:  (215) 299-2150

Dated: October 25, 2005
Public Version Filed : November 1, 2005