Exhibit "Q"

Westlaw.

Not Reported in A.2d                                                                Page 1
Not Reported in A.2d, 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030
(Cite as: 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030)

C

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
HARCO NATIONAL INSURANCE COMPANY et al.
v.
GREEN FARMS, INC. et al.
CIV. A. No. 1131.

Submitted: April 18, 1989.
Decided: Sept. 19, 1989.

On Plaintiffs' Motion for Summary Judgment: denied.

**1033 Craig A. Karsnitz, Young, Conaway, Stargatt & Taylor, Georgetown.

Robert J. Taylor, Barros, McNamara & Scanlon, Dover.

William M. Chasanov, Brown, Shiels & Chasanov, Georgetown.

HARTNETT, Vice-Chancellor.

*1 Plaintiffs have moved for summary judgment. Because there are disputed questions of material fact, the motion must be denied.

The plaintiffs are Harco National Insurance Company ("Harco"), United States Fidelity & Guaranty Company ("USF & G"), and Danny **1034 Benton ("Benton"). They seek to impose personal liability upon the individual defendants, claiming that the undisputed facts show that the corporate veil of defendant Green Farms, Inc. must be pierced as a matter of law. Specifically, the plaintiffs assert that Green Farms, Inc. is the *alter ego* and mere instrumentality of its officers and only stockholders, defendants John L. Green, Sr., Marian Green, and John L. Green, Jr. Furthermore, the plaintiffs allege that these principals caused the corporation to be undercapitalized in fraud of creditors; committed specific acts of fraud in collecting insurance proceeds twice for the same loss; and failed to provide worker's compensation insurance to cover injuries to the corporate employees.

In response, the defendants argue that several material issues of fact are in dispute. Specifically, the defendants assert that factual disputes exist as to the actual ownership of the stock of Green Farms, Inc. and the existence of a debt owed to John L. Green and Marian Green by Green Farms, Inc. Furthermore, the defendants argue that there is insufficient evidence in the record to support a finding of fraud and that under Delaware law, inadequate capitalization is not a recognized basis for piercing the corporate veil.

I find from the limited record that several material factual issues are still in dispute which preclude summary judgment.

I

While there are several disputed issues of material fact, most of the essential facts are not disputed.

Plaintiffs Harco and USF & G are corporations engaged in issuing insurance policies for property casualty loss and are qualified to do business in Delaware. Both companies issued insurance policies insuring the same tractor-trailer truck owned by Green Farms, Inc. This truck was involved in an accident and was destroyed on June 14, 1979. Both Harco and USF & G paid Green Farms, Inc. for the same loss. When Harco and USF & G discovered this fact, they both sued Green Farms, Inc. for recovery of the dual payment. Eventually, in November of 1983, John L. Green, Sr., the President of Green Farms, Inc., consented to the entry of a judgment against Green Farms, Inc., apparently in favor of both plaintiffs for a sum, the amount of which does not appear in the record before this Court.

The individual plaintiff in this case, Danny Benton, is a former employee of Green Farms, Inc. Mr. Benton was injured in a work-related accident and sued Green Farms in March of 1980. Because Green Farms, Inc. failed to carry worker's compensation insurance **1035 as required by statute, Mr. Benton sought a judgment in his favor against Green Farms, Inc. On June 25, 1986, a Stipulation for Entry of Judgment was entered for $7,500 plus costs and interest in favor of Mr. Benton and against Green Farms, Inc. This Stipulation was entered into by John L. Green, Sr., on behalf of Green Farms, Inc.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 2
Not Reported in A.2d, 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030
**(Cite as: 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030)**

*2 Because neither judgment has been paid, Harco and USF & G filed the present action on June 19, 1986, seeking to pierce the corporate veil of Green Farms, Inc. in order to impose personal liability on its principals. Mr. Benton was granted leave to intervene in this suit to assert his similar claim on July 8, 1987.

Green Farms, Inc. was incorporated in 1976 with John L. Green, Sr. as President, John L. Green, Jr. as Vice President, and Marian Green as Secretary-Treasurer. Green Farms, Inc. was involved in both logging and farming operations. The corporation never received any payment for the issuance of its stock and it was apparently capitalized solely by loans from John L. Green, Sr. and Marian Green. The corporate office is located in the Green family home.

From its outset, it seems that Green Farms, Inc. was operated, at best, in an informal and cavalier manner. The corporation obviously failed to observe standard corporate practices, especially with regard to the maintenance of corporate records. No corporate books have been produced by defendants in this case although informally requested to do so by the plaintiffs. The location of these records is apparently unknown. (See Nov. 5, 1985 Deposition of John L. Green, Sr. at 2-3.)

Marian Green and John L. Green, Jr., despite their titles of Secretary-Treasurer and Vice President respectively, obviously know little about Green Farms, Inc. or its former operations. (See generally, Nov. 5, 1985 Deposition of Marian Green at 3-17 and Nov. 5, 1985 Deposition of John L. Green, Jr. at 5-10.) John L. Green, Sr. apparently ran the corporation as his sole prerogative and is the only person who seems to know anything significant about its operations. Even John L. Green, Sr.'s knowledge regarding Green Farms, Inc. seems scant, however. For example, he testified he was not aware that he owned any shares in Green Farms, Inc. and claimed that Marian Green and John L. Green, Jr. owned all of the shares although the corporation's tax returns indicate that Mr. Green, Sr. owned 15 shares. (See Nov. 5, 1985 Deposition of John L. Green, Sr. at 3-9.)

Throughout Green Farms, Inc.'s six years of active operation, John L. Green, Sr. and Marian Green allegedly personally loaned the corporation a large sum of money to be used as working capital. **1036 John L. Green, Sr. prepared and signed a promissory note in his capacity as President of Green Farms, Inc. showing that the corporation owed himself and his wife, Marian Green, almost $650,000. Marian Green, however, knew very little about the loans and note, and was uncertain about the location of any records regarding such loans. (See Nov. 5, 1985 Deposition of Marian Green at 4-7.)

Additionally, John L. Green, Sr. claims to have attempted to obtain repayment of the loans by transferring various equipment of Green Farms, Inc. to himself. The transactions, however, are not documented in the record. Significantly, Green Farms, Inc.'s 1982 federal income tax return reflects neither the loans to the corporation nor the transfers of equipment. (See Appendix to Plaintiffs' Opening Brief.) Furthermore, even after John L. Green, Sr. purportedly transferred the equipment to himself, the corporation continued to use it.

*3 To further complicate matters, Green Farms, Inc.'s 1982 federal income tax return indicates that the corporation's net assets were distributed to its shareholders. (See Appendix to Plaintiffs' Opening Brief.) The defendants stated in their brief, however, that the assets of the corporation were transferred to John L. Green, Sr. as payment for loans made to the corporation. (See Defendants' Brief at 2.) Such a statement, however, has no support in the record and directly contradicts Green Farms, Inc.'s 1982 federal income tax return, which indicates that no debts were owed to any shareholders. Furthermore, John L. Green, Sr. could not even recall if Green Farms, Inc.'s assets were distributed to him in 1982, nor could he remember exactly what assets Green Farms, Inc. owned at that time. (See Nov. 5, 1985 Deposition of John L. Green, Sr. at 23 and 35.)

At the end of 1982, when Green Farms, Inc.'s assets were purportedly transferred to its shareholders, the corporation became "dormant" in the words of Mr. Green, Sr. (See Nov. 5, 1985 Deposition of John L. Green, Sr. at 9.) Since that time, Green Farms, Inc. apparently has not actively conducted any business. No steps, however, have been taken to formally dissolve the corporation. (See Appendix to Plaintiffs' Opening Brief, May 9, 1983, Deposition of John L. Green, Sr. at 3-4.)

When Green Farms, Inc. became "dormant," John L. Green, Sr. formed a new corporation, G & E, Ltd., to carry on the same or similar business as Green Farms, Inc. (See Nov. 5, 1985 Deposition of John L. Green, Sr. at 10-13.) It also appears that some equipment which was once owned by Green Farms is now being used by G & **1037 E, Ltd.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                           Page 3
Not Reported in A.2d, 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030
**(Cite as: 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030)**

Furthermore, when Mr. Green, Sr. was asked why Green Farms, Inc. became "dormant," he responded:

"A. Over a period of years I personally had lent quite a bit of money to Green Farms and it got to a point where it owed me so much money personally that I-- if we were going to give the timber business an opportunity to ever get on its feet and see if we could make some money with it, we'd have to start afresh in another manner. Let's put it like that. And the first of the year we started doing business in another fashion. Let's put it like that."

(See Appendix to Plaintiffs' Opening Brief and May 9, 1983 Deposition of John L. Green, Sr. at 4.) To further complicate matters, G & E, Ltd. has paid some of Green Farms, Inc.'s debts, while ignoring others. (See Appendix to Plaintiffs' Brief and May 9, 1983 Deposition of John L. Green, Sr. at 22.)

II

The Delaware Supreme Court in *Bershad v. Curtis-Wright Corp.*, Del.Supr., 535 A.2d 840 (1987), recently restated the traditional "strict" rule as to summary judgment, even where the tryer of fact is a judge, as follows:

"It is well-settled that summary judgment may be granted if, on undisputed facts, the moving party establishes that he or she is entitled to judgment as a matter of law. A motion 'must be denied if there is any reasonable hypothesis by which the opposing party may recover, or if there is a dispute as to a material fact or the inferences to be drawn therefrom.' *Vanaman v. Milford Memorial Hospital, Inc.*, Del.Supr., 272 A.2d 718, 720 (1970)."

*4 The federal courts have recently been moving towards a more expanded role for Rule 56(c). *Kellam Energy, Inc. v. Duncan*, D.C.Del., 668 F.Supp. 861, D.Del. (1987). This Court, however, is bound by the ruling of our Supreme Court.

The materiality of non-disclosed facts is a mixed question of law and fact and as such is not usually an appropriate issue for resolution by summary judgment. *Glassman v. Wometco Cable T.V., Inc.*, Del.Ch., C.A. No. 7307-NC, Hartnett, V.C., (Jan. 6, 1989), slip op. at 6, *citing TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976). See also **1038*Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761 (3d Cir.1976). However, if the facts are so obvious that reasonable minds cannot differ on the question of materiality, and the underlying facts and inferences to be drawn are free from controversy, the question becomes one of law which may appropriately be decided by summary judgment. *Glassman,* supra; *TSC,* supra; *GAF Corp. v. Heyman,* 724 F.2d 727 (2d Cir.1983); *Gould,* supra.

III

It should be noted at the outset that persuading a Delaware Court to disregard the coprorate entity is a difficult task. *Alger Oil Co. v. McDonald Assoc.*, Del.Ch., C.A. No. 5601, Hartnett, V.C. (October 8, 1980). The legal entity of a corporation will not be disturbed until sufficient reason appears. See FLETCHER, *Cyclopedia Corporations* § 41. In an appropriate case, however, the corporate veil may be pierced. See, e.g., *Martin v. D.B. Martin Co.*, Del.Ch., 88 A. 611 (1913).

Fraud has traditionally been sufficient reason to pierce the corporate veil. *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* Del.Supr., 154 A.2d 684 (1959). Other grounds also exist. See e.g., *Pauley Petroleum, Inc. v. Continental Oil Co.*, Del.Ch., 231 A.2d 450 (1967), *aff'd,* Del.Supr., 239 A.2d 629 (1968); *United States v. Del Campo Baking Mfg. Co.*, D.Del., 345 F.Supp. 1371 (1972); *Equitable Trust Co. v. Gallagher*, Del.Supr., 99 A.2d 490 (1953); *Martin,* supra. In *Pauley*, the Supreme Court of Delaware stated that the corporate veil may be pierced "in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations among members of the corporation require it, are involved." *Pauley*, Del.Supr., 239 A.2d at 633.

To date, the Delaware courts have not explicitly adopted the *alter ego* theory of piercing the corporate veil. The District Court of Delaware, however, did accept such a theory in *United States v. Golden Acres, Inc.*, D.Del., 702 F.Supp. 1097, 1104 (1988). In *Golden Acres*, Judge Roth adopted the following *alter ego* analysis:

"[A]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant **1039 shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                           Page 4
Not Reported in A.2d, 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030
**(Cite as: 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030)**

*5 *Golden Acres,* D.Del., 702 F.Supp. at 1104. The District Court emphasized "that no single factor could justify a decision to disregard the corporate entity, but that some combination of them was required, and that an overall element of injustice or unfairness must always be present, as well." *Id.*

IV

Plaintiffs assert two arguments in support of summary judgment in their favor: (1) that fraudulent conduct of the defendants permits piercing the corporate veil; and (2) that the corporate veil of Green Farms, Inc. should be pierced in order to prevent constructive fraud and injustice.

V

The plaintiffs' first claim of "fraud" is based upon two incidents in which Green Farms, Inc. allowed judgments to be entered against itself. The first incident involved the receipt of dual insurance payment checks by Green Farms, Inc. for the single loss of a tractor-trailer truck. The second incident involved the claim of Mr. Benton, a Green Farms, Inc. employee, who was injured on the job. In both cases, John L. Green, Sr., as President of Green Farms, Inc. stipulated to the entry of judgment against the corporate entity. In the insurance-related case, Green Farms, Inc. stipulated to the entry of judgment after a summary judgment motion on liability was granted in favor of the plaintiff-insurance companies. Green Farms, Inc. also allowed judgment to be entered against it in the second case, after a judicial determination that the corporation should have carried worker's compensation insurance for its employees.

The plaintiffs argue that the "Defendants have admitted to at least two acts of fraud in this matter" by allowing the above-referenced judgments to be entered against Green Farms, Inc. Plaintiffs, however, have not cited any authority which supports the proposition that the mere consent to the entry of judgment against a corporation by its President constitutes an admission of fraud by its directors, officers and stockholders. In neither case did Green Farms, Inc. or any of its directors, officers or employees admit to, or stipulate that fraudulent acts had taken place.

**1040 Under Delaware law fraud is never presumed. Rather, it must be proven to the satisfaction of the finder of fact. See *Mitchell v. Delaware State Tax Comm.,* Del.Super., 42 A.2d 19 (1975); *Nye Odorless Incinerator Corp. v. Felton,* Del.Super., 162 A. 504 (1932). Fraud at common law has been defined by Delaware courts as "a false representation of a material fact knowingly made with intent to be believed to one who, ignorant of its falsity, relies thereon and is thereby deceived." See *Harman v. Masoneilan Int'l, Inc.,* Del.Supr., 442 A.2d 487, 499 (1982); *Mabon, Nugent & Co. v. Texas American Energy Corp.,* Del.Ch., C.A. No. 8578, Berger, V.C. (Jan. 27, 1988). Courts of equity, however, have developed their own requirements for relief from fraud. The only departure from the common law elements, however, is Chancery's willingness to provide a remedy for negligent or innocent misrepresentations. It is not necessary in Chancery, therefore, to show that a defendant accused of fraud has to have known or believed that his statement was false or to have proceeded in reckless disregard of the truth. *Stephenson v. Capano Development, Inc.,* Del.Supr., 402 A.2d 1069, 1074 (1983).

*6 Although fraud is a sufficient reason to pierce the corporate veil, (see *Buechner, supra*) in the present case the plaintiffs have failed to adduce undisputed evidence showing that fraud has been perpetuated by the individual defendants and, therefore, summary judgment cannot be granted on this issue.

VI

The plaintiffs' final argument is that the corporate veil of Green Farms, Inc. should be pierced in order to prevent constructive fraud and injustice. In effect, the plaintiffs allege that Green Farms Inc. was merely the *alter ego* of the individual defendants and because the corporation was inadequately capitalized, this Court must pierce the corporate veil.

In support of their *alter ego* theory, the plaintiffs assert: (1) the lack of corporate formalities in operating Green Farms, Inc., especially the maintenance of adequate corporate records; (2) the commingling of assets between the shareholders and the corporation; and (3) the undercapitalization of the corporation. Plaintiffs' brief highlights numerous instances where the defendants apparently failed to follow normal corporate formalities. (See Plaintiffs' Opening Brief at 11-15.) And the defendants admitted in their brief that the corporate records maintained by Green Farms failed to "meet the normal standard for such corporate records." (Defendants' Brief at 2.)

**1041 Such glaring oversights seemingly present a good case for piercing the corporate veil. At this stage of the proceedings, however, it would be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                  Page 5
Not Reported in A.2d, 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030
**(Cite as: 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030)**

premature to pierce the corporate veil of Green Farms, Inc. because several material facts are still in dispute. It is unclear whether there was an actual commingling of assets between the shareholders and the corporation. John L. Green, Sr. and Marian Green apparently made loans to Green Farms, Inc. and then obtained repayment by transferring assets from the corporation to themselves. Such a transfer of assets, however, is not necessarily a basis for piercing the corporate veil. The plaintiffs must also show that such transfers were done to defraud creditors or were done merely to siphon off corporate assets, rather than to repay outstanding loans. This has not yet been done. Furthermore, questions exist as to the ownership of the stock of Green Farms, Inc. and the existence or whereabouts of corporate books and records.

As noted previously, persuading a Delaware court to disregard the corporate entity is a difficult task, even after trial on the issues. See *Alger Oil Co.,* supra. Consequently, the piercing of the corporate veil on a motion for summary judgment is an even more onerous task and, while the present record seems to indicate that Green Farms, Inc. was the *alter ego* of John L. Green, Sr. or the other stockholders, I cannot find that the entry of a final judgment is proper at this time. Plaintiffs' motion for summary judgment is, therefore, denied.

IT IS SO ORDERED.

Not Reported in A.2d, 1989 WL 110537 (Del.Ch.), 15 Del. J. Corp. L. 1030

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.                                                                                                                    Q-5