IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAYNE VAN SCOY | ) | **REDACTED PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-108-KAJ |
| | ) | |
| VAN SCOY DIAMOND MINE OF | ) | |
| DELAWARE, INC., | ) | |
| KURT VAN SCOY AND | ) | |
| DONNA VAN SCOY | ) | |
| Defendants. | ) | |

## OPENING BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS'
## LACHES, ACQUIESCENSE AND ESTOPPEL DEFENSES

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
ASHBY & GEDDES
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888

*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856
(610) 935-8600

Dated: November 1, 2005

163038.1

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

NATURE AND STAGE OF PROCEEDING ..................................................... 1

SUMMARY OF ARGUMENT ........................................................................... 1

STATEMENT OF UNCONTESTED FACTS .................................................... 3

ARGUMENT ....................................................................................................... 8

A.    Summary Judgment Is An Appropriate And Favored Remedy
      In This Case Because There Are No Material Facts In Dispute
      And Defendant Cannot And Will Not Be Able To Prove The
      Elements Of Their Laches, Acquiescence Or Estoppel Defenses .................. 8

B.    Plaintiff Is Entitled To Summary Judgment On Defendants' Laches
      And Acquiescence Defenses Because There Is No Evidence To Prove
      All Of The Required Elements Of A Laches Or Acquiescence Defense ......... 9

1.    Plaintiff is entitled to summary judgment on Defendants'
      laches and acquiescence defenses because there is no evidence
      that there was inexcusable delay on the part of the Plaintiff in
      instituting Suit ........................................................................................ 10

2.    Plaintiff is entitled to summary judgment on Defendants'
      laches and acquiescence defenses because there is no evidence
      that Defendants were prejudiced by any alleged inexcusable
      delay in Plaintiff instituting suit .......................................................... 17

3.    Plaintiff Is Entitled To Summary Judgment On Defendants'
      Acquiescence Defense Because There Is No Evidence To
      Prove That Plaintiff Impliedly Consented to Defendants' Infringement ......... 19

C.    Plaintiff Is Entitled To Summary Judgment On Defendants' Latches
      And Acquiescence Defenses On The Theory Of Progressive Encroachment ......... 20

D.    Plaintiff Is Entitled To Summary Judgment On Defendants' Estoppel
      Defense Because Defendants Cannot Prove Their Latches or
      Acquiescence Defenses Nor Is There Any Evidence To Otherwise
      Prove The Elements Of Estoppel ............................................................. 21

CONCLUSION ................................................................................................... 22

i

# TABLE OF AUTHORITIES
## CASES

Page

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ................................................................................8,9

Celotex Corporation. v. Catrett,
477 U.S. 317 (1986) ................................................................................8,9

Dawn Donut Company v. Hart's Food Stores, Inc.,
267 F.2d 358 (2nd Cir. 1959) .................................................................12,13

Halstead v. Grinnan,
152 US 412 (1894) ...................................................................................11,12

Holiday Inns of America, Inc. v. B & B Corporation,
409 F.2d 614 (3rd Cir. 1969) ...................................................................12,14

Johanna Farms, Inc. v. Citrus Bowl, Inc.,
468 F.Supp. 866 (E.D.N.Y. 1978) ...........................................................11,12,16

Kason Industries, Inc. v. Component Hardware Group, Inc.
120 F.3d 1199 (11th Cir 1997) ...............................................................20,21

Kellogg Company v. Exxon Corporation,
209 F.3d 562 (6th Cir 2000) ...................................................................*passim*

Matsushita Elec. Indus. Co. v. Zenith Radio Corporation,
475 U.S. 574 (1986) ................................................................................8

Mosely v. V. Secret Catalog, Inc.,
537 U.S. 418 (2003) ................................................................................10

Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.,
143 F.3d 800 (3rd Cir. 1998) ..................................................................*passim*

Profitness Phys. Therapy Ctr. v. Pro-Fit Orthopedic & Sports Phys. Threapy,
314 F.3d 62 (2nd Cir. 2002) ....................................................................11

SCI Systems, Inc. v. Solid State Controls, Inc.,
748 F. Supp. 1257 (S.D.Ohio 1990) .......................................................21,22

Tandy Corporation v. Malone & Hyde, Inc.,
769 F.2d 362 (6th Cir. 1985) ..................................................................15

<u>University of Pittsburgh v. Champion Products Inc.</u>,
686 F.2d 1040 (3rd Cir.1982) ................................................................................18,19

<u>University of Pittsburgh v. Champion Product Inc.</u>,
459 U.S. 1087 (1982)................................................................................18,19

<u>What a Burger of Virginia v. Whataburger Inc.</u>,
357 F.3d 441 (4th Cir. 2004) ................................................................................11,19

## TABLE OF CONTENTS OF EXHIBITS

A.    Declaration of Wayne Van Scoy and attached Exhibits 1 and 2          Exhibit A

B.    Deposition Transcript of Kurt Van Scoy                               Exhibit B

C.    Deposition Transcript of Wayne Van Scoy    (REDACTED)               Exhibit C

D.    Cease and Desist Letter                                            Exhibit D

E.    Letter of Intent (REDACTED)                                        Exhibit E

F.    Deposition Transcript of Donna Van Scoy                            Exhibit F

G.    Deposition Transcript of Lori McMichaels                           Exhibit G

H.    Defendants' Amended and Supplemental Responses
      to Plaintiff's First Set of Interrogatories                       Exhibit H

## INTRODUCTION

Plaintiff Wayne Van Scoy respectfully submits this opening brief in support of his motion for summary judgment that his claims are not barred by the defenses of laches, acquiescence or estoppel.

## NATURE AND STAGE OF PROCEEDING

This is a suit for trademark and service mark infringement, misappropriation of an internet domain name and unfair competition where the Defendants have used the exact mark, VAN SCOY DIAMOND MINE, for exactly the same types of goods and services and have misappropriated the domain name www.vanscoydiamondmine.com. Discovery closed on October 7, 2005. The Scheduling Order provided that dispositive motions shall be filed by October 15, 2005. A Stipulated Order extending the time for filing case dispositive motions, opening briefs and supporting affidavits to October 25, 2005 has been entered.

## SUMMARY OF ARGUMENT

Plaintiff's Motion For Summary Judgment on Defendants' laches, acquiescence and estoppel defenses should be granted because there are no material facts in dispute and based on the pleadings, deposition testimony, admissions and all other admissible evidence Defendants cannot and will not be able to prove all of the elements of these defenses.

First, Defendants cannot prove that the there was inexcusable delay on the part of Plaintiff in instituting suit. In determining whether there was inexcusable delay this Court should look only at the relevant period which is defined as the period which Plaintiff knew of his right to seek an injunction. Since Plaintiff did not know of any right to seek an injunction until July 2004 when he discovered that Defendants were hosting an infringing website and offering products in Plaintiff's sales area, the only time period which this Court should consider relevant to any possible delay on the part of Plaintiff in instituting suit should be the

period beginning in July 2004. Additionally, Plaintiff has another basis to seek an injunction based on the fact that he has a licensee ready to move into Defendants' infringing territory. Since Plaintiff sent Defendants a cease and desist letter on November 18, 2004 and filed suit promptly thereafter there was no inexcusable delay.

Second, Defendants will not be able to show that they were prejudiced by any alleged delay on the part of Plaintiff. There is no evidence of record that Defendants have been prejudiced in any way since the relevant period of alleged delay began in July 2004. Furthermore, Defendants admit that if they were enjoined from use of the mark any prejudice that might result would not be the result of any alleged delay on the part of Plaintiff in initiating suit.

Furthermore, with respect to Defendants' acquiescence defense, there is no evidence of record sufficient to show that Plaintiff by affirmative word or deed impliedly or expressly consented to Defendants' infringement. Plaintiff did not learn of a basis to bring suit until July 2004 and therefore any action taken prior to July 2004 cannot be characterized as Plaintiff's consent to Defendants' infringement. At any rate, there is no evidence of record prior to 2004 or after sufficient to show Plaintiff's implied or express consent, and the evidence of record is that Plaintiff did not consent impliedly or expressly to Defendants' infringement.

Finally, since Defendants will not be able to show either laches or acquiescence they will not be able to show estoppel by either laches or acquiescence. Nor are there any facts of record that Defendants can point to in order to meet the heavy burden of showing that Plaintiff should otherwise be estopped from asserting his claims.

## STATEMENT OF UNCONTESTED FACTS

Plaintiff acquired the marks covered by Federal Trademark Registration No. 1,140,711 and Federal Service Mark Registration No. 1,140,958 (the "Marks at Issue") and associated good will pursuant to a settlement approved by the United States Bankruptcy Court for the Middle District of Pennsylvania by its Order of January 4, 2001. (Wayne Van Scoy Decl. ¶ 8, Exhibit A). Both of the Marks at Issue are for the Mark "Van Scoy Diamond Mine." (Wayne Van Scoy Decl. ¶ 2, Exhibit A). Both Registrations are in full force and effect and have been made incontestable under Section 15 of the Trademark Act. (Wayne Van Scoy Decl. ¶ 2 & 3, Exhibit A ).

Plaintiff's father, through his corporation Van Scoy Diamond Mine, Inc., registered the Marks at Issue in 1980. (Wayne Van Scoy Decl. ¶ 5, Exhibit A).   Plaintiff's father owned "Van Scoy Diamond Mine" stores in numerous locations including the exact location of Defendants' store at 1117 Churchmans Road, Newark, DE 19713. (Kurt: 42, 66, Exhibit B).[1]

Presently and since Plaintiff acquired the Marks at Issue Plaintiff has licensed the Marks at Issue to his corporation, Rings of Romance, Inc., which has at all times since Plaintiff acquired the Marks at Issue operated a retail jewelry store at 154 Mundy Street Wilkes-Barre, PA 18702 under the mark "Van Scoy Diamond Mine." (Wayne: 18-20, Exhibit C; Wayne Van Scoy Decl. ¶ 4, 8 & 9, Exhibit A ). In fact, except for one occasion when the United States Bankruptcy Court forced the closure of the store operated by

---

1 Citations herein to deposition transcripts will be identified by the first name of deponent followed by the page or pages.

3

Plaintiff's father and another occasion when that court enjoined use of the mark by Plaintiff and other members of Plaintiff's family, the Marks at Issue have been used at all times since 1977 by either Plaintiff or Plaintiff's predecessor in interest, Van Scoy Diamond Mine, Inc., in connection with the sale of jewelry and the rendering of jewelry store services in Wilkes Barre, PA. (Wayne Van Scoy Decl. ¶ 9, Exhibit A).    Plaintiff focuses his advertising in the Wilkes-Barre area and the majority of his customers come from that area. (Wayne: 69, 72 Exhibit C).

Defendants have operated a retail jewelry store under the mark "Van Scoy Diamond Mine" at 1117 Churchmans Road, Newark, DE 19713 since November 1994. (Kurt: 23, 66, 69, Exhibit B). Defendants claim that they have the right to use the marks because in October of 1994 Defendant's father, who was the principal of Van Scoy Diamond Mine, Inc. (one of Plaintiff's predecessors in interest with respect to the Marks at Issue), gave Defendant Kurt Van Scoy a sign that read "Diamond Mine" and said "[h]ere's the sign. Good luck to you. I love you very much and I'm proud of you." (Kurt: 9, Exhibit B). Other than a website maintained by Defendants at "www.vanscoydiamondmine.com" and a website maintained by Defendants at "www.vanscoydiamondsofdelaware.com" Defendants have at all times since Plaintiff became owner of the Marks at Issue advertised in the Wilmington, Delaware area. (Kurt: 87, Exhibit B). Defendants define the sales market for their business as the "Wilmington, [Delaware] area market." (Kurt: 151-152, Exhibit B).

In July 2004 Plaintiff for the first time discovered the existence of Defendants' website "www.vanscoydiamondmine.com" while using the internet at his store in Wilkes-

Barre, Pennsylvania. (Wayne: 119-120, Exhibit C; Wayne Van Scoy Decl. ¶ 10, Exhibit A ). Plaintiff's discovery of the website was the first time Plaintiff knew that Defendants were interfering with his business. (Wayne 119-120, Exhibit C). Before July 2004 Plaintiff had no knowledge of any basis for an infringement suit against Defendants. (Wayne Van Scoy Decl. ¶ 10, Exhibit A).

The website operated by Defendants that Plaintiff discovered in July 2004 was hosted at the domain name "vanscoydiamondmine.com". (Kurt: 139-140, Exhibit B; Wayne Van Scoy Decl. ¶ 10, Exhibit A). The website referred to Defendants' store as "Van Scoy Diamond Mine" and had pictures of Defendants' store showing a sign on the front of the store that read: "Van Scoy Diamond Mine." (Kurt: 145,148-149, Exhibit B). Additionally, Defendants offered jewelry products for sale through the website. (Kurt: 149-150, Exhibit B). The website featured a "Showcase Gallery" displaying color pictures of 716 jewelry products and their prices, all the "products that are available" for purchase at Defendants' store. (Kurt: 150, Exhibit B). Defendant Van Scoy Diamond Mine of Delaware Inc.'s most senior sales person and manager of Defendants' store stated that the website is used in the business "like a catalog." (Lori: 10, Exhibit G). Customers visiting the website could click on an image "[a]nd if they want to get more information about it, [they] get more information about it, click on it or certainly E-mail [Defendants] if they are interested in purchasing." (Kurt: 149-150, Exhibit B). Defendants admit to having sold through their website. (Kurt: 150, Exhibit B).

Plaintiff sent a Cease and Desist Letter to Defendants dated November 18, 2004

which Defendants received on November 20, 2004 requesting that Defendants immediately stop infringing the Marks at Issue. (Kurt: 13, Exhibit B; Cease and Desist Letter, Exhibit D). After not receiving a requested substantive response from Defendants to the Cease and Desist Letter Plaintiff initiated this lawsuit in February 2005. (Wayne Van Scoy Decl. ¶ 11, Exhibit A).

After Defendants received notice of this lawsuit Defendants ceased using the domain name "www.vanscoydiamondmine.com" and began using the domain name "www.vanscoydiamondsofdelaware.com" (Kurt 143-144, Exhibit B). Besides the difference in domain names the website that was hosted at "www.vanscoydiamondmine.com" and the website that is presently hosted at "www.vanscoydiamondsofdelaware.com" are exactly the same in substance. (Kurt 144, 149, Exhibit B). Defendants continue to offer products for sale through their website. (Kurt: 149-150, Exhibit B). Furthermore, Defendant Kurt Van Scoy admits that he continues to direct the infringement of the corporation. (Kurt: 13, Exhibit B).

Additionally, Plaintiff has since approximately 2002 or 2003 been in negotiations with a potential licensee, (REDACTED), regarding the license of the mark "Van Scoy Diamond Mine" and the opening of a "Van Scoy Diamond Mine" jewelry store in the Newark, Delaware area. (Wayne: 101-102, Exhibit C). (REDACTED) and Plaintiff on July 25, 2005 reduced their intention with respect to the licensing arrangement to writing and Plaintiff is now ready to expand his business through a licensee to the Newark, Delaware area. (Letter of Intent, Exhibit E).

Since July 2004 Defendants have not done anything to improve their store. (Kurt: 91, Exhibit B). In fact, except for minor improvements costing a few thousand dollars` in approximately 1999 or 2000 Plaintiffs have never done anything to improve their store. (Donna: 85-86, Exhibit F; Kurt: 91, Exhibit B). Defendants also admitted that they have not expanded their store or business in any way since they opened it. (Kurt: 92, Exhibit B). Furthermore, Defendants admitted that even if at this time they were forced to stop using the mark "Van Scoy Diamond Mine" the only reason that they would be prejudiced would be because "[Kurt Van Scoy's] father gave [him] the name and [he] gave him the sign for the store." (Kurt: 97-98, Exhibit B).

When asked in Plaintiff's First Set of Interrogatories to state all of their contentions and facts in support of their affirmative defense of estoppel, Defendants responded that "Defendants have relied on plaintiff's inaction and silence respecting Defendants' use of the mark." (Defendants Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories # 9, Exhibit H). In addition, Defendants stated as additional support for their defense of estoppel that at all times since Defendants' began using the mark "Van Scoy Diamond Mine" "plaintiff has been silence respecting Defendants' use of the mark at issue." (Defendants Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories # 9, Exhibit H).

# ARGUMENT

**A.**    **Summary Judgment Is An Appropriate And Favored Remedy In This Case  Because There Are No Material Facts In Dispute And Defendants Cannot And Will Not Be Able To Prove The Elements Of Their Laches, Acquiescence Or Estoppel Defenses.**

The Supreme Court has held that summary judgment is a beneficial way to dispose of cases "designed 'to secure that just, speedy and inexpensive determination of every action.'" Celotex Corporation. v. Catrett, 477 U.S. 317, 327 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corporation., 475 U.S. 574 (1986)

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examinations of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).

The moving party has the initial burden of showing that there is no genuine issue of material fact.  See Celotex, 477 U.S. 317 at 323.  Where the nonmovant bears the burden of persuasion at trial, the moving party may meet its initial burden and shift the burden of production to the nonmoving party "by 'showing'- that is, pointing out to the district court- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. 317 at 325.

In this case, Defendant Kurt Van Scoy, Defendant Donna Van Scoy and Defendant Van Scoy Diamond Mine of Delaware, Inc. have the burden at trial of proving each and every element of their laches, acquiescence and estoppel defenses. Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 804 (3rd Cir. 1998).  Thus, once Plaintiff makes

its initial showing that there is an absence of evidence, Defendants must come forward with evidence to support its defenses. Celotex, 477 U.S. 317 at 325. Furthermore, Defendants must show more than "[t]he mere existence of a scintilla of evidence" for elements on which it bears the burden of production at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The facts in this case are clearly established by the admissions and testimony of the parties, and especially the admissions and testimony of Defendant Kurt and Donna Van Scoy, and are not in dispute. There is no genuine issue of material fact in this case and Defendants cannot produce evidence as to any element of its laches, acquiescence or estoppel defenses. In light of the Supreme Court's encouragement of summary judgment as a matter of efficiency, the matter at hand exemplifies the type of claim that should be disposed of by summary judgment.

**B.    Plaintiff Is Entitled To Summary Judgment On Defendants' Laches And Acquiescence Defenses Because There Is No Evidence To Prove All Of The Required Elements Of A Laches or Acquiescence Defense.**

The United States Court of Appeals for the Third Circuit held in Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc. that with respect to a laches defense, Defendants herein must allege and prove: 1) inexcusable delay on the part of Plaintiff in instituting suit; and 2) prejudice to Defendants resulting from such delay. Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 804 (3rd Cir. 1998). Acquiescence applies when the trademark owner, by affirmative word or deed, conveys its implied consent to another. Id. at 804. Therefore, in addition to the elements of laches the defense of acquiescence requires that a defendant also prove an additional element, that is, implied consent by affirmative word or

9

deed.  See Kellogg Company v. Exxon Corporation, 209 F.3d 562, 569 (6th Cir 2000),

overruled in part by Mosely v. V. Secret Catalog, Inc., 537 U.S. 418 (2003) (overruling

Kellog on the issue of the standard for a trademark dilution claim under the FTDA).

("Although both laches and acquiescence require proof that the party seeking to enforce its

trademark rights has unreasonably delayed pursuing litigation and, as a result, materially

prejudiced the alleged infringer, acquiescence requires more.")

> 1.     **Plaintiff is entitled to summary judgment on Defendants' laches and acquiescence defenses because there is no evidence that there was inexcusable delay on the part of the Plaintiff in instituting suit.**

Defendants cannot produce sufficient evidence to prove their laches or acquiescence

defenses because there is no evidence to show that there was *any* delay on the part of the

Plaintiff in instituting suit and certainly no evidence to show inexcusable delay.  In order for

Defendants to prove that even a portion of the relief sought by Plaintiff is barred by the

equitable defense of laches and/or acquiescence, Defendants must show that there was

inexcusable delay on the part of the Plaintiff in instituting suit.  Pappan Enterprises, Inc., 143

F.3d 800 at 804.  In determining whether there was inexcusable delay in instituting suit this

Court should look to the relevant time period.  Id.  The Third Circuit has held that with

respect to inexcusable delay the relevant time period constituting the delay should include

only that time period in which the plaintiff has a basis to seek an injunction.  Id.  In Pappan

Enterprises, Inc. the court held that until the plaintiffs had a basis upon which to seek an

injunction "their failure to do so [did] not constitute delay." <u>Id</u>. It is in fact well settled law

that in determining whether a plaintiff can be charged with inexcusable delay in instituting

suit, only that period of time when the plaintiff had the right to seek an injunction should be

considered relevant. The Court in <u>Johanna Farms, Inc. v. Citrus Bowl, Inc.</u>, for example, put

it this way: "one cannot be guilty of laches until his right ripens into one entitled to

protection, for only then can his torpor be deemed inexcusable." <u>Johanna Farms, Inc. v.</u>

<u>Citrus Bowl, Inc.</u>, 468 F.Supp. 866, 881 (E.D.N.Y. 1978). Likewise, with respect to both

laches and acquiescence, implicit in a finding of these affirmative defenses is the

presumption that an underlying claim for infringement existed at the time at which [the court]

begin[s] to measure the plaintiff's delay. <u>Kellogg Company</u>, 209 F.3d 562 at 569. "Logic

dictates that 'unreasonable delay' does not include any period of time before the owner is

able to pursue a claim for infringement- otherwise, a trademark owner could be punished for

not bringing a claim he had no right to bring." <u>What a Burger of Virginia v. Whataburger</u>

<u>Inc.</u>, 357 F.3d 441,449 (4th Cir. 2004).

    Additionally, it is not until Plaintiff knew or should have known of the basis for his

right to seek an injunction that the relevant time period should begin. <u>See</u> <u>Profitness Phys.</u>

<u>Therapy Ctr. v. Pro-Fit Orthopedic & Sports Phys. Therapy</u>, 314 F.3d 62, 70 (2nd Cir. 2002)

("[A] plaintiff should not be obligated to sue until its right to protection has ripened such that

plaintiff knew or should have known, not simply that defendant was using the potentially

offending mark, but that plaintiff had a provable infringement claim against defendant."*) <u>See</u>

<u>also</u> <u>Halstead v. Grinnan</u>, 152 US 412 (1894) ("There must, of course, have been knowledge

on the part of the plaintiff of the existence of these rights, for there can be no laches in failing

to assert rights of which a party is wholly ignorant"). See also Kellogg Company, 209 F.3d

562 at 569-570. ("When a Defendant charged with trademark infringement avails itself of an

acquiescence defense, we must presume the existence of some underlying infringement to

which the plaintiff acquiesced, and any delay attributable to the plaintiff must be measured

from the time at which the plaintiff knew or should have known that this infringement had

ripened into a provable claim.")

     In this case there has not been inexcusable delay on the part of Plaintiff in instituting

suit and Defendants will not be able to show any such inexcusable delay because Plaintiff's

right to seek an injunction has only recently ripened into a cognizable right. The Third Circuit

held in Holiday Inns of America, Inc. v. B & B Corporation that a trademark owner is not

entitled to injunctive relief until "it is necessary to prevent immediate and irreparable injury."

Holiday Inns of America, Inc. v. B & B Corporation, 409 F.2d 614, 618 (3rd Cir. 1969). In

that case the Third Circuit held that the plaintiff hotel chain was not entitled to an injunction

until it could show "present debasement of its protected mark." Id.    Similarly, in Johanna

Farms, Inc. v. Citrus Bowl, Inc. the Court held that "until there exists an actual clash of

interests, or until the expansion of the owner's mark into the infringer's territory is on the

verge of implementation so that the likelihood of public confusion looms large, there is no

basis for an infringement suit." Johanna Farms, Inc., 468 F.Supp. 866 at 881. *See also*

Dawn Donut Company v. Hart's Food Stores, Inc., 267 F.2d 358, 365 (2nd Cir. 1959)

(holding that because the plaintiff and the defendant use the mark in connection with retail

sales in distinct and separate markets and because there is no present prospect that the plaintiff will expand its use of the mark at the retail level into the defendant's trading area, there is no likelihood of public confusion arising from the concurrent use of the marks and therefore an injunction is not warranted).

The uncontested facts of this case make clear that Plaintiff only became aware of his basis to bring an infringement suit recently and therefore there was no inexcusable delay on the part of Plaintiff in instituting suit. Plaintiff's corporation as a licensee, along with Plaintiff's father (whose corporation Van Scoy Diamond Mine, Inc. is one of Plaintiff's predecessors in interest with respect to the Marks at Issue) has operated a retail jewelry store for many years in Wilkes-Barre, Pennsylvania under the federally registered marks for "Van Scoy Diamond Mine." (Wayne: 13, 18-20, Exhibit C; Wayne Van Scoy Decl. ¶ 9, Exhibit A). Plaintiff's licensed corporation's sales market is the Wilkes Barre area. (Wayne: 69, 72, Exhibit C). Defendants operate their retail jewelry store in Newark, Delaware under the name Van Scoy Diamond Mine. (Kurt: 66, 69, Exhibit B). Defendants define the sales market for their business as the "Wilmington, [Delaware] area market." (Kurt: 151-152, Exhibit B). Until July 2004 Plaintiff had no knowledge of any basis to seek an injunction. (Wayne Van Scoy Decl. ¶ 10, Exhibit A). In July 2004, however, Plaintiff was surfing the internet at his computer at his store in Wilkes-Barre, Pennsylvania when he discovered a website hosted by Defendants at the domain name www.vanscoydiamondmine.com. (Wayne: 119-120, Exhibit C; Wayne Van Scoy Decl. ¶ 10, Exhibit A ). Defendants admit that they offered jewelry products for sale through their website

www.vanscoydiamondmine.com. (Kurt: 149-150, Exhibit B). Defendants also admit that they offer products for sale through their new website www.vanscoydiamondsofdelaware.com, in fact, "[i]t's the same website." (Kurt: 149, Exhibit B). Defendants' website has a "Showcase Gallery" showing colored images and prices of all products that are available for purchase from Defendants' store. (Kurt: 150, Exhibit B). Defendant Van Scoy Diamond Mine of Delaware Inc.'s most senior sales person and manager of Defendants' store stated that the website is used in the business "like a catalog." (Lori: 10, Exhibit G). Customers can "click on an image that if they see something, they can enlarge it. And if they want to get more information about it, you get more information about it, click on it or certainly E-mail [Defendants] if they are interested in purchasing." (Kurt: 149-150, Exhibit B). Furthermore, Defendants admit that they have offered for sale and sold through their website. (Kurt: 150, Exhibit B).

The existence of Defendants' infringing website which is readily available in Plaintiff's sales market is proof that an injunction is warranted because there exists "present debasement of [Plaintiff's] protected mark." Holiday Inns of America, Inc., 409 F.2d 614 at 618. As such, when Plaintiff discovered the existence of Defendants' website in July 2004, Plaintiff for the first time knew of his right to seek an injunction and therefore only the period from July 2004 should be considered relevant to this Court in determining whether there was inexcusable delay on the part of Plaintiff in instituting suit. Pappan Enterprises, Inc., 143 F.3d 800 at 804. (Wayne: 119-120, Exhibit C; Wayne Van Scoy Decl. ¶ 10, Exhibit A). Defendants received Plaintiff's Cease and Desist Letter of November 18, 2004 on November

14

20, 2004 requesting that they cease and desist from using Plaintiff's federally registered marks immediately. (Kurt: 13, Exhibit B; Cease and Desist Letter, Exhibit D). After approximately a three month delay on the part of Defendants whereby Defendants refused to respond to Plaintiff's request for them to substantively respond to Plaintiff's Cease and Desist Letter, Plaintiff timely filed this lawsuit in February 2005. (Wayne Van Scoy Decl. ¶ 11, Exhibit A). As the Court of Appeals for the Sixth Circuit held: "[a] reasonable businessman should be afforded some latitude to asses both the impact of another's use of an allegedly infringing trademark as well as the wisdom of pursing litigation on the issue." Tandy Corporation v. Malone & Hyde, Inc., 769 F.2d 362, 366 (6th Cir. 1985). (holding that a 32 month delay in instituting suit was not sufficiently unreasonable to invoke laches). For the forgoing reasons Defendants will not be able to prove that there was inexcusable delay on the part of Plaintiff in instituting suit.

It is also noted that Plaintiff has plans in place and is in the process of expanding, through a licensee, to sell jewelry and to render retail jewelry store services within the state of Delaware and specifically within the Newark, Delaware area utilizing the marks "Van Scoy Diamond Mine." (Letter of Intent, Exhibit E; Wayne: 101-102, Exhibit C). Plaintiff has desired for years to license the marks "Van Scoy Diamond Mine" throughout the country and rebuilding the "Van Scoy Diamond Mine" chain. (Wayne: 101-102, Exhibit C; Wayne Van Scoy Decl. ¶ 6, Exhibit A). On July 25, 2005 Plaintiff's intentions to expand to the Newark, Delaware market became a close reality with the formal commitment of a potential licensee. (Letter of Intent, Exhibit E). Although Plaintiff has had intentions of expanding his business

into Defendants' infringing area for a couple of years this should not be considered an inexcusable delay in instituting suit for "until the expansion of the owners mark into the infringer's territory is on the verge of implementation so that the likelihood of consumer confusion looms large, there is no basis for an infringement suit." <u>Johanna Farms, Inc.</u>, 468 F.Supp. 866 at 881. As the court said in <u>Johanna Farms, Inc. v. Citrus Bowl, Inc.</u> "where expansion of the mark is but a dream in the owner's business scheme rather than a close reality, to estop the owner for failing to institute a suit which the courts have held would have been futile, would produce a ludicrous result." <u>Id</u>.

Assuming that Defendants and particularly Defendant Kurt Van Scoy did receive a valid license from his father, Tommy Van Scoy, Sr,. to use the trademark "Van Scoy Diamond Mine" in connection with a jewelry store in Newark, Delaware, Defendants still cannot prevail on their laches or acquiescence defenses. Defendants claim that they have the right to use the mark because Defendant Kurt Van Scoy's father, who was also the principal of Van Scoy Diamond Mine, Inc., one of Plaintiff's predecessors in interest with respect to the Marks at Issue, gave Defendant Kurt Van Scoy a sign that said "Diamond Mine" and said "[h]ere's the sign. Good luck to you. I love you very much and I'm proud of you." (Kurt: 9, Exhibit B). Assuming this vague statement qualifies as a license, any alleged license or permission that may have been given to Defendants to use the marks was unequivocally revoked in writing by Plaintiff's Cease and Desist Letter of November 18, 2004. (Cease and Desist Letter, Exhibit D). As discussed above, in <u>Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.</u> the court held that with respect to a claim of inexcusable delay the relevant time

16

period should begin at the time when the plaintiff has a basis upon which to seek an injunction. Pappan Enterprises, Inc., 143 F.3d 800 at 804.   In that case the Court of Appeals for the Third Circuit found that the plaintiff did not have a basis upon which to seek an injunction until the plaintiff terminated the defendant's franchisee agreements, even though the defendant had for several years been defaulting on the franchise agreements it had with the plaintiff. Pappan Enterprises, Inc., 143 F.3d at 804.   As such, applied to the facts in this case even if Plaintiff did not have a basis to seek an injunction until it terminated any alleged license held by Defendants, there was no inexcusable delay because Plaintiff timely filed suit in February 2005 and only after not receiving the requested substantive response from Defendants with respect to the Cease and Desist Letter.  (Wayne Van Scoy Decl., ¶ 11, Exhibit A; Cease and Desist Letter, Exhibit D).

> **2.  Plaintiff is entitled to summary judgment on Defendants' laches and acquiescence defenses because there is no evidence that Defendants were prejudiced by any alleged inexcusable delay in Plaintiff instituting suit.**

Defendants cannot produce sufficient evidence to prove their laches or acquiescence defenses because there is no evidence to show that Defendants have suffered sufficient prejudice by any alleged inexcusable delay in Plaintiff instituting suit.  In order for Defendants to prove that even a portion of the relief sought by Plaintiff is barred by the equitable defenses of laches and/or acquiescence, Defendants must show that they were prejudiced by Plaintiff's alleged inexcusable delay in instituting suit. Pappan Enterprises, Inc., 143 F.3d at 804.  Since July 2004, the start of the relevant period of alleged delay, there

is no evidence of record that shows any prejudice to Defendants. Except for minor

improvements costing a few thousand dollars in approximately 1999 or 2000 Plaintiffs have

never done anything to improve their store. (Donna: 85-86, Exhibit F; Kurt: 91, Exhibit B).

These minor improvements were made well before Plaintiff had any right to seek an

injunction and, in fact, were likely made before Plaintiff even became owner of the Marks at

Issue in January 2001. (Donna: 85-86, Exhibit F; Wayne Van Scoy Decl. ¶ 8, Exhibit A).

Therefore, Defendants cannot point to these improvements as evidence of prejudice resulting

from delay on the part of Plaintiff in instituting suit since the improvements were made well

before any period that could even arguably be considered a period of delay. Defendants also

admitted that they have not expanded their store or business in any way since they open it.

(Kurt: 92, Exhibit B). Furthermore, Defendants admitted that even if they were forced to

stop using the marks "Van Scoy Diamond Mine" at this time the only reason that they would

be prejudiced would be because "[Kurt Van Scoy's] father gave [him] the name and [he]

gave him the sign for the store." (Kurt: 98, Exhibit B). This is clearly not the type of

prejudice sufficient to prove a laches or acquiescence defense for as the Third Circuit held, it

is only where "the junior user has developed sufficient demand and goodwill through its own

efforts that it would be inequitable to enforce the senior's rights." University of Pittsburgh v.

Champion Products Inc., 686 F.2d 1040,1047 (3rd Cir.1982), Certiorari Denied by University

of Pittsburgh v. Champion Product Inc., 459 U.S. 1087 (1982). The alleged fact that

Defendant Kurt Van Scoy's father gave him the name and gave him the sign for the store

clearly does not show that Defendants have "developed sufficient demand and goodwill

through [their] *own* efforts." Id. (Emphasis supplied).    As such, there simply is not

sufficient evidence of record to show that Defendants have been prejudiced by any alleged

inexcusable delay on the part of the Plaintiff in instituting suit.

> **3.    Plaintiff Is Entitled To Summary Judgment On Defendants'
> Acquiescence Defense Because There Is No Evidence To Prove
> That Plaintiff Impliedly Consented to Defendants' Infringement.**

Although both laches and acquiescence require proof that the party seeking to enforce

its trademark rights has unreasonably delayed pursuing litigation and, as a result, materially

prejudiced the alleged infringer, acquiescence requires more. Kellogg Company, 209 F.3d

562 at 569. In addition to elements discussed above, in order for Defendants to prove their

defense of acquiescence Defendants must show that Plaintiff, by affirmative word or deed,

conveyed his implied consent to Defendants' infringement. Pappan Enterprises, Inc., 143

F.3d at 804. This additional element applicable to the acquiescence defense explains why

"[a]quiescence is the active counterpart to laches, a doctrine based on passive consent."

What a Burger of Virginia, 357 F.3d 441 at 452.    There is no evidence of record to show that

Plaintiff by affirmative word or deed implied his consent to Defendants.  To the contrary,

there is positive evidence of record that Plaintiff did not consent to Defendants' infringement

of the Mark at Issue. (Wayne Van Scoy Decl. ¶ 12, Exhibit A).  Furthermore, as pointed out

above, acquiescence assumes a "preexisting infringement" that "requires that the trademark

owner knowingly consent- albeit actively- to the defendant's infringing use of the mark."

What a Burger of Virginia, 357 F.3d 441 at 452. As such, for Plaintiff to have acquiesced to

Plaintiff's infringement he must have done so by affirmative word or deed sometime after

July 2004 when he discovered the existence of Defendants' infringing website. (Wayne: 119-120, Exhibit B; Wayne Van Scoy Decl. ¶ 10, Exhibit A). Plaintiff never acquiesced to Defendants' infringement; Plaintiff did the opposite- Plaintiff demanded that Defendants cease their infringement soon after discovering the basis for an infringement suit and filed this suit in a timely manner after not receiving a requested substantive response to that demand. (Cease and Desist Letter, Exhibit D; Wayne Van Scoy Decl. ¶ 5, Exhibit A).

**C.    Plaintiff Is Entitled To Summary Judgment On Defendants' Latches And Acquiescence Defenses On The Theory Of Progressive Encroachment.**

With respect to alleged delay on the part of Plaintiff in instituting suit, any alleged delay should be excused under the doctrine of progressive encroachment. "Progressive encroachment is an offensive countermeasure to the affirmative defenses of latches and acquiescence; upon a finding of progressive encroachment, the delay upon which those defenses are premised is excused." Kellogg Company, 209 F.3d 562 at 571. Under the doctrine of progressive encroachment any delay on the part of a plaintiff is excused when the nature of an existing infringement changes in character and scope such that the defendant's infringement places a defendant's marketing efforts "more squarely in competition with the plaintiff." Kason Industries, Inc. v. Component Hardware Group, Inc. 120 F.3d 1199, 1205 (11th Cir 1997). The doctrine of progressive encroachment gives the plaintiff some latitude in the timing of bringing its suit, that is, waiting until the 'likelihood of confusion looms large to bring the action.'" Thomas McCarthy, McCarthy On Trademarks and Unfair Competition, § 31.06[2][a] (3d ed.1995). Defendants' website, which is readily accessible in Plaintiff's trade area, was discovered by Plaintiff in July 2004. (Wayne Van Scoy ¶ 10,

Exhibit A).  The existence of Defendants' website has clearly changed the character and scope of any infringement that might have existed prior to the existence of the website such that Defendants' infringing activity is now "more squarely in competition with the plaintiff." Kason Industries, Inc., 120 F.3d 1199 at 1205; (Wayne: 119-120, Exhibit C).  As Plaintiff said in his deposition in response to a question regarding why he chose to send Defendants a cease and desist letter in November of 2004: "…he opens up the Internet website, which then comes up into my area.  People can go on, click.  He can ship them merchandise.  Now he's interfering with my business."  (Wayne: 119-120, Exhibit C).  Furthermore, Plaintiff has a licensee who is ready to move into the Newark, Delaware area, the same area in which Defendants have an infringing store.  (Letter of Intent, Exhibit E; Wayne: 101-102, Exhibit C).  As such any alleged delay by Plaintiff should be excused on the basis that Plaintiff had the right to wait to bring this action until the 'likelihood of confusion loom[ed] large."

**D.**    **Plaintiff Is Entitled To Summary Judgment On Defendants' Estoppel Defense Because Defendants Cannot Prove Their Latches or Acquiescence Defenses Nor Is There Any Evidence To Otherwise Prove Estoppel.**

Clearly since Defendants cannot prove their laches or acquiescence defenses they will not be able to show estoppel by either latches or acquiescence.  Furthermore, there is no evidence of record that would enable Defendants to prove estoppel by any other means. Estoppel requires "more than a showing of mere silence on the part of a plaintiff."  SCI Systems, Inc. v. Solid State Controls, Inc., 748 F. Supp. 1257, 1262 (S.D.Ohio 1990). In order for Defendants to prevail on their estoppel defense they must show that they have been misled by Plaintiff through "actual misrepresentations, affirmative acts of misconduct,

intentional misleading silence, or conduct amounting to virtual abandonment of the trademark." Id.  When asked in Plaintiff's First Set of Interrogatories to state all of its contentions and facts in support of their affirmative defense of estoppel, Defendant responded that "Defendants have relied on plaintiff's inaction and silence respecting Defendants' use of the mark." (Defendants' Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories # 9, Exhibit H).  In addition, Defendants stated as additional support for their defense of estoppel that at all times since Defendants began using the mark "Van Scoy Diamond Mine" "plaintiff has been silence respecting Defendants' use of the mark at issue." (Defendants' Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories # 9, Exhibit H). Clearly, this alleged inaction and silence is not sufficient to prove estoppel. Furthermore, as evidenced by Defendants' failure to provide any additional facts in support of their defense of estoppel and as supported by the record itself, there are no facts to show the type of affirmative conduct on the part of Plaintiff that is required to prove the defense of estoppel.  In fact, the only evidence of record is that Plaintiff never consented to Defendants' infringement of the marks at issue.  (Wayne Van Scoy Decl., ¶ 12, Exhibit A).

## IV. CONCLUSION

In view of the fact that Defendants cannot prove any of the elements of their laches, acquiescence or estoppel defenses, summary judgment should be granted for Plaintiff on these defenses.

ASHBY & GEDDES

*/s/ John G. Day*

_____
Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888
*Attorneys for Wayne Van Scoy*

*Of Counsel:*
Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856

Dated: November 1, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of November, 2005, the attached **REDACTED**

**PUBLIC VERSION OF OPENING BRIEF IN SUPPORT OF PLAINTIFF'S MOTION**

**FOR SUMMARY JUDGMENT ON DEFENDANTS' LACHES, ACQUIESCENSE**

**AND ESTOPPEL DEFENSES** was served upon the below-named counsel of record at the

address and in the manner indicated:

Francis G.X. Pileggi, Esquire                                    VIA ELECTRONIC MAIL
Sharon Oras Morgan, Esquire
Fox Rothschild LLP
Citizen Bank Center
919 North Market Street
Suite 1300
Wilmington, DE  19801-2323

Charles N. Quinn, Esquire                                      VIA ELECTRONIC MAIL
Fox Rothschild LLP
2000 Market Street
Tenth Floor
Philadelphia, PA  19103


*/s/ John G. Day*
_____

John G. Day

24