IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAYNE VAN SCOY | ) | **REDACTED PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-108-KAJ |
| | ) | |
| VAN SCOY DIAMOND MINE OF | ) | |
| DELAWARE, INC., KURT VAN SCOY | ) | |
| AND DONNA VAN SCOY | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT OF
INFRINGEMENT AND WILLFUL INFRINGEMENT BY DEFENDANTS**

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
ASHBY & GEDDES
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888

*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856
(610) 935-8600

Dated: November 1, 2005
163030.1

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................1

NATURE AND STAGE OF PROCEEDING .......................................................1

SUMMARY OF ARGUMENT ...........................................................................1

STATEMENT OF UNCONTESTED FACTS ......................................................4

ARGUMENT .......................................................................................................8

A.   Summary Judgment Is An Appropriate And Favored Remedy
     In This Case Because There Are No Material Facts In Dispute
     And The Facts Show That Plaintiff Is Entitled To Summary
     Judgment Of Infringement And Willful Infringement As A
     Matter Of Law ..........................................................................................8

B.   Defendants Have Infringed The Marks VAN SCOY DIAMOND
     MINE Protected By Plaintiff's Federal Registrations ...............................9

     1.   Validity, Ownership and Protectability of the Marks ......................9

     2.   Unauthorized Use .........................................................................11

     3.   Likelihood of Confusion ...............................................................12

C.   The Finding of a Likelihood of Confusion Comports With an
     Analysis Under The Lapp Factors ...........................................................14

     1.   Degree of similarity of the Marks .................................................16

     2.   Strength of the Owner's Mark .......................................................16

     3.   Factors Indicative of the Care and Attention Expected
          of Consumers ................................................................................17

     4, 6.   Length of Time Defendants' Mark Has Been Used
             Without Confusion/Evidence Of Actual Confusion .....................18

     5.   Defendants' Intent In Adopting The Mark ....................................18

     7.   Whether Goods Are Marketed Through The Same
          Channels of Trade And Advertised In The Same Media ................19

i

8.    Extent To Which Targets Of The Parties' Sales Efforts
      Are The Same .................................................................. 20

9.    Relationship Of The Goods When Both Plaintiff and
      Defendants Sell The Same Type Of Products ......................... 20

10.   Other Facts Suggesting The Public Might Expect The
      Prior Owner To Sell Both Products Or Expand Into
      Defendants' Market ........................................................... 20

      Summary ......................................................................... 21

C.    Defendants' Assertions of Invalidity Do Not Prevent The Granting
      Of Summary Judgement ...................................................... 22

D.    Defendants' Infringement Has Been Willful ............................ 23

IV.   CONCLUSION .................................................................. 23

TABLE OF CONTENTS OF EXHIBITS

Exhibit A     Certified copy of Registration No. 1,140,958 showing status and title

Exhibit B     Certified copy of Registration No. 1,140,711 showing status and title

Exhibit C     Declaration of Wayne Van Scoy

Exhibit D     Transcript of deposition of Kurt Van Scoy of July 26, 2005

Exhibit E     Printout of portion of www.vanscoydiamondmine.com (PX 11)

Exhibit F     Transcript of 30(b)(6) deposition of Kurt Van Scoy of October 3, 2005
              (REDACTED)

Exhibit G     Cease and desist letter (PX 2)

Exhibit H     Transcript of deposition of Donna Van Scoy of September 19, 2005

Exhibit I     Answer, Affirmative Defenses and Counterclaims (PX 39)

Exhibit J     Printout of portion of website of www.vanscoydiamondsofdelaware.com
              (PX 12)

Exhibit K     Plaintiff's Warranty Certificate

Exhibit L     Defendants' Warranty Certificate (PX 5 & 31)

Exhibit M     Redacted Tax Returns, 2001-2004 of Wayne Van Scoy, Gross sales &
              Advertising Expenses (REDACTED)

Exhibit N     Sales Receipts of Donna Van Scoy, "MINE" crossed out (PX 28)

Exhibit O     Sales receipts of Kurt Van Scoy, "MINE" crossed out (PX 29)

Exhibit P     Pages 96-105 of Deposition Transcript of Wayne Van Scoy of August 17,
              2005 (REDACTED)

Exhibit Q     Letter of Intent (Ex D-5) (REDACTED)

Exhibit R     Defendants' Response to Plaintiff's Request for Admission Nos. 35 & 36

Exhibit S     Bankruptcy Order dated January 4, 2001 of the Bankruptcy Court for the
              Middle District of Pennsylvania

# TABLE OF AUTHORITIES
## CASES

A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,
237 F.3d 198 (3d Cir. 2000) ................................................................................. 13

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ........................................................................................... 8

Birthright v. Birthright, Inc.,
827 F.Supp. 1114 (D.N.J. 1993) ..................................................................... *passim*

Bunn-O-Matic Corporation v. Bunn Coffee Service, Inc.,
88 F.Supp 2d 914 (C.D. Ill 2000) ............................................................... 12,13

Burger King v. Mason,
710 F.2d 1480, 1492-93 (11th Cir. 1983) ........................................................ 12

Celotex Corporation. v. Catrett,
477 U.S. 317 (1986) ........................................................................................... 8

Dial-A-Mattress Operating Corp.v. Mattress Madness, Inc.,
847 F.Supp 18 (E.D.N.Y. 1994) ...................................................................... 11

Ford Motor Co. v. Summit Motor Prod. Inc.,
930 F.2d 277 (3d Cir.), *cert. denied*, 502 U.S. 939,
112 S.Ct. 373, 116 L.Ed.2d. 324 (1991) .................................................... 10,12

Johanna Farms, Inc. v. Citrus Bowl, Inc.,
468 F.Supp 866 (E.D.N.Y. 1978) ................................................................ 18,19

Kos Pharmaceuticals, Inc. v. Andrx Corporation,
369 F.3d 700 (3d Cir. 2004) ........................................................................ *passim*

Matsushita Elec. Indus. Co. v. Zenith Radio Corporation.,
475 U.S. 574 (1986) ........................................................................................... 8

Opticians Ass'n v. Independent Opticians of Am.,
920 F.2d 187 (3d Cir. 1990) ................................................................... 10,12,17

Professional Golfer's Association v. Bankers Life & Casualty Co.,
514 F.2d 665 (5th Cir. 1975) ....................................................................... 12,13

<u>S & R Corp. v. Jiffy Lube Int'l, Inc.</u>,
968 F.2d 371 (3d Cir.1992)........................................................................9,12

<u>Tumblebus Inc. v. Cranmer</u>,
399 F.3d 754 (6th Cir. 2005)........................................................................22

<u>United States Jaycees v. Philadelphia Jaycees</u>,
639 F.2d 134 (3d Cir. 1981)..................................................................*passim*

<u>STATUTES</u>

15 U.S.C. § 1052(f).....................................................................................16

15 U.S.C. § 1057(b)................................................................................10,17

15 U.S.C. § 1065.....................................................................................10,17

15 U.S.C. § 1115(b)................................................................................10,17

15 U.S.C. § 1127.........................................................................................23

**INTRODUCTION**

Plaintiff Wayne Van Scoy respectfully submits this opening brief in support of his motion for summary judgment of infringement and willful infringement by Defendants.

**NATURE AND STAGE OF PROCEEDING**

This is a suit for trademark and service mark infringement, misappropriation of an internet domain name and unfair competition where the Defendants have used the exact mark, VAN SCOY DIAMOND MINE, for exactly the same types of goods and services and have misappropriated the domain name www.vanscoydiamondmine.com. Discovery closed on October 7, 2005. The Scheduling Order provided that dispositive motions shall be filed by October 15, 2005. A Stipulated Order extending the time for filing case dispositive motions, opening briefs and supporting affidavits to October 25, 2005 has been entered.

**SUMMARY OF ARGUMENT**

Defendants use the marks VAN SCOY DIAMOND MINE, the identical marks federally registered by Plaintiff, which registrations are incontestable, for the same services and goods. Defendants use Plaintiff's marks for the same type of store, namely a Van Scoy Diamond Mine store, for retail jewelry store services and jewelry and precious stones. Defendants testified they were granted permission to use the marks by Plaintiff's predecessor and father (a license). Continued use of the marks by Defendants after termination of the license by Plaintiff's cease and desist letter, results in a finding of likelihood of confusion as a matter of law.

More particularly, Plaintiff's Motion For Summary Judgment of Infringement and Willful Infringement by Defendants should be granted because there are no material facts in dispute, and based on the pleadings, deposition testimony, admissions and all other

1

admissible evidence, every element of infringement by Defendants and willful infringement by Defendants has been shown.

First, Plaintiff is the owner of two federal trademark registrations for the mark VAN SCOY DIAMOND MINE. Plaintiff owns Registration No. 1,140,958 for the mark VAN SCOY DIAMOND MINE for retail jewelry store services and Registration No. 1,140,711 for the mark VAN SCOY DIAMOND MINE for jewelry and precious stones. Both of these Registrations have become incontestable within the meaning of Section 15 of the Trademark Act. By law, these Registrations are conclusive evidence of Plaintiff's ownership of the marks and his exclusive right to use the mark in commerce for the services and goods specified in the Registrations.[1] Plaintiff's mark is an arbitrary or suggestive mark which is a strong mark which does not require proof of secondary meaning.

Plaintiff through his related company d/b/a Van Scoy Diamond Mine has used the mark VAN SCOY DIAMOND MINE continuously for retail jewelry store services for jewelry and precious stones since he acquired rights in the marks, registrations and associated good will in the beginning of 2001. The marks have been used widely in advertising. The marks were registered in 1980 with a date of first use in 1977.

Defendants testified that they received an oral license with no definite term from Plaintiff's predecessor, Plaintiff's father in October of 1994.[2] Plaintiff terminated any possible license that Defendants may have had by his cease and desist letter of November 18, 2004. Use by Defendants after termination of the license created a likelihood of confusion as a matter of law and trademark infringement.

Defendants' use of the mark also constitutes a likelihood of confusion when analyzed

---

1 This is subject to certain limited defenses, see 15 U.S.C. § 1115(b).
2 If this case goes to trial, Plaintiff does not concede that Defendants received this license, but at present there appears to be no evidence to the contrary of record.

2

using the Lapp Factors spelled out by the Third Circuit. The marks used by Plaintiff and Defendants are <u>identical</u>, namely VAN SCOY DIAMOND MINE for the same services and goods.

Defendants have without authorization used Plaintiff's marks and continue to use Plaintiff's marks after the receipt of the cease and desist letter in the operation of their store including on the sign on the store, their internet website, advertising, bags and boxes. They have also used Plaintiff's mark VAN SCOY DIAMOND MINE as an internet domain name www.vanscoydiamondmine.com on which they have displayed and offered for sale 716 jewelry and precious stone items across the country and in Plaintiff's trading area in Wilkes-Barre, PA. The mark used by Defendants is identical to Plaintiff's registered marks. The services rendered and goods sold by Defendants are the same as those sold by Plaintiff and are expressly covered by the Registrations, both target consumers purchasing jewelry and both use and both heavily rely on radio advertising. Both use a substantially identical warranty certificate which states that products purchased may be cleaned and/or inspected for free at any Van Scoy Diamond Mine store. Defendants admit that their warranty certificates suggest a connection with other VAN SCOY DAIMOND MINE stores.

Defendants, as a former licensee, are estopped by licensee estoppel from challenging the validity of Plaintiff's mark. Further, there is no evidence of any abandonment or loss of trademark significance of the mark VAN SCOY DIAMOND MINE in the Wilmington area. Any possible claim by Defendants that the mark has been abandoned by reason of lack of quality control in other separate geographic regions does not affect Plaintiff's ability to obtain an injunction against Defendants in the Wilmington, DE area.

Second, after receipt of the cease and desist letter on November 20, 2004, Defendants continued their infringing activity. Accordingly, Defendants' infringement has been willful.

## STATEMENT OF UNCONTESTED FACTS

Plaintiff acquired the marks VAN SCOY DIAMOND MINE ("Marks at Issue"), along with the associated good will and federal registrations for them, pursuant to a purchase from the United States Bankruptcy Court for the Middle District of Pennsylvania pursuant to a Settlement Agreement, approved by order of the Bankruptcy Court on January 4, 2001. (Wayne Van Scoy Decl. ¶ 4, Exhibit C; Order P. 3, Exhibit S). The mark VAN SCOY DIAMOND MINE is protected by Service Mark Registration No. 1,140,958 for retail jewelry store services. (Exhibit A). The mark VAN SCOY DIAMOND MINE is protected by Trademark Registration No. 1,140,711 for jewelry and precious stones. (Exhibit B). Both registrations were registered in 1980 with a date of first use in 1977 and are in full force and effect and have been made incontestable under Section 15 of the Trademark Act. (Exhibit A; Exhibit B; Wayne Van Scoy Decl.¶ 3, Exhibit C). Exhibit A and Exhibit B are certified copies of the Registrations showing status and title, particularly showing that the Registrations are owned by Plaintiff Wayne Van Scoy and that they have been made incontestable under Section 15 of the Trademark Act.

Plaintiff has continuously used the mark VAN SCOY DIAMOND MINE since January of 2001 in connection with a retail jewelry store which is operated by a corporation which Plaintiff owns, namely, Rings of Romance, Inc. d/b/a Van Scoy Diamond Mine, as a licensee under the marks VAN SCOY DIAMOND MINE and their registrations. (Wayne

4

Decl. ¶ 5, Exhibit C).  Since acquiring the marks at the beginning of 2001, Plaintiff has made

substantial sales and has done substantial advertising of the marks VAN SCOY DIAMOND

MINE as shown by the gross receipts and advertising expenditures on the tax returns of Rings

of Romance, Inc. attached as Exhibit M.  Id.  Plaintiff's retail jewelry store Van Scoy

Diamond Mine in Wilkes-Barre, PA sells diamonds and other jewelry to consumers.  (Wayne

Decl. ¶ 6, Exhibit C).  In connection with the operation of his retail jewelry store under the

mark VAN SCOY DIAMIND MINE, Plaintiff relies heavily on radio advertising as did his

predecessor father since 1977.  Id.

   Defendants operate a retail jewelry store under the mark VAN SCOY DIAMOND

MINE at 1117 Churchmans Road, Newark, DE, 19713 and have operated that store since

prior to the acquisition of the marks at issue and their registrations and good will by Plaintiff

on January 4, 2001.  (Kurt: 66, 69, Exhibit D).[3]  Defendants use the mark VAN SCOY

DIAMOND MINE on the front of their store, on their website, in radio and other advertising,

on bags and boxes which serve as containers for jewelry and precious stones.  (Kurt 76,

Exhibit D; Kurt 40-44, Exhibit F).        (REDACTED)

                                    (Kurt 43, Exhibit F).  Defendants have for some

time after receipt of the cease and desist letter on November 20, 2004, used the internet

domain name www.vanscoydiamondmine.com for the offering for sale of jewelry and

precious stones over the internet.  (Kurt 139, 140, 149, Exhibit D; Donna 53-57 & 61-62,

Exhibit H; Exhibit E).  Exhibit E shows this site to have been operating at

---

3  Deposition transcripts will be referred to by the first name of the deponent followed by page number(s) and
Exhibit letter.

www.vanscoydiamondmine.com on January 14, 2005. (Kurt 139, Exhibit D; Exhibit E).

Defendants are offering for sale over the internet 716 items of jewelry and precious stones.

(PX 12, p. 4, Exhibit J; Kurt 150, Exhibit D)  Customers in Wilkes-Barre, PA may purchase

products via Defendants' website. (Kurt 149-150, Exhibit D).  Based on Plaintiff's visits to

Defendants' store in 1996, 1998 and 2003 and viewing of Defendants' website, Defendants'

store operated under the trade name Van Scoy Diamond Mine of Delaware using the mark

VAN SCOY DIAMOND MINE, is very similar in operation to Plaintiff's Van Scoy

Diamond Mine store. (Wayne Decl. ¶ 7, Exhibit C).  There have been instances of actual

confusion between Defendants' and Plaintiff's store. (Wayne Decl. ¶¶ 8 & 9; Kurt: 34-36,

Exhibit F).

        Defendants testified that they received permission from Plaintiff's predecessor in title,

Plaintiff's father, to use the mark VAN SCOY DIAMOND MINE by Plaintiff's father saying

to Defendant Kurt Van Scoy "[h]ere's the sign.  Good luck to you.  I love you very much and

am proud of you." (Kurt 9, Exhibit D; Kurt 13-14, Exhibit F; Donna 57, Exhibit H).

Defendants testified this statement was made in October of 1994. (Kurt 9, Exhibit D; Kurt

14, Exhibit F).  Defendants testified that this was permission to them and to their corporation

Van Scoy Diamond Mine of Delaware, Inc. (Kurt: 138, Exhibit D; Kurt 13-14, Exhibit F).

        Other than a website used by Defendants at www.vanscoydiamondmine.com and the

website maintained by Defendants at www.vanscoydiamondsofdelaware.com, Defendants

have at all times since Plaintiff became owner of the marks at issue, advertised in the

Wilmington, DE area. (Kurt: 87, Exhibit D).  Defendants first began using the website

www.vanscoydiamondmine.com in 2002. (Kurt: 140, Exhibit D). (REDACTED)

(Kurt: 58, Exhibit F).

Plaintiff sent a cease and desist letter to Defendants dated November 18, 2004 which

Defendants received on November 20, 2004 requesting that Defendants immediately stop

infringing the marks at issue. (Kurt: 13, Exhibit D; cease and desist letter, Exhibit G; Kurt

26-28, Exhibit F; Donna 53-57 & 61-62, Exhibit H). After receipt of the cease and desist

letter for a period of months from November of 2004 until March of 2005, Defendants

blocked out "MINE" from VAN SCOY DIAMOND MINE OF DELAWARE, INC. on their

sales receipts. (Donna 33-51, Exhibit H; PX 28, Exhibit N; PX 29, Exhibit O; Kurt 47-48,

Exhibit F). After receipt of the cease and desist letter and after notice of the lawsuit,

Defendants changed the internet domain name of their website from

www.vanscoydiamondmine.com to www.vanscoydiamondsofdelaware.com, with the website

remaining the same including use of the mark VAN SCOY DIAMOND MINE. (Kurt 143-

144, Exhibit D; Kurt 58, Exhibit F). Except for the foregoing acts which constituted

admissions as to infringement, after receipt of the cease and desist letter, Defendants

continued to operate their business the same as they had done previously. (Kurt: 13-14,

Exhibit D; Defendants' Answer ¶ 20, Exhibit I). Defendants continued the course of

infringement, willfully.

## ARGUMENT

**A.     Summary Judgment Is An Appropriate And Favored Remedy In This Case  Because There Are No Material Facts In Dispute And The Facts Show That Plaintiff Is Entitled To Summary Judgment Of Infringement And Willful Infringement As A Matter Of Law.**

The Supreme Court has held that summary judgment is a beneficial way to dispose of cases "designed 'to secure that just, speedy and inexpensive determination of every action.'" Celotex Corporation. v. Catrett, 477 U.S. 317, 327 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corporation., 475 U.S. 574 (1986)

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examinations of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).

The moving party has the initial burden of showing that there is no genuine issue of material fact.  See Celotex, 477 U.S. 317 at 323.  Where the nonmovant bears the burden of persuasion at trial, the moving party may meet its initial burden and shift the burden of production to the nonmoving party "by 'showing'- that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. 317 at 325.

The facts in this case are clearly established by the admissions and testimony of the

8

parties, and especially the admissions and testimony of Defendant Kurt and Donna Van Scoy, and are not in dispute. There is no genuine issue of material fact in this case and Defendants can not produce evidence to controvert any material fact. In light of the Supreme Court's encouragement of summary judgment as a matter of efficiency, the matter at hand exemplifies the type of claim that should be disposed of by summary judgment.

**B.** **Defendants Have Infringed The Marks VAN SCOY DIAMOND MINE Protected by Plaintiff's Federal Registrations.**

To prevail on a claim for trademark infringement or unfair competition under the Lanham Act, the owner of a valid and legally protectable mark, must show that a defendant's use of a similar mark for its goods or services causes a likelihood of confusion. Kos Pharmaceuticals, Inc. v. Andrx Corporation, 369 F.3d 700, 708-709 (3d Cir. 2004).

Where defendants' previous use of the mark occurred with Plaintiff's permission, plaintiff must also establish that defendants' use of the mark is unauthorized. S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 375 (3d Cir.1992); United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 137 (3d Cir. 1981); Birthright v. Birthright, Inc., 827 F.Supp. 1114, 1134 (D.N.J. 1993).

1.    Validity, Ownership and Protectability of the Marks.

Validity, ownership and protectability of the mark may be proven by a showing that the mark at issue is federally registered and has become "incontestable" under the Lanham

9

Act.  Opticians Ass'n v. Independent Opticians of Am., 920 F.2d 187, 194 (3d Cir. 1990);

Ford Motor Co. v. Summit Motor Prod. Inc., 930 F.2d 277, 291 (3d Cir.), *cert. denied*, 502

U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d. 324 (1991); Birthright v. Birthright, Inc., 827 F.Supp.

1114, 1134 (D.N.J. 1993).

      To the extent that the right to use the registered mark has become incontestable, the

registration shall be conclusive evidence of the registrant's ownership of the mark and of the

registrant's exclusive right to use the registered mark in commerce.  Birthright, 827 F.Supp at

1134; United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 137 (3d Cir. 1981); 15

U.S.C. § 1115(b).

      In the present case, Plaintiff is the owner of the mark VAN SCOY DIAMOND MINE

and federal registrations covering VAN SCOY DIAMOND MINE for retail jewelry store

services in Registration No 1,140,958 (Exhibit A) and for jewelry and precious stones in

Registration No. 1,140,711 (Exhibit B).  Plaintiff's Registrations have been made

incontestable pursuant to Section 15 of the Trademark Act (Lanham Act) 15 U.S.C. § 1065.

Plaintiff's certificates of registration on the Principal Register are prima facie evidence, and

since they have been made incontestable, conclusive evidence, of the validity of the

registered mark and of the registration of the mark, registrant's ownership of the mark, and of

the registrant's exclusive right to use the registered mark in commerce on or in connection

with the goods or services specified in the certificate.  15 U.S.C.§§ 7(b) and 1115(b).

Plaintiff has used the mark VAN SCOY DIAMOND MINE in the advertising and operation

of his business continuously since January of 2001.

2.     <u>Unauthorized Use.</u>

Defendant's use of the mark VAN SCOY DIAMOND MINE was admitted by Defendants to be pursuant to permission or a license, implied or otherwise, so that once Plaintiff revoked this license, Defendants' continued use of the mark became unauthorized. <u>Birthright</u>, 827 F.Supp. 1114 at 1134.

An implied license in fact arises out of the objective conduct of the parties which a reasonable man would regard as indicating that an agreement has been reached. <u>Id</u>; <u>United States Jaycees</u>, 639 F.2d 134, 139, f.n. 7.

An agreement conferring a license to use a trademark for an indefinite time, whether oral, written or by implication, is terminable-at-will by the licensor. <u>Dial-A-Mattress Operating Corp.v. Mattress Madness, Inc.</u>, 847 F.Supp 18, n. 1 (E.D.N.Y. 1994). Since Plaintiff succeeded to the ownership of the marks and registrations and associated good will, Plaintiff similarly succeeded to the right to terminate the license. <u>See Dial-A-Mattress</u>, 847 F.Supp at 19.

Defendants testified that they were given permission without any specific term by Plaintiff's father as a predecessor in title. Accordingly, they were licensees at will under the marks VAN SCOY DIAMOND MINE. Plaintiff, by his cease and desist letter of November 18, 2004, terminated this at will license agreement.

3.     Likelihood of Confusion.

A determination that Defendants' marks are virtually identical to Plaintiff's suffices to support a conclusion of a likelihood of confusion. *See* S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 375 (3d Cir.1992). The Third Circuit has noted that there is a great likelihood of confusion when an infringer uses the exact mark. Jaycees, 639 F.2d at 142; see also Ford Motor Co. v. Summit Motor Prod. Inc., 930 F.2d 277, 291 (3d Cir.), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d. 324 (1991); Opticians Ass'n, 920 F.2d at 195 quoting 2 McCarthy on Trademarks § 23:3. ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement"). Birthright, 827 F.Supp. at 1136.

If a licensee continues to use a mark owned by the licensor after termination of the license, a likelihood of confusion exists as a matter of law. Bunn-O-Matic Corporation v. Bunn Coffee Service, Inc., 88 F.Supp 2d 914, 922 (C.D. Ill 2000) citing Burger King v. Mason, 710 F.2d 1480, 1492-93 (11th Cir. 1983). Once a license has expired, use of the formerly licensed trademark constitutes infringement. United States Jaycees, 639 F.2d at 143. Additionally, the Fifth Circuit has held that a licensee that was not offering the same product or services of the licensor must still cease use the mark after the license ends. Professional Golfer's Association v. Bankers Life & Casualty Co., 514 F.2d 665, 669-670 (5th Cir. 1975). Even though the golf course was not a direct competitor of the PGA and did not attempt to create a rival professional golfer's association, the Court still applied the

12

general rule that once the license ends, a licensee's right to the mark ends and any subsequent use constitutes infringement.  Id.

If as a matter of contract law, a service mark or trademark license has ended, the licensee has no right to continue use of the mark.  Any such use is without the trademark licensor's consent and constitutes infringement.  Bunn, 88 F.Supp 2d at 923, citing 4 McCarthy § 25:31.

Use of a dominant mark such as VAN SCOY DIAMOND MINE with a geographic modifier, such as "of Delaware", infringes Plaintiff's mark.  Birthright, 827 F.Supp at 1135; United States Jaycees, 639 F.2d at 142.  The use of a dominant name such as VAN SCOY DIAMOND MINE, with or without a geographic modifier, is essentially using the same mark because the mark VAN SCOY DIAMOND MINE constitutes the dominant portion of the mark.  Id; United States Jaycees, 639 F.2d at 142 (3d Cir. 1981).  A subsequent user may not avoid likelihood of confusion by appropriating another's entire mark and adding descriptive or non descriptive matter to it.  A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 218 (3d Cir. 2000).

The blocking out of the word "MINE" from VAN SCOY DIAMOND MINE OF DELAWARE, INC. sales receipts after receipt of the cease and desist letter during the period of November of 2004 to March of 2005 constituted an admission of likelihood of confusion and an admission of infringement which was known to Defendants.  (See PX 28, Exhibit N; PX 29, Exhibit O).  Further, Defendants' changing of their internet domain name of www.vanscoydiamonmine.com to www.vanscoydiamondsofdelaware.com after receipt of the

13

cease and desist letter constitutes an admission which shows that Defendants know there is a likelihood of confusion and that they have no right to use the mark VAN SCOY DIAMOND MINE. In view of Defendants' admissions and the continued use of the mark after termination of any possible alleged oral license constitutes a likelihood of confusion and trademark infringement as a matter of law.

In the present case, Defendants testified that they were operating under the permission of Plaintiff's father, Thomas A. Van Scoy, Sr., which permission constituted an oral revocable at will license. This oral or implied license was terminated by Plaintiff's cease and desist letter of November 18, 2004. In view of Defendants' admissions relating to blocking out "MINE" and changing the domain name address and Defendants continued use of the mark after receipt of the cease and desist letter, this constitutes infringement as a matter of law and willful infringement.

C.    **The Finding of a Likelihood of Confusion Comports With an Analysis Under The Lapp Factors.**

The Third Circuit Court of Appeals has adopted a non exclusive list of factors to be considered in evaluating likelihood of confusion, commonly referred to as the Lapp Factors. Kos Pharmaceuticals, Inc., 369 F.3d at 709. The Court has held that although courts need rarely look beyond the mark itself in cases involving competing goods or services, the Court

recently recognized that consideration of the Lapp Factors can be quite useful for determining

likelihood of confusion even where the goods compete directly.  Id.  The Lapp Factors are as

follows: (1) the degree of similarity between the owner's mark and the alleged infringing

mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors

indicative of the care and attention expected of consumers when making a purchase; (4) the

length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7)

whether the goods, competing or not competing, are marketed through the same channels of

trade and advertised through the same media; (8) the extent to which the targets of the

parties' sale efforts are the same; (9) the relationship of the goods in the minds of consumers,

whether because of the near-identity of the products, the similarity of function, or other

factors; and (10) other facts suggesting that the consuming public might expect the prior

owner to manufacture both products, or expect the prior owner to manufacture a product in

the defendant's market, or expect that the prior owner is likely to expand into the defendants'

market.  Id.

    None of these factors is determinative in the likelihood of confusion analysis and each

factor must be weighed and balanced one against the other.  Id.  Each factor is weighed

separately, which is not to say that all factors must be given equal weight.  Id.  The different

factors may properly be accorded different weights depending upon the particular factual

setting.  Id.  A district court should utilize the factors that seem appropriate to a given

situation.  Id.

1.     <u>Degree of similarity of the Marks</u>.

The single most important factor in determining likelihood of confusion is mark

similarity. <u>Kos</u>, 369 F.3d at 712-713. When goods or services are directly competing, both

precedent and common sense counsel that the similarity of the marks takes on great

prominence. <u>Id</u>. Marks are confusingly similar if ordinary consumers would likely conclude

that the two products share a common source, affiliation, connection or partnership. <u>Id</u>.

In the present case, the marks are <u>identical</u>, VAN SCOY DIAMOND MINE used and

registered by Plaintiff and VAN SCOY DIAMOND MINE used by Defendants. Thus the

single most important factor in determining of likelihood of confusion is in favor of Plaintiff

and a finding of likelihood of confusion.

2.     <u>Strength of the Owner's Mark</u>.

Plaintiff's mark VAN SCOY DIAMOND MINE is arbitrary or suggestive. It is not

merely descriptive. Accordingly, it does not require secondary meaning. As may be seen

from the Registrations attached as Exhibits A and B, both Registrations are entitled to the

benefits of Section 15 of the Trademark Act, namely incontestability. The mark was not

registered under Section 2(f) (15 U.S.C. § 1052(f)), which would be specified on the

registration if that were the case. Section 2(f) allows for the registration of merely descriptive

16

marks where they have acquired secondary meanings. Accordingly, Plaintiff's mark is a strong mark.

Plaintiff's Registration is prima facie evidence of Plaintiff's exclusive right to use the mark in commerce for the goods and services specified in the registrations (15 U.S.C. § 1057(b)). Plaintiff's Registrations have been made incontestable pursuant to and under and terms of Section 15 of the Lanham Trademark Act (15 U.S.C. § 1065). (Exhibits A and B, Wayne Decl., ¶ 3, Exhibit C). The effect of the filings under Section 15 of the Lanham Act make the marks incontestable. Opticians Ass'n, 920 F.2d at 190; 15 U.S.C. § 1115(b). An incontestable registration is conclusive evidence of registrant's ownership of the mark and of registrant's exclusive right to use the registered mark in commerce for the goods and services specified in the registration. Birthright, 827 F.Supp at 1134; 15 U.S.C. § 1115(b).

Accordingly, this factor weighs in favor of finding of likelihood of confusion, and in favor of Plaintiff.

3.     Factors Indicative Of The Care And Attention Expected of Consumers.

Defendants sell items for as little as $99.00 and a number of items for $125.00, $135.00 and $150.00. (Showcase Gallery, pp. 5-28, Exhibit J). These are not major purchases which are made with much care. Further, Defendants offer their jewelry products for sale over their website resulting in these purchases being made with less care and attention.

4 and 6.        <u>Length Of Time Defendants' Mark Has Been Used Without</u>
<u>Confusion/Evidence Of Actual Confusion</u>.

Evidence of actual confusion is difficult to find because many instances are
unreported. <u>Kos</u>, 369 F.3d 700 at f.n. 18. The rarity of such evidence makes even a few
incidents "highly probative of the likelihood of confusion". <u>Kos</u>, 369 F.3d at 720. Very little
proof of actual confusion is necessary to prove likelihood of confusion. <u>Id</u>.

There has been confusion by suppliers of products to Plaintiff and Defendants. Just
recently, a $44,000.00 payment of Plaintiff to a supplier was misapplied to Defendants'
account. (Wayne Decl.: ¶ 9, Exhibit C).

(REDACTED)

(Kurt 33-37, Exhibit F).

5.     <u>Defendants Intent In Adopting The Mark</u>.

Taking someone's word that Defendants' have permission to use a mark when they
know the person allegedly giving permission is in bankruptcy and the failure to seek the
advice of the Trustee or an attorney as to the propriety of their prospective use based on an
alleged oral license, blindly accepting the word of the person in bankruptcy, shows less than
good faith intent, and in the words of one court shows "[s]omething is rotten in the state of

Denmark." <u>Johanna Farms, Inc. v. Citrus Bowl, Inc.</u>, 468 F.Supp 866, 876 (E.D.N.Y. 1978). The failure to investigate evidences a lack of good faith intent on the part of Defendants. <u>Id</u>.

The evidence of record is that Defendants were told "good luck" by Plaintiff's father in October of 1994 which was interpreted as a right to use (license) the mark VAN SCOY DIAMOND MINE. (Kurt 31-32, Exhibit D). Defendants knew that Thomas A. Van Scoy, Sr. had already filed for bankruptcy. (Kurt: 32, Exhibit D). Thomas A. Van Scoy, Sr. had filed for bankruptcy on September 23, 1994. (Defendants' Response to Request for Admission Nos. 35 & 36, Exhibit R; Kurt 119, Exhibit D). Defendants testified that they did not have knowledge that the mark VAN SCOY DIAMOND MINE was federally registered until the cease and desist letter of November 18, 2004. (Kurt 48, Exhibit D). Accordingly, Defendants did not do any investigation at the time of adoption of the mark, testifying that they did not know that the marks were federally registered until 2004, some ten years after their adoption. Further, Defendants' reliance on "good luck" and words of similar import without a written agreement shows a lack of good faith intent in adopting the mark.

Accordingly, this factor weighs in favor of finding of a likelihood of confusion and a finding in favor of Plaintiff.


7.    <u>Whether Goods Are Marketed Through The Same Channels of Trade And Advertised In The Same Media.</u>


The greater the similarity in advertising of the marketing campaigns, the greater the

likelihood of confusion. <u>Kos</u>, 369 F.3d at 722. In this case, both Plaintiff and Defendants sell jewelry to consumers through retail jewelry stores and rely heavily on radio advertising. (Kurt: 92, Exhibit D; Wayne Decl. ¶¶ 6 & 10, Exhibit C). Both Plaintiff and Defendants target consumers who seek to purchase diamonds and other jewelry. (Wayne Decl. ¶ 6, Exhibit C). This factor weighs in favor of likelihood of confusion and Plaintiff.

8.      <u>Extent To Which Targets Of The Parties' Sales Efforts Are The Same</u>.

Both Plaintiff and Defendants target consumers who seek to purchase diamonds and other jewelry. This factor weighs in favor of likelihood of confusion and Plaintiff.

9.      <u>Relationship Of The Goods When Both Plaintiff and Defendants Sell The Same Type Of Products</u>.

Many of the exact products sold by Defendants as shown on their website are also sold by Plaintiff's store. (Wayne Decl. ¶ 12, Exhibit C).

10.     <u>Other Facts Suggesting The Public Might Expect The Prior Owner To Sell Both Products Or Expand Into Defendants' Market</u>.

Both Plaintiff and Defendants sell substantially the same products. The stores are

operated in substantially the same manner. Both Plaintiff and Defendants use substantially

identical warranty certificates. Defendants' warranty certificates specify that free cleaning

and inspections are provided by any Van Scoy Diamond Mine with respect to the product

purchased. Defendants admitted in their 30(b)(6) deposition of Van Scoy Diamond Mine of

Delaware, Inc. that this language (REDACTED)

(Kurt: 40, Exhibit F). This factor

weighs heavily toward finding a likelihood of confusion and in favor of Plaintiff.

The blocking out of the word "MINE" from Van Scoy Diamond Mine of Delaware,

Inc. on Defendants' sales receipts and the changing of Defendants' internet domain name

from www.vanscoydiamondmine.com to www.vanscoydiamondsofdelaware.com constituted

an admission of likelihood of confusion and trademark infringement. Defendants made these

changes because they knew they had no right to use VAN SCOY DIAMOND MINE in

connection with the operation of a retail jewelry store and the sale of diamonds and jewelry.

These factors weigh heavily toward finding a likelihood of confusion.

Further, Plaintiff has a potential licensee poised to move into Defendants' geographic

area. (Wayne 96-105, Exhibit P, Letter of Intent D5, Exhibit Q).


Summary

All 10 Lapp factors weigh in favor of finding a likelihood of confusion and are in

Plaintiff's favor. Accordingly, an analysis of the Lapp Factors provides a result consistent

with a finding of likelihood of confusion as a matter of law resulting from continued use by

Defendants of Plaintiff's marks after termination of the license agreement.

**C.    Defendants' Assertions of Invalidity Do Not Prevent The Granting Of Summary Judgment**.

There is no evidence of record of abandonment by reason of loss of trademark significance of the mark VAN SCOY DIAMOND MINE in the Wilmington area.

First of all, Defendants are estopped to challenge the validity of Plaintiff's mark as former licensees under the Doctrine of Licensee Estoppel. See, Opening Brief in Support of Plaintiff's Motion for Summary Judgment Against Defendants' Claims of Invalidity and Abandonment, which is incorporated herein by reference.

Defendants may contend that there was not adequate quality control exercised by Plaintiff's predecessor in title over licensees in the Reading, Allentown and Lancaster areas in the 1980s and early 1990s.

A mark may be abandoned through "naked licensing" which occurs when a trademark owner fails to exercise reasonable control over the use of the mark by a licensee, such that the presence of the mark on the licensee's goods or services misrepresents their connection with the trademark owner since the mark no longer identifies goods or services that are under the control of the owner of the mark and the mark can no longer provide a meaningful assurance of quality. Tumblebus Inc. v. Cranmer, 399 F.3d 754, 764 (6th Cir. 2005). However, abandonment of the mark in other parts of the United States does not affect the forfeiture of the trademark owner's rights to the mark in the geographic area of the defendant. Id at 765.

22

Defendants attempting to show abandonment through naked licensing bear a stringent burden of proof. Id at 765. If there is substantial uncontrolled use confined to a particular geographic market, the court may conclude that the mark has been abandoned only in that geographic area and the trademark owner retains its rights to the mark in other areas. Id at 766. The mark is deemed abandoned only when it becomes a generic name for the goods or services in connection with which it is used or otherwise looses its significance as a mark. Id at 764, 15 U.S.C. § 1127. There is no evidence of record that the mark VAN SCOY DIAMOND MINE has lost its significance as a mark in the Wilmington area. Any allegations by Defendants of what may or may not have occurred in other parts of the United States in the 1980s and early 1990s is irrelevant to the granting of summary judgment to Plaintiff in this matter.

### D.    Defendants' Infringement Has Been Willful.

Defendants continued to conduct their business in the same manner after receipt of the cease and desist letter. (Answer, ¶ 35, Exhibit I). Such actions make the infringement of Defendants intentional and willful.

## IV. CONCLUSION

In view of the foregoing, it is respectfully requested that the Court enter judgment in favor of Plaintiff and against Defendants that Defendants have infringed the mark VAN

SCOY DIAMOND MINE covered by Registrations Nos. 1,140,958 and 1,140,711 and that such infringement has been intentional and willful.

ASHBY & GEDDES

*/s/ John G. Day*

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888
*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856
(610) 935-8600

Dated: November 1, 2005

24

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of November, 2005, the attached **REDACTED**

**PUBLIC VERSION OF OPENING BRIEF IN SUPPORT OF PLAINTIFF'S MOTION**

**FOR SUMMARY JUDGMENT OF INFRINGEMENT AND WILLFUL**

**INFRINGEMENT BY DEFENDANTS** was served upon the below-named counsel of

record at the address and in the manner indicated:

Francis G.X. Pileggi, Esquire                    <u>VIA ELECTRONIC MAIL</u>
Sharon Oras Morgan, Esquire
Fox Rothschild LLP
Citizen Bank Center
919 North Market Street
Suite 1300
Wilmington, DE  19801-2323

Charles N. Quinn, Esquire                    <u>VIA ELECTRONIC MAIL</u>
Fox Rothschild LLP
2000 Market Street
Tenth Floor
Philadelphia, PA  19103


*/s/ John G. Day*
_____

John G. Day

25