IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAYNE VAN SCOY | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-108-KAJ |
| | ) | |
| VAN SCOY DIAMOND MINE OF | ) | |
| DELAWARE, INC., KURT VAN SCOY | ) | |
| AND DONNA VAN SCOY | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANTS' CLAIMS OF INVALIDITY AND ABANDONMENT**

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
ASHBY & GEDDES
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888

*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856
(610) 935-8600

Dated: November 1, 2005
163044.1

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

NATURE AND STAGE OF PROCEEDING ......................................................1

SUMMARY OF ARGUMENT .............................................................................1

STATEMENT OF UNCONTESTED FACTS .....................................................3

ARGUMENT ..........................................................................................................7

A.    SUMMARY JUDGMENT IS AN APPROPRIATE AND
       FAVORED REMEDY IN THIS CASE  BECAUSE THERE
       ARE NO MATERIAL FACTS IN DISPUTE AND DEFENDANTS
       CANNOT AND WILL NOT BE ABLE TO CARRY THE STRINGENT
       BURDEN REQUIRED TO SHOW THAT THE MARKS "VAN SCOY
       DIAMOND MINE" ARE INVALID OR ABANDONED................................7

B.    DEFENDANTS ARE ESTOPPED FROM ASSERTING THAT
       THE MARKS "VAN SCOY DIAMOND MINE" ARE INVALID
       OR ABANDONED UNDER THE DOCTRINE OF LICENSEE ESTOPPEL..............9

       1.    The Alleged Permission Given To Defendants By
              Tommy Van Scoy, Sr. Should Be Characterized As A
              Revocable License Or A License At Will...........................................9

       2.    Defendants Are Estopped From Claiming That The Marks
              "VAN SCOY DIAMOND MINE" Are Invalid Or Abandoned ......................11

C.    THERE IS NO EVIDENCE TO SHOW THAT THE MARKS
       "VAN SCOY DIAMOND MINE" ARE  INVALID OR ABANDONED..................14

              1.    The Marks "VAN SCOY DIAMOND MINE" Are
                     Not Invalid Or Otherwise Abandoned Because Plaintiff
                     Has Sufficiently Monitored His Licensees And There Is
                     No Requirement That Plaintiff Control Individuals Or
                     Entities That Are Not Licensees ...........................................15

              2.    The Evidence Of Record Indicates That The Marks
                     "VAN SCOY DIAMOND MINE" Have Never Been
                     Invalidated Or Abandoned....................................................18

              3.    Defendants' Claim That The Marks "VAN SCOY
                     DIAMOND MINE" Are Invalid And Abandoned
                     Is Irrelevant Because There Is No Evidence

That The Marks AT Issue have Been Invalidated Or
Abandoned In The Wilmington, Delaware Area ...................................19

4.    Defendants Will Not Prevail On Their Abandonment
Claim Because There Is No Evidence Of Non-Use
And An Intent To Abandon .................................................................21

CONCLUSION ...........................................................................................................23

# TABLE OF AUTHORITIES
## CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)................................................................................7,8

Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.,
88 F.Supp 2d 914 (C.D. ILL. 2000)........................................................9,11

Celotex Corporation. v. Catrett,
477 U.S. 317 (1986)................................................................................7,8

Creative Gifts, Inc. v. UFO,
235 F.3d 540 (10th Cir. 2000) ............................................................*passim*

Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.,
847 F.Supp. 18 (E.D. N.Y. 1994) ..........................................................11

EH Yacht, LLC v. Egg Harbor, LLC,
 84 F.Supp.2d 556 (D.N.J. 2000) ..........................................................21

Exxon Corporation v. Oxford Clothes, Inc.,
109 F.3d 1070 (5th Cir. 1997), *cert. denied,* 522 U.S. 915 (U.S. Oct. 14, 1997)......................10

Kentucky Fried Chicken Corporation v. Diversified Packaging Corporation,
549 F.2d 368 (5th Cir. 1977) ..............................................................17

In re New York City Shoes, Inc. v. Richard Royce Collection Ltd.,
84 B.R. 947 (E.D.PA 1988) ...................................................................9,12

Matsushita Elec. Indus. Co. v. Zenith Radio Corporation,
475 U.S. 574 (1986)................................................................................7

Moore Business Forms, Inc. v. Seh M. RYU, d/b/a CompuRite, Inc.,
960 F.2d 486 (5th Cir. 1992) ...........................................................*passim*

 Professional Golfers Association Of America v. Bankers Life & Casualty Company,
514 F.2d 665 (5th Cir. 1975) ..............................................................*passim*

Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,
932 F.2d 1113 (5th Cir. 1991) ............................................................19

Tumblebus Inc. v. Cranmer, d/b/a Tumblebus of Louisville,
399 F.3d 754 at 766, *cert. denied,* 2005 WL 2414016 (U.S. Oct. 3, 2005)........................19,20

United States Jaycees v. Philadelphia Jaycees,
639 F.2d 134 (3rd Cir. 1981) ............................................................................21

STATUTES

15 U.S.C. § 1052(d) ......................................................................................17

Restatement (Third) of Unfair Competition § 33 cmt. B (1995) ................................20

## TABLE OF CONTENTS OF EXHIBITS

Exhibit A    Certified copy of Registration No. 1,140,958 showing status and title and Certified copy of Registration No. 1,140,711 showing status and title

Exhibit B    Declaration of Wayne Van Scoy

Exhibit C    Deposition Transcript of Kurt Van Scoy of July 26, 2005

Exhibit D    Agreement between Thomas A. Van Scoy, Sr. and International Diamond Company, Inc. (PX 43)

Exhibit E    Agreement between Thomas A. Van Scoy, Sr. and Lew M. Hill (PX 41)

Exhibit F    Deposition Transcript of Mark Maurer of October 6, 2005 (REDACTED)

Exhibit G    Deposition Transcript of Lew Hill of October 5, 2005 (REDACTED)

Exhibit H    Deposition Transcript of Wayne Van Scoy of August 17, 2005 (REDACTED)

Exhibit I    Cease and Desist Letter (PX 35)

Exhibit J    Defendants' Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories (pages 1-3, 20-25 & 34-35)

Exhibit K    Initial Disclosures of Defendants Pursuant to Federal Rule of Civil Procedure (26(a))

Exhibit L    Defendants' Responses to Plaintiff's First Set of Request for Admissions Under FRCP 36 (pages 1-3, 9-10 & 12)

Exhibit M    Sales receipt dated January 31, 2001 of Van Scoy Diamond Mine (01189)

## INTRODUCTION

Plaintiff Wayne Van Scoy respectfully submits this opening brief in support of his motion for summary judgment that Federal Trademark Registration No. 1,140,711 and Federal Service Mark Registration No. 1,140,958 (the "Marks at Issue") are not invalid or abandoned.

## NATURE AND STAGE OF PROCEEDINGS

This is a suit for trademark and service mark infringement, misappropriation of an internet domain name and unfair competition where the Defendants have used the exact mark, VAN SCOY DIAMOND MINE, for exactly the same types of goods and services and have misappropriated the domain name www.vanscoydiamondmine.com. Discovery closed on October 7, 2005. The Scheduling Order provided that dispositive motions shall be filed by October 15, 2005. A Stipulated Order extending the time for filing case dispositive motions, opening briefs and supporting affidavits to October 25, 2005 has been entered.

## SUMMARY OF ARGUMENT

Plaintiff's Motion For Summary Judgment Against Defendants' Claims Of Invalidity and Abandonment should be granted because there are no material facts in dispute and based on the pleadings, deposition testimony, admissions and all other admissible evidence Defendants cannot and will not be able to prove these claims.

First, under the doctrine of licensee estoppel Defendants are estopped from asserting any rights against the licensor that are inconsistent with the terms of the license such as claiming that the licensed mark is invalid or abandoned. Defendants were allegedly licensed to use the mark "VAN SCOY DIAMOND MINE" by Plaintiff's

1

predecessor. Since Plaintiff succeeded to the ownership of the Marks at Issue he succeeded to the right to terminate any licenses that were granted by his predecessor. Plaintiff terminated the alleged licenses by sending Defendants a cease and desist letter on November 18, 2004. As former licensees, Defendants are estopped to claim that the marks "VAN SCOY DIAMOND MINE" are invalid or otherwise abandoned as a result of events that occurred prior to or during the license. Any events that may or may not have occurred that can serve as a basis for Defendants' claims of invalidity or abandonment occurred prior to or during the time when Defendants were allegedly licensed. Therefore, Defendants' claims are estopped.

Second, there is not sufficient evidence of record for Defendants to prove that the marks "VAN SCOY DIAMOND MINE" are invalid or abandoned. Defendants "face a stringent standard" of proof with respect to these claims. The marks "VAN SCOY DIAMOND MINE" have never been abandoned through non-use and there is no evidence of record that would indicate that Plaintiff in anyway invalidated or abandoned the marks through his own licensing. The evidence of record is that Plaintiff has only two licensees, his own corporation and his brother-in-law, and that Plaintiff has sufficiently controlled the goods and services of these licensees.

It is anticipated that Defendants will argue that Plaintiff has failed to supervise the quality of products and services rendered by third parties such as International Diamond Company, Inc. (hereinafter referred to by its owner Mark Maurer) and Lew Hill who operate jewelry stores under what might be considered "colorable variations" of the mark "VAN SCOY DIAMOND MINE." The evidence of record, however, is that Mark Maurer and Lew Hill are concurrent owners of the marks "VAN SCOY DIAMOND MINE" operating in separate geographic territories from each other and from anyone else using "colorable variations" of the mark "VAN SCOY DIAMOND MINE." Concurrent ownership of marks in separate geographic territories is permissible and has no effect on the validity of a trademark or service mark.

Furthermore, with respect to former licensees of Plaintiff's predecessor, the evidence of record is that these licensees operated jewelry stores in separate geographic territories from each other and from any stores operated by Plaintiff's predecessor. As such, even assuming *arguendo* that Plaintiff did not sufficiently supervise all of his licensees the particular circumstances of the licensing agreements were such that quality control was not required because the public would not be deceived.

Finally, there is absolutely no evidence of record that the marks "VAN SCOY DIAMOND MINE" have in any way or at any time been invalidated in the Wilmington, Delaware area which is Defendants' infringing territory. As such, assuming *arguendo* that Defendants are able to show that the marks "VAN SCOY DIAMOND MINE" were invalidated in some other geographic territory such a showing would have no effect on Plaintiff's right to relief in Defendants' infringing area.

## STATEMENT OF UNCONTESTED FACTS

The United States Patent and Trademark Office granted on October 21, 1980 Federal Trademark Registration No. 1,140,711 and granted on October 28, 1980 Federal Service Mark Registration No. 1,140,958 to Plaintiff's father's corporation Van Scoy Diamond Mine, Inc. (the Trademark and Service Mark Registrations for the "Marks at Issue" are attached hereto as Exhibit A). The Marks at Issue are for "VAN SCOY DIAMOND MINE." Starting in the late 1970's until approximately 1993 Plaintiff's father's corporation Van Scoy Diamond Mine, Inc. licensed the marks "VAN SCOY DIAMOND MINE" to jewelry stores along the East Coast of the United States. (Wayne Van Scoy Decl. ¶ 4, attached hereto as Exhibit B). Defendant Kurt Van Scoy admits that Plaintiff's predecessor Tommy Van Scoy, Sr. "made his rounds" by "checking on the

stores and seeing what's going on and, obviously, trying to maintain the mark." (Kurt: 36-37, attached hereto as Exhibit C)[1].

In approximately 1993 Tommy Van Scoy Sr. acting on behalf of his corporation terminated the license agreements with several of his former licensees including Mark Maurer and Lew Hill. (Mark Maurer Agreement, attached hereto as Exhibit D; Lew Hill Agreement, attached hereto as Exhibit E). Mark Maurer was licensed to operate stores in the Allentown, Lancaster, York and Harrisburg areas of Pennsylvania, the Philipsburg area of New Jersey and the Norfolk and Hampton areas of Virginia. (Mark Maurer: 35, attached hereto as Exhibit F). Lew Hill was licensed to operate stores in the Reading, Pottsville and Pottstown areas of Pennsylvania and the Raleigh, North Carolina area. (Lew Hill: 22, attached hereto as Exhibit G). The only evidence of record is that individual licensees were licensed to operate Van Scoy Diamond Mine stores in geographic territories that were separate from the geographic territories of other licensees and from any stores operated personally by Tommy Van Scoy, Sr. (Wayne Van Scoy Decl. ¶ 4, Exhibit B; Mark Maurer: 52-54, Exhibit F; Lew Hill: 36-38, Exhibit G).

Concurrently with the termination of the license agreements, Tommy Van Scoy Sr. conveyed the trademark and service mark rights in the marks "VAN SCOY DIAMOND MINE" to several of his licensees including to Mark Maurer for use in the (REDACTED)                    and to Lew Hill for use in   (REDACTED)
                              (Mark Maurer Agreement §§ 2.1, 4.1, Exhibit D; Lew Hill Agreement §§ 2.1, 4.1, Exhibit E). The only evidence of record is that the territories in which Mark Maurer and Lew Hill were granted the exclusive right to use the

---

[1] Citations herein to deposition transcripts will be identified by the first name of the deponent followed by the page or pages.

Marks at Issue are separate geographic territories from each other and from the
geographic territories of any other jewelry store trading under the Marks at Issue or
colorable variations of the Marks at Issue. (Wayne Van Scoy Decl. ¶ 5, Exhibit B; Mark
Maurer: 52-54, Exhibit D; Lew Hill: 36-38, Exhibit E). (REDACTED)


(Mark Maurer: 51, Exhibit F; Lew Hill: 52, Exhibit
G). Presently Mark Maurer operates a jewelry store under the name "Avalon, Maurer
and Bash" in Allentown, Pennsylvania and operates a second jewelry store under the
name "Van Scoy, Maurer and Bash Diamond Jewelers" in Lancaster, Pennsylvania. [2]
(Mark Maurer: 12-13, 24, 30, Exhibit F). Presently Lew Hill operates a single jewelry
store in Wyomissing, Pennsylvania under the name "Van Scoy Jewelers." (Lew Hill: 25,
Exhibit G).

Plaintiff acquired the marks "VAN SCOY DIAMOND MINE" along with the
Registrations and associated good will pursuant to a settlement approved by the United
States Bankruptcy Court for the Middle District of Pennsylvania by its Order of January
4, 2001. (Wayne Van Scoy Decl. ¶ 3, Exhibit B). Both Registrations are in full force and
effect and have been made incontestable under Section 15 of the Trademark Act.
(Federal Trade Mark and Service Mark Registrations for the Marks at Issue, Exhibit A;
Wayne Van Scoy Decl., ¶ 2, Exhibit B). Plaintiff's corporation Rings of Romance, Inc.
d/b/a "VAN SCOY DIAMOND MINE" owns and operates a jewelry store in Wilkes-
Barre, Pennsylvania under the mark "Van Scoy Diamond Mine." (Wayne Van Scoy

---

[2] It is noted that in the Deposition of Mark Maurer, Mr. Maurer claims to (REDACTED)

Decl. ¶ 3, Exhibit B). Defendants own and operate a jewelry store in Newark, Delaware also under the mark "Van Scoy Diamond Mine" and offer jewelry related goods and services (Kurt: 8, 23, 66, 69, 103, Exhibit C).

Defendants claim that in approximately October of 1994 Tommy Van Scoy, Sr. gave Defendants permission to use the marks "VAN SCOY DIAMOND MINE" when Tommy Van Scoy, Sr. gave Defendant Kurt Van Scoy a sign that read "Diamond Mine" and said "[h]ere's the sign. Good luck to you. I love you very much and I'm proud of you." (Kurt: 9,138,146, Exhibit C). Defendant Kurt Van Scoy also claims that this alleged permission to use the Marks at Issue extended to his corporation, Defendant Van Scoy Diamond Mine of Delaware, Inc. (Kurt: 138, Exhibit C). Plaintiff sent Defendants a Cease and Desist Letter on November 18, 2004 which was received by Defendants on November 20, 2004 demanding that they immediately stop infringing the marks "VAN SCOY DIAMOND MINE." (Kurt: 13, Exhibit C; Cease and Desist Letter, attached hereto as Exhibit I). Defendants are now claiming that "use of the mark at issue by third parties without licensure or control by [P]laintiff has resulted in the mark at issue becoming generic, being misdescriptive, and loosing any significance it might ever have had as a source indicator and hence cannot function as a trademark." (Defendants' Amended And Supplemental Responses To Plaintiff's First Set Of Interrogatories, No. 14, attached hereto as Exhibit J). Furthermore, Defendants are now alleging that "Plaintiff's use of the mark at issue has been non-continuous, intermittent at best and with periods of non-use sufficient to result in abandonment of the mark as a matter of law." (Defendants' Amended And Supplemental Responses To Plaintiff's First Set Of Interrogatories, No. 12, Exhibit J).

(Mark Maurer: 27, Exhibit F)

Plaintiff has (other than his corporation Rings of Romance, Inc. d/b/a Van Scoy Diamond Mine, who licenses the Marks at Issue from Plaintiff) one licensee who is his brother-in-law, Rick Sendrick, who operates a jewelry store under the name "Van Scoy Diamonds" in Scranton, Pennsylvania. (Wayne: 53, 55, Exhibit H). Plaintiff exercises quality control by supervising the quality of products and services offered under the mark "Van Scoy Diamonds" by his own corporation which he controls and by his licensee Rick Sendrick. (Wayne: 76-78, Exhibit H).

## ARGUMENT

### A.    SUMMARY JUDGMENT IS AN APPROPRIATE AND FAVORED REMEDY IN THIS CASE  BECAUSE THERE ARE NO MATERIAL FACTS IN DISPUTE AND DEFENDANTS CANNOT AND WILL NOT BE ABLE TO CARRY THE STRINGENT BURDEN REQUIRED TO SHOW THAT THE MARKS "VAN SCOY DIAMOND MINE" ARE INVALID OR  ABANDONED.

The Supreme Court has held that summary judgment is a beneficial way to dispose of cases "designed 'to secure that just, speedy and inexpensive determination of every action.'" Celotex Corporation. v. Catrett, 477 U.S. 317, 327 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corporation., 475 U.S. 574 (1986).

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examinations of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The moving party has the initial burden of showing that there is no genuine issue of material fact. See Celotex, 477 U.S. 317 at 323. Where the nonmovant bears the burden of persuasion at trial, the moving party may meet its initial burden and shift the burden of production to the nonmoving party "by 'showing'- that is, pointing out to the district court- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. 317 at 325.

In this case, Defendant Kurt Van Scoy, Defendant Donna Van Scoy and Defendant Van Scoy Diamond Mine of Delaware, Inc. face what has been consistently described throughout the case law as a "stringent standard" of proof with respect to their claims that the marks "VAN SCOY DIAMOND MINE" are invalid or otherwise abandoned. Moore Business Forms, Inc. v. Seh M. RYU, d/b/a CompuRite, Inc., 960 F.2d 486, 489 (5th Cir. 1992). Thus, once Plaintiff makes its initial showing that there is an absence of evidence, Defendants must come forward with evidence to support their claims. Celotex, 477 U.S. 317 at 325. Furthermore, Defendants must show more than "[t]he mere existence of a scintilla of evidence" for elements on which it bears the burden of production at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The facts in this case are clearly established by the admissions and testimony of the parties and other deponents, and are not in dispute. There is no genuine issue of material fact in this case and Defendants cannot produce evidence sufficient to carry the "stringent standard" of proof required of them to make a showing of invalidity or abandonment. In light of the Supreme Court's encouragement of summary judgment as a matter of efficiency, the matter at hand exemplifies the type of claim that should be disposed of by summary judgment.

**B.    DEFENDANTS ARE ESTOPPED FROM ASSERTING THAT THE
MARKS "VAN SCOY DIAMOND MINE" ARE INVALID OR
ABANDONED UNDER THE DOCTRINE OF LICENSEE ESTOPPEL.**

Under the doctrine of licensee estoppel :

> The licensee is estopped from claiming any rights against the licensor which
> are inconsistent with the terms of the license. This is true even after the
> license expires. He is estopped from contesting the validity of the mark,... or
> challenging the license agreement as void or against public policy, e.g.,
> because it granted a naked license. But he may challenge the licensor's title
> to the mark based on events which occurred *after* the license expired.

Creative Gifts, Inc. v. UFO, 235 F.3d 540, 548 (10th Cir. 2000) (quoting 3 Rudolf

Callman, Unfair Competition, Trademark & Monopolies § 19.48 at 434 (Louis Altman

4th ed. 1998 and 2000 cum. Supp.) (Accord, J. Thomas McCarthy, McCarthy on

Trademarks and Unfair Competition §18.63 (4th ed. 2000).

See also In re New York City Shoes, Inc. v. Richard Royce Collection Ltd., 84

B.R. 947, 957 (E.D.PA 1988) (holding that a licensee is equitably estopped from setting

up a subsequent adverse claim against its licensor). See also Professional Golfers

Association Of America v. Bankers Life & Casualty Company 514 F.2d 665, 671 (5th

Cir. 1975) (holding that former licensee is estopped from challenging a trademark

holder's valid ownership on facts which arose during license agreement).

**1.    The Alleged Permission Given To Defendants By Tommy Van Scoy,
Sr. Should Be Characterized As A Revocable License Or A License At
Will.**

A trademark license is a grant of permission to use the grantor's trademark.

Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc., 88 F.Supp 2d 914, 920-921 (C.D.

ILL. 2000). Even if the parties intend no formal licensing agreement, the course of

conduct between a trademark owner and an accused infringer may create an implied
license. Exxon Corporation v. Oxford Clothes, Inc., 109 F.3d 1070, 1076 (5th Cir. 1997).
Defendants claim that in approximately October of 1994 Tommy Van Scoy, Sr., gave
Defendants permission to use the mark "VAN SCOY DIAMOND MINE" when Tommy
Van Scoy, Sr. gave Defendant Kurt Van Scoy a sign that read "Diamond Mine" and said
"[h]ere's the sign.  Good luck to you.  I love you very much and I'm proud of you."
(Kurt: 9,138,146, Exhibit C).  Defendant Kurt Van Scoy also claims that this alleged
permission extended to his corporation, Defendant Van Scoy Diamond Mine of
Delaware, Inc.  (Kurt: 138, Exhibit C).  In determining whether an agreement is a license,
the essential inquiry is whether "the licensee is engaging in acts which would infringe the
licensor's mark but not for the permission granted in the license." Exxon Corporation,
109 F.3d 1070 at 1076.  Defendants offer jewelry products and jewelry services under the
mark "VAN SCOY DIAMOND MINE." (Kurt 8, 23, 69, 103, Exhibit C).  These are the
same goods and services recited in the Registrations for the Marks at Issue and the same
mark covered by the Registrations for the Marks at Issue.  (Trademark and Service Mark
Registrations for the Marks at Issue, Exhibit A).  As such, the alleged permission granted
by Tommy Van Scoy, Sr. should be characterized as a license- if not for this alleged
permission Defendants would clearly be engaging in acts which would infringe the
licensor's mark. Exxon Corporation, 109 F.3d 1070 at 1076.

    Furthermore, any license that Defendants may have had was a revocable license
or a license at will and was therefore terminated by Plaintiff's Cease and Desist Letter of
November 18, 2004 which was received by Defendants on November 20, 2004. (Kurt:
13, Exhibit C; Cease and Desist Letter, Exhibit I).  "An agreement conferring a license to

use a trademark for an indefinite time, whether oral, written or by implication, is terminable at will by the licensor." <u>Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.</u>, 847 F.Supp. 18, n. 1 (E.D. N.Y. 1994). <u>See also Bunn-O-Mastic Corp.</u>, 88 F.Supp 2d 914 at 922 ("A license containing no time frame is generally terminable at will."). Defendants claim that in approximately October of 1994 Tommy Van Scoy, Sr., gave Defendants permission to use the marks "VAN SCOY DIAMOND MINE" when Tommy Van Scoy, Sr. gave Defendant Kurt Van Scoy a sign that read "Diamond Mine" and said "[h]ere's the sign. Good luck to you. I love you very much and I'm proud of you." (Kurt: 9,138,146, Exhibit C). Clearly this alleged license granted to Defendants was for an indefinite time as it contained no mention of a time frame and as such is revocable and terminable at will by the licensor. <u>Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.</u>, 847 F.Supp. 18, n. 1. Since Plaintiff Wayne Van Scoy succeeded to the ownership of the trademark and service mark "VAN SCOY DIAMOND MINE," "[P]laintiff similarly succeeded to the right to terminate the licenses." <u>Dial-A-Mattress Operating Corp.</u>, 847 F.Supp. 18 at 19-20. Plaintiff clearly terminated any license Defendants had by sending Defendants his Cease and Desist Letter of November 18, 2004. (Cease and Desist Letter, Exhibit I).

## 2. **Defendants Are Estopped From Claiming That The Marks "VAN SCOY DIAMOND MINE" Are Invalid Or Abandoned.**

Defendants are estopped from claiming that the marks "VAN SCOY DIAMOND MINE" are invalid or otherwise abandoned under the doctrine of licensee estoppel. <u>See Creative Gifts, Inc. v. UFO</u>, 235 F.3d 540 at 548. Under this doctrine a licensee is equitably estopped from setting up a subsequent adverse claim against its licensor. <u>In re</u>

New York City Shoes, Inc. v. Richard Royce Collection Ltd., 84 B.R. 947 at 957.

Furthermore, a former licensee is estopped from challenging a trademark holders valid

ownership on facts which arose prior to or during the license agreement. Professional

Golfers Association of America, 514 F.2d 665 at 671. Defendants responded to

Plaintiff's First Set Of Interrogatories, and particularly to Interrogatory No. 14 which

requested Defendants to state all contentions for their Fist and Second Counter Claims

alleging that the Marks at Issue are invalid, by stating that "use of the mark at issue by

third parties without licensure or control by [P]laintiff has resulted in the mark at issue

becoming generic, being misdescriptive, and losing any significance it might ever have

had as a source indicator and hence cannot function as a trademark." (Defendants'

Amended And Supplemental Responses To Plaintiff's First Set Of Interrogatories, No.

14, Exhibit J).

This is exactly the type of claim Defendants are estopped from asserting under the

doctrine of licensee estoppel. Creative Gifts, Inc. v. UFO, 235 F.3d 540 at 548. Plaintiff

has (other than his corporation, Rings of Romance, Inc. d/b/a VAN SCOY DIAMOND

MINE, who licenses the Marks at Issue from Plaintiff) one licensee, his brother-in-law

Rick Sendrick, who operates a jewelry store under the name "Van Scoy Diamonds" in

Scranton, Pennsylvania. (Wayne: 53, 55, Exhibit H). It has not been disputed that

Plaintiff exercises quality control by supervising the quality of products and services

offered by his own corporation which he controls and offered under the mark "Van Scoy

Diamonds" by his licensee Rick Sendrick. (Wayne: 76-78, Exhibit H). Besides the

license granted to his own corporation and the license granted to his brother-in-law, Rick

Sendrick, there has been no other licensing of the marks "VAN SCOY DIAMOND

MINE" since prior to 1993. (Wayne Van Scoy Decl. ¶ 6, Exhibit B). Since Defendants
were not allegedly granted their license to use the mark "VAN SCOY DIAMOND
MINE" until October of 1994, whatever third party use Defendants are referring to as a
basis for their invalidity claims had to have arisen prior to the granting of Defendants'
license and therefore such alleged use cannot serve as a basis for attack on the validity of
the mark "VAN SCOY DIAMOND MINE."[3] Creative Gifts, Inc. v. UFO, 235 F.3d 540
at 548 (holding that a former licensee may not challenge the validity of a mark based on
facts that arose prior to the licensing agreement. (Kurt: 9, Exhibit C).

Furthermore, Defendants responded to Plaintiff's First Set Of Interrogatories and
particularly to Interrogatory No. 12 which requested Defendants to state all contentions
for their Twelfth and Thirteenth Affirmative Defenses alleging that the Marks at Issue are
abandoned by Plaintiff or Plaintiff's predecessor in title by stating that "Plaintiff's use of
the mark at issue has been non-continuous, intermittent at best and with periods of non-
use sufficient to result in abandonment of the mark as a matter of law." (Defendants'
Amended And Supplemental Responses To Plaintiff's First Set Of Interrogatories, No.
12, Exhibit J). Again, Defendants are estopped from arguing facts that arose during or
before the term of their alleged license. Creative Gifts, Inc. v. UFO, 235 F.3d 540 at 548.
Since it is an undisputed fact that Plaintiff has continuously used the marks "VAN SCOY
DIAMOND MINE" in connection with his retail jewelry store since the termination of
Defendants' alleged license by the Cease and Desist Letter of November 18, 2004,
whatever basis Defendants have for their allegations for abandonment clearly arose

---

[3] It is noted that Plaintiff has requested on several occasions that Defendants supplement their responses to
Plaintiff's First Set Of Interrogatories. Interrogatory No. 14, for example, asks for all facts in support of
Defendants' invalidity counterclaim yet Defendants have yet to provide a single fact in support thereof.

during the term of the agreement and therefore cannot serve as a basis for attack on the validity of the Marks at Issue.  See  Professional Golfers Association Of America, 514 F.2d 665 at 671 (holding that former licensee is estopped from challenging a trademark holder's valid ownership on facts which arouse during license agreement.  (Wayne Van Scoy Decl. ¶ 7, Exhibit B; Cease and Desist Letter, Exhibit I).

C.    **THERE IS NO EVIDENCE TO SHOW THAT THE MARKS "VAN SCOY DIAMOND MINE" ARE  INVALID OR ABANDONED.**

Defendants contend that the marks "VAN SCOY DIAMOND MINE" are invalid and abandoned as a result of use of the Marks at Issue by third parties "without licensure or control by [P]laintiff."  (Defendants' Amended And Supplemental Responses To Plaintiff's First Set Of Interrogatories No. 14, Exhibit J).   It is initially pointed out that Defendant Kurt Van Scoy admitted that besides use by Defendants and use by Plaintiff's corporation he is aware of no other person or entity using the marks "VAN SCOY DIAMOND MINE."[4]  (Kurt: 49-50, Exhibit C). Furthermore, as evidenced by Defendants' Amended And Supplemental Responses To Plaintiff's First Set Of Interrogatories No. 14 which is attached hereto as Exhibit J, Defendants have failed to identify any facts that would support their contention that the Marks at Issue have been invalidated by third party use. (Defendants' Amended And Supplemental Responses To Plaintiff's First Set Of Interrogatories, No. 14, Exhibit J).

---

(Defendants' Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories, No. 14, Exhibit K).
[4] It is noted that in the Deposition of Mark Maurer, Mr. Maurer claims to (REDACTED)

**1.    The Marks "VAN SCOY DIAMOND MINE" Are Not Invalid Or
Otherwise Abandoned Because Plaintiff Has Sufficiently Monitored
His Licensees And There Is No Requirement That Plaintiff Control
Individuals Or Entities That Are Not Licensees.**

Assuming *arguendo* that there exists third party use of the marks "VAN SCOY
DIAMOND MINE" or "colorable variations" of the marks, there is no evidence to
support Defendants' claims that the Marks at Issue are invalid as a result of such alleged
third party use "without licensure or control by [P]laintiff." (Defendants' Amended And
Supplemental Responses To Plaintiff's First Set Of Interrogatories, No. 14, Exhibit J).
Because a finding of insufficient control essentially signals involuntary abandonment and
works a forfeiture, the proponent of a naked license theory "faces a stringent standard" of
proof. Moore Business Forms, Inc. v. Seh M. RYU, d/b/a CompuRite, Inc., 960 F.2d 486
at 489.

Initially it is pointed out that aside from his own corporation, Rings of Romance,
Inc. d/b/a VAN SCOY DIAMOND MINE, which is controlled by Plaintiff Wayne Van
Scoy and to which Plaintiff licenses the Marks "VAN SCOY DIAMOND MINE," and
his brother-in-law licensee who operates a jewelry store in Scranton, Pennsylvania under
the mark "Van Scoy Diamonds," Plaintiff has no other licensees. (Wayne Van Scoy
Decl. ¶ 6, Exhibit B). Plaintiff has since he became owner of the marks "VAN SCOY
DIAMOND MINE" overseen the operations of his licensees. (Wayne Van Scoy Decl. ¶
6, Exhibit B) There is no evidence of record that Plaintiff's efforts at quality control over
his licensees has been inadequate and Defendants will not be able to meet the "stringent
standard" of proof required of Defendants as proponents of a naked license theory.
Moore Business Forms, Inc., 960 F.2d 486 at 489.

---

(Mark Maurer: 27, Exhibit F).

15

Even if there exists businesses operating under what might be considered "colorable variations" of the marks "VAN SCOY DIAMOND MINE", since none of these businesses are licensees of Plaintiff, Defendants cannot prevail on their claim by arguing that Plaintiff has failed to control these operations. Where use of a mark is based on a type of agreement other than a license there is no quality control requirement. See Moore Business Forms, Inc., 960 F.2d 486 at 489. ("[w]hen a trademark owner consents to another party's defined usage of the trademark there is no quality control requirement").

The evidence of record is that other businesses that could be operating under "colorable variations" of the marks "VAN SCOY DIAMOND MINE" are not licensees of Plaintiff but rather concurrent owners. Defendant listed in their Initial Disclosures of Defendants Pursuant to Federal Rule of Civil Procedure 26(a), for example, Lew Hill as an individual likely to have discoverable information that Defendants may use to support their claims or defenses. (Initial Disclosures of Defendants Pursuant to Federal Rule of Civil Procedure 26(a), Exhibit K). In approximately 1993 Lew Hill entered into an agreement with Plaintiff's predecessor in title whereby Lew Hill paid (REDACTED) for the exclusive right to use and to trade under the marks "VAN SCOY DIAMOND MINE" in a territory defined as (REDACTED)                                    (Lew Hill Agreement §§ 2.1. 4.1, 6.1, Exhibit E; Lew Hill: 46-47, Exhibit G). As such, since approximately 1993 Lew Hill has been a concurrent owner of the Marks at Issue. Similarly, Defendant listed in their Initial Disclosures of Defendants Pursuant to Federal Rule of Civil Procedure 26(a) Mark Maurer as an individual likely to have discoverable information that Defendants may use to support their claims or defenses. (Initial

<u>Disclosures of Defendants Pursuant to Federal Rule of Civil Procedure 26(a)</u>, Exhibit K.

In approximately 1993 Mark Maurer entered into an agreement with Plaintiff's

predecessor in title whereby Mark Maurer paid (REDACTED)

for the exclusive right to use and to trade under the mark "VAN SCOY DIAMOND

MINE" in a territory defined as (REDACTED)

(Mark Maurer Agreement

§§ 2.1. 4.1, 6.1, Exhibit D; Mark Maurer: 7, 44-47, Exhibit F).  As such, since

approximately 1993 Mark Maurer has also been a concurrent owner of the Marks at

Issue.

Concurrent ownership of marks in separate geographic territories is clearly

permissible.  <u>Kentucky Fried Chicken Corporation v. Diversified Packaging Corporation</u>

549 F.2d 368, 387 (5th Cir. 1977) <u>Citing</u> <u>15 U.S.C. § 1052(d)</u>.  Lew Hill admitted that in

the context of the retail jewelry store business the geographic market in which he

operates a jewelry store under the mark "Van Scoy Jewelers" is a separate geographic

market from any other market in which there may be use by others of the marks VAN

SCOY DIAMOND MINE or "colorable variations" of the marks VAN SCOY

DIAMOND MINE.  Specifically, Lew Hill stated that (REDACTED)


(Lew Hill: 36-38, Exhibit G).  In fact, Lew Hill admitted that

(REDACTED)

(Lew

Hill: 35, Exhibit G).  Similarly, Mark Maurer admitted that    (REDACTED)

(Mark Maurer: 52-54, Exhibit F).   As such, such use of the marks "VAN SCOY

DIAMOND MINE" or "colorable variations" is permissible and cannot serve as the basis

for an attack on their validity.


    **2.**    **The Evidence Of Record Indicates That The Marks "VAN SCOY DIAMOND MINE" Have Never Been Invalidated Or Abandoned.**

    Prior to 1993 Plaintiff's predecessor in interest had since the late 1970's licensed

the marks VAN SCOY DIAMOND MINE to various licensees including Lew Hill and

Mark Maurer.  (Mark Maurer: 19, 21-22, Exhibit F; Lew Hill: 15-16, Exhibit G).  It is

initially pointed out that both Lew Hill and Mark Maurer recognized the validity of the

Marks at Issue when in 1993 they entered agreements in which *inter alia* both Lew Hill

and Mark Maurer  (REDACTED)


    (Mark Maurer Agreement §3.7, Exhibit D; Lew Hill Agreement: §3.7, Exhibit

E).  Furthermore, it is noted that by allegedly entering a license agreement with Plaintiff's

predecessor in interest in 1994, Defendants "by virtue of the agreement, recognized the

holders ownership."  Professional Golfers Association Of America 514 F.2d 665 at 671.

Therefore, the facts of record indicate that as of 1993 and 1994 the Marks at Issue were

valid and enforceable.

    Furthermore, there is simply not sufficient evidence of record to meet the

"stringent standard" of proof required to show that Plaintiff's predecessor's efforts at

quality control were insufficient to maintain the validity of the marks "VAN SCOY DIAMOND MINE." <u>Moore Business Forms, Inc. v. Seh M. RYU, d/b/a CompuRite, Inc.</u>, 960 F.2d 486 at 489. Defendant Kurt Van Scoy admits that Tommy Van Scoy, Sr. "made his rounds" by "checking on the stores and seeing what's going on and, obviously, trying to maintain the mark." (Kurt: 36-37, Exhibit C). Even assuming *arguendo* that Tommy Van Scoy, Sr. for any period did not personally supervise his licensees, it is noted that there need not be formal quality control where "the particular circumstances of the licensing agreement [indicate] that the public will not be deceived." <u>Moore Business Forms, Inc.</u>, 960 F.2d 486 at 489 (citing <u>Taco Cabana Int'l, Inc. v. Two Pesos, Inc</u>. 932 F.2d 1113 (5th Cir. 1991). Since the only evidence of record is that individual licensees were licensed to operate Van Scoy Diamond Mine stores in separate geographic markets from each other and from any Van Scoy Diamond Mine stores operated by Tommy Van Scoy, Sr. it was not likely that the public would be deceived by the licensing arrangement. (Wayne Van Scoy Decl. ¶ 4, Exhibit B; Mark Maurer: 52-54, Exhibit F; Lew Hill: 36-38, Exhibit G). As such, Defendants arguments with respect to alleged third party use "without licensure or control by [P]laintiff" must fail.

3.    <u>Defendants Claim That The Marks "VAN SCOY DIAMOND MINE" Are Invalid And Abandoned Is Irrelevant Because There Is No Evidence That The Marks AT Issue have Been Invalidated Or Abandoned In The Wilmington, Delaware Area.</u>

"If substantial uncontrolled use is confined to a particular geographic or product market, a court may conclude that the mark has been abandoned only in that geographic area or in connection with use on that product. The trademark owner then retains its priority in the use of the mark in other areas or on other products ." <u>Tumblebus Inc. v.</u>

Cranmer, d/b/a Tumblebus of Louisville, 399 F.3d 754, 766 (6th Cir. 2005) (citing

Restatement (Third) of Unfair Competition § 33 cmt. B (1995). In that case the Sixth

Circuit held that so long as a mark maintained its significance in certain geographic areas,

there is no reason a trademark owner should be foreclosed from asserting its rights in the

mark in that market. Tumblebus Inc., 399 F.3d 754 at 766. Since there is no evidence of

record to even suggest that any alleged "use of the mark at issue by third parties without

licensure or control by [P]laintiff" was in the Wilmington, Delaware area Defendants will

not be able to meet the "stringent standard" of proof required to show that the marks at

issue have been abandoned in that area. In fact, even assuming *arguendo* that any alleged

invalidating use of the Mark at Issue by third parties ever occurred, such alleged use was

indisputably separate and distinct from the geographic area in which Defendants operate

their infringing Van Scoy Diamond Mine store. Defendants admit, for example, that

Defendant Van Scoy Diamond Mine of Delaware, Inc. operates its jewelry store business

in a geographic area which is, except for its internet business, geographically distinct

from any jewelry store business operated in Wilkes-Barre, Pennsylvania, Lancaster,

Pennsylvania, Reading, Pennsylvania, Erie, Pennsylvania, Allentown, Pennsylvania and

the State of North Carolina. (Defendants' Responses To Plaintiff's First Set Of Request

For Admissions Under FRCP 36 NOS. 26- 33, Exhibit L). As such any third party use

regardless of whether it was controlled by Plaintiff or Plaintiff's predecessor in title has

no bearing on the validity of marks VAN SCOY DIAMOND MINE in the Wilmington,

Delaware market. Tumblebus Inc., 399 F.3d 754 at 766. Furthermore, Defendants

admitted that the mark Van Scoy Diamond Mine has significance in the Wilmington

Area. (Kurt: 99, Exhibit C). Certainly Defendants are estopped from arguing that that

significance is anything other than as an indicator of source of their licensor.  Creative

Gifts, Inc. v. UFO, 235 F.3d 540 at 548.


    **4.**      **Defendants Will Not Prevail On Their Abandonment Claim Because There Is No Evidence Of Non-Use And An Intent To Abandon.**

      Abandonment of a trademark or service mark requires a showing of two elements:

1)  non-use and 2) an intent not to resume use.  EH Yacht, LLC v. Egg Harbor, LLC, 84

F.Supp.2d 556, 564 (D.N.J. 2000)  Both of these elements must be "strictly proved."  Id,

citing United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 139 (3rd Cir. 1981).

The "strictly proved" standard has been held by a majority of the courts to mean that both

elements of abandonment must be proved by clear and convincing evidence.  EH Yacht,

LLC, 84 F.Supp.2d 556 at 564-565, citing J. Thomas McCarthy, McCarthy on

Trademarks and Unfair Competition  §17.12 (4th ed. 2005).

      In this case summary judgment should be granted for Plaintiff on Defendants'

claim of abandonment because there are not facts adequate to show by clear and

convincing evidence that Plaintiff ever intended not to resume use of the marks "VAN

SCOY DIAMOND MINE."  The evidence is that Plaintiff's predecessor used the marks

continuously between 1976 and 1993 in connection with his retail jewelry stores.

(Wayne Van Scoy Decl. ¶ 8, Exhibit B).  Plaintiff's predecessor filed for Chapter 13

bankruptcy on September 23, 1994 in the United States Bankruptcy Court for the Middle

District of Pennsylvania.  (Wayne van Scoy Decl. ¶ 9, Exhibit B).  The United States

Bankruptcy Court for the Middle District of Pennsylvania forced the closure of the "VAN

SCOY DIAMOND MINE" operated by Plaintiff's predecessor in Wilkes-Barre,

Pennsylvania between December 29, 1994 and November 1995.  At all times during this

period it was intended as soon as possible to re-open and continue operation as a "VAN

SCOY DIAMOND MINE." This intent is evidenced by the fact that in November 1995

the store did in fact re-open as a "VAN SCOY DIAMOND MINE." (Wayne van Scoy

Decl. ¶ 10, Exhibit B).  Furthermore, between September 17, 1999 and January 4, 2001

Plaintiff Wayne Van Scoy, along with several of his family members were enjoined by

order of the United States Bankruptcy Court for the Middle District of Pennsylvania

from use of the marks "VAN SCOY DIAMOND MINE."  Plaintiff changed the name of

his store to "VAN SCOY DIAMOND CENTER" after he was enjoined but at all times

intended to resume use of the name "VAN SCOY DIAMOND MINE" as soon as he was

permitted. (Wayne van Scoy Decl. ¶ 11, Exhibit B).  This intent is evidenced by the fact

that Plaintiff expended a great deal of effort and finances acquiring, pursuant to a

settlement approved by the United States Bankruptcy Court for the Middle District of

Pennsylvania on January 4, 2001, the marks "VAN SCOY DIAMOND MINE" and the

Registrations and associated good will. (Wayne van Scoy Decl. ¶ 10, Exhibit B)  In fact,

Plaintiff expended additional effort and finances renewing the Registrations for the

Marks at Issue in April, 2001. (Wayne van Scoy Decl. ¶ 12, Exhibit B).  Additionally, the

intent to resume use and not to abandon is evidenced by the fact that since January 2001

when Plaintiff acquired the marks Plaintiff has continuously used the marks "VAN

SCOY DIAMOND MINE" in connection with his retail jewelry store in Wilkes-Barre on

*inter alia* bags given to customers, jewelry boxes, sales receipts and in his numerous

radio advertisements.[5]  (Wayne van Scoy Decl. ¶ 13, Exhibit B)  A sales receipt used by

---

[5] Plaintiff has used even after January , 2001, and at times inadvertently, items such as leftover sales
receipts showing the mark "VAN SCOY DIAMOND CENTER."  Plaintiff has, however, at all times since
January 2001 used the marks "VAN SCOY DIAMOND MINE" and significantly has used the marks
"VAN SCOY DIAMOND MINE" in all of his radio advertising. (Wayne Van Scoy Decl

Plaintiff's corporation Rings of Romance d/b/a VAN SCOY DIAMOND MINE and

dated January 31, 2001 is attached hereto as Exhibit M showing use of the Marks at Issue

in January 2001. (Sales Receipt, Exhibit M). Defendant should not be permitted to point

to the fact that Plaintiff obeyed a court order as proof of abandonment.


**CONCLUSION**

In view of the fact that Defendants will not be able to meet the strict burden

required of them to show that the marks "VAN SCOY DIAMOND MINE" are invalid or

abandoned, summary judgment should be granted for Plaintiff against Defendants' claims

of invalidity and abandonment.


ASHBY & GEDDES

*/s/ John G. Day*

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888
*Attorneys for Wayne Van Scoy*

*Of Counsel:*
Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856

Dated: November 1, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of November, 2005, the attached **REDACTED**

**PUBLIC VERSION OF OPENING BRIEF IN SUPPORT OF PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS' CLAIMS**

**OF INVALIDITY AND ABANDONMENT** was served upon the below-named counsel

of record at the address and in the manner indicated:

Francis G.X. Pileggi, Esquire          <u>VIA ELECTRONIC MAIL</u>
Sharon Oras Morgan, Esquire
Fox Rothschild LLP
Citizen Bank Center
919 North Market Street
Suite 1300
Wilmington, DE  19801-2323

Charles N. Quinn, Esquire          <u>VIA ELECTRONIC MAIL</u>
Fox Rothschild LLP
2000 Market Street
Tenth Floor
Philadelphia, PA  19103


                              */s/ John G. Day*
                              _____
                              John G. Day