# EXHIBIT D

# AGREEMENT

Thomas A. Van Scoy, Sr. (hereinafter generally referred to as "Van Scoy"), a citizen of the United States trading as Van Scoy Diamond Mine at 154 Mundy Street, Wilkes Barre, Pennsylvania, 18702, and International Diamond Company, Inc. (hereinafter referred to as "International"), a Pennsylvania corporation having a place of business at 958 Plaza Boulevard, Lancaster, Pennsylvania, 17601, as the parties to this Agreement, intending to be legally bound, hereby agree as follows:

## 1    Background

1.1   Van Scoy operates certain retail jewelry businesses and is the owner of United States trademark registration 1,140,958 for the mark "Van Scoy Diamond Mine" for use in connection with retail jewelry store services.

1.2   International operates retail jewelry stores in the Lehigh Valley and Susquehanna Valley areas and trades in those areas under the name "Van Scoy Diamond Mine".

1.3   International has paid over one-half million dollars to Van Scoy respecting the right to trade under the name "Van Scoy Diamond Mine" in the Lehigh Valley and Susquehanna Valley areas. In connection therewith International contends that it was to have received (i) advertising support, both creative and mechanical, in the nature of audio and print media advertising for use in the

- 1 -



D001857

Lehigh Valley and Susquehanna Valley areas, (ii) an assured source of supply of loose diamonds to be sold at such retail locales and (iii) introductions to manufacturers and suppliers in the jewelry industry for International to trade therewith and enjoy the benefits of any relationships Van Scoy had established with such manufacturers and/or suppliers.

1.4  The parties, having certain differences in their views as to their legal rights and obligations respecting their dealings heretofore and in the future and choosing to compromise those differences rather than resort to litigation, have reached this Agreement.

## 2  Definitions

As used herein the following terms, including plurals and variants thereof, shall have the meanings stated:

2.1  "Territory" means Lehigh, Northampton, Lancaster, York, and Dauphin Counties of Pennsylvania and Warren County of New Jersey.

2.2  "Mark" means the mark "Van Scoy Diamond Mine" as registered on the Principal Register of the United States Patent and Trademark Office pursuant to registration 1,140,958, and marks and names similar thereto in sound, appearance and/or commercial connotation, including the surname "Van Scoy".

## 3  Warranties, Representations and Guarantees

3.1  Van Scoy has no extant contractual obligations which

— 2 —

D001858

conflict with any of the obligations Van Scoy has incurred hereunder or which will interfere with Van Scoy's ability to perform the obligations incurred hereunder.

3.2   International has no extant contractual obligations which conflict with any of the obligations International has incurred hereunder or which will interfere with International's ability to perform the obligations incurred hereunder.

3.3   International shall not challenge or dispute, through either a cancellation proceeding in the United States Patent and Trademark Office or a declaratory judgment claim or counterclaim in a United States District Court, the validity or enforceability of U.S. trademark registration 1,140,958 for "Van Scoy Diamond Mine".

3.4   Van Scoy shall not use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

3.5   Van Scoy shall not grant any right to any third party to use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

✓ 3.6   International shall continue to conduct its retail jewelry business using the same high standards of integrity in dealing with the public and continue to offer the same high quality jewelry products and jewelry service as International has offered heretofore, to the extent International can do so and yet continue

— 3 —

D001859

to meet the prices of its competition.

3.7  Van Scoy and International individually and jointly state their intentions to take all reasonable measures, consistent with their rights and obligations to each other as set forth herein, to protect the Mark and to maintain the enforceability of the Mark against third parties.

3.8  Neither party shall do indirectly, or through any third party, anything which if done directly would amount to breach of this Agreement.

4    Grant

4.1  Van Scoy irrevocably grants to International for the term of this Agreement an exclusive right and license to use and to trade under the Mark in the Territory in the course of conducting diamond and jewelry business.

5    Performance Rights and Obligations

5.1  Van Scoy shall give prompt notice to International of any attack on the Mark in any judicial or administrative forum. In the event Van Scoy elects not to defend the Mark against such an attack, International shall have the right, but no obligation, to defend the Mark against any such attack, at International's expense.  Van Scoy shall cooperate with International with any such defense.

5.2  Van Scoy shall give prompt notice to International of any infringement of the Mark, whether within or outside of the

– 4 –

D001860

Territory, and shall notify International of whether Van Scoy intends to assert the Mark against the infringer. In the event Van Scoy elects not to institute suit against any such infringer, International shall have the right, but no obligation, to institute suit against any such infringer in Van Scoy's name. Any monetary recovery by International in any such suit shall be for the account of International. Van Scoy shall cooperate with International in prosecuting any such suit.

5.3    In the event Van Scoy wishes to exhibit any of International's operations to any third party as a demonstration of commercial success achieved using the Mark, International shall cooperate with Van Scoy by opening International's facilities to inspection by such third parties.

6    **Monetary Consideration**

6.1  In consideration of the rights and releases granted and undertakings made herein, International shall (i) pay Van Scoy $25,000.00 and (ii) deliver to Van Scoy $25,000.00 worth of diamonds, as defined by attached Exhibit A, upon execution of this Agreement.

7    **Disclaimers**

7.1  Nothing herein shall be construed to create or imply any obligation on the part of Van Scoy to provide any type of advertising support or promotional assistance respecting the ongoing conduct of retail jewelry business by International under

- 5 -

D001861

the Mark in the Territory.

7.2  Nothing herein shall be construed to create any obligation on the part of Van Scoy to provide International with any other kind of commercial assistance, including but not limited to, identification of or introduction to suppliers of diamonds or other products sold at retail in the jewelry business.

**8    Releases**

8.1  Each party hereby releases the other party from any and all claims which have accrued prior to the date of this Agreement and which are assertable against the other party, irrespective of whether the other party has ever been notified of any such claims(s).

**9    Assignment**

9.1  This Agreement including the rights granted herein shall be freely assignable by each party without consent of the other party.  A party assigning any right under this Agreement shall promptly give notice of the same to the other party.

**10   Choice of Law**

10.1 This Agreement shall be construed and governed according to the laws of contract construction of the Commonwealth of Pennsylvania.

**11   Force Majeure**

11.1  Neither party hereto shall be liable for failure to perform obligations hereunder due to, by way of example and not by

- 6 -

D001867

way of limitation, act of God, war, riot, fire, flood, invasion, earthquake, epidemic, interruption of transportation, energy shortage, explosion, or any other material cause beyond the reasonable anticipation of the parties hereto and performance of obligations hereunder shall be suspended during, but not longer than, the existence of such cause.

## 12  Indemnification

12.1  Neither party hereto shall be liable to the other party for any personal injury or incidental or consequential property damages suffered by the other party hereto, or by any third party, resulting from any activity of either of the parties under or relating to this Agreement.

12.2  In the event of any claim against a party to this Agreement by any third party alleging personal injury and/or property damage resulting from any action or failure to act by the other party hereto, such other party shall indemnify and hold harmless the first party against such claim.

## 13  Notices

13.1  Notices hereunder shall be in writing and shall be sufficiently given by a party to the remaining party if addressed to the remaining party as indicated at the preamble of this Agreement and deposited in the mail as registered mail, return receipt requested, with United States postage prepaid.

## 14  Breach

- 7 -

D001863

14.1  Upon failure of any party hereto (i) to fulfill any obligation under this Agreement and (ii) to remedy any such failure within sixty (60) days after written demand therefor by the other party, such other party may terminate this Agreement within ninety (90) days after the written demand.  Such termination shall be without prejudice to any other rights either party may have growing out of this Agreement.

14.2  In lieu of terminating the Agreement, a party adversely affected by a failure to perform an obligation hereunder shall have the right to sue for specific performance respecting performance of the obligation.  Regarding specific performance, the parties expressly acknowledge that the uniqueness of the Mark may make money damages inadequate to compensate a party for damages sustained as a result of failure to perform an obligation.

15  **Merger**

15.1  This written Agreement sets forth the entire understanding between the parties hereto as to their rights and obligations respecting the Mark and the Territory and merges all prior discussions and negotiations between the parties concerning such rights and obligations and neither party shall be bound by any conditions, definitions, warranties, representations, or guarantees with respect to such rights and obligations other than as expressly provided in this written Agreement.

16  **Severability**

- 8 -

D001864

16.1   This Agreement shall be severable. In the event any portion or provision of this Agreement is deemed by any court of competent jurisdiction to be unenforceable, illegal or contrary to public policy, this Agreement shall remain in force as if the adjudicated portion or provision of the Agreement did not exist.

## 17   Waiver

17.1   Failure of either party at any time or from time to time to exercise any right under this Agreement shall not be deemed a waiver of such right nor shall it prevent the party from subsequently asserting or exercising such right.

## 18   Term

18.1   This Agreement shall be effective on the later date signed by the later-to-sign of the parties hereto and shall remain in effect thereafter for so long as International, or any successor in interest thereto, conducts a retail jewelry business in the

D001865

Territory and for three (3) years thereafter.


IN WITNESS HEREOF, the parties have executed this Agreement on

the dates and at the places indicated below.


Thomas A. Van Scoy, Jr.          International Diamond Company, Inc.

_Thomas A. Van Scoy Jr._         By _____ - VP/Treasurer
                                    _____ - VP/Sect.

Date: __3/17/93__                Date: __March 8th, 1993.__

Place: __Allentown, Pa.__        Place: __Lancaster, PA.__

_____                _____
Witness                          Witness


– 10 –

D001866

TV84

## EXHIBIT "A"

| | Dia. Wt. | PPC | Cost |
|---|---|---|---|
| 1/5 carats | 0.18 | $720 | $130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.21 | 720 | 151 |
| | 0.21 | 720 | 151 |
| | 0.21 | 720 | 151 |
| | 0.22 | 720 | 158 |
| | 0.22 | 720 | 158 |
| | 0.22 | 720 | 158 |
| | 0.22 | 720 | 158 |
| | 0.23 | 720 | 166 |
| | 3.00 carats | | $2,160.00 |
| 1/4 carats | 0.23 | $755 | $174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.24 | 755 | 181 |
| | 0.24 | 755 | 181 |
| | 0.24 | 755 | 181 |
| | 0.25 | 755 | 189 |
| | 0.26 | 755 | 196 |
| | 0.29 | 755 | 219 |
| | 0.29 | 755 | 219 |
| | 0.29 | 755 | 219 |
| | 0.29 | 755 | 219 |
| | 3.77 carats | | $2,846.35 |
| 1/3 carats | 0.31 | $840 | 260 |
| | 0.32 | 840 | 269 |
| | 0.32 | 840 | 269 |
| | 0.32 | 840 | 269 |
| | 0.33 | 840 | 277 |
| | 0.33 | 840 | 277 |
| | 0.33 | 840 | 277 |
| | 0.33 | 840 | 277 |
| | 0.34 | 840 | 286 |
| | 0.34 | 840 | 286 |
| | 3.27 carats | | $2,746.80 |

D001867

TVS4

## EXHIBIT "A"

| Dia. Wt. | PPC | Cost |
|----------|-----|------|
| 3/8 carats 0.38 | $925 | $352 |
| 0.39 | 925 | 361 |
| 0.39 | 925 | 361 |
| 0.40 | 925 | 370 |
| 0.40 | 925 | 370 |
| 0.40 | 925 | 370 |
| 0.40 | 925 | 370 |
| 0.41 | 925 | 379 |
| 0.41 | 925 | 379 |
| 0.41 | 925 | 379 |
| 3.99 carats | | $3,339.25 |
| | | |
| 1/2 carats 0.47 | $1,170 | $550 |
| 0.48 | 1,170 | 562 |
| 0.49 | 1,170 | 573 |
| 0.49 | 1,170 | 573 |
| 0.50 | 1,170 | 585 |
| 0.51 | 1,170 | 597 |
| 0.51 | 1,170 | 597 |
| 0.51 | 1,170 | 597 |
| 0.52 | 1,170 | 608 |
| 0.53 | 1,170 | 620 |
| 5.01 carats | | $5,861.70 |
| | | |
| 5/8 carats 0.61 | $1,275 | $778 |
| 0.61 | 1,275 | 778 |
| 0.64 | 1,275 | 816 |
| 0.64 | 1,275 | 816 |
| 2.50 carats | | $3,187.50 |
| | | |
| 3/4 carats 0.71 | $1,500 | $1,065 |
| 0.71 | 1,500 | 1,065 |
| 0.72 | 1,500 | 1,080 |
| 2.14 carats | | $3,210.00 |
| | | |
| 9/10 carat 0.92 | $1,875 | $1,725 |
| 0.92 carat | | $1,725.00 |
| | | |
| TOTALS 24.60 carats | | $25,076.60 |

D001868

```
TVS1
ABE          50,000          TERRITORIAL FEES    125,000
NORFOLK      50,000          MONTHLY FEES        394,000
HAMPTON      25,000          NANCY-TVS & TVS,Jr   10,000
           ---------                            ---------
            125,000                              529,000
```

| | ABE | NOR | HMP | LNS | YOR | SABE | PBG |
|---|---|---|---|---|---|---|---|
| 1981 | 4,000 | | | | | | |
| 1982 | 12,000 | | | | | | |
| 1983 | 12,000 | 4,000 | | | | | |
| 1984 | 12,000 | 12,000 | 5,000 | | | | |
| 1985 | 12,000 | 12,000 | 12,000 | | | | |
| 1986 | 12,000 | 12,000 | 12,000 | 2,000 | 2,000 | | |
| 1987 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | | |
| 1988 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | | |
| 1989 | 12,000 | 12,000 | 6,000 | 12,000 | 6,000 | | |
| 1990 | 12,000 | 12,000 | closed | 12,000 | 6,000 | 3,500 | 1,500 |
| 1991 | 12,000 | closed | closed | 12,000 | 6,000 | 6,000 | 6,000 |
| | 124,000 | 88,000 | 59,000 | 62,000 | 44,000 | 9,500 | 7,500 |

+ *25,000
= *554,000.

D001869

# EXHIBIT E

*&Agreement\Licenses\Vanscoy.wkg March 8, 1993 T-Q*

*Rdg. agreement.*

*READING
Van Scoy
Agreement*

## AGREEMENT

Thomas A. Van Scoy, Sr. (hereinafter generally referred to as "Van Scoy"), a citizen of the United States trading as Van Scoy Diamond Mine at 154 Mundy Street, Wilkes-Barre, Pennsylvania, 18702, and Van Scoy Diamond Mine of Reading, Pa., a partnership of Lew M. Hill and James C. Sweeney (hereinafter individually and collectively referred to as "Reading Partnership") organized under the laws of Pennsylvania, having a place of business at 3039 N. Fifth Street, Reading, Pennsylvania, 19605, as the parties to this Agreement, intending to be legally bound, hereby agree as follows:

**1      Background**

1.1  Van Scoy operates certain retail jewelry businesses and is the owner of United States trademark registration 1,140,958 for the mark "Van Scoy Diamond Mine" for use in connection with retail jewelry store services.

1.2  Reading Partnership operates retail jewelry stores in Reading, Pottsville and Pottstown, Pennsylvania and trades in those areas under the name "Van Scoy Diamond Mine".

1.3  Reading Partnership has paid certain monies to Van Scoy respecting the right to trade under the name "Van Scoy Diamond Mine" in the Reading, Pottsville and Pottstown, Pennsylvania areas. In connection therewith Reading Partnership contends that it was to have received certain assistance and services from Van Scoy, which

- 1 -



EXHIBIT
PH's #11
10131054?

D001848

*c:\agreements\diamondinventory.trig March 5, 1991 T-Q*

Reading Partnership contends it has not received and which Van Scoy disputes.

1.4    The parties, having certain differences in their views as to their legal rights and obligations respecting their dealings heretofore and in the future and choosing to compromise those differences rather than resort to litigation, have reached this Agreement.

2    **Definitions**

As used herein the following terms, including plurals and variants thereof, shall have the meanings stated:

2.1    "Territory" means Berks, Schuylkill and Montgomery counties of Pennsylvania.

2.2    "Mark" means the mark "Van Scoy Diamond Mine" as registered on the Principal Register of the United States Patent and Trademark Office pursuant to registration 1,140,958, and marks and names similar thereto in sound, appearance and/or commercial connotation, including the surname "Van Scoy".

3    **Warranties, Representations and Guarantees**

3.1    Van Scoy has no extant contractual obligations which conflict with any of the obligations Van Scoy has incurred hereunder or which will interfere with Van Scoy's ability to perform the obligations incurred hereunder.

3.2    Reading Partnership has no extant contractual obligations which conflict with any of the obligations Reading Partnership has

- 2 -

c:\agreement\diamond\vansocy.rtg March 8, 1988 T-G

incurred hereunder or which will interfere with Reading Partnership's ability to perform the obligations incurred hereunder.

3.3   Reading Partnership shall not challenge or dispute, through either a cancellation proceeding in the United States Patent and Trademark Office or a declaratory judgment claim or counterclaim in a United States District Court, the validity or enforceability of U.S. trademark registration 1,140,958 for "Van Scoy Diamond Mine".

3.4   Van Scoy shall not use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

3.5   Van Scoy shall not grant any right to any third party to use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

3.6   Reading Partnership shall continue to conduct its retail jewelry business using the same high standards of integrity in dealing with the public and continue to offer the same high quality jewelry products and jewelry service as Reading Partnership has offered heretofore, to the extent Reading Partnership can do so and yet continue to meet the prices of its competition.

3.7   Van Scoy and Reading Partnership state their individual and joint intentions to take all reasonable measures, consistent

- 3 -

c:\programs\diamond\vansooy.rdg March 4, 1993 T-Q

with their rights and obligations to each other as set forth herein, to protect the Mark and to maintain the enforceability of the Mark against third parties.

3.8  Neither party shall do indirectly, or through any third party, anything which if done directly would amount to breach of this Agreement.

## 4  Grant

4.1  Van Scoy irrevocably grants to Reading Partnership for the term of this Agreement an exclusive right and license to use and to trade under the Mark in the Territory in the course of conducting diamond and jewelry business.

## 5  Performance Rights and Obligations

5.1  Van Scoy shall give prompt notice to Reading Partnership of any attack on the Mark in any judicial or administrative forum. In the event Van Scoy elects not to defend the Mark against such an attack, Reading Partnership shall have the right, but no obligation, to defend the Mark against any such attack, at Reading Partnership's expense.  Van Scoy shall cooperate with Reading Partnership with any such defense.

5.2  Van Scoy shall give prompt notice to Reading Partnership of any infringement of the Mark, whether within or outside of the Territory, and shall notify Reading Partnership of whether Van Scoy intends to assert the Mark against the infringer.  In the event Van Scoy elects not to institute suit against any such infringer,

- 4 -

D001851

*c:\agreements\diamond\vanscoy.sdg March 8, 1993 T-Q*

Reading Partnership shall have the right, but no obligation, to institute suit against any such infringer in Van Scoy's name. Any monetary recovery by Reading Partnership in any such suit shall be for the account of Reading Partnership. Van Scoy shall cooperate with Reading Partnership in prosecuting any such suit.

5.3   In the event Van Scoy wishes to exhibit any of Reading Partnership's operations to any third party as a demonstration of commercial success achieved using the Mark, Reading Partnership shall cooperate with Van Scoy by opening Reading Partnership's facilities to inspection by such third parties.

6   **Monetary Consideration**

6.1   In consideration of the license, rights and releases granted and undertakings made herein, Reading Partnership shall pay Van Scoy $30,000.00 upon execution of this Agreement.

7   **Disclaimers**

7.1   Nothing herein shall be construed to create or imply any obligation on the part of Van Scoy to provide any type of advertising support or promotional assistance respecting the ongoing conduct of retail jewelry business by Reading Partnership under the Mark in the Territory.

7.2   Nothing herein shall be construed to create any obligation on the part of Van Scoy to provide Reading Partnership with any other kind of commercial assistance including, but not limited to, identification of or introduction to suppliers of

- 5 -

D001852

c:\gromed\diamond\memory.rdg March 8, 1993 T-Q

diamonds or other products sold at retail in the jewelry business.

**8   Releases**

8.1  Each party hereby releases the other party from any and all claims which have accrued prior to the date of this Agreement and which are assertable against the other party, irrespective of whether the other party has ever been notified of any such claims(s).

**9   Assignment**

9.1  This Agreement including the rights granted herein shall be freely assignable by each party without consent of the other party.  A party assigning any right under this Agreement shall promptly give notice of the same to the other party.

**10   Choice of Law**

10.1 This Agreement shall be construed and governed according to the laws of contract construction of the Commonwealth of Pennsylvania.

**11   Force Majeure**

11.1   Neither party hereto shall be liable for failure to perform obligations hereunder due to, by way of example and not by way of limitation, act of God, war, riot, fire, flood, invasion, earthquake, epidemic, interruption of transportation, energy shortage, explosion, or any other material cause beyond the reasonable anticipation of the parties hereto and performance of obligations hereunder shall be suspended during, but not longer

- 6 -

c:\represent\Hanson\Summary.rtg March 8, 1993  T-Q

than, the existence of such cause.

## 12   Indemnification

12.1   Neither party hereto shall be liable to the other party for any personal injury or incidental or consequential property damages suffered by the other party hereto, or by any third party, resulting from any activity of either of the parties under or relating to this Agreement.

12.2   In the event of any claim against a party to this Agreement by any third party alleging personal injury and/or property damage resulting from any action or failure to act by the other party hereto, such other party shall indemnify and hold harmless the first party against such claim.

## 13   Notices

13.1   Notices hereunder shall be in writing and shall be sufficiently given by a party to the remaining party if addressed to the remaining party as indicated at the preamble of this Agreement and deposited in the United States mail as registered mail, return receipt requested, with postage prepaid.

## 14   Breach

14.1   Upon failure of any party hereto (i) to fulfill any obligation under this Agreement and (ii) to remedy any such failure within sixty (60) days after written demand therefor by the other party, such other party may terminate this Agreement within ninety (90) days after the written demand.  Such termination shall be

- 7 -

D001854

c:\agreement\licensee\Swanson.clg March 8, 1988 T-Q

without prejudice to any other rights either party may have growing out of this Agreement.

14.2 In lieu of terminating the Agreement, a party adversely affected by a failure to perform an obligation hereunder shall have the right to sue for specific performance respecting performance of the obligation. Regarding specific performance, the parties expressly acknowledge that the uniqueness of the Mark may make money damages inadequate to compensate a party for damages sustained as a result of failure to perform an obligation.

## 15 Merger

15.1 This written Agreement sets forth the entire understanding between the parties hereto as to their rights and obligations respecting the Mark and the Territory and merges all prior discussions and negotiations between the parties concerning such rights and obligations and neither party shall be bound by any conditions, definitions, warranties, representations, or guarantees with respect to such rights and obligations other than as expressly provided in this written Agreement.

## 16 Severability

16.1 This Agreement shall be severable. In the event any portion or provision of this Agreement is deemed by any court of competent jurisdiction to be unenforceable, illegal or contrary to public policy, this Agreement shall remain in force as if the adjudicated portion or provision of the Agreement did not exist.

– 8 –

D001855

c:\agreement\diamond\vanscoy.rdg March 8, 1993 7-Q

## 17 Waiver

17.1    Failure of either party at any time or from time to time to exercise any right under this Agreement shall not be deemed a waiver of such right nor shall it prevent the party from subsequently asserting or exercising such right.

## 18 Term

18.1    This Agreement shall be effective on the later date signed by the later-to-sign of the parties hereto and shall remain in effect thereafter for so long as Reading Partnership, or any successor in interest thereto, conducts a retail jewelry business in the Territory and for three (3) years thereafter.


IN WITNESS HEREOF, the parties have executed this Agreement on the dates and at the places indicated below.


Thomas A. Van Scoy, Jr.                Van Scoy Diamond Mine of
                                       Reading, Pa.


——————————————                         By: ————————————————

Date: ————————————                     Date: ——————————————

Place: ———————————                     Place: ——————————————


Witness                                Witness


- 9 -

D001856

# EXHIBIT F

# REDACTED

# EXHIBIT G

# REDACTED

# EXHIBIT H

**REDACTED**

# EXHIBIT I

LAW OFFICES OF

# MICHAEL F. PETOCK

INTELLECTUAL PROPERTY ATTORNEY

FAX 610-933-9300

MFP@IPLaw-Petock.com

www.IPLaw-Petock.com

46 THE COMMONS AT VALLEY FORGE

1220 VALLEY FORGE ROAD

POST OFFICE BOX 856

VALLEY FORGE, PENNSYLVANIA 19482-0856

PATENT, TRADEMARK

AND

RELATED MATTERS

TELEPHONE

610-935-8600

November 18, 2004

Kurt and Donna Van Scoy
Diamond Mine of Delaware, Inc.
1117 Churchmans Road
Newark, DE 19713

**CERTIFIED MAIL**
**Return Receipt Requested**

Re:    Infringement of Service Marks and Trademark of
Mr. Wayne Van Scoy - U.S. Service Mark Reg. No.
1,140,958 for the Mark "VAN SCOY DIAMOND MINE"
for Retail Jewelry Store Services in International Class 42
and Trademark Reg. No. 1,140,711 for the Mark
"VAN SCOY DIAMOND MINE" for Jewelry and
Precious Stones in International Class 14
<u>My File:  443-12</u>

Dear Mr. and Mrs. Van Scoy:

I represent Mr. Wayne Van Scoy in intellectual property matters.

My client owns the rights in the above-identified service mark and trademark registrations.  I am enclosing a copy of each of the above-identified registrations for your convenience.

It is hereby demanded that you immediately cease and desist from infringement of the above-identified federally registered service mark and trademark of Mr. Wayne Van Scoy and account for past infringement.  You must immediately stop using any form of the name "VAN SCOY DIAMOND MINE" and confusing similar variations thereof on the name of your store, in advertising, in commercials, on stationary, boxes, bags, literature, internet website and any other place where you are using the mark in connection with your business. It is important that you stop all use immediately as Mr. Wayne Van Scoy intends to have a franchise moving into your area.

The Trademark Laws provide for significant remedies including, but not limited to, recovery of your profits, damages multiplied by three, an injunction and the payment of Mr. Wayne Van Scoy's attorney's fees.



Kurt and Donna Van Scoy                    -2-                    November 18, 2004

A response to this letter is due within ten (10) days giving assurance that infringement will cease.

This letter is written without prejudice to any position that Mr. Wayne Van Scoy may take should litigation prove necessary.

If I do not receive a response from you, it will be understood that the foregoing is correct.

Sincerely,

MICHAEL F. PETOCK

Certified Mail No. 7099 3400 0003 9206 3270

CC:  Mr. Wayne Van Scoy

MFP/rks
KVanSc11.014

Int. Cl.: 42

Prior U.S. Cl.: 101

**United States Patent and Trademark Office**

10 Year Renewal/New Cert.

Reg. No. 1,140,958

Registered Oct. 28, 1980

Renewal Term Begins Oct. 28, 2000

## SERVICE MARK
## PRINCIPAL REGISTER
## REGISTRATION ASSIGNED

### VAN SCOY DIAMOND MINE

VAN SCOY, WAYNE (UNITED STATES CITIZEN)
154 MUNDY STREET
WILKES-BARRE, PA 18702, BY ASSIGNMENT VAN SCOY DIAMOND MINES, INC. (PENNSYLVANIA CORPORATION) EDWARDSVILLE, PA

APPLICANT MAKES NO CLAIM TO THE EXCLUSIVE USE OF THE WORD "DIAMOND" APART FROM THE MARK AS SHOWN IN THE DRAWINGS, BUT RESERVES ANY COMMONLAW RIGHTS IT MAY HAVE THEREIN.

FOR: [ RENDERING OF TECHNICAL AID AND ASSISTANCE IN THE ESTABLISHMENT AND/OR OPERATION OF RETAIL JEWELRY STORES ], IN CLASS 35 (U.S. CLS. 100, 101 AND 102).
FIRST USE 5-26-1977; IN COMMERCE 5-26-1977.

FOR: RETAIL JEWELRY STORE SERVICES, IN CLASS 42 (U.S. CL. 101).
FIRST USE 11-0-1976; IN COMMERCE 3-11-1977.
SER. NO. 73-169,527, FILED 5-8-1978.



*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Oct. 2, 2001.*

*Nicholas P. Godici*

**DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE**

Int. Cl.: 14

Prior U.S. Cl.: 28

Reg. No. 1,140,711

United States Patent and Trademark Office    Registered Oct. 21, 1980

10 Year Renewal/New Cert.    Renewal Term Begins Oct. 21, 2000

## TRADEMARK
## PRINCIPAL REGISTER
## REGISTRATION ASSIGNED

## VAN SCOY DIAMOND MINE

VAN SCOY, WAYNE (UNITED STATES CITIZEN)
154 MUNDY STREET
WILKES-BARRE, PA 18702, BY ASSIGNMENT VAN SCOY DIAMOND MINES, INC. (PENNSYLVANIA CORPORATION) EDWARDSVILLE, PA
APPLICANT MAKES NO CLAIM TO THE EXCLUSIVE USE OF THE WORD "DIAMOND" APART FROM THE MARK AS SHOWN, BUT RESERVES ANY COMMON LAW RIGHTS IT MAY HAVE THEREIN.

FOR: JEWELRY AND PRECIOUS STONES, IN CLASS 14 (U.S. CL. 28).

FIRST USE 3-11-1977; IN COMMERCE 3-11-1977.

SER. NO. 73-169,526, FILED 5-8-1978.



*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Oct. 2, 2001.*

*Nicholas P. Godici*

DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *"Return Receipt Requested"* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

Kurt and Donna Van Scoy
Diamond Mine of Delaware, Inc.
1117 Churchmans Road
Newark, DE 19713

4a. Article Number

7099 3400 0003 9206 3270

4b. Service Type
- ☐ Registered
- ☑ Certified
- ☐ Express Mail
- ☐ Insured
- ☐ Return Receipt for Merchandise
- ☐ COD

7. Date of Delivery    11/20/04

5. Received By: (Print Name)    Annette D'Angelo

6. Signature: (Addressee or Agent)    X

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1994    Domestic Return Receipt

*Is your RETURN ADDRESS completed on the reverse side?*

*Thank you for using Return Receipt Service.*

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Print your name, address, and ZIP Code in this box •

Michael F. Petock, Esquire
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856

RECEIVED

NOV 2 2 2004

