IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAYNE VAN SCOY, | ) | **PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05-108-KAJ |
| v. | ) | |
| | ) | |
| VAN SCOY DIAMOND MINE OF | ) | |
| DELAWARE, INC., a Delaware corporation, | ) | |
| KURT VAN SCOY, and DONNA VAN SCOY, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN RESPONSE TO
MOTION OF DEFENDANTS VAN SCOY DIAMOND MINE OF DELAWARE, INC.,
KURT VAN SCOY AND DONNA VAN SCOY FOR SUMMARY JUDGMENT
(REDACTED)**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day, (I.D. #2403)
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock
Michael C. Petock
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856
(610) 935-8600

Dated:  December 12, 2005
164213.1

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

NATURE AND STAGE OF PROCEEDING ........................................................1

SUMMARY OF ARGUMENT ..............................................................................2

    I.    Defendants' Motion For Summary Judgment
        On Their Laches Defense Should Be Denied ..........................................2

    II.   Kurt Van And Donna Van Scoy Are Personally Liable For Directing
        The Infringement By Van Scoy Diamond Mine Of Delaware, Inc. ........4

    III.  Plaintiff Never Sought To Recover For Periods Going Back
        Beyond The Applicable Period Of The Statute Of Limitations ..............5

COUNTERSTATEMENT OF UNCONTESTED FACTS ......................................5

ARGUMENT ........................................................................................................12

    I.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
        ON THEIR LACHES DEFENSE SHOULD BE DENIED ....................12

        A.    THERE WAS NO INEXCUSABLE DELAY ON THE
              PART OF PLAINTIFF IN INSTITUTING SUIT ....................12

            1.    The Alleged Permission Given To Defendants
                 By Tommy Van Scoy, Sr. Should Be Characterized
                 As A Revocable License Or A License At Will That
                 Was Terminated By Plaintiff's Cease and Desist
                 Letter of November 18, 2004 ........................................13

            2.    There Was No Inexcusable Delay Because Plaintiff
                 Did Not Have A Right To Seek An Injunction Until Defendants'
                 Alleged License Was Terminated By
                 The Cease And Desist Letter Of November 18, 2004 ...15

            3.    Defendants' Contentions That Plaintiff Should Have
                 Brought Suit Earlier On The Basis Of Defendants'
                 Infringing Website And On The Basis Of Plaintiff's
                 Plans To Expand Into Defendants' Infringing Territory
                 Can Not Serve As A Basis To Find Inexcusable Delay ...15

B.   SINCE ANY ALLEGED DELAY ON THE PART OF
     PLAINTIFF WAS WELL WITHIN ANY CONCEIVABLE STATUTE
     OF LIMITATIONS FOR A TRADEMARK INFRINGEMENT CAUSE
     OF ACTION THE BURDEN
     TO PROVE THE ELEMENTS OF LACHES REMAINS
     ON DEFENDANTS AND DEFENDANTS WILL NOT BE
     ABLE TO PROVE ALL THE ELEMENTS OF LACHES ...................19

C.   DEFENDANTS' OPENING SUMMARY JUDGMENT
     MEMORANDUM IS AN ATTEMPT TO UNFAIRLY
     PREJUDICE PLAINTIFF WAYNE VAN SCOY ....................23

D.   DEFENDANTS ARE NOT ENTITLED TO A
     FINDING OF LACHES BECAUSE THEY HAVE
     UNCLEAN HANDS ...................................................27

II.   KURT AND DONNA VAN SCOY ARE PERSONALLY
      LIABLE FOR DIRECTING THE INFRINGEMENT BY
      VAN SCOY DIAMOND MINE OF DELAWARE, INC ....................30

III.  PLANITIFF NEVER SOUGHT TO RECOVER FOR
      PERIODS GOING BACK BEYOND THE APPLICABLE
      PERIOD OF THE STAUTE OF LIMITATIONS ....................36

CONCLUSION ...........................................................37

# TABLE OF AUTHORITIES
## CASES

<u>Page</u>

<u>Autozone, Inc. v. Tri-State Auto Outlet, Inc.</u>,
    2005 WL 1353797 (D. Del. June 7, 2005) ..................................................5,36

<u>Brandywine Mushroom Company v. Hockessin Mushroom Products, Inc.</u>,
    682 F.Supp. 1307 (D. Del. 1988) .............................................30,31,32

<u>Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.</u>,
    88 F.Supp 2d 914 (C.D. ILL. 2000) ..................................................13,14

<u>Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.</u>,
    847 F.Supp. 18 (E.D. N.Y. 1994) .......................................................14

<u>Donsco, Inc. v. Casper Corp.</u>,
    587 F.2d 602 (3d Cir. 1978).................................................................30,31

<u>Exxon Corporation v. Oxford Clothes, Inc.</u>,
    109 F.3d 1070 (5th Cir. 1997) .........................................................13

<u>Halstead v. Grinnan</u>,
    152 US 412 (1894)............................................................................17

<u>Holiday Inns of America, Inc. v. B & B Corporation</u>,
    409 F.2d 614 (3rd Cir. 1969) .........................................................16,17

<u>Johanna Farms, Inc. v. Citrus Bowl, Inc.</u>,
    468 F.Supp. 866 (E.D.N.Y. 1978) ...................................................*passim*

<u>MacLean Associates, Inc. v. WM. M. Mercer-Meidinger-Hansen, Inc.</u>,
    952 F.2d 769, 778-779 (3d Cir. 1991) .............................................13

<u>Mead Johnson & Co. v. Baby's Formula Service, Inc.</u>,
    402 F.2d 19 (5th Cir. 1968) ..............................................................31

<u>Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.</u>,
    143 F.3d 800 (3d Cir. 1998) .............................................................*passim*

<u>Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.</u>,
    592 F.Supp. 648 (D. Mass. 1984) ...................................................31

iii

<u>Profitness Phys. Therapy Ctr. v. Pro-Fit Orthopedic & Sports Phys. Threapy,</u>
314 F.3d 62 (2nd Cir. 2002) ................................................................................17

<u>Santana Products Inc.v. Bobrick Washroom Equipment, Inc.,</u>
401 F.3d 123 (3d Cir. 2005) .............................................................................5,36

<u>University of Pittsburgh v. Champion Products Inc.,</u>
686 F.2d 1040 (3rd Cir.1982) ........................................................................ *passim*

<u>University of Pittsburgh v. Champion Product Inc.,</u>
459 U.S. 1087 (1982) ....................................................................................22,23

<u>What a Burger of Virginia v. Whataburger Inc.,</u>
357 F.3d 441 (4th Cir. 2004) ...........................................................................19

## TABLE OF CONTENTS OF EXHIBITS

EX. A      Certified copy of Registration No. 1,140,958 showing status and title and Certified copy of Registration No. 1,140,711 showing status and title

EX. B      Bankruptcy Order dated January 4, 2001 of the Bankruptcy Court for the Middle District of Pennsylvania

EX. C      DECLARATION OF WAYNE VAN SCOY

EX. D      MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' VAN SCOY DIAMOND MINE OF DELAWARE, INC., KURT VAN SCOY AND DONNA VAN SCOY MOTION FOR SUMMARY JUDGMENT

EX. E      Bankruptcy Docket Report for Adversary Proceeding No. 5:96-AP-00196

EX. F      Cease and desist letter (PX 2)

EX. G      Letter of Intent (Ex D-5) **(Confidential)(REDACTED)**

EX. H      Agreement between Thomas A. Van Scoy, Sr. and Lew M. Hill (PX 41)

EX. I      Agreement between Thomas A. Van Scoy, Sr. and International Diamond Company, Inc (Mark Maurer). (PX 43)

EX. J      DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSE AND COUNTERCLAIMS

EX. K      Transcript of deposition of Kurt Van Scoy of July 26, 2005

EX. L      Transcript of 30(b)(6) deposition of Kurt Van Scoy of October 3, 2005 **(Confidential- For Attorney's Eyes Only)(REDACTED)**

EX. M      Deposition Transcript of Wayne Van Scoy of August 17, 2005 **(Confidential- For Attorney's Eyes Only)(REDACTED)**

EX. N      Deposition Transcript of Wayne Van Scoy of October 4, 2005 **(Confidential- For Attorney's Eyes Only)(REDACTED)**

EX. O      Transcript of deposition of Donna Van Scoy of September 19, 2005

EX. P      Deposition Transcript of Lori McMichaels of September 19, 2005

EX. Q      Deposition Transcript of Lew Hill of October 5, 2005

EX. R          Deposition Transcript of Mark Maurer of October 6, 2005

EX. S          Deposition Transcript of **REDACTED** of October 4, 2005
               **(Confidential)(REDACTED)**

EX. T          Plaintiff's Warranty Certificate

EX. U          Defendants' Warranty Certificate (PX 5 & 31)

EX. V          Deposition Transcript of Jacqueline Savoca of October 4, 2005
               **(Confidential)(REDACTED)**

EX. W          Minutes of Special Meeting of Board of Director of Van Scoy Diamond Mine of
               Delaware, Inc. dated August 22, 1996

EX. X          DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS
               FOR ADMISSIONS

EX. Y          NetworkSolutions Whois Search Results of 5/10/05 for
               vanscoydiamondmine.com

EX. Z          NetworkSolutions Whois Search Results of 11/2/05 for
               vanscoydiamondmine.com

EX. AA         Order Vacating Opinion and Judgment in <u>Autozone, Inc. v. Tri-State Auto Outlet,
               Inc.</u>

EX. BB         Defendants' Amended and Supplemental Responses To Plaintiff's First Set of
               Interrogatories.

## INTRODUCTION

Plaintiff Wayne Van Scoy respectfully submits this Answering Brief in response to Motion Of Defendants Van Scoy Diamond Mine Of Delaware, Inc., Kurt Van Scoy And Donna Van Scoy For Summary Judgment (D.I. 116).

## NATURE AND STAGE OF PROCEEDING

This is a suit for trademark and service mark infringement, misappropriation of an internet domain name and unfair competition where the Defendants have used the exact mark, VAN SCOY DIAMOND MINE, for exactly the same types of goods and services and have misappropriated the domain name www.vanscoydiamondmine.com. Plaintiff has brought this suit pursuant to his obligation as a trademark owner to stop infringement. There is no exception when the infringers are family members and a corporation controlled by family members. Plaintiff filed three dispositive motions in support of his position that his claims are not barred by the doctrine of laches, that the marks "VAN SCOY DIAMOND MINE" that are the subject of this suit are not invalid and that Defendants have infringed those marks. Defendants filed one dispositive motion responded to herein. The Scheduling Order provided that answering briefs and supporting affidavits shall be filed on or before November 21, 2005. Defendants filed a proposed order extending the time for filing answering Briefs until November 30, 2005 which was granted. At Defendants' request, the Court has again extended the deadlines for summary judgment briefing to December 5, 2005 for answering briefs and to December 29, 2005 for reply briefs.

## SUMMARY OF ARGUMENT

I.   **Defendants' Motion For Summary Judgment
     <u>On Their Laches Defense Should Be Denied.</u>**

There has been no inexcusable delay on the part of Plaintiff Wayne Van Scoy in instituting suit and therefore the burden remains on Defendants to prove all of the elements of their laches defense. Defendants have not proven and can not prove that Plaintiff's alleged delay was inexcusable or that they have been prejudiced by such alleged delay.

The Third Circuit requires that any period of delay be measured only from the time in which the plaintiff has grounds to seek an injunction. In a situation such as this where the Defendants claim to have permission or a license to use Plaintiff's mark the Third Circuit has held that a plaintiff has no grounds to seek an injunction until the defendant's license is terminated. Plaintiff terminated Defendants' alleged license by sending Defendants a cease and desist letter on November 18, 2004. Since Plaintiff filed suit immediately after not receiving a requested substantive response to the cease and desist letter, there was no delay at all on the part of Plaintiff Wayne Van Scoy in instituting suit.

Defendants allege in their Opening Summary Judgment Memorandum that Plaintiff should have brought suit in July 2002 because of the alleged existence at that time of Defendants' infringing website which offers products for sale in Plaintiff's sales area. As pointed out above, this argument ignores established Third Circuit law that holds that there is no right to an injunction until any license that might be held by the defendant is terminated. Even if it were determined that Defendants did not have a license there still would not have been inexcusable delay. There is no evidence of record to establish when Defendants' website was actually established. The individual designated by Defendant Van Scoy Diamond Mine of

Delaware, Inc. as the person most knowledgeable with respect to the website testified in the 30(b)(6) deposition that he had no idea as to when the website became operational. Plaintiff can not be charged with inexcusable delay for not acting on the existence of a website which, for as far as the record is concerned, may have become operational the day Plaintiff discovered it in July 2004.

Furthermore, Defendants allege in their Opening Summary Judgment Memorandum that Plaintiff should have brought suit "years ago" because of Plaintiff's plans to expand his business into Defendants' infringing territory. The Third Circuit has held, however, that a plaintiff does not have a basis to seek an injunction until he is actually ready to expand into the infringing territory. Plaintiff Wayne Van Scoy's plan to expand his business through a licensee into Delaware only recently became concrete and, as such, Plaintiff can not be charged with inexcusable delay for the period in which he was merely negotiating with his future licensee.

Since there was no inexcusable delay on the part of Plaintiff in instituting suit, the burden remains on Defendants to prove each of the elements of their laches defense. For the reasons already discussed, Defendants have failed to prove that there was inexcusable delay or any delay for that matter. Furthermore, Defendants have failed to establish prejudice resulting from any alleged delay sufficient to support their laches defense.

Additionally, it is pointed out that with respect to Plaintiff's Third Cause of Action for Defendants' misappropriation of Plaintiff's federally registered marks as a domain name, Defendants registered Plaintiff's marks as an internet domain name on July 12, 2002 and Plaintiff filed suit on February 23, 2005. Defendants did not even mention Plaintiff's Third Cause of Action in its Opening Summary Judgment Memorandum, and at any rate, suit was filed within a three year statute of limitations. The burden clearly remains on Defendants to prove the elements

of laches with respect to this claim yet Defendants have not even addressed the issue.

**II.    Kurt And Donna Van Scoy Are Personally Liable For**
**Directing The Infringement By Van Scoy Diamond Mine Of Delaware, Inc.**

Third Circuit law holds that individuals are liable for trademark infringement where they have directed the acts of infringement.  In so holding, the Third Circuit said that such liability is "is distinct from the liability resulting from piercing the corporate veil."  Therefore, Defendants' argument in its Opening Summary Judgment Memorandum concerning the alter ego theory is completely irrelevant.  Defendants Kurt and Donna Van Scoy are personally liable because they have admitted to directing acts of corporate Defendant Van Scoy Diamond Mine of Delaware, Inc. that constitute infringement.

Defendants admitted in their Answer to the Complaint that the actions of Defendant Van Scoy Diamond Mine of Delaware, Inc. have been directed by Defendant Kurt Van Scoy and by Defendant Donna Van Scoy.  Defendant Kurt Van Scoy admitted that he directs the advertising of Van Scoy Diamond Mine of Delaware, Inc. which uses the mark VAN SCOY DIAMOND MINE in the operation of its jewelry store.  Donna admitted that she makes key decisions with respect to use of the mark, she testified that she changed the sales receipts by blocking out the word "MINE" from VAN SCOY DIAMOND MINE OF DELAWARE, INC. after receipt of the cease and desist letter and then decided it was no longer necessary to do so.  Donna Van Scoy did not consult with Kurt Van Scoy before telling two employees to cross out the word "MINE" from the sales receipts.  Kurt makes decisions as to changing the store name and sign and the name used on the internet.  Kurt directed the adoption of Plaintiff's registered marks as the internet domain name for the corporation.  Kurt and Donna have adopted and use a warranty certificate which is substantially identical to Plaintiff's warranty certificate, and Defendants admit that Defendants' warranty certificate creates an association with other Van Scoy Diamond Mine

stores, namely Plaintiff's store. Kurt Van Scoy directed the registration of the internet domain name www.vanscoydiamondmine.com and directed the creation and operation of the website using the mark VAN SCOY DIAMOND MINE for the sale of jewelry and diamonds.

### III.  Plaintiff Never Sought To Recover For Periods Going Back <u>Beyond The Applicable Period Of The Statute Of Limitations.</u>

Plaintiff notes that the <u>Autozone</u> case relied upon by Defendants to show the applicable statute of limitations has been vacated. Plaintiff believes that a more appropriate statute of limitations would be a six year statute of limitations, consistent with that found by the Third Circuit in the <u>Santana</u> case for a case arising in Pennsylvania. Plaintiff has been unable to find any Supreme Court of Delaware case holding that the statute of limitations for trademark infringement is three years.

Defendants' Motion on the issue of the statute of limitations is more in the nature of Defendants requesting an advisory opinion from the Court. However, Plaintiff does seek to recover, in addition to an injunction, all remedies available to him including, but not limited to, Defendants' profits, Plaintiff's damages, statutory damages, corrective advertising, attorney's fees and any other recovery to which Plaintiff is entitled, within the applicable period of the statute of limitations.

### COUNTERSTATEMENT OF UNCONTESTED FACTS

Plaintiff is the owner of Federal Trademark Registration No. 1,140,711 and Federal Service Mark Registration No. 1,140,958 (the "Marks at Issue") both for the marks "VAN SCOY DIAMOND MINE." (Trademark and Service Mark Registrations, EX. A; Wayne Van Scoy Decl. ¶ 2, EX. C). Both Registrations are in full force and effect and have been made incontestable under Section 15 of the Trademark Act. (Trademark and Service Mark Registrations, EX. A; Wayne Van Scoy Decl. ¶ 2, EX. C ). The Marks at Issue were originally

registered by Plaintiff's father's corporation, Van Scoy Diamond Mine, Inc., in 1980.

(Trademark and Service Mark Registrations, EX. A; Wayne Van Scoy Decl. ¶ 3, EX. C ).

Plaintiff's father's corporation used and licensed the marks "VAN SCOY DIAMOND MINE"

consistently in connection with the operation of retail jewelry stores between 1977 and 1994.

(Wayne Van Scoy Decl. ¶ 4, EX. C).

Plaintiff's father (Tommy Van Scoy, Sr.) filed for bankruptcy (the "Bankruptcy") on

September 23, 1994 in the United States Bankruptcy Court For The Middle District Of

Pennsylvania. (Defendants' Memorandum: 4, EX. D; Wayne Van Scoy Decl. ¶ 5, EX. C). As a

result of the Bankruptcy, the marks "VAN SCOY DIAMOND MINE" became part of the

Bankruptcy Estate. (Kurt:119, EX. K; Wayne Van Scoy Decl. ¶ 5, EX. C). Beginning December

29, 1994, the Trustee of the Bankruptcy Estate forced the closure of the Van Scoy Diamond Mine

store operated by Tommy Van Scoy, Sr. at 154 Mundy Street for almost one year. (Wayne: 17-

18, EX. M). Additionally, on July 3, 1996 the Trustee initiated Adversary Proceeding 5:96-AP-

00196 in an eventual successful attempt to enjoin various Van Scoy family members from use of

the marks "VAN SCOY DIAMOND MINE." (Bankruptcy Docket, EX. E; Kurt: 60, 62-63,

136-137, EX. L; Wayne: 19, EX. M).

Plaintiff Wayne Van Scoy, along with his licensee Rick Sendrick, expended a great deal

of effort during the Bankruptcy aimed at regaining possession of the marks "VAN SCOY

DIAMOND MINE" including paying the Trustee $70,000.00 to effectuate a settlement of the

Adversary Proceedings. (Settlement of Bankruptcy Proceedings: 3-4,  EX. B; Wayne: 20, EX.

M;  Wayne Van Scoy Decl. ¶ 6, EX. C).  Plaintiff acquired the marks and associated good will

pursuant to a settlement approved by the United States Bankruptcy Court for the Middle District

of Pennsylvania by its Order of January 4, 2001. (Settlement of Bankruptcy Proceedings: 3-4,

EX. B; Wayne Van Scoy Decl. ¶ 6, EX. C).    Plaintiff has used the marks continuously since

acquiring them in connection with the retail jewelry store he operates in Wilkes-Barre,

Pennsylvania.  (Wayne Van Scoy Decl. ¶ 8, EX. C).   Defendants did not contribute in any way to

acquiring the marks "VAN SCOY DIAMOND MINE" and Plaintiff Wayne Van Scoy's

Declaration attests that Defendants refused his requests for Defendants to contribute money to

help get the marks back from the Bankruptcy Estate.  (Wayne Van Scoy Decl. ¶ 7, EX. C).  This

is despite the fact that Defendants were operating a store in Delaware under the marks "VAN

SCOY DIAMOND MINE" at the time those marks were part of the Bankruptcy Estate with

knowledge that the name "VAN SCOY DIAMOND MINE" was "in with the Bankruptcy" and

that various family members were enjoined from use of the marks.  (Kurt:  119,121; EX. K; Kurt:

136-137, EX. L).

Defendants have operated a retail jewelry store using the mark "VAN SCOY DIAMOND

MINE" at 1117 Churchmans Road, Newark, DE 19713 since November 1994.  (Kurt: 23, 66, 69,

EX. K).  Defendants admit that they operate their retail jewelry store business in a geographic

area which is, except for its internet business, geographically distinct from the jewelry store

business in Wilkes-Barre, Pennsylvania.  (Defendants' Responses To Plaintiff's First Set Of

Requests For Admissions No. 27, Page 9, EX. X).  Defendants claim that they had permission or

a license to use the marks because in October of 1994 Tommy Van Scoy, Sr. gave Defendant

Kurt Van Scoy a sign that read "Diamond Mine" and said "[h]ere's the sign.  Good luck to you.  I

love you very much and I'm proud of you."  (Kurt: 9, 119, 138, EX. K; Kurt: 14, 60, 91, EX. L).

Defendant Kurt Van Scoy testified that the reason he felt that the Bankruptcy Court did not have

a right to enjoin Defendants from use of the mark was because the "bankruptcy was already in

progress at the time…[he] opened the store."  (Kurt: 134-135, EX. K).  As such, Defendants

contention in the "FACTS" section of their Opening Summary Judgment Memorandum that all of the activities of Tommy Van Scoy, Sr. which allegedly evidence Defendants' permission to use the marks took place while "Mr. Van Scoy was the undisputed owner of the trademark" is highly doubtful and is disputed. (Defendants' Memorandum: 5, EX. D).

Defendants have admitted that the actions of Defendant Van Scoy Diamond Mine of Delaware, Inc. have been directed by Defendant Kurt Van Scoy and by Defendant Donna Van Scoy. (Defendants' Answer, Pages 1, 2, 6, 8, Paragraphs 3, 4, 29, 30, 39, EX. J and D.I. 6). Defendant Kurt Van Scoy has admitted that he directs the advertising of Van Scoy Diamond Mine of Delaware, Inc. which uses the mark "VAN SCOY DIAMOND MINE" in the operation of its jewelry store. (Kurt: 8,14, EX. K; Donna: 10, EX. O). Donna admitted that she makes key decisions with respect to the use of the mark, she testified that she changed the sales receipts by blocking out the word "MINE" from VAN SCOY DIAMOND MINE OF DELAWARE, INC after receipt of the Cease and Desist Letter and then decided it was no longer necessary to do so. (Donna: 33-36 & 43-47, EX. O; Kurt: 47, EX. L). Kurt and Donna Van Scoy have adopted and use a warranty certificate which is substantially identical to Plaintiff's warranty certificate. (See: Defendants' Warranty Certificate attached as EX. U and Plaintiff's Warranty Certificate attached as EX. T; Donna: 62, EX. O; Wayne Van Scoy Decl. ¶ 13, EX. C). Kurt Van Scoy admitted that the use of Defendants' warranty certificate, which is substantially identical to Plaintiff's warranty certificate, creates an association with other Van Scoy Diamond Mine stores, namely Plaintiff's store. (Kurt: 40, EX. L). Kurt Van Scoy directed the registration of the internet domain name www.vanscoydiamondmine.com and directed the creation and operation of a website using the mark "VAN SCOY DIAMOND MINE" for the sale of jewelry and diamonds. (Kurt: 140-142, EX. K; Kurt 56-57, EX. L). Donna put up $20,000.00 to start the business. (Donna: 76, EX. O).

Donna signed a personal guarantee on the lease for the premises to open the Van Scoy Diamond Mine store. (Donna: 15-17, EX. O). Donna Van Scoy and Kurt Van Scoy are each 50% owners of Van Scoy Diamond Mine of Delaware, Inc. (Kurt: 5, EX. K; Donna: 8, 22, EX. O; Kurt: 138, EX. L). Both Kurt and Donna Van Scoy are corporate officers of Defendant Van Scoy Diamond Mine of Delaware, Inc. (Donna: 8, 22, EX. O; Kurt: 5, EX. K; Kurt: 138, L).

In July 2004 Plaintiff for the first time discovered the existence of Defendants' infringing website www.vanscoydiamondmine.com while using the internet at his store in Wilkes-Barre, Pennsylvania. (Wayne: 119-120, EX. M; Wayne Van Scoy Decl. ¶ 9, EX. C ). There is no evidence of record as to when Defendants' website became operational. (Kurt: 56, EX. L). Plaintiff's discovery of the website was the first time Plaintiff knew that Defendants were interfering with his business. (Wayne: 119-120, EX. M). The website operated by Defendants was hosted at the domain name www.vanscoydiamondmine.com. (Kurt: 139-140, EX. K). The website referred to Defendants' store as "Van Scoy Diamond Mine" and had pictures of Defendants' store showing a sign on the front of the store that read: "Van Scoy Diamond Mine." (Kurt: 145,148-149, EX. K). Additionally, Defendants offered jewelry products for sale through the website. (Kurt: 149-150, EX. K). The website featured a "Showcase Gallery" displaying color pictures of 716 jewelry products and their prices, all the "products that are available" for purchase. (Kurt: 150, EX. K). Defendant Van Scoy Diamond Mine of Delaware, Inc.'s most senior sales person and manager of Defendants' store stated that the website is used in the business "like a catalog." (Lori: 10, EX. P). Customers visiting the website could click on an image "[a]nd if they want to get more information about it, [they] get more information about it, click on it or certainly E-mail [Defendants] if they are interested in purchasing." (Kurt: 149-150, EX. K). Defendants admit to having sold through their website. (Kurt: 150, EX. K). Although

the domain name www.vanscoydiamondmine.com utilizes Plaintiff's exact federally registered mark, Defendants have refused to assign the domain name to Plaintiff. (Kurt: 144, EX. K) Furthermore, the domain name www.vanscoydiamondmine.com, which was set to expire on July 12, 2005, has recently been renewed, presumably by Defendants or by someone directed by Defendants. (Kurt: 144, EX. K; compare "Expiration Date" on WHOIS SEARCH RESULTS, EX. Y with "Expiration Date" on WHOIS SEARCH RESULTS, EX. Z). As such, Plaintiff has been unable to register his federally registered trademark as a domain name. (Wayne: 68-69, EX. N)

Plaintiff sent a Cease and Desist Letter to Defendants dated November 18, 2004, which Defendants received on November 20, 2004, requesting that Defendants immediately stop infringing the marks "VAN SCOY DIAMOND MINE." (Kurt: 13, EX. K; Kurt: 23, EX. L; Donna: 43-44, 53-54, EX. O; Cease and Desist Letter, EX. F). After not receiving a requested substantive response from Defendants to the Cease and Desist Letter, Plaintiff initiated this lawsuit in February 2005. (Wayne Van Scoy Decl. ¶ 10, EX. C). After Defendants received notice of this lawsuit Defendants ceased using the domain name www.vanscoydiamondmine.com and began using the domain name www.vanscoydiamondsofdelaware.com. (Kurt: 143-144, EX. K). Besides the difference in domain names, the website that was hosted at www.vanscoydiamondmine.com and the website that is presently hosted at www.vanscoydiamondsofdelaware.com are exactly the same in substance. (Kurt: 144, 149, EX. K). Defendants continue to offer products for sale through their website. (Kurt: 149-150, EX. K). Defendants also began crossing out "MINE" from "VAN SCOY DIAMOND MINE OF DELAWARE, INC" on their sales receipts after receipt of the Cease and Desist Letter. (Donna: 33-36 & 43-47, EX. O; Kurt: 47, EX. L).

Additionally, Plaintiff met **REDACTED** in the Summer or Fall of 2002 and

approximately two years ago initiated discussions with **REDACTED** about the possibility of

licensing the marks "VAN SCOY DIAMOND MINE" and opening a Van Scoy Diamond Mine

Store in Delaware. ( **REDACTED** : 32, 36-38, EX. S; Wayne: 97, EX. M; Wayne Van Scoy Decl. ¶ 11,

EX. C).  As time progressed Plaintiff Wayne Van Scoy's and **REDACTED** discussions became

more concrete and Plaintiff is now ready to expand his business through **REDACTED** into

Defendants' infringing area. ( **REDACTED** 68, EX. S; Wayne: 103-104, EX. M; Wayne Van Scoy Decl.

¶ 11, EX. C).**REDACTED** and Plaintiff on July 25, 2005 reduced their intention with respect to

the licensing arrangement to writing.  (Letter of Intent, EX. G; **REDACTED** : 68, EX. S; Wayne: 103, EX.

M).

Since July 2004, Defendants have not done anything to improve their store. (Kurt: 91,

EX. K).  In fact, except for minor improvements costing a few thousand dollars in approximately

1999 or 2000, Defendants have never done anything to improve their store.  (Donna: 85-86, EX.

O; Kurt: 91, EX. K).   Defendants also admitted that they have not expanded their store or

business in any way since they opened it.  (Kurt: 92, EX. K).  Furthermore, Defendants testified

that even at this time if they were forced to stop using the marks "VAN SCOY DIAMOND

MINE," the only reason that they would be prejudiced would be because "[Kurt Van Scoy's]

father gave [him] the name and [he] gave him the sign for the store."  (Kurt: 97-98, EX. K).

Defendants' statement of "FACTS" in their Opening Summary Judgment Memorandum

is littered with misleading, disputed, unsupported, and irrelevant facts in an attempt to unfairly

prejudice Plaintiff Wayne Van Scoy.  Most notably, Defendants allege that Plaintiff Wayne Van

Scoy's reason for bringing suit is because of jealously and personal animosity.  (Defendants'

Memorandum: 8, EX. D).  Nowhere in the record is there support for this contention.  To the

contrary, Plaintiff testified that the reason he brought suit was because of his belief that Defendants' website was interfering with his business. (Defendants' Memorandum: 12, EX. D; Wayne: 119-120, EX. M). Defendants' assertion in its statement of "FACTS" that Plaintiff has chosen only to pursue claims against his brother when other businesses operated by Lew Hill and Mark Maurer trade under names that include the words "Van Scoy" is blatantly misleading. (Defendants' Memorandum: 8-9, EX. D). First, besides Plaintiff and Defendants, no other businesses trade under the exact mark "VAN SCOY DIAMOND MINE." (Kurt: 49-50, EX. K; Kurt: 95, EX. L). More importantly, Plaintiff has no right to pursue claims against Mark Maurer and Lew Hill because, as the record clearly indicates, Mark Maurer and Lew Hill have since 1993 held exclusive rights to the marks "VAN SCOY DIAMOND MINE" in the limited geographic territories in which they operate. (Mark Maurer Agreement: § 4.1, EX. I; Lew Hill Agreement: § 4.1, EX. H; Wayne Van Scoy Decl. ¶ 12, EX. C).

## ARGUMENT

### I.    DEFENDANTS MOTION FOR SUMMARY JUDGMENT ON THEIR LACHES DEFENSE SHOULD BE DENIED

#### A.    THERE WAS NO INEXCUSABLE DELAY ON THE PART OF PLAINTIFF IN INSTITUTING SUIT.

The United States Court of Appeals for the Third Circuit held in Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc. that with respect to a laches defense, Defendants herein must allege and prove: 1) inexcusable delay on the part of Plaintiff in instituting suit; and 2) prejudice to Defendants resulting from such delay. Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 804 (3d Cir. 1998) (Emphasis supplied). For the following reasons Defendants will not be able to show any delay on the part of Plaintiff in instituting suit. As such, consistent with the holding in Pappan the burden remains on Defendants to prove all of the

elements of their laches defense, which Defendants can not do.

    1.    **The Alleged Permission Given To Defendants By Tommy Van Scoy, Sr. Should Be Characterized As A Revocable License Or A License At Will That Was <u>Terminated By Plaintiff's Cease and Desist Letter of November 18, 2004.</u>**

    A trademark license is a grant of permission to use the grantor's trademark. <u>Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.</u>, 88 F.Supp 2d 914, 920-921 (C.D. ILL. 2000). Even if the parties intend no formal licensing agreement, the course of conduct between a trademark owner and an accused infringer may create an implied license. <u>Exxon Corporation v. Oxford Clothes, Inc.</u>, 109 F.3d 1070, 1076 (5th Cir. 1997). <u>See also</u> <u>MacLean Associates, Inc. v. WM. M. Mercer-Meidinger-Hansen, Inc.</u>, 952 F.2d 769, 778-779 (3d Cir. 1991). Defendants claim that in October of 1994 Tommy Van Scoy, Sr., gave Defendants permission to use the marks "VAN SCOY DIAMOND MINE" when Tommy Van Scoy, Sr. gave Defendant Kurt Van Scoy a sign that read "Diamond Mine" and said "[h]ere's the sign. Good luck to you. I love you very much and I'm proud of you." (Kurt: 9, 119, 138, EX. K; Kurt: 14, 60, 91, EX. L). Defendant Kurt Van Scoy also claims that this alleged permission or implied license extended to his corporation, Defendant Van Scoy Diamond Mine of Delaware, Inc. (Kurt: 138, EX. K).

    Defendants erroneously claim in their statement of "Facts" that other acts by Tommy Van Scoy, Sr.,while he "was the undisputed owner of the trademark," evidence Defendants' permission to use the mark such as Tommy Van Scoy, Sr.'s "personal sale of a bracelet in 1997." (Defendants' Memorandum: 5, EX. D). There is no basis for Defendants to claim that Tommy Van Scoy, Sr. was the undisputed owner of the trademark in 1997 when, as Defendants point out in their Memorandum, Tommy Van Scoy, Sr. filed for bankruptcy on September 23, 1994 and on July 3, 1996 Adversary Proceeding 5:96-AP-00196 was initiated by the Trustee of the Bankruptcy Estate in the United States Bankruptcy Court For The Middle District Of

Pennsylvania in an eventual successful attempt to enjoin use by Van Scoy family members of the marks "VAN SCOY DIAMOND MINE." (Defendants' Memorandum: 6, EX. D;  Bankruptcy Docket,  EX. E; Kurt: 60, 62-63,136-137, EX. L; Wayne: 19, EX. M).

Furthermore, any license that Defendants may have had was a revocable license or a license at will and was therefore terminated by Plaintiff's Cease and Desist Letter of November 18, 2004 which was received by Defendants on November 20, 2004. (Kurt: 13, EX. K; Kurt: 23, EX. L; Donna: 43-44, 53-54, EX. O; Cease and Desist Letter, EX. F). "An agreement conferring a license to use a trademark for an indefinite time, whether oral, written or by implication, is terminable at will by the licensor." Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 847 F.Supp. 18, n. 1 (E.D. N.Y. 1994). See also Bunn-O-Matic Corp., 88 F.Supp 2d 914 at 922 ("A license containing no time frame is generally terminable at will"). Defendants claim that in October of 1994 Tommy Van Scoy, Sr., gave Defendants permission to use the marks "VAN SCOY DIAMOND MINE" when Tommy Van Scoy, Sr. gave Defendant Kurt Van Scoy a sign that read "Diamond Mine" and said "[h]ere's the sign.  Good luck to you.  I love you very much and I'm proud of you." (Kurt: 9, 119, 138, EX. K; Kurt: 14, 60, 91, EX. L).  Clearly this alleged license granted to Defendants was for an indefinite time as it contained no mention of a time frame and as such is revocable and terminable at will by the licensor. Dial-A-Mattress Operating Corp., 847 F.Supp. 18, n. 1.  Since Plaintiff Wayne Van Scoy succeeded to the ownership of the trademark and service mark "VAN SCOY DIAMOND MINE," "[P]laintiff similarly succeeded to the right to terminate the licenses." Dial-A-Mattress Operating Corp., 847 F.Supp. 18 at 19-20.  Plaintiff clearly terminated any license Defendants had by sending Defendants the Cease and Desist Letter of November 18, 2004. (Kurt: 13, EX. K; Kurt: 23, EX. L; Donna: 43-44, 53-54, EX. O; Cease and Desist Letter, EX. F).

2.    **There Was No Inexcusable Delay Because Plaintiff Did Not Have A Right To Seek An Injunction Until Defendants' Alleged License Was Terminated By The Cease And Desist Letter Of November 18, 2004.**

In Pappan the Third Circuit held that with respect to a claim of inexcusable delay the relevant time period begins only when the plaintiff has a basis upon which to seek an injunction. Pappan Enterprises, Inc., 143 F.3d 800 at 804.   In that case, a case factually analogous to the present case, the Court found that the plaintiff did not have a basis upon which to seek an injunction until the plaintiff terminated the defendant's franchise agreements, even though the defendant had for several years been defaulting on the franchise agreements it had with the plaintiff. Pappan Enterprises, Inc., 143 F.3d 800 at 804.   As such, applied to the facts in this case, Plaintiff Wayne Van Scoy did not have a basis to seek an injunction until he terminated any alleged license held by Defendants by the Cease and Desist Letter of November 18, 2004.  Any alleged inexcusable delay should be measured only from November 20, 2004, the day Defendants were in receipt of the Cease and Desist Letter, and since Plaintiff timely filed suit in February 2005, and only after not receiving a requested substantive response from Defendants with respect to the Cease and Desist Letter, there was  no inexcusable delay.  (Wayne Van Scoy Decl. ¶ 10, EX. C; Kurt: 13, EX. K; Kurt: 23, EX. L; Donna: 43-44, 53-54, EX. O; Cease and Desist Letter, EX. F).

3.    **Defendants' Contentions That Plaintiff Should Have Brought Suit Earlier On The Basis Of Defendants' Infringing Website And On The Basis Of Plaintiff's Plans To Expand Into Defendants' Infringing Territory Can Not Serve As A Basis To Find Inexcusable Delay.**

In determining whether there was inexcusable delay in instituting suit this Court should look to the relevant time period. Pappan Enterprises, Inc., 143 F.3d 800 at 804. As pointed out above, the Third Circuit has held that with respect to inexcusable delay the relevant time period constituting the delay should include only that time period in which the plaintiff has a basis to

seek an injunction.  Id.  In Pappan the Court held that until the plaintiffs had a basis upon which to seek an injunction "their failure to do so [did] not constitute delay."  Id.  It is in fact well settled law that in determining whether a plaintiff can be charged with inexcusable delay in instituting suit, only that period of time when the plaintiff had the right to seek an injunction should be considered relevant.  The Court in Johanna Farms, Inc. v. Citrus Bowl, Inc., for example, put it this way:  "one cannot be guilty of laches until his right ripens into one entitled to protection, for only then can his torpor be deemed inexcusable."  Johanna Farms, Inc. v. Citrus Bowl, Inc., 468 F.Supp. 866, 881 (E.D.N.Y. 1978).

Defendants argue in their Opening Summary Judgment Memorandum that Plaintiff Wayne Van Scoy has had the right to seek an injunction for more than 3 years simply because Wayne has allegedly known about Defendants' use of the marks "VAN SCOY DIAMOND MINE" since 1996.[1]  (Defendants' Memorandum: 10-11, EX. D).  Defendants, however, cite to no legal authority to support their apparent position that mere knowledge of another's use of the same mark for the same goods can serve as a basis for an infringement suit.  This is likely so because it is contrary to the law in this and every other federal circuit.  The Third Circuit held in Holiday Inns of America, Inc. v. B & B Corporation , for example, that a trademark owner is not entitled to injunctive relief until "it is necessary to prevent immediate and irreparable injury."  Holiday Inns of America, Inc. v. B & B Corporation, 409 F.2d 614, 618 (3d Cir. 1969).  In that case the Third Circuit held that the plaintiff hotel chain was not entitled to an injunction until it

---

1 Plaintiff's actual knowledge of Defendants' use of the marks "VAN SCOY DIAMOND MINE" at all times since 1996 is a contested fact.  Furthermore, Defendants fail to mention in their Memorandum that the conversations that Plaintiff had with Defendant Kurt Van Scoy prior to initiating suit that apparently form the basis for Defendants' contention that Plaintiff knew about Defendants' use of the marks "VAN SCOY DIAMOND MINE" were conversations in which Plaintiff told Defendants that they had no right to use the mark unless they paid for that right- conversations that Defendants deny ever occurred.  (Wayne Van Scoy: 116, EX. M; Kurt: 137-138; EX. K).

could show "present debasement of its protected mark," even though the defendant was using the same mark for the same hotel services in a separate geographic region.  Id.   Similarly, in Johanna Farms, Inc. the Court held that "until there exists an actual clash of interests, or until the expansion of the owner's mark into the infringer's territory is on the verge of implementation so that the likelihood of public confusion looms large, there is no basis for an infringement suit." Johanna Farms, Inc., 468 F.Supp. 866  at 881.

Additionally, it is not until Plaintiff knew or should have known of the basis for his right to seek an injunction that the relevant time period should begin.  See Profitness Phys. Therapy Ctr. v. Pro-Fit Orthopedic & Sports Phys. Therapy, 314 F.3d 62, 70 (2d Cir. 2002) ("[A] plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that defendant was using the potentially offending mark, but that plaintiff had a provable infringement claim against defendant.")  See also Halstead v. Grinnan, 152 US 412 (1894)  ("There must, of course, have been knowledge on the part of the plaintiff of the existence of these rights, for there can be no laches in failing to assert rights of which a party is wholly ignorant").  Therefore, even if it were determined that Defendants did not have a license that was terminated by Plaintiff's Cease and Desist Letter of November 18, 2004, Plaintiff still was not entitled to seek an injunction until he discovered Defendants' infringing website in July 2004 or until recently as a result of a potential licensee ready to move into Defendants' infringing territory.  (Wayne: 119-120, EX. M; Wayne Van Scoy Decl. ¶ 9 & 10, **REDACTED** EX. C;⌐      : 36-38, 68, EX. S; Wayne: 103-104, EX. M; Wayne Van Scoy Decl. ¶ 11, EX. C).

With respect to Plaintiff's discovery of Defendants' infringing website, Defendants allege in their Opening Summary Judgment Memorandum that Defendants established a website on July 12, 2002 and suggest that Plaintiff should have taken action at that time.  (Defendants'

Memorandum: 12, EX. D).  It is pointed out, however, that nowhere in the record is there any

support for the proposition that Defendants' infringing website was established on July 12, 2002.

The testimony is clear that all that happened on July 12, 2002 is that Defendant Van Scoy

Diamond Mine of Delaware, Inc. registered the domain name www.vanscoydiamondmine.com, a

domain name that happens to include the exact mark that Plaintiff Wayne Van Scoy acquired at

great expense and effort the previous year.  (Kurt: 140, EX. K, Wayne Van Scoy Decl. ¶ 6, EX.

C).  As to when the website was actually established the record shows that Defendants have no

idea as to when the site became operational.

> Q.      [D]o you know how soon after you contacted Certified Solutions and they
>         registered the domain name that the website became operational?
> A.      How long after that?  Exact dates I don't know?
> Q.      Was it months?
> A.      Really I don't remember.  I don't remember.
>         (Kurt: 56, EX. L)[2]

As such Defendants can not argue that Wayne Van Scoy should have instituted suit in

2002 because of Defendants' infringing website when there is no evidence as to when the

website became operational.  The only evidence of record is that Plaintiff Wayne Van Scoy

discovered Defendants' infringing website in July 2004 and filed suit promptly thereafter.

(Wayne: 119-120, EX. M; Wayne Van Scoy Decl. ¶ 9 & 10, EX. C).

With respect to the fact that Plaintiff Wayne Van Scoy is now ready to expand his

business through a licensee,    **REDACTED**    into Defendants' infringing territory, Defendants

suggest in their Opening Summary Judgment Memorandum that Plaintiff should have brought

"this action years ago." (Defendants' Memorandum: 7-8, EX. D).  The record is clear, however,

---

2 Kurt Van Scoy was designated by Defendant Van Scoy Diamond Mine of Delaware, Inc. as the person most
knowledgeable to testify concerning the internet website at vanscoydiamondmine.com.  (Kurt: 69-70, EX.
L).

that Plaintiff Wayne Van Scoy and **REDACTED** did not even meet until the summer or fall of

**REDACTED**

2002. (      : 32, EX. S; Wayne: 97, EX. M; Wayne Van Scoy Decl. ¶ 11, EX. C).

Approximately two years ago discussions were first initiated between Plaintiff Wayne Van Scoy

and **REDACTED**, but it was not until recently that both party's plans with respect to opening a

**REDACTED**

franchise in Defendants' infringing area have become close to reality. (      . 36-38, 68, EX. S;

Wayne: 103-104, EX. M; Wayne Van Scoy Decl. ¶ 11, EX. C). Although Plaintiff has had

intentions and has been involved in what should be characterized as negotiations with **REDACTED**

**REDACTED** with respect to expanding his business into Defendants' infringing area for

approximately two years, this should not be considered inexcusable delay in instituting suit for

"until the expansion of the owners mark into the infringer's territory is on the verge of

implementation so that the likelihood of consumer confusion looms large, there is no basis for an

infringement suit." Johanna Farms, Inc., 468 F.Supp. 866 at 881. As the Court said in Johanna

Farms, Inc., "where expansion of the mark is but a dream in the owner's business scheme rather

than a close reality, to estop the owner for failing to institute a suit which the courts have held

would have been futile, would produce a ludicrous result." Id.

      **B.**      **SINCE ANY ALLEGED DELAY ON THE PART OF PLAINTIFF WAS WELL WITHIN ANY CONCEIVABLE STATUTE OF LIMITATIONS FOR A TRADEMARK INFRINGEMENT CAUSE OF ACTION THE BURDEN TO PROVE THE ELEMENTS OF LACHES REMAINS ON DEFENDANTS AND DEFENDANTS WILL NOT BE ABLE TO PROVE ALL THE ELEMENTS OF LACHES.**

As discussed above, Defendants will not be able to show that there was inexcusable delay

on the part of Plaintiff in instituting suit. "Logic dictates that 'unreasonable delay' does not

include any period of time before the owner is able to pursue a claim for infringement- otherwise,

a trademark owner could be punished for not bringing a claim he had no right to bring." What a

Burger of Virginia v. Whataburger Inc., 357 F.3d 441,449 (4th Cir. 2004). Plaintiff did not have

a right to seek an injunction until he terminated the alleged license held by Defendants to use the marks "VAN SCOY DIAMOND MINE." Pappan Enterprises, Inc., 143 F.3d 800 at 804. Plaintiff validly terminated Defendants' alleged license by the Cease and Desist Letter which was received by Defendants on November 20, 2004. (Kurt: 13, EX. K; Kurt: 23, EX. L; Donna: 43-44, 53-54, EX. O; Cease and Desist Letter, EX. F). Plaintiff initiated suit in a timely manner in February 2005 and only after not having received a requested substantive response from Defendants with respect to the Cease and Desist Letter. (Wayne Van Scoy Decl. ¶ 10, EX. C). Not only was there no inexcusable delay but there was no delay at all.

As discussed above, any argument that Plaintiff Wayne Van Scoy should have initiated suit in July 2002 when Defendants registered the domain name www.vanscoydiamondmine.com or approximately two years ago when he began negotiations with **REDACTED**        must fail.  First, Plaintiff initiated suit on February 23, 2005 and, therefore, even if it were determined that Plaintiff had a right to seek an injunction in July 2002 when Defendants registered the domain name www.vanscoydiamondmine.com or two years ago when Plaintiff first began discussions with**REDACTED**, the suit still would have been initiated within the alleged three year statute of limitations.  As such, the burden of proof remains on the Defendants to prove all of the elements of their laches defense. Pappan Enterprises, Inc., 143 F.3d 800 at 804.  With respect to Defendants' website, Plaintiff's Third Cause of Action in his Complaint is for Defendants' registration of Plaintiff's mark as an internet domain name.  The testimony and evidence is clear that Defendants' internet domain name was registered on July 12, 2002 (Kurt: 140, EX. K).  Plaintiff filed suit in February 2005.  Defendants did not even mention Plaintiff's Third Cause of Action in their Opening Summary Judgment Memorandum and, at any rate, suit was clearly filed within a three year statute of limitations.  The burden clearly remains on

Defendants to prove the elements of laches with respect to this claim yet Defendants have not even addressed the issue. Accordingly, Plaintiff's Motion for Summary Judgment should be denied for this reason alone. Furthermore, as pointed out above with respect to Defendants' website, Plaintiff did not discover the existence of the infringing website until July 2004, and there is no evidence of record that it even existed prior to July 2004. (Kurt: 56, EX. L; Wayne Van Scoy Decl. ¶ 9, EX. C). Finally, with respect to Plaintiff's negotiations with **REDACTED** **REDACTED**, the testimony is clear that Plaintiff and **REDACTED** first met in 2002. ( **REDACTED** 31-32, EX. S; Wayne Van Scoy Decl. ¶ 11, EX. C). Plaintiff had no right to an injunction until his plans for expansion into Defendants' infringing territory were close to reality. Certainly Plaintiff was not obligated to commit to a serious business relationship with **REDACTED** immediately upon meeting him. Plaintiff's right to seek an injunction on the basis of having a licensee ready to move into the area has only recently become a cognizable right. (Letter of Intent, EX. G; **REDACTED** 68, EX. S). As such, there has been no inexcusable delay on the part of Plaintiff in instituting suit.

Additionally, Defendants will not be able to prove that they were prejudiced as a result of any alleged delay. Since Defendants' receipt of the Cease and Desist Letter, or for that matter, since any other period that could even conceivably be considered the start of the relevant period of alleged delay, there is no evidence of record that shows any prejudice to Defendants resulting from alleged delay on the part of Plaintiff. Except for minor improvements costing a few thousand dollars in approximately 1999 or 2000 Defendants have never done anything to improve their store. (Donna: 85-86, EX. O; Kurt: 91, EX. K). These minor improvements were made well before Plaintiff had any right to seek an injunction and, in fact, were made before Plaintiff even became owner of the Marks at Issue in January 2001. (Donna: 85-86, EX. O).

Therefore, Defendants cannot point to these improvements as evidence of prejudice resulting from delay on the part of Plaintiff in instituting suit since the improvements were made well before any period that could even arguably be considered a period of delay.  Defendants also admitted that they have not expanded their store or business in any way since they opened it. (Kurt: 92, EX. K).  The fact that Defendants can not prove the essential prejudice element of laches is further shown by Defendants' Amended and Supplemental Responses To Plaintiff's First Set Of Interrogatories which is attached hereto as Exhibit BB.  Request No. 8 asks Defendants to state all contentions and facts with respect to Defendants' Seventh Affirmative Defense alleging that "Plaintiff's claims are barred by the doctrine of laches."  (Defendants' Amended and Supplemental Responses To Plaintiff's First Set Of Interrogatories No. 8, EX. BB).  As is shown from Defendants' Response and Defendants' Supplemental Response, Defendants identified no facts or contentions regarding having been prejudiced in any way. (Defendants' Amended and Supplemental Responses To Plaintiff's First Set Of Interrogatories No. 8, EX. BB).

Furthermore, Defendants admitted that even if they were forced to stop using the marks "VAN SCOY DIAMOND MINE" at this time the only reason that they would be prejudiced would be because "[Kurt Van Scoy's] father gave [him] the name and [he] gave him the sign for the store." (Kurt: 98, EX. K).  This is clearly not the type of prejudice sufficient to prove a laches defense for as the Third Circuit held, it is only where "the junior user has developed sufficient demand and goodwill through its own efforts that it would be inequitable to enforce the senior's rights."  University of Pittsburgh v. Champion Products Inc., 686 F.2d 1040,1047 (3d Cir.1982), Certiorari Denied by University of Pittsburgh v. Champion Product Inc., 459 U.S. 1087 (1982).  The alleged fact that Defendant Kurt Van Scoy's father gave him the name and

gave him the sign for the store clearly does not show that Defendants have "developed sufficient demand and goodwill through [their] *own* efforts." Id. (Emphasis supplied). In the same vein Defendants' assertion in their Opening Summary Judgment Memorandum that the reason they have been prejudiced is "through the cost of litigation and the embarrassment created by negative publicity" is clearly not sufficient prejudice to support a laches defense. (Defendants' Memorandum: 14, EX. D). Plaintiff fails to see how the cost of litigation or the embarrassment caused by negative publicity would have been minimized or any different had Plaintiff brought the suit earlier. In essence, Defendants are on one hand arguing that Plaintiff should have brought the suit earlier, and on the other arguing that the very fact Plaintiff has brought suit is the reason it should be barred. As such, there simply is not sufficient evidence of record to show that Defendants have been prejudiced by any alleged inexcusable delay on the part of the Plaintiff in instituting suit.

## C.    DEFENDANTS' OPENING SUMMARY JUDGMENT MEMORANDUM IS AN ATTEMPT TO UNFAIRLY PREJUDICE PLAINTIFF WAYNE VAN SCOY

Defendants quite inappropriately attempt to unfairly prejudice Plaintiff Wayne Van Scoy throughout their Opening Summary Judgment Memorandum by making irrelevant, unsupported and misleading allegations concerning Plaintiff and Plaintiff's reasons for bringing suit. Plaintiff clearly stated in his deposition, which language is even quoted by Defendants in their Memorandum, that one of the reasons for bringing suit was his discovery in July 2004 of Defendants' infringing website hosted at www.vanscoydiamondmine.com.

> Q.    Why did you wait until November of ninety – of 2004 to give notice to Kurt Van Scoy regarding use of the mark Van Scoy Diamond Mine?
> A.    I had been telling him, telling him, telling him, telling him. Then he opens up the Internet website, which then comes up into my area. People can go on, Click. He can ship them merchandise. Now he's interfering with my business.

(Defendants' Memorandum: 12, EX. D; Wayne: 119-120, EX. M).

Despite the quoted language, Defendants allege that it is "jealously and personal animosity that form the basis of this suit" and that "delay in bringing this action was the result of long-simmering resentment and jealously of his brother Kurt, whom he perceived as being more successful." (Defendants' Memorandum: 8, EX. D). This blatant attempt to unfairly prejudice Plaintiff Wayne Van Scoy is highly inappropriate for a motion for summary judgment since Plaintiff's basis for filing suit is a disputed fact and, therefore, clearly should not be part of Defendants' argument. Incredibly, Defendants appear to extrapolate these unsupported conclusions respecting Plaintiff's basis for filing suit from Plaintiff Wayne Van Scoy's opinion that Defendants' infringing website which utilized Plaintiff's exact mark and which offered products for sale in Plaintiff's sales area was hurting his business. Defendants suggest that Plaintiff's testimony regarding Plaintiff's uncertainty as to whether a website would make good business sense for the retail jewelry store he operates in Wilkes-Barre, Pennsylvania under the marks "VAN SCOY DIAMOND MINE" demonstrates Plaintiff's alleged resentment and jealousy. (Defendants' Memorandum: 12, EX. D). Plaintiff's business decision not to have a website does not support Defendants' unfounded contentions. Furthermore, Plaintiff's business decision not to have a website did not give Defendants the right to register the domain name www.vanscoydiamondmine.com and establish an infringing website offering jewelry products for sale in Plaintiff's sales area allegedly the year after Plaintiff acquired the marks "VAN SCOY DIAMOND MINE" through much time, effort and expense.[3] (Wayne Van Scoy Decl. ¶ 6;

---

[3] Plaintiff's testimony actually reflects that Plaintiff does have interest in starting a website for the purpose of internet business and has unsuccessfully attempted to register the domain name www.vanscoydiamondmine.com which is unavailable presumably because it is still registered by Defendants. (Wayne: 68-69, EX. N).

Defendants' Memorandum: 12, EX. D).  It is also worth noting that Defendants have thus far refused to assign the domain name www.vanscoydiamondmine.com to Plaintiff or even admit as to whether they are the owners of that website domain name.  (Kurt: 144, EX. K; Kurt: 63, 67 EX. L).  Additionally, during the course of this litigation the website domain name for www.vanscoydiamondmine.com, which was set to expire on July 12, 2005 as of May 10, 2005, was mysteriously renewed so that it is now not scheduled for expiration until July 12, 2006.  (Compare "Expiration Date" on WHOIS SEARCH RESULTS EX. Y with "Expiration Date" on WHOIS SEARCH RESULTS EX. Z).  Defendants deny having any knowledge as to how the domain name was renewed.  (Kurt: 141, EX. K; Donna: 52, EX. O).

Defendants mischaracterize the testimony of Plaintiff's longtime girlfriend Ms. Jacqueline Savoca by alleging that her testimony corroborates the alleged notion that Plaintiff is jealous and resentful of Defendant Kurt Van Scoy's success.  (Defendants' Memorandum: 13, EX. D).  Ms. Savoca's testimony is clear that any resentment that Plaintiff may feel or may have ever felt for Defendant Kurt Van Scoy has to do with Kurt not caring for his elderly parents and has nothing to do with the success or lack of success of Defendant Kurt Van Scoy.  (Jacqueline Savoca:  46-47, EX. V).

Additionally, Defendants further attempt to unfairly prejudice Plaintiff Wayne Van Scoy by engaging in a patently misleading allegations regarding the fact that Plaintiff Wayne Van Scoy has not pursued claims against other businesses operating under names that include the words "Van Scoy."  (Defendants' Memorandum, 8-9, EX. D).  Defendants refer specifically in their Opening Summary Judgment Memorandum to Mark Maurer who operates a jewelry store under the name "Van Scoy, Maurer and Bash Diamond Jewelers" and Lew Hill who operates a jewelry store under the name "Van Scoy Jewelers."  (Defendants' Memorandum: 8-9, EX. D; Mark

Maurer: 30, EX. R; Lew Hill: 25, EX. Q). Initially it is pointed out that only Defendants and

Plaintiff Wayne Van Scoy operate retail jewelry stores under the exact mark "VAN SCOY

DIAMOND MINE."[4] (Kurt: 49-50, EX. K). Regardless, however, the fact of the matter is that

Plaintiff has not pursued claims against other businesses using the name "Van Scoy" in

connection with retail jewelry stores because Plaintiff has known that individuals such as Mark

Maurer and Lew Hill hold exclusive rights to use the marks "VAN SCOY DIAMOND MINE" in

limited geographic territories. (Mark Maurer Agreement: § 4.1, EX. I; Lew Hill Agreement: §

4.1, EX. H; Wayne Van Scoy Decl. ¶ 11, EX. C).

    In approximately 1993 Lew Hill entered into an agreement terminating the license he had

with Plaintiff's predecessor in title whereby Lew Hill paid $30,000 for the exclusive right to use

and to trade under the marks "VAN SCOY DIAMOND MINE" in a territory defined as

Schuylkill, Montgomery and Berks counties of Pennsylvania. (Lew Hill Agreement: §§ 2.1, 4.1,

6.1, EX. H; Lew Hill: 46-47, EX. Q). As such, since approximately 1993 Lew Hill has had the

right to use the marks "VAN SCOY DIAMOND MINE." Similarly, in approximately 1993

Mark Maurer entered into an almost identical agreement with Plaintiff's predecessor in title

whereby Mark Maurer paid $25,000 and $25,000 worth of diamonds for the exclusive right to

use and to trade under the mark "VAN SCOY DIAMOND MINE" in a territory defined as

Lehigh, Northampton, Lancaster, York and Dauphin Counties of Pennsylvania and Warren

County of New Jersey . (Mark Maurer Agreement: §§ 2.1, 4.1, 6.1, EX. I; Mark Maurer: 7, 44-

---

4 Mark Maurer testified in his deposition that he continues to use VAN SCOY DIAMOND MINE in private
communications with former customers of the Van Scoy Diamond Mine store he once operated. (Mark
Maurer: 27, EX. R). It is Plaintiff's position that private communication with former customers aimed at
informing the customer that a store once called "Van Scoy Diamond Mine" now trades under a new name
hardly constitutes use of the Marks at Issue.

47, EX. R).  As such, since approximately 1993 Mark Maurer has had the right to use the marks.

Defendants even acknowledge that Plaintiff Wayne Van Scoy witnessed the Agreement between Mark Maurer and Tommy Van Scoy, Sr. granting Mark Maurer the exclusive right to use the marks "Van Scoy Diamond Mine" and the word "Van Scoy" yet Defendants go on to allege in the same paragraph of their Opening Summary Judgment Memorandum that the reason Plaintiff has never accused Mark Maurer of trademark infringement is because of some sort of unsupported feelings of resentment and jealously respecting Defendant Kurt Van Scoy. (Defendants' Memorandum: 8, EX. D).

### D.    DEFENDANTS ARE NOT ENTITLED TO A FINDING OF LACHES BECAUSE THEY HAVE UNCLEAN HANDS

Laches is an equitable doctrine and it is oft said that in the context of trademark infringement equity comes to the aid of the innocent user. Johanna Farms, Inc., 468 F.Supp. 866 at 881.  ("In order to be sheltered by the equitable bastion provided by the estoppel [by laches] doctrine, the party seeking its protection must possess a right which is firmly planted in good faith.").  Likewise, with respect to Defendants' ability to prove the elements of laches the Third Circuit has held that evidence of a defendant's fraudulent intent goes to the question of whether "prejudice" has been established as a matter of equity.  University of Pittsburgh, 686 F.2d 1040 at n. 14. In this case there are numerous disputed issues of fact regarding Defendants' intent in adopting the mark and Defendants' intent in continuing use of the mark.

First, Defendant purportedly took a license to use the marks "VAN SCOY DIAMOND MINE" when they knew Tommy Van Scoy, Sr. was in bankruptcy.  It is undisputed that on September 23, 1994 Tommy Van Scoy, Sr., who allegedly gave Defendants permission to use the marks "VAN SCOY DIAMOND MINE" in October of 1994, filed for bankruptcy.  (Defendants' Memorandum: 4, EX. D; Kurt: 138, EX. K; Kurt: 60, EX. L).  Defendant Kurt Van Scoy

admitted in his deposition that just prior to Tommy Van Scoy, Sr.'s bankruptcy "[he] foresaw what was coming forward. And that's why [he] opted to certainly go out on [his] own." (Kurt: 119, EX. K).

It is Plaintiff's position that Defendants hid from the Bankruptcy Court during the bankruptcy proceedings in a deliberate effort to prevent their use of the marks "VAN SCOY DIAMOND MINE" from being enjoined as it was with other Van Scoy family members. Defendant Kurt Van Scoy admitted that he knew during the bankruptcy and specifically in the mid 1990's that the name "VAN SCOY DIAMOND MINE" was "in with the bankruptcy." (Kurt: 119, 121, EX. K). Defendant Kurt Van Scoy further testified that he was aware during the bankruptcy that several of his family members were enjoined by the United States Bankruptcy Court For The Middle District Of Pennsylvania from using the name "VAN SCOY DIAMOND MINE." (Kurt: 131, EX. K; Kurt: 60, 62-63; 136-137, EX. L). As Defendant Kurt Van Scoy put it: "Nobody wanted to deal with [Van Scoy Diamond] Mine. And that's why everybody is under Diamonds and Center and all that stuff, because nobody wants nothing to do with [Van Scoy Diamond] Mine." (Kurt: 57, EX. L).

Defendant's knowledge of the problematic nature of their use of the marks "VAN SCOY DIAMOND MINE" is evidenced by the attached Exhibit K which is Minutes of a Special Meeting of the Board of Directors of Defendant Van Scoy Diamond Mine of Delaware, Inc. held in Wilkes-Barre, Pennsylvania on August 22, 1996. (Kurt: 6, EX. K; Minutes, EX. W). The Minutes of this special meeting which was held in the office of Defendants' attorney reveal that one of only three issues that were discussed was "Trade Name Issues." (Kurt: 6,12, EX. K; Minutes, EX. W). The date of this meeting is only one month after adversary proceeding 5-96-AP-00196 was initiated by the trustee of the Bankruptcy Estate in an eventual successful attempt

to enjoin use by Van Scoy family members of the marks "VAN SCOY DIAMOND MINE."

(Bankruptcy Docket, EX. E;  Kurt: 6, EX. K;  Kurt: 60, 62-63, 136-137, EX. L; Minutes, EX.

W).   Defendants now claim to have no knowledge as to the substance of the "Trade Name

Issues" that were discussed.

> Q.  Is there any reason that you would have been
>       talking about trade name issues in 1996?
> A.  None whatsoever.  I don't remember.
> Q.  Is it common for you to have discussed trade name
>       issues at corporate meetings?
> A.  I don't recall.
> (Kurt: 7, EX. K)

It is Plaintiff's position that the evidence establishes a disputed factual issue as to whether

Defendants have been innocent users of the marks "VAN SCOY DIAMOND MINE" and thus an

issue as to whether they are entitled to avail themselves of an equitable defense of laches.  This

issue is particularly important in light of the Third Circuit's holding that evidence of a

defendant's fraudulent intent goes to the question of whether "prejudice" has been established as

a matter of equity. University of Pittsburgh, 686 F.2d 1040 at n. 14.  Certainly if a jury were to

find that Defendants hid from the bankruptcy court in an effort to avoid being enjoined from use

of the marks "VAN SCOY DIAMOND MINE" it would be reasonable for the jury to find that

any prejudice Defendants might suffer if they are forced to stop using the marks would be the

consequence of Defendants' own conduct and, therefore, not attributable to any alleged delay on

the part of Plaintiff.

Despite Defendants' knowledge that the name was "in with the bankruptcy" and that the

name was "going through the courts" and that individual family members were being enjoined

from use of the name, Defendants did not contribute in any way to the effort to acquire the marks

"VAN SCOY DIAMOND MINE" from the Bankruptcy Estate.  (Kurt: 119, 121, EX. K; Kurt:

60, 62-63, 136-137, EX. L; Wayne Van Scoy Decl. ¶ 7, EX. C). Furthermore, Plaintiff Wayne

Van Scoy's Declaration attests that Defendants refused his requests for Defendants to contribute

money to help get the marks back from the Bankruptcy Estate. (Wayne Van Scoy Decl. ¶ 7, EX.

C). Defendants have continued to use the marks "VAN SCOY DIAMOND MINE" without

payment of Plaintiff's requested licensing fees. (Answer: page 7 ¶ 35, EX. J; Wayne: 116, EX.

M). Furthermore, Defendants went so far as to register on July 12, 2002, just one and a half

years after Plaintiff went through great effort and expense acquiring the marks from the

Bankruptcy Estate, the domain name www.vanscoydiamondmine.com, a domain name that

utilizes Plaintiff's exact mark. (Kurt: 140, EX. K; Wayne Van Scoy Decl. ¶ 6, EX. C).

## II.    KURT AND DONNA VAN SCOY ARE PERSONALLY LIABLE FOR DIRECTING THE INFRINGEMENT BY VAN SCOY DIAMOND MINE OF DELAWARE, INC.

A corporate officer is individually liable for the torts he or she personally commits and

cannot shield himself or herself behind a corporation when he or she is an actual participant in

the tort. Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978); Brandywine Mushroom

Company v. Hockessin Mushroom Products, Inc., 682 F.Supp. 1307, 1311 (D. Del. 1988). This

principle applies where the conduct constitutes unfair competition and/or trademark

infringement. Donsco, 587 F.2d at 606. The fact that an officer is acting for a corporation may

also make the corporation vicariously or secondarily liable under the Doctrine of Respondeat

Superior, it does not however relieve the individual of his responsibility. Donsco, 587 F.2d at

606; Brandywine, 682 F.Supp. at 1311. The authorization and approval of acts of unfair

competition or trademark infringement which are the basis of liability is sufficient actual

participation in the wrongful acts to make the individual liable. Donsco, 587 F.2d at 606. That

these acts were done as an agent of the corporation does not affect the individual's liability. Id.

This liability is distinct from the liability resulting from piercing of the corporate veil. Id. The rational for piercing the corporate veil is that the corporation is something less than a bona fide independent entity. Id. When the individual is liable as an actor for directing the infringement, rather than as an owner, his liability is in no way dependent on finding that the corporation is inadequately capitalized, that the corporation is a mere alter ego, that the corporate form is being used to perpetrate a fraud or that corporate formalities have not been properly complied with. Id. The only crucial predicate to an individual's liability for directing infringement is his or her participation in the wrongful acts. Id.

In Donsco, Supra., Casper Pinsker was found individually liable because Pinsker gave to the designer background material for use in designing a certificate of authenticity used in the unfair competition, and his duties as President of Casper Corporation included "arrangement of marketing services" and the distribution of the banks. Donsco, 587 F.2d 602 at 606.

Trademark infringement constitutes unfair competition. Under Delaware common law, the tort of trademark infringement consists of the unauthorized use of a mark or a colorable imitation thereof by another producer on goods or in connection with services of substantially the same character as those for which a mark has already been legitimately appropriated by the complainant. Brandywine, 682 F. Supp. 1307 at 1311. The standard for when a corporate officer may be individually liable for acts constituting trademark infringement is similar to the standard for a corporate officer's acts of unfair competition. Brandywine, 682 F. Supp. 1307 at 1311-1312. The Court in Brandywine stated that "[a] corporate officer can be held individually liable for trademark infringement when he 'performs acts or does the things that the ... trademark law protects against'" citing Mead Johnson & Co. v. Baby's Formula Service, Inc., 402 F.2d 19, 23 (5th Cir. 1968). See also Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.,592

F.Supp. 648, 653 (D. Mass. 1984) (individual who was director, employee and stockholder of corporation, and conscious moving force behind infringing sales, held individually liable for trademark infringement). Brandywine, 682 F.Supp. 1307 at 1312. In Brandywine, the Court denied summary judgment of no personal liability on the basis that the individual was aware of, confirmed, authorized and approved improper orders for the sale of mushrooms by the corporation. Brandywine, 682 F.Supp. 1307 at 1311. As such Defendants' apparent belief that Plaintiff must pierce the corporate veil of Defendant Van Scoy Diamond Mine of Delaware, Inc. to pursue judgment against Defendants Kurt and Donna Van Scoy is erroneous. Furthermore, Defendants cannot show that Kurt and Donna Van Scoy are not personally liable as evidenced by the fact that the only basis Defendants have for asserting that Kurt and Donna Van Scoy are not personally liable is because "at all time actions by Defendant Kurt Van Scoy and Defendant Donna Van Scoy have been as employees of Van Scoy Diamond Mine of Delaware, Inc. and not acting on their own." (Defendants' Amended and Supplemental Responses To Plaintiff's First Set Of Interrogatories No. 13, EX. BB).

In the present case, Defendants have admitted that the actions of Defendant Van Scoy Diamond Mine of Delaware, Inc. have been directed by Defendant Kurt Van Scoy and by Defendant Donna Van Scoy. (Defendants' Answer: Pages 1,2,6,8, Paragraphs 3,4,29,30, 39 EX. J and D.I. 6). Defendant Kurt Van Scoy has admitted that he directs the advertising of Van Scoy Diamond Mine of Delaware, Inc. which uses the mark VAN SCOY DIAMOND MINE in the operation of its jewelry store. (Kurt: 8, 14, EX. K; Donna: 10, EX. O). Donna admitted that she makes key decisions with respect to the use of the mark, she testified that she changed the sales receipts by blocking out the word "MINE" from VAN SCOY DIAMOND MINE OF DELAWARE, INC after receipt of the cease and desist letter and then decided it was no longer

necessary to do so. (Donna: 33-36 & 43-47, EX. O; Kurt: 47, EX. L). Donna Van Scoy did not consult with Kurt Van Scoy before telling two employees to cross the word "MINE" from the sales receipts. (Donna: 40, EX. O). Kurt makes the decisions as to changing the store sign and the name used on the internet. (Donna: 41-42, EX. O; Kurt: 14, EX. K).

Kurt and Donna Van Scoy have adopted and use a warranty certificate which is substantially identical to Plaintiff's warranty certificate. (See: Defendants' Warranty Certificate attached as EX. U and Plaintiff's Warranty Certificate attached as EX. T; Donna: 62, EX. O; Wayne Van Scoy Decl. ¶ 13, EX. C). Kurt Van Scoy admitted that the use of Defendants' warranty certificate, which is substantially identical to Plaintiff's warranty certificate, creates an association with other Van Scoy Diamond Mine stores, namely Plaintiff's store. (Kurt: 40, EX. L). Kurt Van Scoy directed the registration of the internet domain name www.vanscoydiamondmine.com and directed the creation and operation of a website using the mark VAN SCOY DIAMOND MINE for the sale of jewelry and diamonds. (Kurt: 140-142, EX. K; Kurt: 56-57, EX. L). Donna put up $20,000.00 to start the business. (Donna: 76, EX. O; Kurt: 138, EX. L). Donna signed a personal guarantee on the lease for the premises to open the Van Scoy Diamond Mine store. (Donna:15-17, EX. O). Donna Van Scoy and Kurt Van Scoy are each 50% owners of Van Scoy Diamond Mine of Delaware, Inc. (Kurt: 5, EX. K; Donna: 8, 22, EX. O; Kurt: 138, EX. L). Donna does not follow corporate formalities. (Donna: 18, 22, EX. O). All of the corporate minutes reflect Donna being Vice President. (Donna: 18-28, EX. O). However, Donna testified that she is Secretary of the corporation. (Donna: 22, EX. O). Donna took no steps to preserve evidence after receipt of the Cease and Desist Letter in November of 2004 nor after receipt of a preservation of evidence letter in March of 2005. (Donna: 63-64, EX. O). As a result, there is no record of the date of the change from

www.vanscoydiamondmine.com to www.vanscoydiamondsofdelaware.com internet domain name addresses, except that it was after January 14, 2005.

In the present case, Defendants Kurt and Donna Van Scoy are officers, employees and stockholders of the corporation. They were the conscious moving force behind the infringing sales. Each owned 50% of the corporation and each directed all of the activities of the corporation which constituted the infringing acts and misappropriation of Plaintiff's federally registered mark as an internet domain name. In fact, Defendants are so evasive and have demonstrated such callous disregard for the judicial process that both Defendant Kurt Van Scoy and Defendant Donna Van Scoy denied knowledge of where title to the internet domain name www.vanscoydiamondmine.com resides.[5] (Kurt: 63, 67, EX. L; Donna: 52, EX. O). The internet domain name was originally registered on July 12, 2002 and was due for renewal on July 12, 2005. The registration has been renewed to July 12, 2006. (Compare "Expiration Date" on WHOIS SEARCH RESULTS, EX. Y with "Expiration Date" on WHOIS SEARCH RESULTS, EX. Z). The name has not become available to Plaintiff and Defendants have issued some direction to their internet company with respect to it, but deny knowledge of where it is or who owns it. (Kurt: 141-142, EX. K; Kurt: 63-65, EX. L).

Defendants Donna Van Scoy and Kurt Van Scoy received the Cease and Desist Letter with copies of the trademark and service mark registrations owned by Wayne Van Scoy attached, and with a demand from Wayne Van Scoy to stop using the mark VAN SCOY DIAMOND MINE. (Donna: 53-54, EX. O). Kurt Van Scoy and Donna Van Scoy personally directed the continued acts of infringement by continuing to use the mark VAN SCOY DIAMOND MINE

---

5 A favorite and common answer of Defendants in their depositions was "I don't know" and "I have no idea."

after receipt of the Cease and Desist letter, testifying that with respect to changing to another mark, "we didn't need to". (Donna: 35-36, EX. O; Defendants' Responses to Plaintiff's First Set Of Requests For Admissions: Nos. 10 & 11, EX. X).

It is clear from the foregoing that Defendants Kurt Van Scoy and Donna Van Scoy have callously directed the acts which comprise trademark and service mark infringement, misappropriation of the internet domain name which is Plaintiff's registered mark and committed acts of unfair competition. Accordingly, under established law of the Third Circuit, Defendants Kurt and Donna Van Scoy, in addition to their corporation Van Scoy Diamond Mine of Delaware, Inc., are liable for these tortuous acts. The admitted facts of record show that the two individuals are liable, and clearly that Defendants are not entitled to summary judgment of no personal liability for the tortious acts committed.

Summary judgment should also be denied as there are credibility issues as to material facts. Donna testified that she is only at the store (4) half days a week and only waits on customers during the Christmas period. (Donna: 9, 11, EX. O).

> Q. Do you have any other job responsibilities at Van Scoy Diamond Mine in Delaware?
> A. No. I'm very part-time.
> Q. How much time do you spend at the store?
> A. Four hours a day, maybe if I'm there. Maybe four days a week.
> (Donna: 9, EX. O)

Lori McMichaels who is the senior employee and manager at Van Scoy Diamond Mine of Delaware, Inc. testified that Donna works "about the same" as Defendant Kurt Van Scoy who works just about every day that the store is open, is at the store "[a]t least five out of the six days [they're] open" and that she makes sales throughout the year. (Lori: 3-4, EX. P). This is a material fact issue which should be decided by the jury, and accordingly, summary judgment to Defendants should be denied for this reason alone.

### III.    Plaintiff Never Sought To Recover For Periods Going Back Beyond The Applicable Period Of The Statute Of Limitations.

Plaintiff notes that <u>Autozone, Inc. v. Tri-State Auto Outlet, Inc.</u>, 2005 WL 1353797 (D.Del. June 7, 2005), the case relied upon by Defendants to show the applicable statute of limitations for a trademark infringement case in Delaware, has been vacated.  (See Order Vacating Decision attached as EX. AA).  Plaintiff believes that a more appropriate statute of limitations would be a six year statute of limitations, consistent with that found by the Third Circuit in the <u>Santana</u> case for a case arising in Pennsylvania.  <u>See</u> <u>Santana Products Inc.v. Bobrick Washroom Equipment, Inc.</u>, 401 F.3d 123 (3d Cir. 2005).  Defendants have not cited and Plaintiff has been unable to find any Supreme Court of Delaware case holding that the statute of limitations for trademark infringement is three years.

Defendants' Motion on the issue of the statute of limitations is more in the nature of Defendants requesting an advisory opinion from the Court.  However, Plaintiff does seek to recover, in addition to an injunction, all remedies available to him including, but not limited to, Defendants' profits, Plaintiff's damages, statutory damages, corrective advertising, attorney's fees and any other recovery to which plaintiff is entitled, within the applicable period of the statute of limitations.

## CONCLUSION

In view of the fact that Defendants cannot prove any of the elements of their laches defense and the facts show that the individual defendants are personally liable for directing the infringement, Defendants' Motion For Summary Judgment should be Denied.

ASHBY & GEDDES

/s/ *John G. Day*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Michael F. Petock
Michael C. Petock
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856
(610) 935-8600
MP@IPLaw-Petock.com

Dated:  December 12, 2005
164213.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2005, the attached **PUBLIC VERSION OF PLAINTIFF'S ANSWERING BRIEF IN RESPONSE TO MOTION OF DEFENDANTS VAN SCOY DIAMOND MINE OF DELAWARE, INC., KURT VAN SCOY AND DONNA VAN SCOY FOR SUMMARY JUDGMENT (REDACTED)** was served upon the below-named counsel of record at the address and in the manner indicated:

Sharon Oras Morgan, Esquire                    <u>VIA ELECTRONIC MAIL</u>
Fox Rothschild LLP
Suite 1300
919 N. Market Street
Wilmington, DE 19801


Charles N. Quinn, Esq.                         <u>VIA ELECTRONIC MAIL</u>
Fox Rothschild LLP
2000 Market Street
Tenth Floor
Philadelphia, PA 19103-3291


*/s/ John G. Day*
_____
John G. Day