# EXHIBIT F

LAW OFFICES OF

# MICHAEL F. PETOCK

INTELLECTUAL PROPERTY ATTORNEY

46 THE COMMONS AT VALLEY FORGE

1220 VALLEY FORGE ROAD

POST OFFICE BOX 856

VALLEY FORGE, PENNSYLVANIA 19482-0856

FAX 610-933-9300
MFP@IPLaw-Petock.com
www.IPLaw-Petock.com

PATENT, TRADEMARK
AND
RELATED MATTERS

TELEPHONE

610-935-8600

November 18, 2004

Kurt and Donna Van Scoy
Diamond Mine of Delaware, Inc.
1117 Churchmans Road
Newark, DE 19713

**CERTIFIED MAIL**
Return Receipt Requested

Re:     Infringement of Service Marks and Trademark of
Mr. Wayne Van Scoy - U.S. Service Mark Reg. No.
1,140,958 for the Mark "VAN SCOY DIAMOND MINE"
for Retail Jewelry Store Services in International Class 42
and Trademark Reg. No. 1,140,711 for the Mark
"VAN SCOY DIAMOND MINE" for Jewelry and
Precious Stones in International Class 14
<u>My File:  443-12</u>

Dear Mr. and Mrs. Van Scoy:

I represent Mr. Wayne Van Scoy in intellectual property matters.

My client owns the rights in the above-identified service mark and trademark registrations.  I am enclosing a copy of each of the above-identified registrations for your convenience.

It is hereby demanded that you immediately cease and desist from infringement of the above-identified federally registered service mark and trademark of Mr. Wayne Van Scoy and account for past infringement.  You must immediately stop using any form of the name "VAN SCOY DIAMOND MINE" and confusing similar variations thereof on the name of your store, in advertising, in commercials, on stationary, boxes, bags, literature, internet website and any other place where you are using the mark in connection with your business. It is important that you stop all use immediately as Mr. Wayne Van Scoy intends to have a franchise moving into your area.

The Trademark Laws provide for significant remedies including, but not limited to, recovery of your profits, damages multiplied by three, an injunction and the payment of Mr. Wayne Van Scoy's attorney's fees.

EXHIBIT F



DEPOSITION
EXHIBIT

Van Scoy 2
7/26/05

Kurt and Donna Van Scoy                    -2-                    November 18, 2004

A response to this letter is due within ten (10) days giving assurance that infringement will cease.

This letter is written without prejudice to any position that Mr. Wayne Van Scoy may take should litigation prove necessary.

If I do not receive a response from you, it will be understood that the foregoing is correct.

Sincerely,

MICHAEL F. PETOCK

Certified Mail No. 7099 3400 0003 9206 3270

CC:  Mr. Wayne Van Scoy

MFP/rks
KVanSc11.014

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
**(Domestic Mail Only; No Insurance Coverage Provided)**

Article Sent To:

| | | |
|---|---|---|
| Postage | $ | .60 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 4.65 |

Postmark Here

Name (Please Print Clearly) (to be completed by mailer)
Kurt + Donna Van Scoy - Diamond Mine of DE, INC.
Street, Apt. No.; or PO Box No.
1117 Churchmans Road
City, State, ZIP+4
Newark, DE 19713
PS Form 3800, July 1999          See Reverse for Instructions

---

SENDER:
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

3. Article Addressed to:
Kurt and Donna Van Scoy
Diamond Mine of Delaware, Inc.
1117 Churchmans Road
Newark, DE 19713

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery
Consult postmaster for fee.

4a. Article Number
7099 3400 0003 9206 3270

4b. Service Type
☐ Registered          ☐ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise   ☐ COD

7. Date of Delivery
11 20 04

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X

8. Addressee's Address (Only if requested and fee is paid)

Is your RETURN ADDRESS completed on the reverse side?

PS Form 3811, December 1994          Domestic Return Receipt

Thank you for using Return Receipt Service.

Int. Cl.: 42
Prior U.S. Cl.: 101

Reg. No. 1,140,958

United States Patent and Trademark Office          Registered Oct. 28, 1980

10 Year Renewal/New Cert.          Renewal Term Begins Oct. 28, 2000

## SERVICE MARK
## PRINCIPAL REGISTER
## REGISTRATION ASSIGNED

## VAN SCOY DIAMOND MINE

VAN SCOY, WAYNE (UNITED STATES CITIZEN)
154 MUNDY STREET
WILKES-BARRE, PA 18702, BY ASSIGNMENT VAN SCOY DIAMOND MINES, INC. (PENNSYLVANIA CORPORATION) EDWARDSVILLE, PA

APPLICANT MAKES NO CLAIM TO THE EXCLUSIVE USE OF THE WORD "DIAMOND" APART FROM THE MARK AS SHOWN IN THE DRAWINGS, BUT RESERVES ANY COMMONLAW RIGHTS IT MAY HAVE THEREIN.

FOR: [ RENDERING OF TECHNICAL AID AND ASSISTANCE IN THE ESTABLISHMENT AND/OR OPERATION OF RETAIL JEWELRY STORES ], IN CLASS 35 (U.S. CLS. 100, 101 AND 102).
FIRST USE 5-26-1977; IN COMMERCE 5-26-1977.

FOR: RETAIL JEWELRY STORE SERVICES, IN CLASS 42 (U.S. CL. 101).
FIRST USE 11-0-1976; IN COMMERCE 3-11-1977.
SER. NO. 73-169,527, FILED 5-8-1978.



*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Oct. 2, 2001.*

*Nicholas P. Godici*

**DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE**

Int. Cl.: 14

Prior U.S. Cl.: 28

United States Patent and Trademark Office

10 Year Renewal/New Cert.

Reg. No. 1,140,711

Registered Oct. 21, 1980

Renewal Term Begins Oct. 21, 2000

## TRADEMARK
## PRINCIPAL REGISTER
## REGISTRATION ASSIGNED

### VAN SCOY DIAMOND MINE

VAN SCOY, WAYNE (UNITED STATES CITIZEN)
154 MUNDY STREET
WILKES-BARRE, PA 18702, BY ASSIGNMENT VAN SCOY DIAMOND MINES, INC. (PENNSYLVANIA CORPORATION) EDWARDSVILLE, PA
APPLICANT MAKES NO CLAIM TO THE EXCLUSIVE USE OF THE WORD "DIAMOND" APART FROM THE MARK AS SHOWN, BUT RESERVES ANY COMMON LAW RIGHTS IT MAY HAVE THEREIN.

FOR: JEWELRY AND PRECIOUS STONES, IN CLASS 14 (U.S. CL. 28).

FIRST USE 3-11-1977; IN COMMERCE 3-11-1977.

SER. NO. 73-169,526, FILED 5-8-1978.



*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Oct. 2, 2001.*

Nicholas P. Godici

**DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE**

# EXHIBIT G

# REDACTED

# EXHIBIT H

c:\agreement\diamond\diamond.mfg March 8, 1993 T-Q

*Rdg. agreement.*

*READING*
*Van Scoy*
*agreement*

## AGREEMENT

Thomas A. Van Scoy, Sr. (hereinafter generally referred to as "Van Scoy"), a citizen of the United States trading as Van Scoy Diamond Mine at 154 Mundy Street, Wilkes-Barre, Pennsylvania, 18702, and Van Scoy Diamond Mine of Reading, Pa., a partnership of Lew M. Hill and James C. Sweeney (hereinafter individually and collectively referred to as "Reading Partnership") organized under the laws of Pennsylvania, having a place of business at 3039 N. Fifth Street, Reading, Pennsylvania, 19605, as the parties to this Agreement, intending to be legally bound, hereby agree as follows:

**1  Background**

1.1  Van Scoy operates certain retail jewelry businesses and is the owner of United States trademark registration 1,140,958 for the mark "Van Scoy Diamond Mine" for use in connection with retail jewelry store services.

1.2  Reading Partnership operates retail jewelry stores in Reading, Pottsville and Pottstown, Pennsylvania and trades in those areas under the name "Van Scoy Diamond Mine".

1.3  Reading Partnership has paid certain monies to Van Scoy respecting the right to trade under the name "Van Scoy Diamond Mine" in the Reading, Pottsville and Pottstown, Pennsylvania areas. In connection therewith Reading Partnership contends that it was to have received certain assistance and services from Van Scoy, which

- 1 -



EXHIBIT #411
PH's
10/5/05

EXHIBIT H

D001848

c:\legraconf\diamond\vcenscoy.tkg March 8, 1993 T-Q

Reading Partnership contends it has not received and which Van Scoy disputes.

1.4  The parties, having certain differences in their views as to their legal rights and obligations respecting their dealings heretofore and in the future and choosing to compromise those differences rather than resort to litigation, have reached this Agreement.

2  **Definitions**

As used herein the following terms, including plurals and variants thereof, shall have the meanings stated:

2.1  "Territory" means Berks, Schuylkill and Montgomery counties of Pennsylvania.

2.2  "Mark" means the mark "Van Scoy Diamond Mine" as registered on the Principal Register of the United States Patent and Trademark Office pursuant to registration 1,140,958, and marks and names similar thereto in sound, appearance and/or commercial connotation, including the surname "Van Scoy".

3  **Warranties, Representations and Guarantees**

3.1  Van Scoy has no extant contractual obligations which conflict with any of the obligations Van Scoy has incurred hereunder or which will interfere with Van Scoy's ability to perform the obligations incurred hereunder.

3.2  Reading Partnership has no extant contractual obligations which conflict with any of the obligations Reading Partnership has

- 2 -

c:\agreement\diamond\vanscoy.rdg March 8, 1988 T-Q

incurred hereunder or which will interfere with Reading Partnership's ability to perform the obligations incurred hereunder.

3.3  Reading Partnership shall not challenge or dispute, through either a cancellation proceeding in the United States Patent and Trademark Office or a declaratory judgment claim or counterclaim in a United States District Court, the validity or enforceability of U.S. trademark registration 1,140,958 for "Van Scoy Diamond Mine".

3.4  Van Scoy shall not use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

3.5  Van Scoy shall not grant any right to any third party to use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

3.6  Reading Partnership shall continue to conduct its retail jewelry business using the same high standards of integrity in dealing with the public and continue to offer the same high quality jewelry products and jewelry service as Reading Partnership has offered heretofore, to the extent Reading Partnership can do so and yet continue to meet the prices of its competition.

3.7  Van Scoy and Reading Partnership state their individual and joint intentions to take all reasonable measures, consistent

~ 3 ~

c:\sgrowml\diamond\treaty.mig March 8, 1993 T-Q

with their rights and obligations to each other as set forth herein, to protect the Mark and to maintain the enforceability of the Mark against third parties.

3.8  Neither party shall do indirectly, or through any third party, anything which if done directly would amount to breach of this Agreement.

## 4  Grant

4.1  Van Scoy irrevocably grants to Reading Partnership for the term of this Agreement an exclusive right and license to use and to trade under the Mark in the Territory in the course of conducting diamond and jewelry business.

## 5  Performance Rights and Obligations

5.1  Van Scoy shall give prompt notice to Reading Partnership of any attack on the Mark in any judicial or administrative forum. In the event Van Scoy elects not to defend the Mark against such an attack, Reading Partnership shall have the right, but no obligation, to defend the Mark against any such attack, at Reading Partnership's expense.  Van Scoy shall cooperate with Reading Partnership with any such defense.

5.2  Van Scoy shall give prompt notice to Reading Partnership of any infringement of the Mark, whether within or outside of the Territory, and shall notify Reading Partnership of whether Van Scoy intends to assert the Mark against the infringer.  In the event Van Scoy elects not to institute suit against any such infringer,

- 4 -

D001851

c:\egreemnt\llamard\vanscoy.rdg March 8, 1993 T-Q

Reading Partnership shall have the right, but no obligation, to institute suit against any such infringer in Van Scoy's name. Any monetary recovery by Reading Partnership in any such suit shall be for the account of Reading Partnership. Van Scoy shall cooperate with Reading Partnership in prosecuting any such suit.

5.3    In the event Van Scoy wishes to exhibit any of Reading Partnership's operations to any third party as a demonstration of commercial success achieved using the Mark, Reading Partnership shall cooperate with Van Scoy by opening Reading Partnership's facilities to inspection by such third parties.

6    **Monetary Consideration**

6.1    In consideration of the license, rights and releases granted and undertakings made herein, Reading Partnership shall pay Van Scoy $30,000.00 upon execution of this Agreement.

7    **Disclaimers**

7.1    Nothing herein shall be construed to create or imply any obligation on the part of Van Scoy to provide any type of advertising support or promotional assistance respecting the ongoing conduct of retail jewelry business by Reading Partnership under the Mark in the Territory.

7.2    Nothing herein shall be construed to create any obligation on the part of Van Scoy to provide Reading Partnership with any other kind of commercial assistance including, but not limited to, identification of or introduction to suppliers of

- 5 -

c:\kircove\diamond\newcopy.rdg March 8, 1993 T-Q

diamonds or other products sold at retail in the jewelry business.

**8    Releases**

8.1  Each party hereby releases the other party from any and all claims which have accrued prior to the date of this Agreement and which are assertable against the other party, irrespective of whether the other party has ever been notified of any such claims(s).

**9    Assignment**

9.1  This Agreement including the rights granted herein shall be freely assignable by each party without consent of the other party.  A party assigning any right under this Agreement shall promptly give notice of the same to the other party.

**10   Choice of Law**

10.1 This Agreement shall be construed and governed according to the laws of contract construction of the Commonwealth of Pennsylvania.

**11   Force Majeure**

11.1  Neither party hereto shall be liable for failure to perform obligations hereunder due to, by way of example and not by way of limitation, act of God, war, riot, fire, flood, invasion, earthquake, epidemic, interruption of transportation, energy shortage, explosion, or any other material cause beyond the reasonable anticipation of the parties hereto and performance of obligations hereunder shall be suspended during, but not longer

- 6 -

D001853

clapperalsthaneachmemory.clg March 8, 1991 T-G

than, the existence of such cause.

## 12   Indemnification

12.1   Neither party hereto shall be liable to the other party for any personal injury or incidental or consequential property damages suffered by the other party hereto, or by any third party, resulting from any activity of either of the parties under or relating to this Agreement.

12.2   In the event of any claim against a party to this Agreement by any third party alleging personal injury and/or property damage resulting from any action or failure to act by the other party hereto, such other party shall indemnify and hold harmless the first party against such claim.

## 13   Notices

13.1   Notices hereunder shall be in writing and shall be sufficiently given by a party to the remaining party if addressed to the remaining party as indicated at the preamble of this Agreement and deposited in the United States mail as registered mail, return receipt requested, with postage prepaid.

## 14   Breach

14.1   Upon failure of any party hereto (i) to fulfill any obligation under this Agreement and (ii) to remedy any such failure within sixty (60) days after written demand therefor by the other party, such other party may terminate this Agreement within ninety (90) days after the written demand.   Such termination shall be

- 7 -

c:\agreement\diamond\inventory.rdg March 8, 1989 F-Q

without prejudice to any other rights either party may have growing out of this Agreement.

14.2  In lieu of terminating the Agreement, a party adversely affected by a failure to perform an obligation hereunder shall have the right to sue for specific performance respecting performance of the obligation.  Regarding specific performance, the parties expressly acknowledge that the uniqueness of the Mark may make money damages inadequate to compensate a party for damages sustained as a result of failure to perform an obligation.

15  **Merger**

15.1  This written Agreement sets forth the entire understanding between the parties hereto as to their rights and obligations respecting the Mark and the Territory and merges all prior discussions and negotiations between the parties concerning such rights and obligations and neither party shall be bound by any conditions, definitions, warranties, representations, or guarantees with respect to such rights and obligations other than as expressly provided in this written Agreement.

16  **Severability**

16.1  This Agreement shall be severable. In the event any portion or provision of this Agreement is deemed by any court of competent jurisdiction to be unenforceable, illegal or contrary to public policy, this Agreement shall remain in force as if the adjudicated portion or provision of the Agreement did not exist.

– 8 –

D001855

c:\agreement\diamond\vanscoy.rlg March 8, 1993 T-Q

## 17    Waiver

17.1    Failure of either party at any time or from time to time to exercise any right under this Agreement shall not be deemed a waiver of such right nor shall it prevent the party from subsequently asserting or exercising such right.

## 18    Term

18.1    This Agreement shall be effective on the later date signed by the later-to-sign of the parties hereto and shall remain in effect thereafter for so long as Reading Partnership, or any successor in interest thereto, conducts a retail jewelry business in the Territory and for three (3) years thereafter.

IN WITNESS HEREOF, the parties have executed this Agreement on the dates and at the places indicated below.

Thomas A. Van Scoy, Jr.                Van Scoy Diamond Mine of
                                       Reading, Pa.

_____              By: _____

Date: _____        Date: _____

Place: _____       Place: _____

_____              _____
Witness                                Witness

- 9 -

D001856

# EXHIBIT I

## AGREEMENT

Thomas A. Van Scoy, Sr. (hereinafter generally referred to as "Van Scoy"), a citizen of the United States trading as Van Scoy Diamond Mine at 154 Mundy Street, Wilkes Barre, Pennsylvania, 18702, and International Diamond Company, Inc. (hereinafter referred to as "International"), a Pennsylvania corporation having a place of business at 958 Plaza Boulevard, Lancaster, Pennsylvania, 17601, as the parties to this Agreement, intending to be legally bound, hereby agree as follows:

### 1    Background

1.1  Van Scoy operates certain retail jewelry businesses and is the owner of United States trademark registration 1,140,958 for the mark "Van Scoy Diamond Mine" for use in connection with retail jewelry store services.

1.2  International operates retail jewelry stores in the Lehigh Valley and Susquehanna Valley areas and trades in those areas under the name "Van Scoy Diamond Mine".

1.3  International has paid over one-half million dollars to Van Scoy respecting the right to trade under the name "Van Scoy Diamond Mine" in the Lehigh Valley and Susquehanna Valley areas. In connection therewith International contends that it was to have received (i) advertising support, both creative and mechanical, in the nature of audio and print media advertising for use in the

– 1 –



D001857

EXHIBIT I

Lehigh Valley and Susquehanna Valley areas, (ii) an assured source of supply of loose diamonds to be sold at such retail locales and (iii) introductions to manufacturers and suppliers in the jewelry industry for International to trade therewith and enjoy the benefits of any relationships Van Scoy had established with such manufacturers and/or suppliers.

1.4   The parties, having certain differences in their views as to their legal rights and obligations respecting their dealings heretofore and in the future and choosing to compromise those differences rather than resort to litigation, have reached this Agreement.

2   Definitions

As used herein the following terms, including plurals and variants thereof, shall have the meanings stated:

2.1   "Territory" means Lehigh, Northampton, Lancaster, York, and Dauphin Counties of Pennsylvania and Warren County of New Jersey.

2.2   "Mark" means the mark "Van Scoy Diamond Mine" as registered on the Principal Register of the United States Patent and Trademark Office pursuant to registration 1,140,958, and marks and names similar thereto in sound, appearance and/or commercial connotation, including the surname "Van Scoy".

3   Warranties, Representations and Guarantees

3.1   Van Scoy has no extant contractual obligations which

- 2 -

D001858

conflict with any of the obligations Van Scoy has incurred hereunder or which will interfere with Van Scoy's ability to perform the obligations incurred hereunder.

3.2  International has no extant contractual obligations which conflict with any of the obligations International has incurred hereunder or which will interfere with International's ability to perform the obligations incurred hereunder.

3.3  International shall not challenge or dispute, through either a cancellation proceeding in the United States Patent and Trademark Office or a declaratory judgment claim or counterclaim in a United States District Court, the validity or enforceability of U.S. trademark registration 1,140,958 for "Van Scoy Diamond Mine".

3.4  Van Scoy shall not use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

3.5  Van Scoy shall not grant any right to any third party to use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

3.6  International shall continue to conduct its retail jewelry business using the same high standards of integrity in dealing with the public and continue to offer the same high quality jewelry products and jewelry service as International has offered heretofore, to the extent International can do so and yet continue

— 3 —

D001859

c:\agreement\Vancoy\treaty.int March 3, 1993 T-Q

to meet the prices of its competition.

3.7  Van Scoy and International individually and jointly state their intentions to take all reasonable measures, consistent with their rights and obligations to each other as set forth herein, to protect the Mark and to maintain the enforceability of the Mark against third parties.

3.8  Neither party shall do indirectly, or through any third party, anything which if done directly would amount to breach of this Agreement.

4    **Grant**

4.1  Van Scoy irrevocably grants to International for the term of this Agreement an exclusive right and license to use and to trade under the Mark in the Territory in the course of conducting diamond and jewelry business.

5    **Performance Rights and Obligations**

5.1  Van Scoy shall give prompt notice to International of any attack on the Mark in any judicial or administrative forum. In the event Van Scoy elects not to defend the Mark against such an attack, International shall have the right, but no obligation, to defend the Mark against any such attack, at International's expense.  Van Scoy shall cooperate with International with any such defense.

5.2  Van Scoy shall give prompt notice to International of any infringement of the Mark, whether within or outside of the

- 4 -

D001860

Territory, and shall notify International of whether Van Scoy intends to assert the Mark against the infringer. In the event Van Scoy elects not to institute suit against any such infringer, International shall have the right, but no obligation, to institute suit against any such infringer in Van Scoy's name. Any monetary recovery by International in any such suit shall be for the account of International. Van Scoy shall cooperate with International in prosecuting any such suit.

5.3   In the event Van Scoy wishes to exhibit any of International's operations to any third party as a demonstration of commercial success achieved using the Mark, International shall cooperate with Van Scoy by opening International's facilities to inspection by such third parties.

6   **Monetary Consideration**

6.1 In consideration of the rights and releases granted and undertakings made herein, International shall (i) pay Van Scoy $25,000.00 and (ii) deliver to Van Scoy $25,000.00 worth of diamonds, as defined by attached Exhibit A, upon execution of this Agreement.

7   **Disclaimers**

7.1 Nothing herein shall be construed to create or imply any obligation on the part of Van Scoy to provide any type of advertising support or promotional assistance respecting the ongoing conduct of retail jewelry business by International under

- 5 -

D001861

the Mark in the Territory.

7.2 Nothing herein shall be construed to create any obligation on the part of Van Scoy to provide International with any other kind of commercial assistance, including but not limited to, identification of or introduction to suppliers of diamonds or other products sold at retail in the jewelry business.

## 8    Releases

8.1 Each party hereby releases the other party from any and all claims which have accrued prior to the date of this Agreement and which are assertable against the other party, irrespective of whether the other party has ever been notified of any such claims(s).

## 9    Assignment

9.1 This Agreement including the rights granted herein shall be freely assignable by each party without consent of the other party. A party assigning any right under this Agreement shall promptly give notice of the same to the other party.

## 10    Choice of Law

10.1 This Agreement shall be construed and governed according to the laws of contract construction of the Commonwealth of Pennsylvania.

## 11    Force Majeure

11.1 Neither party hereto shall be liable for failure to perform obligations hereunder due to, by way of example and not by

- 6 -

D001867

way of limitation, act of God, war, riot, fire, flood, invasion, earthquake, epidemic, interruption of transportation, energy shortage, explosion, or any other material cause beyond the reasonable anticipation of the parties hereto and performance of obligations hereunder shall be suspended during, but not longer than, the existence of such cause.

## 12    Indemnification

12.1    Neither party hereto shall be liable to the other party for any personal injury or incidental or consequential property damages suffered by the other party hereto, or by any third party, resulting from any activity of either of the parties under or relating to this Agreement.

12.2    In the event of any claim against a party to this Agreement by any third party alleging personal injury and/or property damage resulting from any action or failure to act by the other party hereto, such other party shall indemnify and hold harmless the first party against such claim.

## 13    Notices

13.1    Notices hereunder shall be in writing and shall be sufficiently given by a party to the remaining party if addressed to the remaining party as indicated at the preamble of this Agreement and deposited in the mail as registered mail, return receipt requested, with United States postage prepaid.

## 14    Breach

- 7 -

D001863

c:\agreemt\diamomd\inventory.ltd March 5, 1993 F.Q

14.1    Upon failure of any party hereto (i) to fulfill any obligation under this Agreement and (ii) to remedy any such failure within sixty (60) days after written demand therefor by the other party, such other party may terminate this Agreement within ninety (90) days after the written demand.    Such termination shall be without prejudice to any other rights either party may have growing out of this Agreement.

14.2   In lieu of terminating the Agreement, a party adversely affected by a failure to perform an obligation hereunder shall have the right to sue for specific performance respecting performance of the obligation.    Regarding specific performance, the parties expressly acknowledge that the uniqueness of the Mark may make money damages inadequate to compensate a party for damages sustained as a result of failure to perform an obligation.

15    Merger

15.1   This written Agreement sets forth the entire understanding between the parties hereto as to their rights and obligations respecting the Mark and the Territory and merges all prior discussions and negotiations between the parties concerning such rights and obligations and neither party shall be bound by any conditions, definitions, warranties, representations, or guarantees with respect to such rights and obligations other than as expressly provided in this written Agreement.

16    Severability

- 8 -

D001864

16.1    This Agreement shall be severable. In the event any portion or provision of this Agreement is deemed by any court of competent jurisdiction to be unenforceable, illegal or contrary to public policy, this Agreement shall remain in force as if the adjudicated portion or provision of the Agreement did not exist.

17    Waiver

17.1    Failure of either party at any time or from time to time to exercise any right under this Agreement shall not be deemed a waiver of such right nor shall it prevent the party from subsequently asserting or exercising such right.

18    Term

18.1    This Agreement shall be effective on the later date signed by the later-to-sign of the parties hereto and shall remain in effect thereafter for so long as International, or any successor in interest thereto, conducts a retail jewelry business in the

- 9 -

D001865

Territory and for three (3) years thereafter.

IN WITNESS HEREOF, the parties have executed this Agreement on the dates and at the places indicated below.

Thomas A. Van Scoy, Jr.                    International Diamond Company, Inc.

_Thomas A. Van Scoy Jr._          By _____ - VP/Treasurer

                                      _____ - VP/Sect.

Date: __3/17/93__                  Date: __March 8th, 1993__

Place: __Allentown, Pa.__          Place: __Lancaster, PA.__

_Wayne Van Scoy_                   _Ruth C. Bzak - President_
Witness                            Witness

- 10 -

D001866

TV84

## EXHIBIT "A"

| | Dia. Wt. | PPC | Cost |
|---|---|---|---|
| 1/5 carats | 0.18 | $720 | $130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.21 | 720 | 151 |
| | 0.21 | 720 | 151 |
| | 0.21 | 720 | 151 |
| | 0.22 | 720 | 158 |
| | 0.22 | 720 | 158 |
| | 0.22 | 720 | 158 |
| | 0.22 | 720 | 158 |
| | 0.23 | 720 | 166 |
| | 3.00 carats | | $2,160.00 |
| 1/4 carats | 0.23 | $755 | $174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.24 | 755 | 181 |
| | 0.24 | 755 | 181 |
| | 0.24 | 755 | 181 |
| | 0.25 | 755 | 189 |
| | 0.26 | 755 | 196 |
| | 0.29 | 755 | 219 |
| | 0.29 | 755 | 219 |
| | 0.29 | 755 | 219 |
| | 0.29 | 755 | 219 |
| | 3.77 carats | | $2,846.35 |
| 1/3 carats | 0.31 | $840 | 260 |
| | 0.32 | 840 | 269 |
| | 0.32 | 840 | 269 |
| | 0.32 | 840 | 269 |
| | 0.33 | 840 | 277 |
| | 0.33 | 840 | 277 |
| | 0.33 | 840 | 277 |
| | 0.33 | 840 | 277 |
| | 0.34 | 840 | 286 |
| | 0.34 | 840 | 286 |
| | 3.27 carats | | $2,746.80 |

D001867

TVS4

## EXHIBIT "A"

| | Dia. Wt. | PPC | Cost |
|---|---|---|---|
| 3/8 carats | 0.38 | $925 | $352 |
| | 0.39 | 925 | 361 |
| | 0.39 | 925 | 361 |
| | 0.40 | 925 | 370 |
| | 0.40 | 925 | 370 |
| | 0.40 | 925 | 370 |
| | 0.40 | 925 | 370 |
| | 0.41 | 925 | 379 |
| | 0.41 | 925 | 379 |
| | 0.41 | 925 | 379 |
| | 3.99 carats | | $3,339.25 |
| 1/2 carats | 0.47 | $1,170 | $550 |
| | 0.48 | 1,170 | 562 |
| | 0.49 | 1,170 | 573 |
| | 0.49 | 1,170 | 573 |
| | 0.50 | 1,170 | 585 |
| | 0.51 | 1,170 | 597 |
| | 0.51 | 1,170 | 597 |
| | 0.51 | 1,170 | 597 |
| | 0.52 | 1,170 | 608 |
| | 0.53 | 1,170 | 620 |
| | 5.01 carats | | $5,861.70 |
| 5/8 carats | 0.61 | $1,275 | $778 |
| | 0.61 | 1,275 | 778 |
| | 0.64 | 1,275 | 816 |
| | 0.64 | 1,275 | 816 |
| | 2.50 carats | | $3,187.50 |
| 3/4 carats | 0.71 | $1,500 | $1,065 |
| | 0.71 | 1,500 | 1,065 |
| | 0.72 | 1,500 | 1,080 |
| | 2.14 carats | | $3,210.00 |
| 9/10 carat | 0.92 | $1,875 | $1,725 |
| | 0.92 carat | | $1,725.00 |
| TOTALS | 24.60 carats | | $25,076.60 |

D001868

```
TVS1
ABE          50,000            TERRITORIAL FEES    125,000
NORFOLK      50,000            MONTHLY FEES        394,000
HAMPTON      25,000            NANCY-TVS & TVS,Jr   10,000
             ----------                            ----------
            125,000                                529,000
```

| | ABE | NOR | HMP | LNS | YOR | SABE | PBG |
|------|------|------|------|------|------|------|------|
| 1981 | 4,000 | | | | | | |
| 1982 | 12,000 | | | | | | |
| 1983 | 12,000 | 4,000 | | | | | |
| 1984 | 12,000 | 12,000 | 5,000 | | | | |
| 1985 | 12,000 | 12,000 | 12,000 | | | | |
| 1986 | 12,000 | 12,000 | 12,000 | 2,000 | 2,000 | | |
| 1987 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | | |
| 1988 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | | |
| 1989 | 12,000 | 12,000 | 6,000 | 12,000 | 6,000 | | |
| 1990 | 12,000 | 12,000 | closed | 12,000 | 6,000 | 3,500 | 1,500 |
| 1991 | 12,000 | closed | closed | 12,000 | 6,000 | 6,000 | 6,000 |
| | ------ | ------ | ------ | ------ | ------ | ------ | ------ |
| | 124,000 | 88,000 | 59,000 | 62,000 | 44,000 | 9,500 | 7,500 |

+ 25,000

= 554,000.

D001869

# EXHIBIT J

## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

WAYNE VAN SCOY,                                    )
                                                   )
    Plaintiff and                          )
    Counterclaim-Defendant,                )
                                                   )
       v.                             )
                                                   )
VAN SCOY DIAMOND MINE OF                           )       Case No. 05-108 (KAJ)
DELAWARE, INC., a Delaware Corporation             )
KURT VAN SCOY, and DONNA VAN SCOY,                 )
                                                   )
    Defendants and                         )
    Counterclaim-Plaintiff.                )

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendant and Counterclaim-Plaintiff, Van Scoy Diamond Mine of Delaware, Inc., and

Defendants Kurt Van Scoy and Donna Van Scoy, by and through their undersigned attorneys,

hereby answer the complaint in correspondingly numbered paragraphs and include counterclaims

as follows:

1.      Admitted that Wayne Van Scoy is an individual; admitted that Wayne Van Scoy

is the record owner of two federal registrations for the mark "Van Scoy Diamond Mine" as listed

on the records of the United States Patent and Trademark Office; admitted that there is business

conducted at 154 Mundy Street, Wilkes-Barre, PA 18702; lacking information and belief, denied

that such business is a related company as respecting Wayne Van Scoy.

2.      Admitted.

3.      Admitted that Kurt Van Scoy is an individual who is at least a part owner and an

officer of Van Scoy Diamond Mine of Delaware, Inc.; admitted that Kurt Van Scoy directs in

part the operations of Van Scoy Diamond Mine of Delaware, Inc.; denied that Kurt Van Scoy has

EXHIBIT J

directed any acts which amount to infringement or are otherwise wrongful, as asserted in the complaint.

4.      Admitted that Donna Van Scoy is an individual who is at least a part owner and an officer of Van Scoy Diamond Mine of Delaware, Inc.; admitted that Donna Van Scoy in part directs the operations of Van Scoy Diamond Mine of Delaware, Inc.; denied that Donna Van Scoy has directed any acts which to infringement or are otherwise wrongful as asserted in the complaint.

5.      Admitted that this Court has jurisdiction as respecting the allegations raised in the complaint pursuant to 15 USC 1051 et. seq. as amended and 28 USC 1331.

6.      Admitted that this Court has jurisdiction over supplemental claims of common law unfair competition under 28 USC 1338 as alleged in the complaint but denied that there has been any such unfair competition.

7.      Admitted that defendants Van Scoy Diamond Mine of Delaware, Inc.; Kurt Van Scoy and Donna Van Scoy reside within this District; denied that any of the defendants have committed or directed acts of infringement as alleged in the complaint, within this District or elsewhere; admitted respecting the allegations raised in the complaint that venue is proper in this District pursuant to 28 USC 1391(b) and (c).

## ANSWER TO FIRST CAUSE OF ACTION FOR INFRINGEMENT

8.      Admitted that the allegations in the complaint purport to state a cause of action arising under of the trademark laws of the United States, 15 USC 1051 et seq.; denied that any of the defendants have done anything which is actionable under the trademark laws of the United States.

9.      Admitted that plaintiff appears to be currently engaged in the business of

marketing, selling and distributing diamonds and other jewelry under the mark "Van Scoy Diamond Mine"; otherwise, lacking information and belief, denied.

10.    Admitted that plaintiff appears to be currently engaged in the business of marketing, selling and distributing diamonds and other jewelry under the mark "Van Scoy Diamond Mine"; otherwise, lacking information and belief, denied.

11.    Admitted that plaintiff appears to be currently engaged in the business of marketing, selling and distributing diamonds and other jewelry under the mark "Van Scoy Diamond Mine"; otherwise, lacking information and belief, denied.

12.    Admitted that plaintiff appears to be currently engaged in the business of marketing, selling and distributing diamonds and other jewelry under the mark "Van Scoy Diamond Mine"; otherwise, lacking information and belief, denied.

13.    Lacking information and belief, denied.

14.    Lacking information and belief, denied.

15.    Lacking information and belief, denied.

16.    Specifically denied that the mark "Van Scoy Diamond Mine" has become a famous mark; otherwise, lacking information and belief, denied.

17.    Admitted that the records of the United States Patent and Trademark Office indicate that on 21 October 1980 United States trademark registration 1,140,711 was issued to Van Scoy Diamond Mines, Inc., a Pennsylvania corporation, located at Gateway Shopping Center, Edwardsville, Pennsylvania, 18704. Lacking information and belief, denied that the party to whom U.S. trademark registration 1,140,711 issued on 21 October 1980 was or is plaintiff's predecessor in title. Admitted that the records of the United States Patent and Trademark Office show that United States trademark registration 1,140,711 was renewed on 21

October 2000 in the name of plaintiff.  Admitted that what appears to be a true copy of the renewal registration showing plaintiff as the record owner of U.S. registration 1,140,711 as renewed was attached to the complaint as plaintiff's Exhibit A.  Lacking information and belief, denied that U.S. registration 1,140,711 is in full force and effect, has been made incontestable under Section 15 of the Trademark Act, or is actually owned by plaintiff.

18.    Admitted that the records of the United States Patent and Trademark Office indicate that on 28 October 1980 United States trademark registration 1,140,958 was issued to Van Scoy Diamond Mines, Inc., a Pennsylvania corporation, located at Gateway Shopping Center, Edwardsville, Pennsylvania, 18704.  Lacking information and belief, denied that the party to whom U.S. trademark registration 1,140,958 issued on 28 October 1980 was or is plaintiff's predecessor in title.  Admitted that the records of the United States Patent and Trademark Office show that United States trademark registration 1,140,958 was renewed on 28 October 2000 in the name of plaintiff.  Admitted that what appears to be a true copy of the renewal registration showing plaintiff as the record owner of U.S. registration 1,140,958 as renewed was attached to the complaint as plaintiff's Exhibit B.  Lacking information and belief, denied that U.S. registration 1,140,958 is in full force and effect, has been made incontestable under Section 15 of the Trademark Act, or is actually owned by plaintiff.

19.    Lacking information and belief, denied.

20.    Admitted that defendant Van Scoy Diamond Mine of Delaware, Inc. has rendered jewelry stores services and has sold diamonds, precious stones and jewelry under the mark "Van Scoy Diamond Mine of Delaware" from November of 1994 through the present; admitted that defendant Van Scoy Diamond Mine of Delaware, Inc. may have recently rendered jewelry store services and may have recently sold diamonds, precious stones or jewelry under the mark "Van

- 4 -

Scoy Diamond Mine"; denied that such activities on the part of defendant Van Scoy Diamond Mine of Delaware, Inc. have been to the detriment of plaintiff or have damaged plaintiff. As to defendant Kurt Van Scoy, denied. As to defendant Donna Van Scoy, denied.

21.    Denied.

22.    Denied.

23.    Admitted that defendant Van Scoy Diamond Mine of Delaware, Inc. has used the mark "Van Scoy Diamond Mine of Delaware, Inc." for retail jewelry store and services and in connection with the sale of jewelry and precious stones since November of 1994; denied that any of the defendants have had constructive or actual notice of any federal trademark registration rights allegedly owned by plaintiff; denied that use of the mark "Van Scoy Diamond Mine of Delaware, Inc." and/or use of the mark "Van Scoy Diamond Mine" by defendant Van Scoy Diamond Mine of Delaware, Inc. has constituted infringement of any valid right of plaintiff; denied that any use of any name, mark or other designation by defendant Van Scoy Diamond Mine of Delaware, Inc. in connection with the offering and rendering of the retail jewelry store services and the sale of jewelry and precious stones has caused any likelihood of confusion, deception or mistake as respect to plaintiff. As to defendant Kurt Van Scoy, denied. As to defendant Donna Van Scoy, denied.

24.    Admitted.

25.    Admitted that defendant Van Scoy Diamond Mine of Delaware, Inc. previously operated a website located at www.vanscoydiamondmine.com; denied that creation and operation of that website was done with any knowledge of any trademark registration rights owned by plaintiff. As to defendant Kurt Van Scoy, denied. As to defendant Donna Van Scoy, denied.

PH2 221126v1 03/15/05 11:20:56 AM

26.    Denied that defendant Van Scoy Diamond Mine of Delaware, Inc. uses "Vanscoy Diamond Mine" on any website; otherwise as to defendant Van Scoy Diamond Mine of Delaware, Inc., generally denied.  As to defendant Kurt Van Scoy, denied.  As to defendant Donna Van Scoy, denied.

27.    Admitted.

28.    Denied.

29.    Admitted that defendant Kurt Van Scoy has directed acts of defendant Van Scoy Diamond Mine of Delaware, Inc. but denied that any such acts amounted to infringement or any other actionable wrong as respecting plaintiff.

30.    Admitted that defendant Donna Van Scoy has directed acts of defendant Van Scoy Diamond Mine of Delaware, Inc. but denied that any such acts amounted to infringement or any other actionable wrong as respecting plaintiff.

31.    Admitted that defendant Van Scoy Diamond Mine of Delaware, Inc. has conducted its business in the District of Delaware, within the jurisdiction of this Court but denied that any act of defendant Van Scoy Diamond Mine of Delaware, Inc. has amounted to infringement or any other actionable wrong as respecting plaintiff.  As to defendant Kurt Van Scoy, denied.  As to defendant Donna Van Scoy, denied.

32.    Denied that any act of defendant Van Scoy Diamond Mine of Delaware, Inc. has amounted to infringement of any mark allegedly belonging to plaintiff; otherwise, lacking information and belief, generally denied by defendant, Van Scoy Diamond Mine of Delaware, Inc.  As to defendant Kurt Van Scoy, denied.  As to defendant Donna Van Scoy, denied.

33.    Denied that any act of defendant Van Scoy Diamond Mine of Delaware, Inc. has amounted to any infringement of any mark allegedly belonging to plaintiff; otherwise, lacking

- 6 -

information and belief, generally denied by defendant, Van Scoy Diamond Mine of Delaware, Inc. As to defendant Kurt Van Scoy, denied. As to defendant Donna Van Scoy, denied.

34.    Denied that any act of defendant Van Scoy Diamond Mine of Delaware, Inc. has amounted to any infringement of any mark allegedly belonging to plaintiff; otherwise, lacking information and belief generally denied by defendant, Van Scoy Diamond Mine of Delaware, Inc. As to defendant Kurt Van Scoy, denied. As to defendant Donna Van Scoy, denied.

35.    Admitted that plaintiff sent defendants a letter dated 18 November 2004 asserting that plaintiff own certain United States trademark registrations and further asserting that defendants were infringing the marks which were the subject of those registrations; admitted that defendants have continued their business operations substantially as conducted prior to receipt of the 18 November 2004 letter; denied that any such business operations amounted to infringement of any federally registered mark allegedly owned by plaintiff as asserted in plaintiff's 18 November 2004 letter; otherwise, generally denied.

36.    Other than the letter dated 18 November 2004 as addressed in the preceding paragraph, denied that plaintiff has requested defendants to in any way change their manner of doing business; additionally denied that any manner of doing business by Van Scoy Diamond Mine of Delaware, Inc. has amounted to infringement of any rights allegedly owned by plaintiff in any federal trademarks allegedly owned by plaintiff. As to defendant Kurt Van Scoy, denied. As to defendant Donna Van Scoy, denied.

37.    Other than the letter dated 18 November 2004 as addressed in the preceding two paragraphs, denied that plaintiff has requested defendants to in any way change their manner of doing business; additionally denied that any manner of doing business by Van Scoy Diamond Mine of Delaware, Inc. has amounted to infringement of any rights allegedly owned by plaintiff

- 7 -

in any federal trademarks allegedly owned by plaintiff. As to defendant Kurt Van Scoy, denied. As to defendant Donna Van Scoy, denied.

38.    Denied.

39.    Admitted that the actions of defendant Van Scoy Diamond Mine of Delaware, Inc. have been directed by defendant Kurt Van Scoy and by defendant Donna Van Scoy but denied that any such acts of Van Scoy Diamond Mine of Delaware, Inc. have amounted to infringement.

40.    Denied.

41.    Denied.

## ANSWER TO SECOND CAUSE OF ACTION
## FOR ALLEGED FEDERAL UNFAIR COMPETITION

42.    Preceding paragraphs 1 through 41 are incorporated herein by reference as it fully sets forth herein.

43.    Denied that the trade name "Van Scoy Diamond Mine" and the mark "Van Scoy Diamond Mine" which is the subject of U.S. registrations 1,140,948 and 1,140,711 have become uniquely associated with or have come to identify plaintiff. As to "Van Scoy Diamond Mine" being a trade name of a company related to plaintiff, lacking information and belief, denied. Denied that any use by defendant Van Scoy Diamond Mine of Delaware, Inc. of the designation "Van Scoy Diamond Mine" and/or the designation "Vanscoy Diamond Mine" and/or the designation "Van Scoy Diamond Mine of Delaware, Inc." or any similar designation amounts to use of any false designation of origin or false representation which has in any way wrongly or falsely designated the retail jewelry store business operated by defendant Van Scoy Diamond Mine of Delaware, Inc. at which retail jewelry store services are rendered and precious stones and jewelry are sold, as originating from or connected with plaintiff; further denied that any such

- 8 -

activity constitutes utilizing false descriptions or representations in interstate commerce.

44.    Denied.

## ANSWER TO THIRD CAUSE OF ACTION FOR
## REGISTRATION OF PLAINTIFF'S MARK IS AN INTERNET DOMAIN NAME

45.    Preceding paragraphs 1 through 44 are incorporated herein by reference as it fully sets forth herein.

46.    Admitted that defendant Van Scoy Diamond Mine of Delaware, Inc. caused the internet domain name www.vanscoydiamondmine.com to be registered; denied that such registration was done by any of the defendants with any knowledge of trademark registrations subsisting on the principal register of the United States Patent and Trademark Office which belong to plaintiff; otherwise generally denied.

47.    Denied that when defendant Van Scoy Diamond Mine of Delaware, Inc. registered the internet domain name "www.vanscoydiamondmine.com" that any of the defendants had any knowledge of any United States trademark registrations belonging to plaintiff. Denied that registration of such domain name was done with an intent to injure or profit from plaintiff.

48.    Denied.

## ANSWER TO FOURTH CAUSE OF ACTION
## FOR COMMON LAW UNFAIR COMPETITION

49.    Preceding paragraphs 1 through 48 are incorporated herein by reference as it fully sets forth herein.

50.    Admitted.

51.    Denied.

PH2 221126v1 03/15/05 11:20:56 AM

with any of them, from directly or indirectly making any threats, charges, or assertions related to any alleged infringement of, or institution of any action for infringement of, the mark "Van Scoy Diamond Mine" against defendants Van Scoy Diamond Mine of Delaware, Inc., Kurt Van Scoy or Donna Van Scoy, including any of their successors, assigns, persons in privity with any of them, agents, direct or indirect customers, or any other person by reason of offering to sell or selling the products of defendant Van Scoy Diamond Mine of Delaware, Inc.;

     i.     An award to defendants Van Scoy Diamond Mine of Delaware, Inc., Kurt Van Scoy and Donna Van Scoy of their costs and attorney fees incurred in this action;

     j.     An award to defendants Van Scoy Diamond Mine of Delaware, Inc., Kurt Van Scoy and Donna Van Scoy of such other and further relief against plaintiff Wayne Van Scoy as this Court deems just and equitable.

FOX ROTHSCHILD LLP

By: ___/s/ Francis G.X. Pileggi_____
     Francis G.X. Pileggi (Del. Bar No. 2624)
     Citizen Bank Center
     Suite 1300
     919 North Market Street
     Wilmington, DE  19801-2323
     Phone:  (302) 654-7444
     E-mail:  fpileggi@foxrothschild.com

     Attorneys for Defendants and
     Counterclaim Plaintiff

*OF COUNSEL:*

Charles N. Quinn
Fox Rothschild LLP
2000 Market Street
Tenth Floor
Philadelphia, PA  19103
(215) 299-2135

Dated:  March 15, 2005

PH2 221126v1 03/15/05 2:00:43 PM

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE OF ANSWER

I hereby certify that on March 15, 2005, I electronically filed the foregoing Answer, Affirmative Defenses and Counterclaims with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Steven J. Balick, Esquire
John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

I hereby certify that on March 15, 2005, I have mailed by United States Postal Service, the foregoing document(s) to the following:

Steven J. Balick, Esquire
John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

_____ /s/ Francis G.X. Pileggi _____
Francis G.X. Pileggi (I.D. No. 2624)
Fox Rothschild LLP
Suite 1300
919 N. Market Street
Wilmington, DE 19801
Phone: (302) 654-7444
E-mail: fpileggi@foxrothschild.com