Exhibit "F"



**WILCOX & FETZER LTD.**

In the Matter Of:

# Van Scoy

v.

# Van Scoy Diamond Mine of Delaware, Inc.

C.A. # 05-108 (KAJ)

---

Transcript of:

Kurt Van Scoy

October 3, 2005

---

Wilcox & Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: lhertzog@wilfet.com
Internet: www.wilfet.com

Kurt Van Scoy

Page 30

1  A. Yes, I did.
2  Q. And where did you find that out from?
3  A. My brother-in-law Rick, who had the letter
4  written up as well, that owns the Scranton store.
5  Q. So he had told you that some time prior to
6  November of 2004?
7  A. Exact time -- yeah. I don't know exact time.
8  Yes, I was aware of it.
9  Q. What's your best estimate of when you first heard
10 that statement?
11     MS. MORGAN: Objection.
12     Don't guess.
13 A. I don't know.
14 Q. Was it six months prior to November --
15     MS. MORGAN: Objection.
16 Q. -- of 2004?
17     MS. MORGAN: Asked and answered.
18 A. I don't know.
19 Q. What was the substance of the telephone -- strike
20 that.
21     Was this a telephone conversation with Rick
22 Sendrick?
23 A. Exact -- I don't recall. To be honest with you,
24 I don't recall.

Page 31

1  Q. Do you recall anything else that was said during
2  that conversation with Rick Sendrick?
3  A. No. All I know, it was mentioned about the
4  letter that Wayne and Rick both -- or, the plaintiff and
5  Rick Sendrick had a letter written up from an attorney --
6  they both paid $5,000 each -- to state that the name Van
7  Scoy Diamond Mine was worth nothing in the Federal
8  Bankruptcy Court.
9  Q. Is that something that you were looking for in
10 the Bankruptcy Court when you went there on November
11 22nd?
12     MS. MORGAN: Objection.
13     Go ahead and answer.
14 A. I was looking for any information that was
15 relevant to the bankruptcy, of course, and with the name,
16 the substance of the name. That's what I went there for.
17 Q. Did Wayne ever say anything which gave you
18 permission or implied permission for you to use the mark
19 Van Scoy Diamond Mine?
20     MS. MORGAN: Objection.
21 A. No, he did not. He knew I was down there for
22 years.
23 Q. Did Wayne ever do anything that gave you or
24 implied permission to use the mark Van Scoy Diamond Mine?

Page 32

1  A. Yeah. Actually -- well, in 1996, he did a ring
2  for us. And we actually have a copy of the check that we
3  sent to him.
4  Q. What do you mean he did a ring for you?
5  A. Actually -- and if I'm not mistaken, he made a
6  ring for us, a marquise band. And we sent him a check
7  for that, which Wayne signed the back of the check. And
8  it is under our company name, the company name Van Scoy
9  Diamond Mine of Delaware, Incorporated.
10     And, also, if I'm not mistaken, in 2002, we
11 have a fax letterhead copy, quote, unquote, stating how's
12 the family doing? I hope everybody is doing well.
13 Please contact this company because they're sending your
14 statements to our store. Best regards, Wayne.
15 Q. Wasn't that, in fact, merchandise ordered by you
16 and shipped by mistake to Wayne's store?
17 A. I don't understand --
18     MS. MORGAN: Objection.
19 A. I don't understand the question.
20 Q. The subject matter of that fax and that check --
21 A. It's two separate things. 1996 was the check
22 that the plaintiff has signed personally from our
23 business check. He signed it. And it was for actually
24 the carrot -- if I'm not mistaken, it was a carrot total

Page 33

1  weight marquise band.
2     In 2002, it was the fax cover sheet that he
3  had sent to us. And that is dated on there in his
4  handwriting, basically. It was in 2002. And it's
5  handwritten in his writing.
6     MR. PETOCK: I'd like to have this marked as
7  the next number.
8     Oh, I'm sorry. Can I have that one back? I
9  shouldn't be giving you the top one.
10    (Plaintiff's Deposition Exhibit No. 37 was
11 marked for identification.)
12 BY MR. PETOCK:
13 Q. I show you what's been marked as Plaintiff's
14 Exhibit 37.
15 A. Sure.
16 Q. Is that the correspondence that you're referring
17 to starting with the second page?
18 A. Yes.
19 Q. And what do you say that second page -- it's
20 marked D1814?
21 A. 14, yes.
22    "Hi. How is the family? I hope very good.
23 Please call this company -- please call the company and
24 ship statements to you." And it says, "Thank you." And