# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WAYNE VAN SCOY,                              )
                                            )
       Plaintiff and                           )       Case No. 05-108 (KAJ)
       Counterclaim-Defendant,                  )
                                            )       **PUBLIC VERSION**
           v.                                  )
                                            )
VAN SCOY DIAMOND MINE OF                     )
DELAWARE, INC., a Delaware corporation,     )
KURT VAN SCOY, and DONNA VAN SCOY,          )
                                            )
       Defendants and                          )
       Counterclaim-Plaintiffs.                 )

---

## ANSWERING BRIEF OF DEFENDANTS VAN SCOY DIAMOND MINE OF DELAWARE, KURT VAN SCOY & DONNA VAN SCOY TO PLAINTIFF WAYNE VAN SCOY'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND WILLFUL INFRINGEMENT BY DEFENDANTS

**FOX ROTHSCHILD, LLP**

By:    ***/s/ Sharon Oras Morgan (#4287)***
        Sharon Oras Morgan
        919 North Market Street
        Suite 1300
        Wilmington, DE 19801
        Telephone: (302) 622-4246
        Facsimile:  (302) 656-8920
        E-mail: smorgan@foxrothschild.com
        *Attorneys for Defendants and*
        *Counterclaim Plaintiffs*

OF COUNSEL:

Charles N. Quinn Esquire
Fox Rothschild, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2135
Facsimile:  (215) 299-2150

Dated: December 5, 2005
Public Version Filed: December 12, 2005

# TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF PROCEEDING ..................................................... 1

II.     SUMMARY OF ARGUMENT .................................................................... 2

III.    STATEMENT OF FACTS ......................................................................... 4

IV.     ARGUMENT ......................................................................................... 8

      A.      Contrary to Plaintiff's Assertions, There are Numerous Issues of Disputed Fact Respecting Whether Wayne Van Scoy Does or Does Not Own the Federal Registrations for the Mark and Hence Whether He Has or Lacks Standing to Bring this Suit; Additionally There are Related Issues of Disputed Fact Regarding Arguably Fraudulent Misrepresentations Made to the United States Patent and Trademark Office by the Plaintiff in Seeking to Acquire and Maintain the Federal Registrations for the Mark at Issue..........................................................................................8

      B.      Contrary to Plaintiff's Assertions, Kurt and Donna Van Scoy are not Licensees Under the Mark but Own by Gift the Consented Perpetual Right to use the Mark "Van Scoy Diamond Mine" and Hence Cannot Infringe any Right Purportedly Belonging to Plaintiff Wayne Van Scoy; Even in the Absence of this Right, Wayne Van Scoy Waited Too Long to File Suit.....................................10

      C.      Contrary to Plaintiff's Assertions, There are Disputed Issues of Fact as to Whether the Mark at issue is Invalid as a Result of the Uncontrolled, Naked Licensing...........................................................................13

      D.      Mischaracterization of the Evidence by Plaintiff Wayne Van Scoy Confirms the Existence of Disputed Issues of Material Facts, Negating any Possibility of Summary Judgment.........................................................17

V.      CONCLUSION...................................................................................... 19

## TABLE OF AUTHORITIES

37 F.3d 74, 32 U.S.P.Q. 2d 1506 (2nd Cir. 1994) ............................................................16

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)............................................................................................2, 8

Autozone, Inc. v. Tri-State Automobile Outlet, Inc.,
  2005 WL. 1353797 (D. Del. June 7, 2005)....................................................................3

Celotex Corporation v. Catrett,
  477 U.S. 317 (1986)............................................................................................2, 8

Draeger Oil Co., Inc. v. Uno-Ven Co.,
  314 F.3d 299, 65 U.S.P.Q. 2d 1312 (7th Cir. 2002) ......................................................16

El Greco Leather Products Co. v. Shoe World, Inc.,
  806 F.2d 392, 1 U.S.P.Q. 2d 1016 (2nd Cir. 1986), cert. denied, 484 U.S. 817,
  98 L. 975 F.2d 58, 24 U.S.P.Q.2d 1189 (2nd Cir. 1992), aff'd....................................16

Gorestein Enterprises, Inc. v. Quality Care-USA, Inc.,
  874 F.2d 431, 10 U.S.P.Q. 2d 1762 (7th Cir. 1989) ......................................................16

Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,
  549 F.2d 368, 193 U.S.P.Q. 649 (5th Cir. 1977) .....................................................3, 16

Lazard Freres & Co. v. Protective Life Insurance Co.,
  108 F.3d 1531 (2d Cir. 1997), cert. denied 118 S. Ct. 169 (1997) ...............................8

Matsushita Ele. Industrial Co. v. Zenith Radio Corporation,
  475 U.S. 574 (1986)...............................................................................................2

Matsushita Electric Industrial Co. v. Zenith Radio Corporation,
  475 U.S. 574 (1986)...............................................................................................8

Santana Products Inc. v. Bobrick Washroom Equip., Inc.,
  401 F.3d 123 (3d. Cir. 2005)...................................................................................3

Sterling Drug, Inc. v. Lincoln Laboratories, Inc.,
  322 F.2d 968, 139 U.S.P.Q. 31 (7th Cir. 1963) ...........................................................3

Torres v. Cantine Torresella S.r.l.,
  808 F.2d 46, 1 U.S.P.Q. 2d 1483 (Fed. Cir. 1986) .....................................................17

Turner v. H M H Publishing Co.,
  380 F.2d 224, 154 U.S.P.Q. 330 (5th Cir. 1967), cert. denied, 389 U.S. 1006,
  19 L.Ed. 2d 601, 88 S. Ct. 566, 156 U.S.P.Q. 720 (1967)........................................3

## STATUTES

15 U.S.C. 1064(3) ........................................................................................................17

15 U.S.C. 1065 .............................................................................................................9

Fed.R.Civ.P. 56(e) ........................................................................................................8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAYNE VAN SCOY, | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VAN SCOY DIAMOND MINE OF | ) | Case No. 05-108 (KAJ) |
| DELAWARE, INC., a Delaware corporation, | ) | |
| KURT VAN SCOY, and DONNA VAN SCOY, | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaim-Plaintiffs. | ) | |

**ANSWERING BRIEF OF DEFENDANTS VAN SCOY DIAMOND MINE OF
DELAWARE, KURT VAN SCOY & DONNA VAN SCOY TO PLAINTIFF WAYNE
VAN SCOY'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND
WILLFUL INFRINGEMENT BY DEFENDANTS**

## I.    NATURE AND STAGE OF PROCEEDING

Proceeding under the erroneous assumption that he had acquired a valid federally registered trademark on 4 January, 2001, after watching his brother and sister-in-law build their jewelry business, which they had started in 1994, for four additional years, the plaintiff Wayne Van Scoy on 23 February 2005 filed this suit against his brother and sister-in-law, Kurt and Donna Van Scoy, and their company, Van Scoy Diamond Mine of Delaware, Inc., for trademark infringement. Defendants Kurt and Donna Van Scoy, have asserted various defenses, notably that Wayne does not own the federal trademark registration on which the suit was brought and that the suit is barred by laches. Discovery closed on October 7, 2005. Dispositive motions were filed on November 1, 2005. On December 1, 2005, the Court granted an extension until

Monday, December 5, 2005, to file answering briefs, and until December 29, 2005, to file reply briefs.

## II.    **SUMMARY OF ARGUMENT**

1.    Summary judgment must be denied when there are disputed issues of material facts[1] as to whether a trademark plaintiff lawfully acquired and owns federal registrations for the mark at issue. Defendants Kurt and Donna Van Scoy contend that the federal registrations, which plaintiff Wayne Van Scoy asserts he acquired out of bankruptcy in 2001, were never in the bankruptcy estate and hence could not be purchased from it. Since there are disputed issues of material facts, namely whether the federal registrations were ever transferred from their corporate owner to the bankrupt debtor, Mr. Thomas Van Scoy, Sr. (the father of antagonists Wayne and Kurt) and then to his bankruptcy estate, and such facts are material with ownership of the federal registrations turning thereon, summary judgment of infringement must be denied.

2.    Summary judgment must be denied when there are disputed issues of material fact as to whether those persons accused of trademark infringement own the perpetual right to use the mark at issue. Defendants Kurt and Donna Van Scoy contend that Kurt and Wayne's father, Thomas Van Scoy, Sr., in his capacity as the President of Van Scoy Diamond Mines, Inc., verbally gave Kurt the perpetual right and consent to use the mark Van Scoy Diamond Mine and by subsequent acts ratified that gift. Plaintiff Wayne Van Scoy asserts that his father Thomas Van Scoy made no such gift and disputes the very performance of the subsequent acts by his father that ratified the gift to his brother Kurt. Since there are disputed issues of fact, namely whether Thomas Van Scoy made such a gift and acted subsequently to ratify such gift, and such

---

[1]    *Celotex Corporation v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Ele. Indus. Co. v. Zenith Radio Corporation*, 475 U.S. 574 (1986).

facts are unquestionably material as to Kurt and Donna's right to use the mark, summary judgment of infringement must be denied.

3.     Any judgment, including summary judgment, of infringement must be denied when the purported owner of the mark at issue delays more than four years in filing suit.[2] Plaintiff Wayne Van Scoy knew and implicitly approved of his brother Kurt and sister-in-law Donna and their corporation using the mark even before he thought he had acquired the federal registrations for the mark on 4 January 2001. With Wayne having delayed, after believing he had acquired the federal registrations, until November of 2004 before even objecting to his brother Kurt and sister-in-law Donna using the mark, and then finally on 23 February 2005 filing this suit, any judgment, including summary judgment, of infringement must be denied.

4.     Summary judgment must be denied when there are disputed issues of material fact as to whether there has been unregulated third-party licensed use of a mark without exercise of quality control, resulting in the mark ceasing to be a source-identifier and hence losing its status as a valid trademark.[3] There is documentary and testimonial evidence by third parties, Mr. Mark Maurer and Mr. Lew Hill, of their continuing licensed use of the mark Van Scoy Diamond Mine without any supervision or quality control by Wayne Van Scoy, which documentary evidence and testimony plaintiff Wayne Van Scoy disputes. Since there are disputed issues of fact, namely whether Messrs. Maurer and Hill have used (and continue to use) the mark under license without supervision or quality control by Wayne Van Scoy, summary judgment of infringement (for which a valid mark is a prerequisite) must be denied.

---

[2]     *Autozone, Inc. v. Tri-State Auto Outlet, Inc.*, 2005 WL 1353797 (D. Del. June 7, 2005); *Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d. Cir. 2005).

[3]     *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 193 U.S.P.Q. 649 (5th Cir. 1977); *Turner v. H M H Publishing Co.*, 380 F.2d 224, 154 U.S.P.Q. 330 (5th Cir. 1967), cert. denied, 389 U.S. 1006, 19 L.Ed. 2d 601, 88 S. Ct. 566, 156 U.S.P.Q. 720 (1967); *Sterling Drug, Inc. v. Lincoln Laboratories, Inc.*, 322 F.2d 968, 139 U.S.P.Q. 31 (7th Cir. 1963).

## III.    STATEMENT OF FACTS

Defendants Kurt and Donna Van Scoy, the brother and sister-in-law respectively of the plaintiff Wayne Van Scoy, operate a retail jewelry store through their corporation Van Scoy Diamonds of Delaware, Inc. and trade under the mark Van Scoy Diamond Mine at 1117 Churchman's Road, Newark, Delaware 19713.  Kurt Van Scoy has operated that store since November of 1994, prior to marrying Donna.  (See Affadavit of Kurt Van Scoy attached hereto as Exhibit "A")  Kurt and Donna Van Scoy use the mark Van Scoy Diamond Mine on the front of their store, in radio and other advertising, and on boxes and bags which serve as packaging for jewelry and precious stones purchased by their customers.  (See the copy of a bag used for packaging attached hereto as Exhibit "B", and copies of the cases for the tapes and CD for radio ads attached hereto as Exhibit "C" and the October 3, 2005 Deposition Transcript of Van Scoy Diamond Mine of Delaware Inc., attached hereto as Exhibit "D", D3 at 15:16)  Kurt and Donna Van Scoy use this mark because Kurt's father, Thomas Van Scoy, Sr. gave Kurt the irrevocable perpetual right to use the mark Van Scoy Diamond Mine prior to Kurt opening the store and forming the corporation Van Scoy Diamond of Delaware, Inc.  (See Exhibit "D", D1-D3 at 13:11-15:16)  Kurt has used the mark since prior to his marriage to Donna and Kurt and Donna have used the mark ever since as man and wife in their corporation operating the store.  (See Exhibit "A", A2 at 3:7)

Kurt and Donna Van Scoy have used the mark Van Scoy Diamond Mine for over eleven (11) years with the full knowledge of their brother and brother-in-law plaintiff Wayne Van Scoy pursuant to the irrevocable perpetual right to use the mark given to defendant Kurt by Wayne's and Kurt's father, Thomas Van Scoy, Sr., in 1994.  Plaintiff Wayne Van Scoy knew of such use by defendants and of the irrevocable perpetual right to use the mark Van Scoy Diamond Mine

given to Wayne's brother Kurt by their father prior to Kurt opening the store under the mark "Van Scoy Diamond Mine" in Newark, Delaware in 1994. Wayne watched as Kurt and his father loaded equipment into a truck to take to Delaware to use when Kurt opened the store. (See Exhibit "D", D2-D3, at 14:19-15:9) Wayne subsequently visited the store, observing Kurt and Donna's operation under the mark "Van Scoy Diamond Mine". These visits occurred, both prior to and subsequent to their father's personal bankruptcy as well as after Wayne Van Scoy believed he had acquired ownership of the two federal registrations for the mark "Van Scoy Diamond Mine". (See August 17, 2005 Deposition Transcript of Wayne Van Scoy attached hereto as Exhibit "E", E1-E2 117:12-118:24)

United States trademark registrations 1,140,711 and 1,140,958 were applied for and received by Van Scoy Diamond Mine, Inc., a corporation that Kurt and Wayne's father, Thomas Van Scoy, Sr., owned. The corporation applied for registration of these marks in the late 1970's and received the federal registrations for the mark in 1980. The corporation never transferred ownership of the federal registrations to anyone. (See the copies of the original Trademark Registrations attached hereto as Exhibit "F")

In the late 1990's, addiction to gambling caught up with Thomas Van Scoy, Sr.; he was forced to file for bankruptcy protection. The bankruptcy commenced as a Chapter 13 proceeding, then was converted to a Chapter 11 proceeding and eventually became a Chapter 7 proceeding. Van Scoy Diamond Mine, Inc., was not involved in the bankruptcy proceeding. The corporate stock became a part of the bankrupt estate but the corporate assets were not involved in the bankruptcy proceeding. (See the Bankruptcy Court Summary of Schedules attached hereto as Exhibit "G") The corporation continues in force. (See printout of Secretary of Pennsylvania website attached hereto as Exhibit "H")

As part of the wind-down of the bankruptcy proceeding, Wayne Van Scoy purchased certain rights from the bankrupt estate, these being the common law trademark rights relating to the mark "Van Scoy Diamond Mine".  The bankruptcy did not involve either of the federal registrations for the mark Van Scoy Diamond Mine; this is consistent with the trademark registrations being owned by the corporation and not by Mr. Van Scoy, Sr.  (See the January 4, 2001 Order from the Bankruptcy proceedings attached hereto as Exhibit "I", I2- at 2:4-5; see also I3 at 3:1-6)

Plaintiff overbooks and not unexpectedly ignores the fact that the federal registrations for the marks Van Scoy Diamond Mine, U.S. registrations 1,140,958 and 1,140,711 were *never owned* by the debtor and hence was never part of the bankrupt estate.  Not being part of the bankrupt estate, those federal registrations could not be (and were not) sold by the bankruptcy trustee on 4 January, 2001.  No matter how many times one reads the bankruptcy papers, including the paper by which Wayne Van Scoy asserts he acquired ownership of U.S. trademark registrations 1,140,958 and 1,140,711, there is no mention whatsoever of any federal trademark registrations being sold, or being available for purchase, or even being a part of the bankruptcy estate.

Wayne Van Scoy attempted to establish ownership of the federal trademark registrations by submitting a memorandum falsely representing to the Patent and Trademark Office that the trademark registrations had been involved in the bankruptcy proceeding and that he had purchased those trademark registrations out of the bankrupt estate.  Notably, the papers Wayne Van Scoy presented to the U.S. Patent and Trademark Office purportedly evidencing his purchase of the two federal trademark registrations from the bankrupt estate make no mention of any federal trademark registration, or of any other federal rights, let alone any mention of

registrations 1,140,958 and 1,140,711 for the mark "Van Scoy Diamond Mine". (See the United States Patent Office assignment records identified as recorded at reel 2307, frame, 0686 attached hereto as Exhibit "J")

The file wrappers of the United States trademark registrations reveal that the registrations issued in the name of Van Scoy Diamond Mine, Inc., a Pennsylvania corporation, and were never been transferred by that corporation to anyone. The assignment records of the United States Patent and Trademark office do not show any transfer of U.S. registration 1,140,958 nor of U.S. registration 1,140,711 to any entity, which subsequently became subject of a bankruptcy proceeding. (See the Trademark Assignment Abstracts of Title from the official United States Patent Office records attached here as Exhibit "K")

The clear reading of the bankruptcy court papers is that what Plaintiff Wayne Van Scoy purchased from the bankruptcy court on January 4, 2001 was the common law trademark Van Scoy Diamond Mines,[4] since this is the trademark that was a part of the bankrupt estate, as evidenced by the schedule of assets of the estate. (See Exhibit "G")

Defendants Kurt and Donna Van Scoy continue to operate their jewelry business, investing substantial sums in promoting the business and growing business and the good well associated therewith.

Wayne asserts that Kurt and Donna, as alleged former licensees, are estopped by licensee estoppel from challenging the validity of the trademark. Kurt and Donna are not former licensees.[5]

---

[4]    Note that the trademark sold by the Bankruptcy Court and purchased by plaintiff Wayne Van Scoy is not even the same mark that is the subject of United States trademark registrations 1,140,711 and 1,140,958.

[5]    Indeed, if they were, this would be another basis for defendants to assert the invalidity of the mark Van Scoy Diamond Mine since Wayne Van Scoy never exercised any quality control respecting Kurt and Donna's operation or the quality of the goods sold by Kurt and Donna during the time he believes he has owned the federal registrations for the mark Van Scoy Diamond Mine.

IV.    **ARGUMENT**

Under Rule 56(c) of the Federal Rules of Civil Procedure a party is not entitled to summary judgment if there are genuine issues of material fact. Fed.R.Civ.P. 56(c). *Celotex Corporation. v. Catrett,* 477 U.S. 317, 327 (1986). A material fact is genuinely disputed if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corporation.* 475 U.S. 574 (1986). All inferences and ambiguities must be resolved in favor of the non-moving party. *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1535 (2d Cir. 1997), cert. denied 118 S. Ct. 169 (1997).

The moving party, here Wayne Van Scoy, has the burden of showing that there is no genuine issue of material fact. See *Celotex,* 477 U.S. 317 at 323. If the moving party does not meet this burden, there is no burden on the non-movant, here Kurt and Donna Van Scoy, and summary judgment against them and in favor of their brother and brother-in-law Wayne is unavailable. Wayne Van Scoy as the movant-plaintiff has not met his burden; there are multiple issues of disputed material fact that preclude the grant of summary judgment of infringement for the plaintiff, Wayne Van Scoy, in this case.

A.    **Contrary to Plaintiff's Assertions, There are Numerous Issues of Disputed Fact Respecting Whether Wayne Van Scoy Does or Does Not Own the Federal Registrations for the Mark and Hence Whether He Has or Lacks Standing to Bring this Suit; Additionally There are Related Issues of Disputed Fact Regarding Arguably Fraudulent Misrepresentations Made to the United States Patent and Trademark Office by the Plaintiff in Seeking to Acquire and Maintain the Federal Registrations for the Mark at Issue.**

Plaintiff Wayne Van Scoy contends that he not only owns U.S. registrations 1,140,711 and 1,140,958 but that those registrations are in full force and effect and have been made

incontestable under 15 U.S.C. 1065.[6] The fact is that the agreement approved by the Bankruptcy Court on January 4, 2001 on which Wayne Van Scoy relies, did not address, much less convey, title to either of the federal registrations, namely U.S. registrations 1,140,711 and 1,140,958. (See Exhibit "I", I2 at 3:6).  The facts further are that Wayne Van Scoy's counsel subsequently submitted a memorandum to the U.S. Patent and Trademark Office to be recorded as against U.S. registrations 1,140,958 and 1,140,711, representing to the United States Patent and Trademark Office that Wayne Van Scoy had purchased the two federal trademark registrations from bankruptcy on January 4, 2001. (See Exhibit "J")  That representation was false.  It perpetrated a fraud on the United States Patent and Trademark Office as to the ownership of U.S. registrations 1,140,958 and 1,140,711, as to the right to renew those registrations, and hence as to the right to assert these registrations against third parties such as Kurt and Donna Van Scoy.

It is axiomatic that a federal trademark registration may properly be renewed only by its true owner.  Since Wayne Van Scoy had no documents from the bankruptcy court evidencing any acquisition of United States trademark registrations 1,140,958 and 1,140,711, his counsel created a self-serving memorandum (See Exhibit "J", J5-J6) and submitted that memorandum to the United States Patent and Trademark Office, representing wrongfully that the two registrations were owned by plaintiff Wayne Van Scoy.  The memorandum concealed from the United States Patent and Trademark Office that neither of the two trademark registrations was addressed in the 4 January 2001 Bankruptcy Court order (See Exhibit "I", I1-I4), concealed from the United States Patent and Trademark Office that the two registrations were not a part of the bankruptcy estate and concealed from the United States Patent and Trademark Office that the two registrations had never been transferred from their corporate owner to any one, much less to any entity involved in any bankruptcy proceeding.  As such, the representation made to the U.S.

[6]    Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment of Infringement, page 10, line 4.

Patent and Trademark Office by Wayne Van Scoy's counsel as to Wayne Van Scoy's ownership of the two trademark registrations at issue was false.

**B.**  **Contrary to Plaintiff's Assertions, Kurt and Donna Van Scoy are not Licensees Under the Mark but Own by Gift the Consented Perpetual Right to use the Mark "Van Scoy Diamond Mine" and Hence Cannot Infringe any Right Purportedly Belonging to Plaintiff Wayne Van Scoy; Even in the Absence of this Right, Wayne Van Scoy Waited Too Long to File Suit.**

There are serious disputes as to the right under which Kurt and Donna use the mark "Van Scoy Diamond Mine" and as to the facts, which are necessarily material, giving rise to that right. Plaintiff mischaracterizes defendant Kurt Van Scoy's testimony, saying "Defendants testified that they received an oral license with no definite term from plaintiff's predecessor, plaintiff's father in October of 1994"[7]. This is a clear misstatement and mischaracterization of Kurt Van Scoy's testimony. There was no license involved. Rather, there was a gift of a perpetual consent to use the mark. Kurt Van Scoy testified clearly and unequivocally that the mark is "Van Scoy Diamond Mine. That's what my father gave me." (See Kurt Van Scoy's July 26, 2005 Deposition Transcript attached hereto as Exhibit "L", L1 at 8:16-24; see also L2 at 9:1-22)

Q.    How is it different?

A.    It's Van Scoy Diamond Mine. That's what my father gave me.

Q.    What do you mean your father gave you the name Van Scoy Diamond Mine? Could you explain that to me?

A.    I sure will. In 1994, prior opening of our business on November 12, my father actually gave me the sign, literally gave me the sign, Van Scoy Diamond Mine, from our warehouse and actually brought that down to our location here in Delaware.

Q.    What was the date that he gave you to sign that said Van Scoy Diamond Mine?

A.    The exact date I can't recall. I know it was roughly, probably, about a month prior to the November 12. So I would have to say sometime in October.

Q.    November 12th was the opening of your store?

A.    That is correct.

Q.    Does that sign still exists?

A.    Absolutely.

Q.    Is it on your store now?

A.    Yes, it is.

Q.    Does it say Van Scoy or does it say Van Scoy Diamond Mine?

A.    It says Van Scoy Diamond Mine.

Q.    Where is that located on your store?

A.    On the front of the store.

Q.    Did your dad actually tell you that you had permission to the use the mark or did you infer that from the fact that he gave you the sign?

A.    He gave me the right to use that name.

Q.    What did he say to you exactly?

A.    Here's the sign. Good luck to you. I love you very much and I'm proud of you.

(See Exhibit "L", I.2 at 9: 17-23)

Until receipt of a notice letter from his brother, plaintiff Wayne Van Scoy, Kurt Van Scoy was unaware of any federal registration existing for the mark Van Scoy Diamond Mine[8].

Plaintiff further misstates the facts regarding Defendant's alleged use of the Internet for the sale of jewelry and precious stones. Specifically, plaintiff states that defendants have used

---

Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment of Infringement, page 2, line 18.

the Internet site having the address www.vanscoydiamondmine.com for the offering for sale of jewelry and precious stones over the Internet. This is incorrect. The Internet site works much like a flyer distributed through the mail. Orders for jewelry cannot be placed or taken over the Internet site. There is no provision on the site for ordering diamonds or other jewelry over the Internet, or by email, using a credit card or any other payment means. The Internet site only displays jewelry and precious stones that are for sale at the Newark store. To purchase these one must go to the Newark store.

Defendants Kurt and Donna Van Scoy do not offer jewelry and precious stones for sale over the Internet, as erroneously asserted by the plaintiff. Plaintiff's assertion that "customers in Wilkes-Barre, PA may purchase products via defendants' website" is incorrect. Persons viewing Kurt and Donna's website may see the products that are for sale in their Newark store but may not purchase those products over or through the website. Plaintiffs have misstated and misrepresented the evidence of record.

Plaintiff concedes that Wayne Van Scoy visited Kurt and Donna Van Scoy's store in 1996, 1998 and 2003. (See Exhibit "E", E1-E2 at 117:12-118:10) Plaintiff asserts that there have been incidents of actual confusion between Wayne Van Scoy's store and Kurt and Donna Van Scoy's store: those instances of actual confusion have been minimal. Indeed, only a *single* instance of actual confusion is known by any of the parties. Kurt and Donna Van Scoy have operated their store as Van Scoy Diamond Mine for over eleven (11) years. As respecting Wayne Van Scoy waiting too long to file suit. Defendants incorporate by reference their Motion and Supporting Brief for Summary Judgment of Unenforceability of the Mark at issue on the basis of Laches, as filed heretofore.

**C.    Contrary to Plaintiff's Assertions, There are Disputed Issues of Fact as to Whether the Mark at issue is Invalid as a Result of the Uncontrolled, Naked Licensing.**

Plaintiff Wayne Van Scoy failed and continues to fail to supervise the quality of products and services rendered by third parties Mark Maurer and Lew Hill operating under the mark 'Van Scoy Diamond Mine' and colorable variations thereof. Plaintiff Wayne Van Scoy contends that "Mark Maurer and Lou Hill *are concurrent owners* of the marks "Van Scoy Diamond Mine" operating in separate geographic territories from each other and from anyone else using 'colorable variations' of the mark 'Van Scoy Diamond Mine'. This is a mischaracterization of the evidence. The agreement under which Mr. Maurer operates clearly states that he holds "an exclusive right and *license to use the mark* in the territory." Specifically, Article 4.1 of that Agreement states "Van Scoy irrevocably grants to International for the term of this agreement an exclusive right *and license* to use and to trade under the Mark in the Territory in the course of conducting diamond and jewelry business." The "Mark" is defined in Section 2.2 of the Agreement as meaning "the mark 'Van Scoy Diamond Mine' as registered on the principal register of the U.S. Patent and Trademark Office pursuant to Registration 1,140,958 and marks and names similar thereto in sound, appearance and/or commercial condensation, including the surname 'Van Scoy'." Article 2.1 of the Agreement defines "Territory" to mean Lehigh, Northampton, Lancaster, York and Dauphin Counties of Pennsylvania and Warren County of New Jersey. "International" is defined in the preamble of the agreement as a Institutional Diamonds Corporation, a Pennsylvania corporation. (See the Agreement between International Diamond Corporation and Tommy Van Scoy, attached hereto as Exhibit "M", M1 1:1 and M2, 2:2.1) Mr. Maurer testified that he owns International Diamond Corporation.

Mr. Hill's agreement contains essentially identical provisions, but with the Pennsylvania counties in which Mr. Hill holds his exclusive license being different from those in for which Mr. Maurer holds his exclusive license. Accordingly, Wayne Van Scoy's assertion that Messrs. Maurer and Hill are "concurrent owners" of the Marks "Van Scoy Diamond Mine" operating in separate geographic territories from each other is wrong and misrepresents written, indisputable evidence. Messrs. Maurer and Hill are licensees, as their agreements clearly state. . (See the Agreement between International Diamond Corporation and Tommy Van Scoy, attached hereto as Exhibit "M", m2 2:2.1 and M3, 3:3.4-3.5 and the agreement between Mr. Hill and Tommy Van Scoy attached hereto as Exhibit "N", N2 2:2.1 and N3 3:3.4 – 3.5).

One method by which a mark may be abandoned or become invalid is by "naked licensing", which occurs when a trademark owner fails to exercise control over the use of the mark by a licensee such that presence of the mark on the licensee's goods and services misrepresents the connection with the trademark owner. Since the mark no longer identifies goods or services that are under the control of the owner of the mark, the mark no longer provides a meaningful assurance of quality. Mr. Maurer and Mr. Hill are unquestionably licensees as indicated by the agreements addressed above (Plaintiff's mischaracterization of them as "assignments" notwithstanding) and both testified that no representative of Van Scoy Diamond Mines, Inc., through at least 1999, and thereafter through the present Wayne Van Scoy had ever come into either Mr. Maurer's establishment or Mr. Hill's establishment to monitor the manner in which Messrs. Maurer and Hill operate their establishments, to check the quality of the goods sold in Messrs. Maurer's and Hill's establishments or otherwise to evaluate the manner in which the businesses were run under the license.

Indeed, both Mr. Maurer and Mr. Hill testified that they had not even seen Wayne Van Scoy nor anyone purportedly representing Mr. Wayne Van Scoy, for years. Further respecting the lack of quality control by Wayne Van Scoy, Mr. Hill, one of the licensees under the mark "Van Scoy Diamond Mine" pursuant to a written license agreement, testified that from 1993 until the date of his deposition, in October of this year, no one representing the owner of the trademark "Van Scoy Diamond Mine" had inspected his store for quality control purposes: See Lew Hill October 5, 2005 Pretrial Exam (Exhibit "O", O1 74:2-22).

> Q.    So to your knowledge, from at least 1993 until now, no one representing the owner of the federal registration for the trademark at issue in this case has inspected your store; is that correct;
>
> A.    Not to my knowledge.

(See the October 5, 2005 deposition transcript of Mr. Lew Hill, See Exhibit "O", O-1 74:23-24 and O2, 75: 1-5).

Mr. Maurer similarly testified that he continues to use the name Van Scoy Diamond Mine in his advertising, that representatives of the plaintiff had never visited his store and in fact, in Mr. Maurer's words, no one representing Wayne Van Scoy or any perpetual owner of the trademark in issue had done nothing under the agreement as respecting quality control or any other aspect of his operation. (See the deposition transcript of Mr. Mark Maurer, attached hereto as Exhibit "P", P1 27:5-20) Wayne Van Scoy provided no contrary testimony, implicitly admitting that he has never made any effort to regulate or control the quality exercised by Mr. Maurer and Hill with respect to the operation of Messrs. Maurer's and Hill's jewelry businesses and the goods Messrs. Maurer and Hill sell.

Plaintiff further asserts with respect to Messrs. Maurer and Hill that "the particular circumstances of the licensing agreements were such that quality control was not required because the public would not be deceived." That statement is at odds with every authoritative case involving trademark licensing.[9] Plaintiff cites no case law in support of this position; the position is simply incorrect and misstates applicable law. To the contrary, not only does a purported trademark owner have the right to control quality, when the purported owner licenses the mark the purported owner has a duty to control quality. Failure to fulfill that duty forfeits the trademark.[10]

As Judge Posner observed:

> The economic function of a trademark is to provide the consuming public with a concise and unequivocal signal of the trademarked product's source and character, … and that function is thwarted if the quality and uniformity of the trademarked product are allowed to vary significantly without notice to the consumer.

*Draeger Oil Co., Inc. v. Uno-Ven Co.,* 314 F.3d 299, 65 U.S.P.Q. 2d 1312 (7th Cir. 2002). ("[F]or a trademark to remain enforceable … the owner must, through monitoring, testing and other means, maintain the quality and uniformity of the trademarked product..") See also *Kentucky Fried Chicken Corp v. Diversified Packaging Corp.,* 549 F.2d 368, 193 U.S. P.Q. 649 (5th Cir. 1977) and McCarthy on Trademarks 18:42 and the numerous cases cited there in support of this proposition.

---

[9]    See for example *El Greco Leather Products Co. v. Shoe World, Inc.,* 806 F.2d 392, 395, 1 U.S. P. Q.2d 1016, 1017 (2nd Cir. 1986), cert. denied, 484 U.S. 817, 98 L. 975 F.2d 58, 24 U.S.P.Q.2d 1189 (2nd Cir. 1992), aff'd. 37 F.3d 74, 32 U.S.P.Q.2d 1506 (2nd Cir. 1994).

[10]    *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.,* 874 F.2d 431, 10 U.S.P.Q.2d 1762, 1764 (7th Cir. 1989).

**D.    Mischaracterization of the Evidence by Plaintiff Wayne Van Scoy Confirms the Existence of Disputed Issues of Material Facts, Negating Any Possibility of Summary Judgment.**

Plaintiff's presents as "uncontested" many facts that are hotly contested by defendants Kurt and Donna Van Scoy. With such facts being contested and material to the proceeding, plaintiff Wayne Van Scoy's Motion for Summary Judgment of Infringement and Willful Infringement must fail.

As one hotly contested fact, which plaintiff seeks to gloss over as allegedly being "uncontested", plaintiff asserts that "plaintiff acquired the marks Van Scoy Diamond Mine ("Marks at issue"), along with the associated goodwill and federal registrations for them, pursuant to a purchase from the United States Bankruptcy Court for the Middle District of Pennsylvania pursuant to Bankruptcy Court order on 4 January 2001. As discussed in more detail above, the evidence shows that plaintiff Wayne Van Scoy did not acquire any federal registrations from the Bankruptcy Court on 4 January, 2001 and that the mark for which Wayne Van Scoy acquired rights was the common law mark "Van Scoy Diamond Mines"[11]. (See Exhibit "I", 13 3:6).

As a second hotly uncontested fact, plaintiff asserts that United States trademark registrations, 1,140,958 and 1,140,711, both for the mark "Van Scoy Diamond Mine" are in full force and effect that have been made incontestable. While this *prima facie* appears to be the case from the records of the United States Patent and Trademark Office, plaintiff conveniently omits the fact that enforceability and incontestable status of the marks requires that the marks have been maintained in the absence of fraud.[12] Wayne Van Scoy fraudulently represented his

---

[11]    As noted above, the plural form of "Mines" is not a typographical error. This is the mark that was the subject of the 4 January 2001 purchase by Plaintiff Wayne Van Scoy.

[12]    15 USC 1064(3); see *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 U.S.P.Q.2d 1483 (Fed. Cir. 1986).

94214.90101

ownership of the two federal registrations to the United States Patent and Trademark Office in connection with an application to renew those registrations in 2001[13]. (See the Assignment Recordation from the United States Patent office records attached hereto as Exhibit K) These acts of concealment of the true facts regarding ownership of the registrations, in the course of seeking renewal of those registrations and establishment of Wayne Van Scoy as the record owner of the same, are a clear second instance where the facts as presented by the plaintiff are clearly not "uncontested", as plaintiff asserts. As such, the existence of these disputed, contested facts preclude any summary judgment of infringement.

Plaintiff further asserts that defendants Kurt and Donna Van Scoy offer jewelry and precious stones for sale over the Internet and that customers may purchase products via Kurt and Donna's website. This is incorrect. The website operated by Kurt and Donna Van Scoy as www.vanscoydiamondmine.com does not have the capability for customers to place orders, does not have the capability to receive information regarding payment for orders, does not have the capability to receive information regarding customer's identities or customer's addresses, and, in short, is incapable of facilitating the sale of any product "via defendant's website", as mischaracterized in plaintiff's opening brief as representing Kurt Van Scoy's testimony. This is a third instance of where a fact, represented by the plaintiff to be "uncontested", is certainly very contested and apparently misrepresented by the plaintiff in his briefing papers. With the website now being the focus of the plaintiff's charges, in a belated, desperate attempt to subvert Kurt and Donna's laches defense, the existence of these disputed facts regarding the website further preclude any summary judgment of infringement.

---

[13]     Plaintiff's unclean hands in dealing with the United States Patent and Trademark Office further militate against the grant of any of plaintiff's motions currently at issue.

Plaintiff's mischaracterizations of the facts, as per the examples set forth immediately above (which are far from exhaustive), is further evidence of the existence of disputed issues of material facts, which bars any summary judgment in favor of plaintiff.

## V.    CONCLUSION

Since are numerous disputed issues of material fact as respecting (i) Wayne Van Scoy's purported ownership of the federal registrations for the mark at issue, (ii) Wayne Van Scoy's unwarranted delay of over four years in filing suit, (iii) Kurt and Donna Van Scoy's ownership by gift of the consented perpetual right to use the mark at issue, and (iv) Messrs. Maurer and Hill's unsupervised licensed use of the mark at issue for over 12 years and consequent invalidity of the mark at issue, plaintiff's motion for summary judgment of infringement and willful infringement must be denied. Plaintiff's mischaracterizations of the evidence, as documented in part above, reinforce this conclusion.

FOX ROTHSCHILD, LLP

By:    /s/ Sharon Oras Morgan (#4287)
Sharon Oras Morgan
919 North Market Street
Suite 1300
Wilmington, DE 19801
Telephone: (302) 622-4246
Facsimile:  (302) 656-8920
E-mail: smorgan@foxrothschild.com
*Attorneys for Defendants and*
*Counterclaim Plaintiffs*

OF COUNSEL:

Charles N. Quinn Esquire
Fox Rothschild, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2135
Facsimile:  (215) 299-2150
Dated: November 5, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WAYNE VAN SCOY,                                          )
                                                        )
    Plaintiff and                         )
    Counterclaim-Defendant,               )
                                                        )
        v.                       )
                                                        )
VAN SCOY DIAMOND MINE OF                                 )     Case No. 05-108 (KAJ)
DELAWARE, INC., a Delaware corporation,                  )
KURT VAN SCOY, and DONNA VAN SCOY,                       )
                                                        )
    Defendants and                        )
    Counterclaim-Plaintiffs.              )


**APPENDIX TO**
**REPLY OF DEFENDANTS VAN SCOY DIAMOND MINE OF DELAWARE, KURT VAN SCOY & DONNA VAN SCOY TO PLAINTIFF WAYNE VAN SCOY'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND WILLFUL INFRINGEMENT BY DEFENDANTS**


FOX ROTHSCHILD, LLP

By:    **/s/ Sharon Oras Morgan (#4287)**
        Sharon Oras Morgan
        919 North Market Street
        Suite 1300
        Wilmington, DE 19801
        Telephone: (302) 622-4246
        Facsimile:  (302) 656-8920
        E-mail: smorgan@foxrothschild.com
        *Attorneys for Defendants and*
        *Counterclaim Plaintiffs*

OF COUNSEL:
Charles N. Quinn Esquire
Fox Rothschild, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2135
Facsimile:  (215) 299-2150

Dated: November 5, 2005
Public Version Filed : December 12, 2005

# TABLE OF CONTENTS

Page

Exhibit A- Affidavit in Support of Defendants Reply to Plaintiff Wayne Vans Scoy's Motion for Summary Judgment on Defendants Laches, Acquiescence and Estoppel Defenses.................................................................................................................4

Exhibit B- Copy of a bag used for packaging.................................................4

Exhibit C- Copies of the cases for the tapes and CD for radio ads...........................4

Exhibit D- October 3, 2005 Deposition Transcript of Van Scoy Diamond Mine of Delaware Inc. ................................................................................................4, 5

Exhibit E- August 17, 2005 Deposition Transcript of Wayne Van Scoy ...........................5, 12

Exhibit F- Copies of the original Trademark Registrations.................................5

Exhibit G- Bankruptcy Court Summary of Schedules .........................................6, 7

Exhibit H- Printout of Secretary of Pennsylvania website ...................................6

Exhibit I- January 4, 2001 Order from the Bankruptcy proceedings .................6, 9, 10, 17

Exhibit J- United States Patent Office assignment records identified as recorded at reel 2307, frame, 0686 ....................................................................7, 9

Exhibit K- Trademark Assignment Abstracts of Title from the official United States Patent Office records.................................................................................7, 18

Exhibit L- Kurt Van Scoy's July 26, 2005 Deposition Transcript.......................................................................................................10, 12

Exhibit M- Agreement between International Diamond Corporation and Tommy Van Scoy..................................................................................................14

Exhibit N- Agreement between Mr. Hill and Tommy Van Scoy ...................................................................................................................14

Exhibit O- Lew Hill October 5, 2005 Pretrial Exam.....................................................................................................................15

Exhibit P- Deposition Transcript of Mark Maurer.................................................15