# EXHIBIT D

1

```
        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF DELAWARE---
WAYNE VAN SCOY,                 )
                                )
          Plaintiff,            )
                                )   Civil Action No.
v.                              )   05-108 (KAJ)
                                )
VAN SCOY DIAMOND MINE OF        )
DELAWARE, INC., KURT VAN SCOY   )
and DONNA VAN SCOY,             )
                                )
          Defendants.           )
```

Videotape deposition of VAN SCOY DIAMOND MINE OF DELAWARE, INC., taken pursuant to Federal Rule of Civil Procedure 30(b)(6) through its designee, KURT VAN SCOY, at the law offices of Ashby & Geddes, 222 Delaware Avenue, 17th Floor, Wilmington, Delaware, beginning at 10:00 a.m., on Monday, October 3, 2005, before Patricia L. Shelton, Registered Professional Reporter and Notary Public.

APPEARANCES:

    MICHAEL F. PETOCK, ESQ.
    MICHAEL C. PETOCK, ESQ.
    PETOCK & PETOCK
      46 The Commons at Valley Forge
      1220 Valley Forge Road
      Valley Forge, Pennsylvania 19482-0856
      for the Plaintiff

    SHARON ORAS MORGAN, ESQ.
    FOX ROTHSCHILD, LLP
      919 North Market Street - Suite 1300
      Wilmington, Delaware 19899
      for the Defendants

ALSO PRESENT:   WAYNE VAN SCOY
               LINDSAY DuPHILY - VIDEO SPECIALIST
               WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
            (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters



D0001

13

1  Q. You were at the deposition of Marie Kornish a few
2  days ago; is that correct?
3  A. That is correct.
4  Q. And did you hear her testify about everyone
5  knowing about the mark?
6  A. That's her testimony. I'm not Marie.
7  Q. You disagree with her then?
8       MS. MORGAN: Objection. This is outside the
9  scope of this. Let's move on with this, Michael.
10 BY MR. PETOCK:
11 Q. When did your father -- first of all, did your
12 father give any permission -- strike that.
13      Did your father or his company, Van Scoy
14 Diamond Mine, Inc., give any permission to your
15 corporation, Van Scoy Diamond Mine of Delaware, to use
16 the mark Van Scoy Diamond Mine?
17 A. If you're stating if my father gave me the name,
18 yes, he gave me the name physically. Yes, he did.
19 Q. What do you mean physically he gave you the name?
20 A. Gave me the sign that was in the store, Van Scoy
21 Diamond Mine. He gave me that sign and put it in. He
22 was there for my grand opening and did advertising for
23 me, for my grand opening of Van Scoy Diamond Mine.
24 Q. And you think that was permission also for the



WILCOX & FETZER LTD.
Registered Professional Reporters

Kurt Van Scoy

14

1  corporation?
2  A. Absolutely. He was there selling merchandise.
3  Q. Was there anything in writing?
4  A. My father rarely did anything in writing with
5  anybody. It was more of a handshake, because that's the
6  honest gentleman that he is. And that's the way I was
7  brought up, being fair and honest.
8     There was no documents or anything, no. I'm
9  his son. He said, "I'm proud of you. Good luck to you.
10 You can do it. And I love you." That's his exact words.
11 Q. So your answer is no, there is nothing in
12 writing?
13 A. No, there's nothing in writing. No.
14 Q. And when was this permission given?
15 A. This was in October actually when he gave me the
16 sign. And --
17 Q. October of what year?
18 A. Of 1994. Excuse me.
19 Q. Okay. And where did he give you this permission
20 at? Where was he physically when he said that?
21 A. Actually the Mundy Street store. We've talked
22 about it in his office a few times. I told him what I
23 planned on doing. We actually planned a strategy, if you
24 will, to how we're going to get the tan safe out. And he

15

1  took me over to the warehouse, physically helped me carry
2  the sign into the back of the U-Haul truck and gave me
3  the showcase. And then we took it on down to the store.
4        And then we actually came back up and moved
5  the tan safe, him and I. Physically him and I moved that
6  tan safe from the Wilkes-Barre store. Your -- the
7  plaintiff was sitting there, was witness to see that,
8  actually moving the safe, my father and I, and taking it
9  down to the Delaware store.
10    Q.   Was there -- were there any acts of your father
11 which you consider to be part of the permission other
12 than what you've just testified to?
13    A.   No. Selling at the store and doing ads for me,
14 visiting the store. No, that would be it.
15    Q.   What kind of ads did he do for you?
16    A.   Radio spots.
17    Q.   And when was this?
18        THE WITNESS: I believe this is for
19 attorneys only, if I'm not mistaken, because we had --
20 Charlie had -- we had some --
21        MS. MORGAN: Yeah. I think if you're going
22 to get into that, we need to introduce the protective
23 order.
24



WILCOX & FETZER LTD.
Registered Professional Reporters

D0004