# EXHIBIT M

c:\agreemnt\diamond\vanscoy.int March 5, 1993 T-Q

*JDC's agreement*

## AGREEMENT

Thomas A. Van Scoy, Sr. (hereinafter generally referred to as "Van Scoy"), a citizen of the United States trading as Van Scoy Diamond Mine at 154 Mundy Street, Wilkes Barre, Pennsylvania, 18702, and International Diamond Company, Inc. (hereinafter referred to as "International"), a Pennsylvania corporation having a place of business at 958 Plaza Boulevard, Lancaster, Pennsylvania, 17601, as the parties to this Agreement, intending to be legally bound, hereby agree as follows:

### 1    Background

1.1 Van Scoy operates certain retail jewelry businesses and is the owner of United States trademark registration 1,140,958 for the mark "Van Scoy Diamond Mine" for use in connection with retail jewelry store services.

1.2 International operates retail jewelry stores in the Lehigh Valley and Susquehanna Valley areas and trades in those areas under the name "Van Scoy Diamond Mine".

1.3 International has paid over one-half million dollars to Van Scoy respecting the right to trade under the name "Van Scoy Diamond Mine" in the Lehigh Valley and Susquehanna Valley areas. In connection therewith International contends that it was to have received (i) advertising support, both creative and mechanical, in the nature of audio and print media advertising for use in the

- 1 -

M0001

c:\agreemnt\diamond\vanscoy.lnt March 5, 1993 T-Q

Lehigh Valley and Susquehanna Valley areas, (ii) an assured source of supply of loose diamonds to be sold at such retail locales and (iii) introductions to manufacturers and suppliers in the jewelry industry for International to trade therewith and enjoy the benefits of any relationships Van Scoy had established with such manufacturers and/or suppliers.

1.4   The parties, having certain differences in their views as to their legal rights and obligations respecting their dealings heretofore and in the future and choosing to compromise those differences rather than resort to litigation, have reached this Agreement.

2   **Definitions**

As used herein the following terms, including plurals and variants thereof, shall have the meanings stated:

2.1   "Territory" means Lehigh, Northampton, Lancaster, York, and Dauphin Counties of Pennsylvania and Warren County of New Jersey.

2.2   "Mark" means the mark "Van Scoy Diamond Mine" as registered on the Principal Register of the United States Patent and Trademark Office pursuant to registration 1,140,958, and marks and names similar thereto in sound, appearance and/or commercial connotation, including the surname "Van Scoy".

3   **Warranties, Representations and Guarantees**

3.1   Van Scoy has no extant contractual obligations which

- 2 -

c:\agreemnt\diamond\vanscoy.int March 5, 1993 T-Q

conflict with any of the obligations Van Scoy has incurred hereunder or which will interfere with Van Scoy's ability to perform the obligations incurred hereunder.

3.2  International has no extant contractual obligations which conflict with any of the obligations International has incurred hereunder or which will interfere with International's ability to perform the obligations incurred hereunder.

3.3  International shall not challenge or dispute, through either a cancellation proceeding in the United States Patent and Trademark Office or a declaratory judgment claim or counterclaim in a United States District Court, the validity or enforceability of U.S. trademark registration 1,140,958 for "Van Scoy Diamond Mine".

3.4  Van Scoy shall not use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

3.5  Van Scoy shall not grant any right to any third party to use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

✓ 3.6  International shall continue to conduct its retail jewelry business using the same high standards of integrity in dealing with the public and continue to offer the same high quality jewelry products and jewelry service as International has offered heretofore, to the extent International can do so and yet continue

M0003

c:\agreemnt\diamond\vanscoy.int March 5, 1993 T-Q

to meet the prices of its competition.

3.7 Van Scoy and International individually and jointly state their intentions to take all reasonable measures, consistent with their rights and obligations to each other as set forth herein, to protect the Mark and to maintain the enforceability of the Mark against third parties.

3.8 Neither party shall do indirectly, or through any third party, anything which if done directly would amount to breach of this Agreement.

**4   Grant**

4.1 Van Scoy irrevocably grants to International for the term of this Agreement an exclusive right and license to use and to trade under the Mark in the Territory in the course of conducting diamond and jewelry business.

**5   Performance Rights and Obligations**

5.1 Van Scoy shall give prompt notice to International of any attack on the Mark in any judicial or administrative forum. In the event Van Scoy elects not to defend the Mark against such an attack, International shall have the right, but no obligation, to defend the Mark against any such attack, at International's expense. Van Scoy shall cooperate with International with any such defense.

5.2 Van Scoy shall give prompt notice to International of any infringement of the Mark, whether within or outside of the

- 4 -

M0004

c:\agreemnt\diamond\vanscoy.int March 5, 1993 T-Q

Territory, and shall notify International of whether Van Scoy intends to assert the Mark against the infringer. In the event Van Scoy elects not to institute suit against any such infringer, International shall have the right, but no obligation, to institute suit against any such infringer in Van Scoy's name. Any monetary recovery by International in any such suit shall be for the account of International. Van Scoy shall cooperate with International in prosecuting any such suit.

5.3 In the event Van Scoy wishes to exhibit any of International's operations to any third party as a demonstration of commercial success achieved using the Mark, International shall cooperate with Van Scoy by opening International's facilities to inspection by such third parties.

## 6 Monetary Consideration

6.1 In consideration of the rights and releases granted and undertakings made herein, International shall (i) pay Van Scoy $25,000.00 and (ii) deliver to Van Scoy $25,000.00 worth of diamonds, as defined by attached Exhibit A, upon execution of this Agreement.

## 7 Disclaimers

7.1 Nothing herein shall be construed to create or imply any obligation on the part of Van Scoy to provide any type of advertising support or promotional assistance respecting the ongoing conduct of retail jewelry business by International under

M0005

c:\agreemnt\diamond\vanscoy.int March 5, 1993 T-Q

the Mark in the Territory.

7.2 Nothing herein shall be construed to create any obligation on the part of Van Scoy to provide International with any other kind of commercial assistance, including but not limited to, identification of or introduction to suppliers of diamonds or other products sold at retail in the jewelry business.

**8    Releases**

8.1 Each party hereby releases the other party from any and all claims which have accrued prior to the date of this Agreement and which are assertable against the other party, irrespective of whether the other party has ever been notified of any such claims(s).

**9    Assignment**

9.1 This Agreement including the rights granted herein shall be freely assignable by each party without consent of the other party. A party assigning any right under this Agreement shall promptly give notice of the same to the other party.

**10    Choice of Law**

10.1 This Agreement shall be construed and governed according to the laws of contract construction of the Commonwealth of Pennsylvania.

**11    Force Majeure**

11.1 Neither party hereto shall be liable for failure to perform obligations hereunder due to, by way of example and not by

- 6 -

c:\agreement\diamond\vansooy.ln March 5, 1993 T-Q

way of limitation, act of God, war, riot, fire, flood, invasion, earthquake, epidemic, interruption of transportation, energy shortage, explosion, or any other material cause beyond the reasonable anticipation of the parties hereto and performance of obligations hereunder shall be suspended during, but not longer than, the existence of such cause.

## 12    Indemnification

✓12.1    Neither party hereto shall be liable to the other party for any personal injury or incidental or consequential property damages suffered by the other party hereto, or by any third party, resulting from any activity of either of the parties under or relating to this Agreement.

✓12.2    In the event of any claim against a party to this Agreement by any third party alleging personal injury and/or property damage resulting from any action or failure to act by the other party hereto, such other party shall indemnify and hold harmless the first party against such claim.

## 13    Notices

13.1    Notices hereunder shall be in writing and shall be sufficiently given by a party to the remaining party if addressed to the remaining party as indicated at the preamble of this Agreement and deposited in the mail as registered mail, return receipt requested, with United States postage prepaid.

## 14    Breach

- 7 -

M0007

c:\agreemnt\diamond\vanscoy.1st March 5, 1993 T-Q

14.1  Upon failure of any party hereto (i) to fulfill any obligation under this Agreement and (ii) to remedy any such failure within sixty (60) days after written demand therefor by the other party, such other party may terminate this Agreement within ninety (90) days after the written demand.  Such termination shall be without prejudice to any other rights either party may have growing out of this Agreement.

14.2  In lieu of terminating the Agreement, a party adversely affected by a failure to perform an obligation hereunder shall have the right to sue for specific performance respecting performance of the obligation.  Regarding specific performance, the parties expressly acknowledge that the uniqueness of the Mark may make money damages inadequate to compensate a party for damages sustained as a result of failure to perform an obligation.

## 15  Merger

15.1  This written Agreement sets forth the entire understanding between the parties hereto as to their rights and obligations respecting the Mark and the Territory and merges all prior discussions and negotiations between the parties concerning such rights and obligations and neither party shall be bound by any conditions, definitions, warranties, representations, or guarantees with respect to such rights and obligations other than as expressly provided in this written Agreement.

## 16  Severability

- 8 -

M0008

c:\agreemnt\diamond\vanscoy.int March 5, 1993 T-Q

16.1  This Agreement shall be severable. In the event any portion or provision of this Agreement is deemed by any court of competent jurisdiction to be unenforceable, illegal or contrary to public policy, this Agreement shall remain in force as if the adjudicated portion or provision of the Agreement did not exist.

**17  Waiver**

17.1  Failure of either party at any time or from time to time to exercise any right under this Agreement shall not be deemed a waiver of such right nor shall it prevent the party from subsequently asserting or exercising such right.

**18  Term**

18.1  This Agreement shall be effective on the later date signed by the later-to-sign of the parties hereto and shall remain in effect thereafter for so long as International, or any successor in interest thereto, conducts a retail jewelry business in the

c:\agreemnt\diamond\vanscoy.ln1 March 5, 1993 T-Q

Territory and for three (3) years thereafter.

**IN WITNESS HEREOF**, the parties have executed this Agreement on the dates and at the places indicated below.

Thomas A. Van Scoy, Jr.        International Diamond Company, Inc.

*[signature: Thomas A. Van Scoy Jr.]*    By *[signature]* — VP/Treasurer
                                     *[signature]* — VP/Sect.

Date: 3/17/93                Date: March 8th, 1993

Place: Allentown, Pa.       Place: Lancaster, PA.

*[signature]*                      *[signature]* — President
Witness                            Witness

TVS4

## EXHIBIT "A"

| | Dia. Wt. | PPC | Cost |
|---|---|---|---|
| 1/5 carats | 0.18 | $720 | $130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.18 | 720 | 130 |
| | 0.21 | 720 | 151 |
| | 0.21 | 720 | 151 |
| | 0.21 | 720 | 151 |
| | 0.22 | 720 | 158 |
| | 0.22 | 720 | 158 |
| | 0.22 | 720 | 158 |
| | 0.22 | 720 | 158 |
| | 0.23 | 720 | 166 |
| | 3.00 carats | | $2,160.00 |
| 1/4 carats | 0.23 | $755 | $174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.23 | 755 | 174 |
| | 0.24 | 755 | 181 |
| | 0.24 | 755 | 181 |
| | 0.24 | 755 | 181 |
| | 0.25 | 755 | 189 |
| | 0.26 | 755 | 196 |
| | 0.29 | 755 | 219 |
| | 0.29 | 755 | 219 |
| | 0.29 | 755 | 219 |
| | 0.29 | 755 | 219 |
| | 3.77 carats | | $2,846.35 |
| 1/3 carats | 0.31 | $840 | 260 |
| | 0.32 | 840 | 269 |
| | 0.32 | 840 | 269 |
| | 0.32 | 840 | 269 |
| | 0.33 | 840 | 277 |
| | 0.33 | 840 | 277 |
| | 0.33 | 840 | 277 |
| | 0.33 | 840 | 277 |
| | 0.34 | 840 | 286 |
| | 0.34 | 840 | 286 |
| | 3.27 carats | | $2,746.80 |

M0011

TVS4

## EXHIBIT "A"

| | Dia. Wt. | PPC | Cost | |
|---|---|---|---|---|
| 3/8 carats | 0.38 | $925 | $352 | |
| | 0.39 | 925 | 361 | |
| | 0.39 | 925 | 361 | |
| | 0.40 | 925 | 370 | |
| | 0.40 | 925 | 370 | |
| | 0.40 | 925 | 370 | |
| | 0.40 | 925 | 370 | |
| | 0.41 | 925 | 379 | |
| | 0.41 | 925 | 379 | |
| | 0.41 | 925 | 379 | |
| | 3.99 carats | | $3,339.25 | |
| 1/2 carats | 0.47 | $1,170 | $550 | |
| | 0.48 | 1,170 | 562 | |
| | 0.49 | 1,170 | 573 | |
| | 0.49 | 1,170 | 573 | |
| | 0.50 | 1,170 | 585 | |
| | 0.51 | 1,170 | 597 | |
| | 0.51 | 1,170 | 597 | |
| | 0.51 | 1,170 | 597 | |
| | 0.52 | 1,170 | 608 | |
| | 0.53 | 1,170 | 620 | |
| | 5.01 carats | | $5,861.70 | |
| 5/8 carats | 0.61 | $1,275 | $778 | |
| | 0.61 | 1,275 | 778 | |
| | 0.64 | 1,275 | 816 | |
| | 0.64 | 1,275 | 816 | |
| | 2.50 carats | | $3,187.50 | |
| 3/4 carats | 0.71 | $1,500 | $1,065 | |
| | 0.71 | 1,500 | 1,065 | |
| | 0.72 | 1,500 | 1,080 | |
| | 2.14 carats | | $3,210.00 | |
| 9/10 carat | 0.92 | $1,875 | $1,725 | |
| | 0.92 carat | | $1,725.00 | |
| TOTALS | 24.60 carats | | $25,076.60 | |

M0012

```
TVS1
ABE         50,000          TERRITORIAL FEES   125,000
NORFOLK     50,000          MONTHLY FEES       394,000
HAMPTON     25,000          NANCY-TVS & TVS,Jr  10,000
           --------                            --------
           125,000                             529,000
```

|      | ABE     | NOR     | HMP    | LNS    | YOR    | SABE  | PBG   |
|------|---------|---------|--------|--------|--------|-------|-------|
| 1981 | 4,000   |         |        |        |        |       |       |
| 1982 | 12,000  |         |        |        |        |       |       |
| 1983 | 12,000  | 4,000   |        |        |        |       |       |
| 1984 | 12,000  | 12,000  | 5,000  |        |        |       |       |
| 1985 | 12,000  | 12,000  | 12,000 |        |        |       |       |
| 1986 | 12,000  | 12,000  | 12,000 | 2,000  | 2,000  |       |       |
| 1987 | 12,000  | 12,000  | 12,000 | 12,000 | 12,000 |       |       |
| 1988 | 12,000  | 12,000  | 12,000 | 12,000 | 12,000 |       |       |
| 1989 | 12,000  | 12,000  | 6,000  | 12,000 | 6,000  |       |       |
| 1990 | 12,000  | 12,000  | closed | 12,000 | 6,000  | 3,500 | 1,500 |
| 1991 | 12,000  | closed  | closed | 12,000 | 6,000  | 6,000 | 6,000 |
|      | 124,000 | 88,000  | 59,000 | 62,000 | 44,000 | 9,500 | 7,500 |

+ $25,000

= $554,000.

M0013