# EXHIBIT N

*c:\agreemnt\diamond\vanscoy.rdg March 8, 1993 T-Q*

*Rdg. agreement.*

*READING*
*Van Scoy*
*Agreement*

# AGREEMENT

Thomas A. Van Scoy, Sr. (hereinafter generally referred to as "Van Scoy"), a citizen of the United States trading as Van Scoy Diamond Mine at 154 Mundy Street, Wilkes-Barre, Pennsylvania, 18702, and Van Scoy Diamond Mine of Reading, Pa., a partnership of Lew M. Hill and James C. Sweeney (hereinafter individually and collectively referred to as "Reading Partnership") organized under the laws of Pennsylvania, having a place of business at 3039 N. Fifth Street, Reading, Pennsylvania, 19605, as the parties to this Agreement, intending to be legally bound, hereby agree as follows:

## 1    Background

1.1   Van Scoy operates certain retail jewelry businesses and is the owner of United States trademark registration 1,140,958 for the mark "Van Scoy Diamond Mine" for use in connection with retail jewelry store services.

1.2   Reading Partnership operates retail jewelry stores in Reading, Pottsville and Pottstown, Pennsylvania and trades in those areas under the name "Van Scoy Diamond Mine".

1.3   Reading Partnership has paid certain monies to Van Scoy respecting the right to trade under the name "Van Scoy Diamond Mine" in the Reading, Pottsville and Pottstown, Pennsylvania areas. In connection therewith Reading Partnership contends that it was to have received certain assistance and services from Van Scoy, which

- 1 -

N0001

c:\agreement\diamond\vanscoy.rdg March 8, 1993 T-Q

Reading Partnership contends it has not received and which Van Scoy disputes.

1.4  The parties, having certain differences in their views as to their legal rights and obligations respecting their dealings heretofore and in the future and choosing to compromise those differences rather than resort to litigation, have reached this Agreement.

**2    Definitions**

As used herein the following terms, including plurals and variants thereof, shall have the meanings stated:

2.1    "Territory" means Berks, Schuylkill and Montgomery counties of Pennsylvania.

2.2    "Mark" means the mark "Van Scoy Diamond Mine" as registered on the Principal Register of the United States Patent and Trademark Office pursuant to registration 1,140,958, and marks and names similar thereto in sound, appearance and/or commercial connotation, including the surname "Van Scoy".

**3    Warranties, Representations and Guarantees**

3.1  Van Scoy has no extant contractual obligations which conflict with any of the obligations Van Scoy has incurred hereunder or which will interfere with Van Scoy's ability to perform the obligations incurred hereunder.

3.2  Reading Partnership has no extant contractual obligations which conflict with any of the obligations Reading Partnership has

- 2 -

c:\agreemt\diamond\vanscoy.rdg March 8, 1993 T-Q

incurred hereunder or which will interfere with Reading Partnership's ability to perform the obligations incurred hereunder.

3.3   Reading Partnership shall not challenge or dispute, through either a cancellation proceeding in the United States Patent and Trademark Office or a declaratory judgment claim or counterclaim in a United States District Court, the validity or enforceability of U.S. trademark registration 1,140,958 for "Van Scoy Diamond Mine".

3.4   Van Scoy shall not use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

3.5   Van Scoy shall not grant any right to any third party to use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business.

3.6   Reading Partnership shall continue to conduct its retail jewelry business using the same high standards of integrity in dealing with the public and continue to offer the same high quality jewelry products and jewelry service as Reading Partnership has offered heretofore, to the extent Reading Partnership can do so and yet continue to meet the prices of its competition.

3.7   Van Scoy and Reading Partnership state their individual and joint intentions to take all reasonable measures, consistent

- 3 -

c:\egrocom\uldiamond\vanscoy.rdg March 8, 1993 T-Q

with their rights and obligations to each other as set forth herein, to protect the Mark and to maintain the enforceability of the Mark against third parties.

3.8 Neither party shall do indirectly, or through any third party, anything which if done directly would amount to breach of this Agreement.

**4    Grant**

4.1 Van Scoy irrevocably grants to Reading Partnership for the term of this Agreement an exclusive right and license to use and to trade under the Mark in the Territory in the course of conducting diamond and jewelry business.

**5    Performance Rights and Obligations**

5.1 Van Scoy shall give prompt notice to Reading Partnership of any attack on the Mark in any judicial or administrative forum. In the event Van Scoy elects not to defend the Mark against such an attack, Reading Partnership shall have the right, but no obligation, to defend the Mark against any such attack, at Reading Partnership's expense. Van Scoy shall cooperate with Reading Partnership with any such defense.

5.2 Van Scoy shall give prompt notice to Reading Partnership of any infringement of the Mark, whether within or outside of the Territory, and shall notify Reading Partnership of whether Van Scoy intends to assert the Mark against the infringer. In the event Van Scoy elects not to institute suit against any such infringer,

- 4 -

N0004

c:\agreemnt\diamondivanscoy.rdg March 8, 1993 T-Q

Reading Partnership shall have the right, but no obligation, to institute suit against any such infringer in Van Scoy's name.  Any monetary recovery by Reading Partnership in any such suit shall be for the account of Reading Partnership.  Van Scoy shall cooperate with Reading Partnership in prosecuting any such suit.

5.3   In the event Van Scoy wishes to exhibit any of Reading Partnership's operations to any third party as a demonstration of commercial success achieved using the Mark, Reading Partnership shall cooperate with Van Scoy by opening Reading Partnership's facilities to inspection by such third parties.

6   **Monetary Consideration**

6.1   In consideration of the license, rights and releases granted and undertakings made herein, Reading Partnership shall pay Van Scoy $30,000.00 upon execution of this Agreement.

7   **Disclaimers**

7.1  Nothing herein shall be construed to create or imply any obligation on the part of Van Scoy to provide any type of advertising support or promotional assistance respecting the ongoing conduct of retail jewelry business by Reading Partnership under the Mark in the Territory.

7.2  Nothing herein shall be construed to create any obligation on the part of Van Scoy to provide Reading Partnership with any other kind of commercial assistance including, but not limited to, identification of or introduction to suppliers of

- 5 -

c:\agreemnt\diamond\vansooy.rdg March 8, 1993 T-Q

diamonds or other products sold at retail in the jewelry business.

**8    Releases**

8.1  Each party hereby releases the other party from any and all claims which have accrued prior to the date of this Agreement and which are assertable against the other party, irrespective of whether the other party has ever been notified of any such claims(s).

**9    Assignment**

9.1  This Agreement including the rights granted herein shall be freely assignable by each party without consent of the other party.   A party assigning any right under this Agreement shall promptly give notice of the same to the other party.

**10    Choice of Law**

10.1 This Agreement shall be construed and governed according to the laws of contract construction of the Commonwealth of Pennsylvania.

**11    Force Majeure**

11.1  Neither party hereto shall be liable for failure to perform obligations hereunder due to, by way of example and not by way of limitation, act of God, war, riot, fire, flood, invasion, earthquake, epidemic, interruption of transportation, energy shortage, explosion, or any other material cause beyond the reasonable anticipation of the parties hereto and performance of obligations hereunder shall be suspended during, but not longer

- 6 -

N0006

*c:\agreemnt\diamond\wansony.rdg March 8, 1993 T-Q*

than, the existence of such cause.

**12    Indemnification**

12.1    Neither party hereto shall be liable to the other party for any personal injury or incidental or consequential property damages suffered by the other party hereto, or by any third party, resulting from any activity of either of the parties under or relating to this Agreement.

12.2    In the event of any claim against a party to this Agreement by any third party alleging personal injury and/or property damage resulting from any action or failure to act by the other party hereto, such other party shall indemnify and hold harmless the first party against such claim.

**13    Notices**

13.1    Notices hereunder shall be in writing and shall be sufficiently given by a party to the remaining party if addressed to the remaining party as indicated at the preamble of this Agreement and deposited in the United States mail as registered mail, return receipt requested, with postage prepaid.

**14    Breach**

14.1    Upon failure of any party hereto (i) to fulfill any obligation under this Agreement and (ii) to remedy any such failure within sixty (60) days after written demand therefor by the other party, such other party may terminate this Agreement within ninety (90) days after the written demand.    Such termination shall be

- 7 -

N0007

c:\agreemn\diamond\wanscoy.nfg March 8, 1993  T-Q

without prejudice to any other rights either party may have growing out of this Agreement.

14.2  In lieu of terminating the Agreement, a party adversely affected by a failure to perform an obligation hereunder shall have the right to sue for specific performance respecting performance of the obligation.   Regarding  specific  performance,  the  parties expressly acknowledge that the uniqueness of the Mark may make money  damages  inadequate  to  compensate  a  party  for  damages sustained as a result of failure to perform an obligation.

## 15   Merger

15.1   This  written  Agreement  sets  forth  the  entire understanding between the parties hereto as to their rights and obligations respecting the Mark and the Territory and merges all prior discussions and negotiations between the parties concerning such rights and obligations and neither party shall be bound by any conditions, definitions, warranties, representations, or guarantees with respect to such rights and obligations other than as expressly provided in this written Agreement.

## 16   Severability

16.1   This Agreement shall be severable. In the event any portion or provision of this Agreement is deemed by any court of competent jurisdiction to be unenforceable, illegal or contrary to public policy, this Agreement shall remain in force as if the adjudicated portion or provision of the Agreement did not exist.

- 8 -

c:\agreemnt\diamond\vanscoy.rdg March 8, 1993 T-Q

## 17   Waiver

17.1   Failure of either party at any time or from time to time to exercise any right under this Agreement shall not be deemed a waiver of such right nor shall it prevent the party from subsequently asserting or exercising such right.

## 18   Term

18.1   This Agreement shall be effective on the later date signed by the later-to-sign of the parties hereto and shall remain in effect thereafter for so long as Reading Partnership, or any successor in interest thereto, conducts a retail jewelry business in the Territory and for three (3) years thereafter.

IN WITNESS HEREOF, the parties have executed this Agreement on the dates and at the places indicated below.

Thomas A. Van Scoy, Jr.

Van Scoy Diamond Mine of Reading, Pa.

By: _____

_____

Date: _____

Date: _____

Place: _____

Place: _____

Witness

Witness

- 9 -

N0009