IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAYNE VAN SCOY, <br><br> Plaintiff and Counterclaim-Defendant, <br><br> v. <br><br> VAN SCOY DIAMOND MINE OF DELAWARE, INC., a Delaware corporation, KURT VAN SCOY, and DONNA VAN SCOY, <br><br> Defendants and Counterclaim-Plaintiffs. | ) <br> ) <br> ) Case No. 05-108 (KAJ) <br> ) <br> ) **PUBLIC VERSION** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ANSWERING BRIEF OF DEFENDANTS VAN SCOY DIAMOND MINE OF DELAWARE, KURT VAN SCOY & DONNA VAN SCOY TO PLAINTIFF WAYNE VAN SCOY'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS' CLAIMS OF INVALIDITY AND ABANDONMENT**

FOX ROTHSCHILD, LLP

By: /s/ *Sharon Oras Morgan (#4287)*
Sharon Oras Morgan
919 North Market Street
Suite 1300
Wilmington, DE 19801
Telephone: (302) 622-4246
Facsimile: (302) 656-8920
E-mail: smorgan@foxrothschild.com
*Attorneys for Defendants and Counterclaim Plaintiffs*

OF COUNSEL:
Charles N. Quinn Esquire
Fox Rothschild, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2135
Facsimile: (215) 299-2150

Dated: December 5, 2005
Public Version Filed: December 12, 2005

WM1A 69393v1 12/12/05

# TABLE OF CONTENTS

                                    **Page**

I.  NATURE AND STAGE OF PROCEEDING ............................................................................. 1

II.  SUMMARY OF ARGUMENT ................................................................................................. 2

III.  STATEMENT OF FACTS ........................................................................................................ 3

IV.  ARGUMENT ............................................................................................................................. 4

  A.  Plaintiff Does Not Hold a Valid Federally Registered Trademark ............................... 5

  B.  Defendants Have Been Operating for the Past 11 Years Pursuant to a Valid Consent to Use the Mark, and Plaintiff's Cease and Desist Letter Holds no Force or Effect ............................................................................................................... 6

  C.  Plaintiff has Abandoned the Alleged Mark .................................................................. 8

V.  CONCLUSION ........................................................................................................................ 12

# TABLE OF CITATIONS

**Cases**                                                                                                                         **Page**

Anderson v. Liberty Mutual, Inc.,
    77 U.S. 242, 248 (1986)..................................................................................8

Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.,
    88 F. Supp. 2d 914, 919 (C.D. Ill. 2000)....................................................11

Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,
    549 F.2d 368 (5th Cir. 1977) ......................................................................11

Lazard Freres & Co. v. Protective Life Ins. Co.,
    108 F.3d 1531, 1535 (2d Cir. 1997) cert. denied, 118 S.Ct. 169 (1997)...........9

Lopez v. S.B. Thomas, Inc.,
    831 F.2d 1184, 1187 (2d Cir. 1987)............................................................8

Moore Business Forms, Inc. v. Ryu,
    960 F.2d 486, 489 (5th Cir. 1992) .............................................................11

Resorts of Pinehurst, Inc. v. Pinehurst National Corp.,
    148 F.3d 417, 421 (4th Cir. 1998) ...............................................................9

Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,
    932 F.2d 1113 (5th Cir. 1991) ...................................................................13

Tumblebus Inc. v. Cranmer,
    399 F.3d 754, 764 (6th Cir. 2005) ...............................................................8

**Treatise**

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,
    § 18.79 (4th ed. 2005)................................................................................10

**Statutes**

15 U.S.C. § 1127............................................................................................8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAYNE VAN SCOY, <br><br>　　Plaintiff and <br>　　Counterclaim-Defendant, <br><br>　　v. <br><br>VAN SCOY DIAMOND MINE OF DELAWARE, INC., a Delaware corporation, KURT VAN SCOY, and DONNA VAN SCOY, <br><br>　　Defendants and <br>　　Counterclaim-Plaintiffs. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 05-108 (KAJ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ANSWERING BRIEF OF DEFENDANTS VAN SCOY DIAMOND MINE OF DELAWARE, KURT VAN SCOY & DONNA VAN SCOY TO PLAINTIFF WAYNE VAN SCOY'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS' CLAIMS OF INVALIDITY AND ABANDONMENT**

I.   **NATURE AND STAGE OF PROCEEDING**

This suit for trademark infringement was brought by the Plaintiff, Wayne Van Scoy ("Plaintiff" or "Wayne Van Scoy"), under the incorrect assumption that he has a valid, registered trademark and that his brother and sister-in-law, Kurt Van Scoy and Donna Van Scoy, through the company Van Scoy Diamond Mine of Delaware, Inc., (collectively, "Defendants") have wrongfully used that trademark. Discovery closed in this case on October 7, 2005; however, the parties have exchanged supplemental discovery responses since the filing of dispositive motions on November 1, 2005. On December 1, 2005, the court entered a Stipulated Order, granting an extension until Monday, December 5, 2005 to file answering briefs, and until December 29, 2005, to file reply briefs.

WM1A 69393v1 12/12/05

## II. SUMMARY OF ARGUMENT

1. For the reasons set forth herein and in Defendants' Answering Brief to Plaintiff Wayne Van Scoy's Motion for Summary Judgment of Infringement and Willful Infringement by Defendants ("Defendants' Answer to Infringement Brief"), Plaintiff is unable to establish that he has a valid, protectible interest in the federally registered trademarks that form the basis of this suit.

2. Moreover, because Plaintiff has not established ownership of the trademarks at issue, his attempts to terminate any alleged licenses granted to Defendants have no force or effect.

3. Defendants are not licensees of any trademark, but instead are using the name "Van Scoy Diamond Mine" pursuant to a consent to use granted by Thomas Van Scoy, Sr. ("Mr. Van Scoy") through his company, Van Scoy Diamond Mines, Inc. (the "Company").

4. Had Mr. Van Scoy, through the Company, granted a license to Defendants, such license would have led to abandonment of the mark, as neither Mr. Van Scoy nor any other Company representative ever exercised any quality control over the store operated by Defendants.

5. Even if Plaintiff does, *arguendo*, own the mark "Van Scoy Diamond Mine", such a mark is invalid as he constructively abandoned it by failing to supervise other users of the alleged mark and failed to exercise any quality control.

### III. STATEMENT OF FACTS

Mr. Thomas Van Scoy, Sr. filed a Chapter 13 Bankruptcy Petition in the U.S. Bankruptcy Court for the Middle District of Pennsylvania on September 23, 1994, which was converted to a Chapter 7 petition on December 29, 1994 (See Bankruptcy Docket attached hereto as Exhibit "A"). As of the date of filing, Mr. Van Scoy held shares of stock in Van Scoy Diamond Mines, Inc., a Pennsylvania corporation, (the "Company"). Mr. Van Scoy's shares of stock of the Company were included in his bankruptcy estate, as was the "Trademark 'Van Scoy Diamond Mines'". (See Bankruptcy Schedule attached hereto as Exhibit "B"). The federal registrations for the trademarks that form the basis of this action were owned by the Company (the "Company Mark"). (See 1980 Registration attached hereto as Exhibit "C"). Mr. Van Scoy never personally owned the Company Mark, and did not include same in his bankruptcy. The Company is currently an active Pennsylvania corporation. (See printout of PA Secretary of State website attached hereto as Exhibit "D").

Plaintiff Wayne Van Scoy obtained through the bankruptcy "right, title and interest in the trademark 'Van Scoy Diamond Mines'". (See Order Approving Agreement of January 4, 2001 attached hereto as Exhibit "E"). The bankruptcy was discharged on January 4, 2001. On April 16, 2001, Plaintiff filed an Application with the U.S. Patent and Trademark Office, filing the January 4, 2001 Bankruptcy Court Order, along with a Memorandum, stating the federal registrations for the mark "Van Scoy Diamond Mine" were acquired through Mr. Van Scoy's bankruptcy. (See April 16, 2001 Filing attached hereto as Exhibit "F") Since allegedly obtaining title to the Company Mark, Wayne Van Scoy has operated a single store in Wilkes-Barre, Pennsylvania, and maintains he has only one licensee of the Company Mark, his brother-in-law Rick Sendrick, who operates a jewelry store in Scranton, Pennsylvania, over which he allegedly

exercises quality control. (Plaintiff's Brief at p.7). Plaintiff has only been to the Delaware Store 3 or 4 times. (See Deposition Transcript of Wayne Van Scoy dated August 17, 2005 attached hereto as Exhibit "G", G2 at 117:12-23)

Plaintiff Wayne Van Scoy has essentially no knowledge about the licensing of the Company Mark to third party Mark Maurer, who operates through a corporate entity as a licensee in Lancaster and Allentown, Pennsylvania. Nor does he know anything about Lew Hill, who operates through a partnership as a licensee in Wyomissing, Pennsylvania. (See Exhibit "G", G5-G9 at 136:7-140:24). The Company granted irrevocable licenses to both Mr. Hill through his partnership, Reading Partnership, and Mr. Maurer through his company, International Diamond Company, Inc. (See Hill Agreement attached hereto as Exhibit "H" and Maurer Agreement attached hereto as Exhibit "I") the agreements provide that the Company irrevocably grants "an exclusive right and license to use and to trade under the Mark (which includes "Van Scoy Diamond Mine" and the surname "Van Scoy") in the Territory in the course of conducting diamond and jewelry business." (See Exhibit "H" At Section 4.1, 2.1 and 2.2; see also Exhibit "I" at 4.1, 2.1 and 2.2) Under the Agreements, the "Territory" is defined as separate areas within the Commonwealth of Pennsylvania. Plaintiff admits that both entities use the "Van Scoy" surname. (See Plaintiff's brief at p.5).

## IV.    ARGUMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment may only be granted if there is no dispute on any genuine issue of material fact. A court cannot decide disputed issues of fact, but instead must address whether any factual issues exist, and resolve any ambiguities or inferences against the moving party. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir. 1987). A material fact is genuinely disputed "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All inferences and ambiguities must be resolved in favor of the nonmoving party. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1535 (2d Cir. 1997), *cert. denied*, 118 S.Ct. 169 (1997).

As set forth in Fed.R.Civ.P. 56(c), the party moving for summary judgment must make an initial showing that there is no genuine issue of material fact. The evidence in this case and controlling law not only fail to support Plaintiffs' claims, they raise a number of issues of material fact that preclude summary judgment.

### A. Plaintiff Does Not Hold a Valid Federally Registered Trademark.

In order to prove trademark infringement, Plaintiff must first establish that he has a valid, protectible interest in the mark at issue. *See Resorts of Pinehurst, Inc. v. Pinehurst National Corp.*, 148 F.3d 417, 421 (4th Cir. 1998). As set forth in Defendants' Answer to Infringement Brief and incorporated herein by reference, the federal registrations that Plaintiff claims he acquired in 2001 out of Mr. Van Scoy's Chapter 7 bankruptcy, are assets of a corporate entity that was never subject to the bankruptcy proceeding. To the contrary, the Company, listed as owner on the federal registrations, never filed bankruptcy and is still an active corporation. (See 1980 trademark registrations attached hereto as Exhibit "C" and printout from PA Secretary of State attached hereto as Exhibit "D"). Plaintiff Wayne Van Scoy's purported ownership of the federal registration is based solely on the settlement agreement entered in Mr. Van Scoy's personal bankruptcy. Because that registrations were not an asset of the bankruptcy estate, they could not have been conveyed to Plaintiff Wayne Van Scoy in that bankruptcy proceeding. The only effort made by Plaintiff to rectify this deficiency is a Memorandum submitted to the U.S. Patent and Trademark Office, "intended to be attached to the Order of the United States

Bankruptcy Court for the Middle District of Pennsylvania dated January 4, 2001 in the matter of *In re: Thomas Van Scoy, Debtor.*" (See April 16, 2001 filing attached hereto as Exhibit "F"). The April 16, 2001 filing asserts an ownership right in federal registrations that were never conveyed in the January 4, 2001 Bankruptcy Order, and were never part of the bankruptcy estate. Plaintiff never made any effort to re-open the bankruptcy to attempt to address this gaping inconsistency, or otherwise take any affirmative action to remedy the actual effect of the bankruptcy court order. A band-aid attempt to file with the Patent Office a memorandum setting forth the federal registration that Plaintiff wanted to own is not tantamount to a valid court order actually conveying the legal interest in the federal registration; rather it is fraudulent.

In short, Plaintiff has failed to prove that he holds a valid, protectible interest in the federal registrations. At a minimum, a genuine issue of material fact exists as to what, if anything, Plaintiff acquired out of Mr. Van Scoy's personal bankruptcy. Because Plaintiff's standing to assert the claims herein is a genuine issue of material fact, summary judgment for Plaintiff is clearly not appropriate.

**B. Defendants Have Been Operating for the Past 11 Years Pursuant to a Valid Consent to Use The Mark, and Plaintiff's Cease and Desist Letter Holds no Force or Effect.**

Plaintiff wrongly asserts that Defendants are licensees. To the contrary, the facts and relevant case law support the conclusion that Defendants have been operating pursuant to a valid consent to use the mark. A consent is neither an assignment nor a license: It is not an assignment because neither party is assigning any rights of ownership in their mark to the other, and it is not a license because the grantor is not granting a right to use to Grantee in return for payment of royalties. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 18.79 (4th ed. 2005). ("McCarthy") There is nothing in the record to suggest that

Mr. Van Scoy, principal of the Company that held title to the Company Mark, asked for, expected or received any royalties in exchange for the granted consent. Pursuant to a consent, a consentee is permitted to engage in defined actions which do not infringe the consentor's mark; thus, a consent requires no quality control. *See McCarthy, supra; See also Moore Business Forms, Inc. v. Ryu,* 960 F.2d 486, 489 (5th Cir. 1992).

If a license were granted, Defendants would be infringing a mark but for the permission granted in the license, in which event quality control is essential. *See McCarthy, supra; See also Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.,* 88 F.Supp.2d 914, 919 (C.D. Ill. 2000). Without adequate control of a licensee, a court may find that a trademark owner has abandoned the trademark, in which case the owner is estopped from asserting rights to the trademark. *Kentucky Fried Chicken Corp v. Diversified Packaging Corp.,* 549 F.2d 368 (5th Cir. 1977). There is nothing in the record to show that either Mr. Thomas Van Scoy, Sr. or Plaintiff Wayne Van Scoy conducted any quality control over the Delaware Store. As set forth in Defendants' Motion for Summary Judgment on the Basis of Laches, Mr. Van Scoy, Sr. helped get the Delaware Store started. However, there is no evidence that he took steps to maintain control over Defendants. Similarly, there is no evidence that Plaintiff Wayne Van Scoy, Sr. took any steps to maintain any quality control over the Delaware Store, having been near that store only a handful of times. (See Exhibit "G", G12-G13 at 117:12-118:20). If in fact a license were conveyed to Defendants by Mr. Thomas Van Scoy, Sr. on behalf the Company and Plaintiff Wayne Van Scoy succeeded to those rights, Plaintiff's arguments would fail in any event. The failure of either Wayne Van Scoy or his father's Company to maintain quality control over the Delaware Store amounts to an abandonment of the trademark, in which case Plaintiff is estopped from asserting his rights in the trademark.

However, the facts do support the finding that Mr. Van Scoy consented to Defendants' consent to use of the name "Van Scoy Diamond Mine". The consent was oral, contained no requirement pertaining to payment of royalties, and included no provisions that subjected Defendants' business operations to some common public image or joint enterprise. The testimony of Kurt Van Scoy reveals that his father gave him permission to use the name and the sign to get him set up in his own business. (See Deposition Transcript of Kurt Van Scoy dated July 26, 2005 attached hereto as Exhibit "J" at J1-J2 at 31:21-32:8) There is no evidence that Defendants have done anything other than properly operate pursuant to the consent of Mr. Van Scoy and the Company.

### C.     Plaintiff has Abandoned the Alleged Mark

Section 15 of Title 11 of the United States Code provides that:

> A mark shall be deemed "abandoned...when any course of conduct of the owner, Including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark.

*15 U.S.C. § 1127*. One way a mark may be abandoned is through "naked licensing," which occurs:

> [w]hen a trademark owner fails to exercise reasonable control over the use of a mark by a licensee.", such that the "presence of the mark on the licensee's goods or services misrepresents their connection with the trademark owner since the mark no longer identifies goods or services that are under the control of the owner of the mark" and the mark can no longer provide a meaningful assurance of quality.

See *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 764 (6th Cir. 2005).

"Because naked licensing is generally ultimately relevant only to establish an unintentional trademark abandonment which results in a loss of trademark rights against the world, the burden of proof...is stringent". See *Tumblebus, supra*. The testimony in this case

reveals that Plaintiff Wayne Van Scoy paid no attention to the existence or identities of the licensees of the Company's Mark. He had no knowledge about Lew Hill's use or nonuse of the mark, and he has no idea what Mark Maurer's occupation is. (See Exhibit "G" 8/17 testimony at 136-140) It is without dispute that both Mr. Maurer and Mr. Hill were granted licenses to use the Company Mark. Plaintiff has does nothing to exercise quality control over those businesses. Indeed, by Plaintiff's very own admission, he does not believe that Lew Hill or Mark Maurer are licensees that warrant quality control. Thus, he sees no reason to oversee the stores. The only store with the "Van Scoy" surname that has ever held the attention of Wayne Van Scoy is that operated by his brother, Kurt Van Scoy, who has successfully operated over the past 11 years.

As set forth in more detail in Defendants' Answer to Infringement Brief, incorporated herein by reference, Mark Maurer and Lew Hill each entered into agreements with the Company and were granted licenses to use the Company Mark. Wayne Van Scoy has taken no steps to maintain quality control with respect to either of these licensees, and therefore has abandoned the Mark.

As for Plaintiff's argument that the particular circumstances of the subject licenses do not warrant formal quality control, such an argument misstates the law and the facts. The case of *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113 (5th Cir. 1991) cited by Plaintiff, does not stand for the proposition that he can wash his hands of licensee oversight and expect to maintain a trademark. In the *Taco Cabana* case, the court found that where "the license parties have engaged in a close working relationship, and may justifiably rely on each parties' intimacy with standards and procedures to ensure consistent quality, and no actual decline in quality standards is demonstrated, we would depart from the purpose of the law to find an abandonment simply for want of all the inspection and control formalities." *Taco Cabana* at 1121. In this case,

Wayne Van Scoy has no knowledge of the use of the trademark by either Mr. Hill or Mr. Maurer. It would be impossible for him to credibly argue that the public would not be deceived by the results of the licensing arrangement, because he has not seen the stores. Considering the Wayne Van Scoy has testified that the Van Scoy Diamond Mine name is known "up and down the East Coast", it is disingenuous to argue that the operations of Mr. Hill and Mr. Maurer, both of which are along the East Coast, do not require some assurance as to the standards and procedures that they implement in trading as licensees. (See Deposition Transcript of Wayne Van Scoy dated October 4, 2005 attached hereto as Exhibit "K", K1-K2 at 88:10- 89:13)

As for Plaintiff's contention that Defendants do not have standing as a former licensee to challenge the validity of the mark, as set forth in section B above, Defendants have been operating pursuant to a consent, not a license. There is no body of law that excludes Defendants from challenging the validity of the mark on the basis of the consent they received from Mr. Van Scoy and the Company.

Further, there is nothing in the record to support Plaintiff's contention that Mr. Maurer and Mr. Hill are concurrent owners of the Company Mark. The case upon which Plaintiff relies in support of this contention, *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp*, 549 F.2d 368 (5th Cir. 1977), does nothing to support Plaintiff's erroneous conclusions that concurrent ownership exists. Nothing in either agreement grants either Mr. Hill or Mr. Maurer an ownership right to the Company Mark. Rather, the agreements convey a right and license to "use and to trade under the Mark" (See Exhibit "H" at Section 4.2; see also Exhibit "I" at Section 4.2).

As for Plaintiff's assertion that he should not be foreclosed from asserting his rights in the Wilmington, Delaware market, such argument runs contrary to Plaintiff's assertion that

Defendants are licensees. If in fact that is the case, Plaintiff has abandoned his right to use the trademark as discussed above. Furthermore, while "a trade-mark extends to every market where the trader's goods have become known and identified by his use of the mark, the mark itself cannot travel to markets where the trader does not offer, or has not offered, the articles for sale." *See Tumblebus at* 765-66. Plaintiff has admitted time and again that the Company Mark is known up and down the East Coast, and indeed is a famous mark. Plaintiff cannot validly argue that Wilmington, Delaware falls outside the East Coast, particularly when Mr. Van Scoy owned a store in Newark, Delaware for a period of time. The Wilmington, Delaware market is not some remote location, west of the Mississippi River. The market is less than 60 miles from locations operated by Mr. Maurer and Mr. Hill.

Finally, Plaintiff's assertion that the two elements needed to prove abandonment have not been shown lacks merit. At no time have Defendants argued that Plaintiff does not intend to use or resume use of the Mark. Rather, Plaintiff's abandonment of the Mark arises from the fact that there are naked licenses. As set forth above, Plaintiff abandoned the Mark by failing to exercise any quality control over all three licenses. Further, to the extent Plaintiff asserts that Defendants are licensees, Plaintiff's right to bring this action has been lost by virtue of Plaintiff's failure to exercise quality control over the Delaware Store and resultant constructive abandonment of all rights in the mark.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## V. CONCLUSION

For the reasons set forth above, a number of material issues of fact exist to preclude entry of summary judgment in Plaintiff's favor. Accordingly, Plaintiff's motion for summary judgment should be denied.

                              FOX ROTHSCHILD, LLP

By:   */s/ Sharon Oras Morgan (#4287)*
       Sharon Oras Morgan
       919 North Market Street
       Suite 1300
       Wilmington, DE 19801
       Telephone: (302) 622-4246
       Facsimile: (302) 656-8920
       E-mail: smorgan@foxrothschild.com
       *Attorneys for Defendants and*
       *Counterclaim Plaintiffs*

OF COUNSEL:

Charles N. Quinn Esquire
Fox Rothschild, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2135
Facsimile: (215) 299-2150

Dated: December 5, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAYNE VAN SCOY,<br><br>    Plaintiff and<br>    Counterclaim-Defendant,<br><br>v.<br><br>VAN SCOY DIAMOND MINE OF<br>DELAWARE, INC., a Delaware corporation,<br>KURT VAN SCOY, and DONNA VAN SCOY,<br><br>    Defendants and<br>    Counterclaim-Plaintiffs. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 05-108 (KAJ)<br>)<br>)<br>)<br>)<br>)<br>) |

### APPENDIX TO
### REPLY OF DEFENDANTS VAN SCOY DIAMOND MINE OF DELAWARE, KURT VAN SCOY & DONNA VAN SCOY TO PLAINTIFF WAYNE VAN SCOY'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS' CLAIMS OF INVALIDITY AND ABANDONMENT

FOX ROTHSCHILD, LLP

By:   /s/ Sharon Oras Morgan (#4287)
      Sharon Oras Morgan
      919 North Market Street
      Suite 1300
      Wilmington, DE 19801
      Telephone: (302) 622-4246
      Facsimile: (302) 656-8920
      E-mail: smorgan@foxrothschild.com
      *Attorneys for Defendants and*
      *Counterclaim Plaintiffs*

OF COUNSEL:

Charles N. Quinn Esquire
Fox Rothschild, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2135
Facsimile: (215) 299-2150

Dated: December 5, 2005

WM1A 69393v1 12/12/05

## TABLE OF CONTENTS

| | Page |
|---|---|
| Exhibit A- U.S. Bankruptcy Docket | 3 |
| Exhibit B- U.S. Bankruptcy Schedule B- Personal Property | 3 |
| Exhibit C- 1980 Registration | 3 |
| Exhibit D- Printout of PA Secretary of State Website | 3,5 |
| Exhibit E- Order Approving Agreement of January 4, 2001 | 3 |
| Exhibit F- April 16, 2001 Filing | 3,6 |
| Exhibit G- Deposition Transcript of Wayne Van Scoy dated August 17, 2005 | 4,7,9 |
| Exhibit H- Hill Agreement | 4,10 |
| Exhibit I- Maurer Agreement | 4,10 |
| Exhibit J- Deposition Transcript of Kurt Van Scoy dated July 26, 2005 | 8 |
| Exhibit K- Deposition Transcript of Wayne Van Scoy dated October 4, 2005 | 10 |

WMIA 69393v1 12/12/05