IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF DELAWARE

WAYNE VAN SCOY               :

         PLAINTIFF        :   C.A.NO. 05-108-KAJ

                              :

     V.                          :

                              :

VAN SCOY DIAMOND MINE OF     :
DELAWARE, INC.,                  :
KURT VAN SCOY AND            :
DONNA VAN SCOY               :

         DEFENDANTS     :

                              :

                              :

## **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND WILLFUL INFRINGEMENT BY DEFENDANTS**

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
ASHBY & GEDDES
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888

*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856
(610) 935-8600

Dated: December 29, 2005

## TABLE OF CONTENTS

INTRODUCTION...............................................................................  1

NATURE AND STAGE OF PROCEEDINGS............................................1

SUMMARY OF ARGUMENT.............................................................. 1

I.    DEFENDANTS DO NOT CONTEST THAT THERE IS A
LIKELIHOOD OF CONFUSION, INFRINGEMENT AND
WILLFUL INFRINGEMENT.....................................................  1

II.    CONTRARY TO DEFENDANTS' ASSERTION, PLAINTIFF
IS  INDISPUTABLY THE OWNER OF THE MARKS AND
REGISTRATIONS .................................................................  2

III.   CONTRARY TO DEFENDANTS' ASSERTION, DEFENDANTS'
TESTIMONY SUPPORTED NO MORE THAN A PURPORTED
ALLEGED IMPLIED TERMINABLE AT WILL LICENSE TO
DEFENDANTS.......................................................................3

IV.   CONTRARY TO DEFENDANTS' ASSERTIONS, LEGAL
INTERPRETATION OF THE WRITTEN CONTRACTS WITH
MAUER AND HILL ARE ISSUES OF LAW, NOT DISPUTED
FACT, AND SHOW THAT MAUER AND HILL WERE GRANTED
EXCLUSIVE RIGHTS TO LIMITED GEOGRAPHIC TERRITORIES,
NOT LICENSES REQUIRING QUALITY CONTROL..................  3

SUPPLEMENTAL STATEMENT OF UNCONTESTED FACTS.................  4

ARGUMENT................................................................................. 6

    A.   Defendants Do Not Contest That There Is A Likelihood Of
    Confusion, Infringement and Willful Infringement.  Plaintiff's
    Incontestable Registrations Are Conclusive Evidence of Plaintiff's
    Ownership And Any Frivolous Defenses Have Been Waived......... 6

    B.   Contrary To Defendants' Assertion, Plaintiff Is Indisputably The
    Owner Of The Marks And The Registrations...........................  7

    C.   Contrary To Defendants' Assertion, Defendants' Testimony
    Supported No More Than A Purported Alleged, Implied
    Terminable At Will License To Defendants...........................  10

    D.   Contrary To Defendants' Assertions, Legal Interpretation Of
    The Written Contracts With Messrs. Mauer And Hill Is An Issue

Of Law, Not Disputed Fact, And The Contracts Show That Mauer And Hill Were Granted Exclusive Rights To Limited Geographic Territories, Not Licenses Requiring Quality Control.................. 14

E.    Contrary To Defendants' Assertions, It Is Defendants Who Have Mischaracterized The Record, Not Plaintiff........................... 16

CONCLUSION................................................................ 18

## TABLE OF AUTHORITIES
### CASES

Bunn-O-Matic v. Bunn Coffee Service, Inc.,
88 F.Supp.2d 914 (C.D. Ill. 2000).................................................    6

Resorts of Pinehurst, Inc. v. Pinehurst National Corporation,
148 F.3d 417 (4th Cir. 1998).......................................................    7

Leisure Dynamics, Inc. v. Commissioner of Internal Revenue,
494 F.2d 1340 (8th Cir. 1974).....................................................    13

Metro Traffic Control, Inc. v. Shadow Network Network Inc.,
104 F.3d 336 (Fed.Cir. 1997).......................................................    7

Sirocco Engineering Co. v. Monarch Ventilator Co.,
184 F. 84 (S.D.N.Y. 1910)............................................................    15

Tumblebus, Inc. v. Kranmer,
399 F.3d 754 (6th Cir. 2005)........................................................    15

### STATUTES

15 U.S.C. § 1115(b)..................................................................    2,7

## TABLE OF CONTENTS OF EXHIBITS

EXHIBIT T    Certified Copy of Adversary Complaint in Bankruptcy; Adversary
             Proceeding #5:96-00196A

EXHIBIT U    Defendants' Amended and Supplemental Responses to Plaintiff's First Set
             of Interrogatories

EXHIBIT V    Deposition Transcript of Lew Hill of October 5, 2005

EXHIBIT W    Deposition Transcript of Mark Mauer of October 6, 2005

EXHIBIT X    Letters From Mr. Quinn of 01/15/2005 and 02/04/2005

EXHIBIT Y    Transcript of Wayne Van Scoy of 08/17/05

EXHIBIT Z    Pages from Defendants' Website Showing E-mail Purchasability

## INTRODUCTION

Plaintiff Wayne Van Scoy respectfully submits this Reply Brief in support of Plaintiff's Motion for Summary Judgment of Infringement and Willful Infringement. Defendants do not contest that there is a likelihood of confusion and infringement, but raise new issues as to ownership and other issues which have never been pled and are contrary to Defendants' Discovery Responses.

Due to the manner in which Defendants have raised unrelated issues in response to Plaintiff's three separate motions for summary judgment, Plaintiff incorporates by reference herein, PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' LACHES, ACQUIESCENCE AND ESTOPPEL DEFENSES and PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' CLAIMS OF INVALIDITY AND ABANDONMENT, filed concurrently herewith.

## NATURE AND STAGE OF PROCEEDING

Plaintiff files this Reply Brief in support of his Motion for Summary Judgment of Infringement and Willful Infringement, and this Reply Brief is due in accordance with the Scheduling Order, as amended, on December 29, 2005.

## SUMMARY OF ARGUMENT

### I.     DEFENDANTS DO NOT CONTEST THAT THERE IS A LIKELIHOOD OF CONFUSION, INFRINGEMENT AND WILLFUL INFRINGEMENT

Defendants in their Answering Brief (D.I. 136) do not argue that there is any difference between Plaintiff's mark and Defendants' mark nor that there are any differences between the goods and services sold by Plaintiff and Defendants. Defendants also do not argue that the infringement has not been willful. Defendants concede infringement and willful infringement while making other frivolous arguments. Accordingly, summary judgment should be granted in favor of Plaintiff and against Defendants that there is infringement and willful infringement.

## II.    CONTRARY TO DEFENDANTS' ASSERTION, PLAINTIFF IS INDISPUTABLY THE OWNER OF THE MARKS AND REGISTRATIONS

Plaintiff is the owner, as shown on the face of the two federal registrations for the mark VAN SCOY DIAMOND MINE. These registrations have become incontestable within the meaning of Section 15 of the Trademark Act. This is conclusive evidence of Plaintiff's ownership of the mark subject to certain limited defenses, one of which is fraud (15 U.S.C. § 1115(b)). F.R.Civ.P. 8(c) requires pleading of fraud as an affirmative defense. F.R.Civ.P. 9(b) requires pleading of fraud with particularity. Defendants have not even pled fraud in their pleadings, and do not even mention it. See D.I. 6. Further, Defendants were asked numerous contention interrogatories with respect to their affirmative defenses and counterclaims, and never responded with any allegation of fraud. Accordingly, Defendants cannot raise this purported defense. Further, as shown by Paragraph 12 of the Complaint in the adversary proceeding seeking to enjoin family members from use of the trademarks, the Trustee asserted the registered trademark as part of the bankruptcy estate, accordingly, there was no fraud and the registered marks were a part of the bankruptcy estate and were properly transferred to Plaintiff Wayne Van Scoy.

(Complaint ¶ 12, Ex. T). Further, as shown by Defendants' Exhibit J to their Answering

Brief, Plaintiff Wayne Van Scoy submitted to the U.S. Patent and Trademark Office not

only the Memorandum, but also the Bankruptcy Court's Order of January 4, 2001.

Accordingly, all information was disclosed to the U.S. Patent and Trademark Office.

There are no non-frivolous disputed issues of fact, and summary judgment should be

granted to Plaintiff of infringement and willful infringement.

### III. CONTRARY TO DEFENDANTS' ASSERTION, DEFENDANTS' TESTIMONY SUPPORTED NO MORE THAN A PURPORTED ALLEGED IMPLIED TERMINABLE AT WILL LICENSE TO DEFENDANTS

Defendants testified in their deposition that they were granted permission by

vague words such as "good luck" and nothing more. There was no term specified and

were no other terms and conditions and Defendants paid nothing for the alleged

permission. That this constituted a purported implied terminable at will license, at best,

is an issue of law, not a disputed issue of fact. Accordingly, Defendants are estopped

from challenging the validity of Plaintiff's marks and registrations under the Doctrine of

Licensee Estoppel.

### IV. CONTRARY TO DEFENDANTS' ASSERTIONS, LEGAL INTERPRETATION OF THE WRITTEN CONTRACTS WITH MAUER AND HILL ARE ISSUES OF LAW, NOT DISPUTED FACT, AND SHOW THAT MAUER AND HILL WERE GRANTED EXCLUSIVE RIGHTS TO LIMITED GEOGRAPHIC TERRITORIES, NOT LICENSES REQUIRING QUALITY CONTROL

The written agreements between Plaintiff's predecessor, Plaintiff's father, and

Mark Mauer and Lew Hill, respectively, show that they were granted an exclusive right,

not a license requiring quality control, in a limited geographic area. The written

agreements specifically terminate all relationships between the parties and expressly state

that Plaintiff's predecessor would not be further involved in the conducting of the

businesses of Messrs. Mauer and Hill. Accordingly, as an issue of law, not fact, these

agreements should be construed to be assignments or consents to use in limited

geographic areas not requiring quality control.

## SUPPLEMENTAL STATEMENT OF UNCONTESTED FACTS

Plaintiff incorporates by reference the facts set forth in his opening brief. (D.I. 109).

Plaintiff acquired all rights to the trademark and service mark VAN SCOY

DIAMOND MINE by the Order of the Bankruptcy Court of January 4, 2001. (Exhibit

S).[1] The U.S. Patent and Trademark Office records previously reflected that the

registrations were in the name of Van Scoy Diamond Mine, Inc. Stock of Van Scoy

Diamond Mine, Inc., as well as the trademark VAN SCOY DIAMOND MINES, were

listed as assets in the Bankruptcy. (See G4 and G5, Defendants' Exhibit[2] G). Mr. Van

Scoy owned all of the stock of Van Scoy Diamond Mines, Inc. and accordingly, the entire

corporation and all of the assets of the corporation were in the bankruptcy estate. The

registered marks VAN SCOY DIAMOND MINE were clearly in the bankruptcy estate

and a part of the bankruptcy estate as shown by paragraph 12 of the adversarial

Complaint filed by the Bankruptcy Trustee against Plaintiff Wayne Van Scoy and other

family members to enjoin use of the mark VAN SCOY DIAMOND MINE. (See,

Complaint ¶ 12, Exhibit T). Paragraph 12 of the Complaint read "'Van Scoy Diamond

---

[1] Exhibits refer to exhibits in Plaintiff's opening brief and in the reply brief which are consecutively lettered. For example, Exhibit S is the last exhibit in Plaintiff's opening brief on Plaintiff's Motion for Summary Judgment of Infringement and Willful Infringement.

Mines' is a registered trademark of Thomas A. Van Scoy, Sr.", showing that the registrations were part of the bankruptcy estate. Defendants' Exhibit K, the assignment records of the U.S. Patent and Trademark Office, show the two registrations to be now owned by Plaintiff Wayne Van Scoy.

Plaintiff's father executed an assignment for a limited geographic territory or a consent to use agreement with Mark Mauer (International Diamond Company, Inc.)(hereinafter "Mauer"). See, Defendants' Exhibit M. Plaintiff's predecessor also executed an agreement with Lew Hill, substantially similar to the Mauer agreement. See, Defendants' Exhibit N. Section 4.1 of the Mauer and Hill agreements grants "an exclusive right and license to use and to trade under the mark in the territory." (Section 4.1, Defendants' Exhibits M and N). Sections 7.1 and 7.2 make clear that under the agreement the owner of the mark at that time, Plaintiff's father, was not obligated to provide any type of support or assistance with respect to the use of the mark in connection with the retail jewelry store business. (Sections 7.1, 7.2 of Defendants' Exhibits M and N). Section 3.4 insures separation of the parties by providing that "Van Scoy shall not use the mark in any part of the territory in the course of conducting any retail business or in connection with any wholesale jewelry business." (Section 3.4 of Defendants' Exhibits M and N). Both of these agreements were drafted by Defendants' counsel, Mr. Quinn and Defendants' counsel Mr. Quinn represented Messrs. Hill and Mauer in their depositions in this proceeding. (Hill 1-6 & 12, Exhibit V; Mauer 1-7 & 11-12, Exhibit W). Hill testified in his deposition that the 1993 agreement severed the relationship with Van Scoy. (Hill 44-46, Exhibit V). As a matter of law, these

---

[2] "Defendants' Exhibits" refers to exhibits attached to Defendants' Answering Brief on Infringement D.I. 136.

agreements were assignments for limited geographic territories or consents to use terminating any obligation on the part of the grantor. Section 2.1 of each agreement defines the territory. (Section 2.1, Defendants' Exhibits M and N).

The exact words on which Defendants' relied for their alleged permission to use the mark VAN SCOY DIAMOND MINE were given by Kurt under oath, as follows.

| | | |
|---|---|---|
| | Q. | Did your Dad actually tell you that you had permission to use the mark or did you infer that from the fact that he gave you the sign? |
| Kurt Van Scoy: | A. | He gave me the right to use that name. |
| | Q. | What did he say to you exactly? |
| Kurt Van Scoy: | A. | Here's the sign. Good Luck to you. I love you very much and I am proud of you. |
| | | (Kurt Van Scoy 9, Defendants' Exhibit L.) |

The exact words, at most, would support a legal interpretation of implied permission or an implied license, terminable at will, to use the mark. This was not a consent to use giving Defendants any exclusive rights to use the mark in any area. Defendants contend it was gratuitous, and that is neutral as to construing these words as an implied terminable at will license or a consent to use.[3]

## ARGUMENT

**A.** **Defendants Do Not Contest That There Is A Likelihood Of Confusion, Infringement and Willful Infringement. Plaintiff's Incontestable Registrations Are Conclusive Evidence of Plaintiff's Ownership And Any Frivolous Defenses Have Been Waived.**

Defendants in their Answering Brief on Infringement (D.I. 136) do not argue that there is any difference between Plaintiff's mark and Defendants' mark, nor that there are any differences between the goods and services sold by Plaintiff and those sold by Defendants. Defendants also do not argue that the infringement has not been willful.

Defendants have presented no arguments and no evidence against infringement, waived any frivolous defenses by not pleading them and accordingly conceded infringement and willful infringement. Accordingly, summary judgment should be granted in favor of Plaintiff and against Defendants that there is infringement and willful infringement.

**B.    Contrary To Defendants' Assertion, Plaintiff Is Indisputably The Owner Of The Marks And The Registrations.**

Plaintiff is the owner as shown on the face of Plaintiff's two federal registrations for the mark VAN SCOY DIAMOND MINE. These registrations have become incontestable within the meaning of Section 15 of the Trademark Act. (Exhibits A and B). This is conclusive evidence of Plaintiff's ownership of the mark and registrations subject to certain limited defenses, one of which is fraud. 15 U.S.C. § 1115(b).

F.R.Civ.P. 8(c) requires pleading of fraud as an affirmative defense, otherwise it is waived. F.R.Civ.P. 9(b) requires pleading of fraud with particularity. Defendants have not even pled fraud in their pleadings and do not even mention it. See D.I. 6.

Even if Defendants had pled fraud, they would not be able to prevail as there was no misrepresentation. In order to prove fraud in the U.S. Patent and Trademark Office, Defendants would have to have proven by clear and convincing evidence that Plaintiff knowingly made false, material representations of fact and intended to deceive the U.S. Patent and Trademark Office. Resorts of Pinehurst, Inc. v. Pinehurst National Corporation, 148 F.3d 417, 420 (4th Cir. 1998) citing Metro Traffic Control, Inc. v. Shadow Network Network Inc., 104 F.3d 336, 340 (Fed.Cir. 1997). Not only was fraud not pled, but there are no facts to support it. The undisputed evidence of record shows that not only was there no misrepresentation of fact, but there was also no intent to

---

[3] Bunn-O-Matic v. Bunn Coffee Service, Inc., 88 F.Supp.2d 914,921 (C.D. Ill. 2000).

deceive. Plaintiff testified that, with respect to the memorandum which he filed in the U.S. Patent and Trademark Office (which Defendants are now for the first time alleging evidences fraud), he believed the document to be correct when he signed it. (Wayne Van Scoy: 163, Exhibit Y). There exists no evidence that suggests that Plaintiff knowingly made false, material representations of fact. Even drawing all inferences that can be drawn from the facts in the light most favorable to Defendants, there is nothing to suggest that any action of Plaintiff was knowingly inaccurate or knowingly misleading. Besides the fact that the Federal Registrations for the marks "Van Scoy Diamond Mine" were actually part of the Bankruptcy Estate and validly transferred to Plaintiff as part of the Settlement of Bankruptcy Proceedings, Plaintiff had every reason to believe that this was the case. The Order Approving Agreement In Settlement Of Adversary Proceedings And Contested Matters entered by the United States Bankruptcy Court For The Middle District Of Pennsylvania (which is Defendants' Exhibit I) states that trademark "Van Scoy Diamond Mines" shall become the sole and exclusive property of Wayne Van Scoy. (See Exhibit I, page I0003). The above order vacates Adversary Proceeding 5-96-00196A which was the order enjoining Van Scoy family members from the use of the marks "Van Scoy Diamond Mines." In Paragraph 12 of the Complaint initiating Adversary Proceeding 5-96-00196A the Trustee defines the term "Van Scoy Diamond Mines" by stating that " 'Van Scoy Diamond Mines' is a registered trademark of Thomas A. Van Scoy." Clearly, Defendants' argument that the registered trademark was not part of the Bankruptcy Estate is contrary to the indisputable evidence. Even more clear is the fact that Wayne Van Scoy's belief that the registered marks were part of the Bankruptcy

Estate and validly transferred to him has always been reasonable and accurate. There is no contrary evidence of record.

Further, Defendants were asked numerous contention interrogatories with respect to their affirmative defenses and counterclaims and never responded with any allegation of fraud. See, Exhibit U. Accordingly, Defendants cannot raise this purported defense.

Further, the assignment agreements between Thomas A. Van Scoy, Sr. and the partnership and company controlled by Messrs. Hill and Mauer, respectively, recite in Section 1.1 that Thomas A. Van Scoy, Sr. "is the owner of United States Trademark Registration 1,140,958 for the mark "VAN SCOY DIAMOND MINE" for use in connection with retail jewelry store services." (Section 1.1 of Defendants' Exhibits M and N). These 1993 agreements were drafted by Defendants' counsel, Mr. Quinn, a year before the bankruptcy proceeding. Mr. Quinn represented Messrs. Hill and Mauer in the depositions in this proceeding. Accordingly, this statement constitutes an admission or at least collateral estoppel against Defendants that Thomas A. Van Scoy, Sr. was indeed the owner or exercising sufficient control over the registrations at the time of the bankruptcy proceeding such that they were a part of the bankruptcy estate. It was these marks which were then transferred by the Bankruptcy Court Order of January 4, 2001. The reason that the Bankruptcy Court used the words in the plural form "Van Scoy Diamond Mines" is because there were two marks and two registrations, both for the mark VAN SCOY DIAMOND MINE.

Further, Defendants admit that the corporate stock of Van Scoy Diamond Mine, Inc. became a part of the bankruptcy estate. (Defendants' Answering Brief, 5). The stock is also listed on the Bankruptcy Court's summary of schedules. (G0004,

Defendants' Exhibit G).  Accordingly, the entirety of the corporation was in the

bankruptcy, including all of the assets controlled by Thomas A. Van Scoy, Sr.  Further, it

is noted that Defendants argue that it was the words of Thomas A. Van Scoy, Sr., not Van

Scoy Diamond Mines, Inc., which allegedly gave them permission to use the mark VAN

SCOY DIAMOND MINE in Newark, Delaware.

Further, as shown by Paragraph 12 of the Complaint, in the adversary proceeding

seeking to enjoin family members from the use of the trademarks, the Trustee asserted

the registered trademark as part of the bankruptcy estate.  (Complaint, ¶ 12, Exhibit T).

The Trustee could not be suing on the basis of the registered marks if they were not part

of the bankruptcy estate.  Accordingly, there was no fraud and the registered marks as a

part of the bankruptcy estate were properly transferred to Plaintiff Wayne Van Scoy.

Further, as shown by Defendants' Exhibit J to their Answering Brief, Plaintiff Wayne

Van Scoy submitted to the U.S. Patent and Trademark Office not only a memorandum

but also the Bankruptcy Court's Order of January 4, 2001.  Accordingly, all information

was disclosed to the U.S. Patent and Trademark Office.  In view of the fact that there was

no fraud in fact and Defendants have not pled fraud, Plaintiff's incontestable registrations

are conclusive evidence of Plaintiff's ownership of his registered marks.  There are no

non-frivolous disputed issues of fact, and summary judgment should be granted to

Plaintiff of infringement and willful infringement.

> **C.     Contrary To Defendants' Assertion, Defendants' Testimony
> Supported No More Than A Purported Alleged, Implied Terminable
> At Will License To Defendants.**

Incredibly, Defendants argue that the written agreements between Plaintiff's

predecessor, Thomas A. Van Scoy, Sr., and Messrs. Mauer and Hill—which provide for a

grant of exclusive rights, termination of obligations on the behalf of Plaintiff's father to provide support and create independent territories—were licenses, not consents to use, and argue that the vague words allegedly spoken to Kurt Van Scoy of "good luck" without any specification of territory, term or the like, constituted a consent to use and not a license. (Defendants' Exhibits M and N). Defendants are inconsistent to the point of being frivolous. The detailed written agreements between Plaintiff's predecessor and Messrs. Mauer and Hill constituted as a matter of law assignments or consents to use. The vague words such as "good luck" by Plaintiff's predecessor to Kurt Van Scoy constituted, at best, as a matter of law, an implied terminable at will license.

Defendants testified in their deposition that they were granted permission to use the mark VAN SCOY DIAMOND MINE by the exact words "[h]ere's the sign. Good Luck to you. I love you very much and I am proud of you." (Kurt 9, Exhibit D). There was no set term, no terms and conditions and Defendants paid nothing for the alleged permission. This constituted, as a matter of law, at best, a purported implied license, which is an issue of law, not a disputed issue of fact. Accordingly, summary judgment should be granted to Plaintiff.

Incredibly, Defendants quote in their Answering Brief at Pages 10-11 testimony of Kurt Van Scoy which has been clearly established as being false. In the quoted language Kurt Van Scoy testifies that his father gave him the sign "Van Scoy Diamond Mine."

Q. Does it say Van Scoy or does it say Van Scoy Diamond Mine?
A. It says Van Scoy Diamond Mine.
(Kurt: 9, Exhibit D)

Later in the deposition, however, Defendant Kurt Van Scoy changes his story.

Q. Does this picture show the sign that was given to you by your father.
A. It certainly does.
Q. Could you tell me what the sign is?
A. Yes. Right in the bottom it says "Diamond Mine." That's the sign my father gave to me.
   (Kurt: 146, Exhibit D)

Further, the testimony quoted in Defendants' Answering Brief at pages 10-11, clearly show that what Kurt was given was a sign, not trademark rights. At best, the exact words of Thomas A. Van Scoy, Sr. can be construed as nothing more that an implied terminable at will license.

Furthermore, Defendants inconsistently argue that they were given a consent to use and that with a consent to use "a consentee is permitted to engage in defined actions which do not infringe the consenter's mark." (See Defendants Answering Brief at 7). Incredibly, Defendants have filed two Briefs with the Court, their Opening Memorandum for Summary Judgment (D.I. 115) and their Answering Brief in opposition to Defendants Motion for Summary Judgment on Defendants Laches, Acquiescence and Estoppel Defenses (D.I. 138), arguing that mere knowledge on the part of Plaintiff of Defendants' use of the marks in Delaware was basis to bring a suit for infringement. If Defendants' mere use of the mark in Delaware was a basis for an infringement suit as Defendants contend, then they clearly could not have been operating pursuant to a consent to use. Additionally, Defendant Donna Van Scoy testified that the permission allegedly granted to Defendants was for the Newark, Delaware area and not for anywhere else. (Donna: 32, Exhibit H). As Plaintiff has argued all along, Defendants misappropriating the domain name www.vanscoydiamondmine.com and offering products for sale over the internet in his sales area constitutes a breach of whatever permission may have been

granted to Defendants. Whether that permission was a license, as it should be characterized under the law, or a consent to use, which it was not, it was validly terminated by Plaintiff's Cease and Desist Letter.

It is also worth noting that Defendants have been operating their store in accordance with a licensing scheme. Defendants admit that the warranty certificate that they give to customers suggests a connection with other Van Scoy Diamond Mine stores. Defendants warranty certificate, for example, reads: "To be sure that your diamond is safe from loss and damage, take it into <u>any Van Scoy Diamond Mine</u> for cleaning and inspection for damaged prongs, etc. at least every 3 months or AS OFTEN AS YOU WISH, AT NO CHARGE." (Emphasis added) (Exhibit L). This is strong evidence that it was an implied terminable at will license and Defendants are estopped by licensee estoppel from challenging the validity of Plaintiff's registered marks. Furthermore, the alleged licensor, Tommy Van Scoy Sr., continued to participate in Defendants' business by allegedly visiting Defendants' store, making sales in Defendants' store and even making radio advertisements for Defendants' business. These facts are particularly telling since "the continued participation of the transferor in the transferee's business is the touch-stone of a license." <u>Leisure Dynamics, Inc. v. Commissioner of Internal Revenue</u>, 494 F.2d 1340, 1343-1344 (8th Cir. 1974). Accordingly, the alleged oral permission should be construed to be nothing more than an implied, terminable at will license and Defendants are estopped from challenging the validity of Plaintiff's marks and registrations under the Doctrine of Licensee Estoppel.

**D.     Contrary To Defendants' Assertions, Legal Interpretation Of The Written Contracts With Messrs. Mauer And Hill Is An Issue Of Law, Not Disputed Fact, And The Contracts Show That Mauer And Hill Were Granted Exclusive Rights To Limited Geographic Territories, Not Licenses Requiring Quality Control.**

The written agreements between Plaintiff's father, and Mark Mauer and Lew Hill, respectively, show that they were granted an exclusive right, in a limited geographic area, not a license requiring quality control. (Defendants' Exhibits M and N). The written agreements specifically terminate all relationships between the parties and expressly state that Plaintiff's father would not further be involved in the conducting of the business of Messrs. Mauer and Hill. See Sections 7.1, 7.2 of Defendants' Exhibits M and N. The agreements also provide that Van Scoy would not operate a retail jewelry business or a wholesale jewelry business in the territory. (See Sections 3.4, Defendants' Exhibits M and N). Accordingly, as an issue of law, not fact, these agreements should be construed to be assignments or consents to use in the limited geographic territories defined in Section 2.1 of each agreement, not requiring quality control.

Licenses bring the parties together as a common entity in the marketplace. An assignment or a consent to use separates the parties. The license integrates while a consent differentiates. See, 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:79 (4th Ed. 2005). Hill testified that the 1993 agreement severed the relationship with Van Scoy. (Hill 44-46, Exhibit V). The Hill and Mauer agreements in question were a "grant" of an exclusive right, which is tantamount to an assignment. The words "and license" were unnecessary and superfluous as that right was already granted in the "exclusive right….to use and trade under the mark in the territory in the course of conducting diamond and jewelry business." (See, Section 4.1 of both agreements,

Defendants' Exhibits M and N). Mauer testified that the agreement gave him exclusive rights to use the mark in the territory. Defendants' only argument as to why the agreements with Mauer and Hill are licenses is that the agreements use the words "and license". However, even though a contract states that it is a "license", a court will not be governed by form, and the contract will be upheld as an assignment of trademark rights if that is its actual legal effect. See, Sirocco Engineering Co. v. Monarch Ventilator Co., 184 F. 84 (S.D.N.Y. 1910). These agreements, as all contracts, must be interpreted as a whole. When all of the provisions of the agreement are viewed, they are clearly an assignment or at a very minimum, a consent to use, but not a license requiring quality control. They terminated the relationship between Messrs. Hill and Mauer on one hand and Van Scoy on the other.

The construction of a legal instrument is an issue of law for the Court. When the agreements with Messrs. Mauer and Hill are considered in their entirety, they are assignments or consents to use for limited geographic areas which do not require quality control. However, independent of the manner in which they are construed, they do not present an obstacle to the granting of an injunction against infringement by Defendants. Abandonment of a mark in other parts of the United States does not effect the forfeiture of the trademark owner's rights to the mark in the geographic area of the defendants. Tumblebus, Inc. v. Kranmer, 399 F.3d 754, 765 (6th Cir. 2005). Contrary to Defendants' assertion on page 16 of Defendants' Answering Brief, Plaintiff did provide authority for this proposition on page 21 of Plaintiff's Opening Brief. (D.I. 109). Further, if there is substantially uncontrolled use confined to a particular geographic market, the Court may conclude that the mark has been abandoned only in that geographic area and the

trademark owner retains its rights to the mark in other areas. <u>Tumblebus</u>, at 766.

Accordingly, any use of any marks by Mauer and Hill in isolated counties in

Pennsylvania has no affect on the granting of an injunction against Defendants in

Delaware. Further, Defendants failed to mention that Messrs. Mauer and Hill are not

even using the mark VAN SCOY DIAMOND MINE on their stores. Hill uses Van Scoy

Jewelers and Mauer uses Van Scoy, Mauer and Bash. (Hill 18, 25, 63, Exhibit V).

### E.   Contrary To Defendants' Assertions, It Is Defendants Who Have Mischaracterized The Record, Not Plaintiff.

Defendants' brief is replete with mischaracterizations of the record.

Defendants allege in their Brief that fraud on the U.S. Patent and Trademark

Office in procuring of the federal registrations in Plaintiff's name was a hotly contested

issue. (Defendants' Answering Brief 17-18). This issue appears no place in the record.

It was first raised in Defendants' Answering Brief in a desperate attempt to avoid

summary judgment of infringement. Defendants never pled fraud. (See D.I. 6). With

respect to every affirmative defense and counterclaim raised in Defendants' Answer and

Counterclaims, Plaintiff served contention interrogatories requesting all contentions, and

all facts and evidence supporting any contentions. At no point in time was any issue of

fraud ever identified. (See, Exhibit U).

Defendants assert that another hotly contested issue is that fact that Defendants

offer jewelry and precious stones for sale over the internet throughout the country,

including Wilkes-Barre, Pennsylvania. (Defendants' Answering Brief, 18). Defendants

raise this issue for the first time in their Answering Brief in a desperate attempt to avoid

summary judgment. Defendant Kurt Van Scoy clearly testified that customers and

potential customers can go onto his website, view the jewelry and the price, and if they are interested in it, click on it to get more information, and they can e-mail Defendants with respect to purchase. (Kurt 149-150, Exhibit D; Exhibit Z). Exhibit Z is a printout of a page of Defendants' website showing the provision of a direct e-mail function under the heading "Contact us to Purchase this Product...". Defendants testified that they have made a sale over the internet. (Kurt 150, Exhibit D). Nevertheless, Defendants contend without any supporting evidence that they do not offer for sale jewelry and precious stones over the internet and that their website is not capable of receiving information regarding payment for orders, customer's identities or customer's addresses, contending that sales cannot be made over the internet. (Defendants' Answering Brief 18). It does not matter exactly how the sales are made, as long as they are made over the internet, across the country and around the world. The fact that an e-mail is used instead of a direct charge to a credit card is not determinative. It can not be disputed that Defendants are using the internet to offer jewelry and precious stones for sale across the country including in Plaintiff's trading area in Wilkes-Barre, Pennsylvania.

Defendants also mischaracterize that their newly raised issue alleging Plaintiff did not own the registrations for the mark VAN SCOY DIAMOND MINE was a hotly contested issue. (Defendants' Answering Brief, 17). Although Defendants did not admit in their Answer (D.I. 6) that Plaintiff owned the registrations, at no point in time was there any hotly or otherwise contested issue. At no point in time was this raised in answers to Plaintiff's contention interrogatories. (See, Exhibit U).

Defendants imply that Plaintiff delayed from November 18, 2004 until February 23, 2005 to file suit. However, the delay was caused by Defendants' several requests for

extension of time to address the matter substantively to see whether the matter might be resolved without litigation. (See, letters of Defendants' counsel Mr. Quinn attached as Exhibit X).

The foregoing examples are not exhaustive of Defendants' mischaracterization of the record in an attempt to avoid summary judgment. However, the record is clear as to the material facts, there are no disputed material facts precluding the granting of Plaintiff's Motion for Summary Judgment.

## CONCLUSION

In view of the foregoing, there are no disputed material issues of fact. Summary judgment of infringement and willful infringement should be granted against Defendants and in favor of Plaintiff.

ASHBY & GEDDES

*/s/ John G. Day*

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888
*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856

Dated: December 29, 2005
165134.1

## <u>APPENDIX TABLE OF CONTENTS OF EXHIBITS</u>

EXHIBIT T    Certified Copy of Adversary Complaint in Bankruptcy; Adversary
             Proceeding #5:96-00196A

EXHIBIT U    Defendants' Amended and Supplemental Responses to Plaintiff's First Set
             of Interrogatories

EXHIBIT V    Deposition Transcript of Lew Hill of October 5, 2005

EXHIBIT W    Deposition Transcript of Mark Mauer of October 6, 2005

EXHIBIT X    Letters From Mr. Quinn of 01/15/2005 and 02/04/2005

EXHIBIT Y    Transcript of Wayne Van Scoy of 08/17/05

EXHIBIT Z    Pages from Defendants' Website Showing E-mail Purchasability

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of December, 2005, the attached **PLAINTIFF'S**

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY**

**JUDGMENT OF INFRINGEMENT AND WILLFUL INFRINGEMENT BY**

**DEFENDANTS** was served upon the below-named counsel of record at the address and in the

manner indicated:

Francis G.X. Pileggi, Esquire                                    HAND DELIVERY
Sharon Oras Morgan, Esquire
Fox Rothschild LLP
Citizen Bank Center
919 North Market Street
Suite 1300
Wilmington, DE  19801-2323


Charles N. Quinn, Esquire                                    VIA ELECTRONIC MAIL
Fox Rothschild LLP                                               and FIRST CLASS MAIL
2000 Market Street
Tenth Floor
Philadelphia, PA  19103


                                                             */s/ John G. Day*
                                                             _____
                                                             John G. Day