IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF DELAWARE

**REDACTED**

| | | |
|---|---|---|
| WAYNE VAN SCOY | : | |
| PLAINTIFF | : | C.A.NO. 05-108-KAJ |
| | : | |
| V. | : | |
| | : | |
| VAN SCOY DIAMOND MINE OF | : | |
| DELAWARE, INC., | : | |
| KURT VAN SCOY AND | : | |
| DONNA VAN SCOY | : | |
| DEFENDANTS | : | |
| | : | |
| | : | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS' CLAIMS OF INVALIDITY AND ABANDONMENT (REDACTED)

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
ASHBY & GEDDES
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888

*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856
(610) 935-8600

Dated: January 6, 2006

**TABLE OF CONTENTS**

INTRODUCTION............................................................... 1

NATURE AND STAGE OF PROCEEDINGS........................................ 1

SUMMARY OF ARGUMENT................................................... 1

SUPPLEMENTAL STATEMENT OF UNCONTESTED FACTS............... 3

ARGUMENT.................................................................... 6

    A.    Defendants Do Not Contest That There Has Been No
            Abandonment Of The Marks Van Scoy Diamond Mine
            By Non-Use.............................................................. 6

    B.    Contrary To Defendants' Assertion, Plaintiff Is Indisputably
            The Owner Of The Marks And The Registrations................. 6

    C.    Defendants Were Not Granted A Consent To Use The Mark
            And If Anything Defendants' Testimony Supported No More
            Than An Alleged, Oral Implied Terminable At Will License
            To Defendants; Defendants Are Estopped By Licensee
            Estoppel From Challenging Validity................................ 10

    D.    Plaintiff Has Not Abandoned The Mark............................ 13

        1.    Defendants Are Estopped From Claiming That
                The Marks VAN SCOY DIAMOND MINE
                Are Abandoned......................................................
                13

        2.    The Agreements Show That Mauer And Hill Were
                Granted Exclusive Rights To Limited Geographic
                Territories, Not Licenses Requiring Quality Control......... 14

        3.    Defendants' Claim That The Marks Are Abandoned
                Is Irrelevant Because There Is No Evidence That The
                Trademark Has Ever Been Abandoned In The Newark,
                Delaware Area..................................................... 16

CONCLUSION................................................................ 18

# TABLE OF AUTHORITIES
## CASES

Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.,
88 F.Supp.2d 914 (C.D. Ill. 2000)……………………………………….  5,10-12

Resorts of Pinehurst, Inc. v. Pinehurst National Corporation,
148 F.3d 417 (4th Cir. 1998)…………………………………………….  7

Metro Traffic Control, Inc. v. Shadow Network Network Inc.,
104 F.3d 336 (Fed.Cir. 1997)…………………………………………..  7

Creative Gifts, Inc. v. UFO,
235 F.3d 540 (10th Cir. 2000)…………………………………………...  13

In re New York City Shoes, Inc. v. Richard Royce Collection Ltd.,
84 B.R. 947 (E.D.PA 1988)……………………………………………..  13

Professional Golfers Association of America v. Bankers Life & Casualty Company,
514 F.2d 665 (5th Cir. 1975)……………………………………………  13

Sirocco Engineering Co. v. Monarch Ventilator Co.,
184 F.84 (S.D.N.Y. 1910)………………………………………………  16

Tumblebus, Inc. v. Kranmer,
399 F.3d 754 (6th Cir. 2005)…………………………………………….  16

## STATUTES

15 U.S.C. § 1115(b)……………………………………………………...  6

## <u>TABLE OF CONTENTS OF EXHIBITS</u>

EXHIBIT N    Adversary Complaint in Bankruptcy; Adversary Proceeding #5:96-00196A

EXHIBIT O    Defendants' Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories

EXHIBIT P    Defendants' Warranty Certificate

EXHIBIT Q    Plaintiff's Warranty Certificate

EXHIBIT R    Deposition Transcript of Kurt Van Scoy of October 3, 2005 **(Confidential – For Attorney Eyes Only)(REDACTED)**

EXHIBIT S    Defendants' Responses To Plaintiff's First Set Of Requests For Admissions, Nos. 26, 29, 30, 32

EXHIBIT T    Deposition Transcript of Donna Van Scoy of September 19, 2005

EXHIBIT U    Pages from Defendants' Website Showing E-mail Purchasability

## INTRODUCTION

Plaintiff Wayne Van Scoy respectfully submits this Reply Brief in support of Plaintiff's Motion for Summary Judgment against Defendants' Claims of Invalidity and Abandonment.

Due to the manner in which Defendants have raised unrelated issues in response to Plaintiff's three separate motions for summary judgment, Plaintiff incorporates by reference herein, <u>PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' LACHES, ACQUIESCENCE AND ESTOPPEL DEFENSES</u> and <u>PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND WILLFUL INFRINGEMENT BY DEFENDANTS</u>, filed concurrently herewith.

## NATURE AND STAGE OF PROCEEDING

Plaintiff files this Reply Brief in support of his Motion for Summary Judgment Against Defendants' Claims of Invalidity and Abandonment, and this Reply Brief is due in accordance with the Scheduling Order, as amended, on December 29, 2005.

## SUMMARY OF ARGUMENT

1. Defendants do not argue that there has ever been non-use of the marks VAN SCOY DIMAOND MINE by Plaintiff or Plaintiff's predecessor with the intent not to resume use.  In fact, Defendants admit that they have not raised such a contention with regard to their abandonment defense.

2. Plaintiff is the undisputable owner of the federal registrations for the marks VAN SCOY DIAMOND MINE. The marks have become incontestable under Section 15 of the Trademark Act. This in conclusive evidence of Plaintiff's ownership of the marks and registrations subject to certain limited defenses, one of which is fraud. Defendants have never pled fraud as required by F.R.Civ.P.8(c). Furthermore, even if they had pled fraud Defendants could not prove that Plaintiff knowingly made false, material representations and intended to deceive the U.S. Patent and Trademark Office. All of the evidence indicates that the federal registrations were part of the Bankruptcy Estate. The adversary Complaint filed by the Trustee initiating the trademark action against Wayne Van Scoy and other family members specifically states that " 'Van Scoy Diamond Mines' is a registered trademark of Thomas A. Van Scoy." The order granting Plaintiff Wayne Van Scoy the marks states that the trademark 'Van Scoy Diamond Mines' shall become the sole and exclusive property of Wayne Van Scoy. Defendants can not prove that the mark was not part of the Bankruptcy Estate and certainly can not prove fraud.

3. If anything, Defendants were granted an implied, terminable, at will license by the vague words of Tommy Van Scoy, and not a consent to use. Plaintiff validly terminated Defendants' implied license after discovery that they had exceeded the scope of the alleged permission by offering products for sale in his sales area through their infringing website hosted at www.vanscoydiamondmine.com.

4. As a matter of law Defendants will not be able to prove that Plaintiff's marks have been abandoned. As former licensees, Defendants are estopped from arguing abandonment in the first place under the doctrine of licensee estoppel. Further,

Defendants can not show that the marks have been abandoned as a result of insufficient quality control because contrary to Defendants assertions, Messrs. Maurer and Hill are not licensees. The agreements conferring exclusive rights to Messrs. Maurer and Hill confer as a matter of law either an assignment of the Mark or a consent to use the Mark in a limited geographic territory. There is no requirement of quality control for either an assignment or a consent to use. Finally, even if the mark were abandoned as a result of some uncontrolled use, there is no evidence that the Mark was ever abandoned in Newark, Delaware. Defendants have admitted that their market is separate and distinct from any other market where third parties may use colorable variations of the mark. Any allegedly invalidating use in some separate geographic region has no effect on Plaintiff's right to enforce his mark in Delaware. Furthermore, the circumstances of the licensing of Defendants was such that quality control was not required.

## SUPPLEMENTAL STATEMENT OF UNCONTESTED FACTS

Plaintiff acquired all rights to the trademark and service mark VAN SCOY DIAMOND MINE by the Order of the Bankruptcy Court of January 4, 2001. (See Defendants' Exhibit E, page E0003). [1] The Registrations have been issued in Plaintiff Wayne Van Scoy's name and have been made incontestable under Section 15 of the Trademark Act. (Certified Copy of Registrations, Ex. A). [2] The U.S. Patent and Trademark Office records previously reflected that the registrations were in the name of Van Scoy Diamond Mines, Inc. Stock of Van Scoy Diamond Mines, Inc., as well as the trademark VAN SCOY DIAMOND MINES, were listed as assets in the Bankruptcy.

---

[1] "Defendants' Exhibits" refers to exhibits attached to Defendants' Answering Brief on Invalidity and Abandonment D.I. 137.

(See B0002 – B0003, Defendants' Exhibit B). Mr. Van Scoy owned all of the stock of Van Scoy Diamond Mines, Inc. and accordingly, the entire corporation and all of the assets of the corporation were in the bankruptcy estate. The registered marks VAN SCOY DIAMOND MINE were clearly a part of the bankruptcy estate as shown by paragraph 12 of the adversarial Complaint filed by the Bankruptcy Trustee against Plaintiff Wayne Van Scoy and other family members to enjoin use of the mark VAN SCOY DIAMOND MINE. (See, Complaint ¶ 12, Exhibit N). Paragraph 12 of the Complaint read "'Van Scoy Diamond Mines' is a registered trademark of Thomas A. Van Scoy, Sr.", showing that the registrations were part of the Bankruptcy Estate.

Plaintiff's Father executed an assignment for a limited geographic territory or a consent to use agreement with Mark Mauer (International Diamond Company, Inc.)(hereinafter "Mauer"). See, Defendants' Exhibit I. Plaintiff's Father also executed an agreement with Lew Hill, substantially similar to the Mauer agreement. See, Defendants' Exhibit H. Section 4.1 of the Mauer and Hill agreements grants "an exclusive right and license to use and to trade under the mark in the territory." (Section 4.1, Defendants' Exhibits H and I). Sections 7.1 and 7.2 make clear that the owner of the mark at that time, Plaintiff's Father, was not obligated to provide any type of support or assistance with respect to the use of the mark in connection with the retail jewelry store business. (Sections 7.1, 7.2 of Defendants' Exhibits H and I). Section 3.4 insures separation of the parties by providing that "Van Scoy shall not use the mark in any part of the territory in the course of conducting any retail business or in connection with any wholesale jewelry business." (Section 3.4 of Defendants' Exhibits H and I). Both of

---

[2] Exhibits refer to exhibits in Plaintiff's opening brief and in the reply brief which are consecutively lettered. For example, Exhibit A is the first exhibit in Plaintiff's opening brief on Plaintiff's Motion for

these agreements were drafted by Defendants' counsel, Mr. Quinn, and Defendants'

counsel Mr. Quinn represented Messrs. Hill and Mauer in their depositions in this

proceeding.  (Hill 1-6 & 12, Exhibit G; Mauer 1-7 & 11-12, Exhibit F).  Hill testified in

his deposition that the 1993 agreement severed the relationship with Van Scoy.  (Hill 44-

46, Exhibit G).  As a matter of law, these agreements were assignments for limited

geographic areas or consents to use terminating any obligation on the part of the grantor.

Section 2.1 of each agreement defines the territory.  (Section 2.1, Defendants' Exhibits H

and I).  Defendants admit that Messrs. Maurer and Hill operate in separate and distinct

markets from Defendants.  Additionally, Messrs. Maurer and Hill are not even using the

mark VAN SCOY DIAMOND MINE on their stores.

The exact words on which Defendants' relied for their alleged permission to use

the mark VAN SCOY DIAMOND MINE were given by Kurt under oath, as follows.

|  |  |  |
|---|---|---|
| | Q. | Did your Dad actually tell you that you had permission to use the mark or did you infer that from the fact that he gave you the sign? |
| Kurt Van Scoy: | A. | He gave me the right to use that name. |
| | Q. | What did he say to you exactly? |
| Kurt Van Scoy: | A. | Here's the sign.  Good Luck to you.  I love you very much and I am proud of you. |
| | | (Kurt Van Scoy 9, Exhibit J) |

The exact words, at most, would support a legal interpretation of implied

permission or an implied license, terminable at will, to use the mark.  This was not a

consent to use giving Defendants any exclusive rights to use the mark in any area.

Defendants contend it was gratuitous, and that is neutral as to construing these words as

an implied terminable at will license or a consent to use.[3]

---

Summary Judgment Against Defendants' Claims of Invalidity and Abandonment.
[3] Bunn-O-Matic v. Bunn Coffee Services, Inc., 88 F.Supp.2d 914, 921 (C.D. Ill. 2000).

## ARGUMENT

**A.     Defendants Do Not Contest That There Has Been No Abandonment Of The Marks Van Scoy Diamond Mine By Non-Use.**

Defendants in their Answering Brief on Invalidity and Abandonment (D.I. 137) do not argue that there has been any period of non-use by Plaintiff of the marks Van Scoy Diamond Mine with the intent not to resume use.  In fact, Defendants specifically admit that they are not arguing and never have argued that Plaintiff has ever had an intent not to use or resume use of the Mark.  (Defendants' Answering Brief, p. 11).

**B.     Contrary To Defendants' Assertion, Plaintiff Is Indisputably The Owner Of The Marks And The Registrations.**

Plaintiff is the owner as shown on the face of Plaintiff's two federal registrations for the mark VAN SCOY DIAMOND MINE.  These registrations have become incontestable within the meaning of Section 15 of the Trademark Act.  (See Certified Copies of Registrations, Exhibits A).  This is conclusive evidence of Plaintiff's ownership of the marks and registrations subject to certain limited defenses, one of which is fraud.  15 U.S.C. § 1115(b).

F.R.Civ.P. 8(c) requires pleading of fraud as an affirmative defense, otherwise it is waived.  F.R.Civ.P. 9(b) requires pleading of fraud with particularity.  Defendants have not even pled fraud in their pleadings and do not even mention it.  See D.I. 6.

Even if Defendants had pled fraud, they would not be able to prevail as there was no misrepresentation. In order to prove fraud in the U.S. Patent and Trademark Office, Defendants would have to have proven by clear and convincing evidence that Plaintiff knowingly made false, material representations of fact and intended to deceive the U.S. Patent and Trademark Office. Resorts of Pinehurst, Inc. v. Pinehurst National Corporation, 148 F.3d 417, 420 (4th Cir. 1998) citing Metro Traffic Control, Inc. v. Shadow Network Network Inc., 104 F.3d 336, 340 (Fed.Cir. 1997). Not only was fraud not pled, but there are no facts to support it. The undisputed evidence of record shows that not only was there no misrepresentation of fact, but there was also no intent to deceive. Plaintiff testified that, with respect to the memorandum which he filed in the U.S. Patent and Trademark Office (which Defendants are now for the first time alleging evidences fraud), he believed the document to be correct when he signed it. (Wayne Van Scoy: 163, Exhibit H). There exists no evidence that suggests that Plaintiff knowingly made false, material representations of fact. Even drawing all inferences that can be drawn from the facts in the light most favorable to Defendants, there is nothing to suggest that any action of Plaintiff was knowingly inaccurate or knowingly misleading. Besides the fact that the Federal Registrations for the marks "Van Scoy Diamond Mine" were actually part of the Bankruptcy Estate and validly transferred to Plaintiff as part of the Settlement of Bankruptcy Proceedings, Plaintiff had every reason to believe that this was the case. The Order Approving Agreement In Settlement Of Adversary Proceedings And Contested Matters entered by the United States Bankruptcy Court For The Middle District Of Pennsylvania which is Defendants' Exhibit E states that the trademark "Van Scoy Diamond Mines" shall become the sole and exclusive property of Wayne Van Scoy.

(See Defendants' Exhibit E, page E0003). The above order vacates the order enjoining

use of the trademark VAN SCOY DIAMOND MINE in Adversary Proceeding 5-96-

00196A, which was the order enjoining Van Scoy family members from the use of the

marks "Van Scoy Diamond Mines." (Defendants' Exhibit E, p. E0002). In Paragraph 12

of the Complaint initiating Adversary Proceeding 5-96-00196A, the Trustee defines the

term "Van Scoy Diamond Mines" by stating that " 'Van Scoy Diamond Mines' is a

registered trademark of Thomas A. Van Scoy." (Complaint, ¶ 12, Exhibit N). Clearly,

Defendants argument that the registered trademark was not part of the Bankruptcy Estate

is contrary to the indisputable evidence. Even more clear is the fact that Wayne Van

Scoy's belief that the registered marks were part of the Bankruptcy Estate and validly

transferred to him has always been reasonable and accurate. There is no contrary

evidence of record.

Further, Defendants were asked numerous contention interrogatories with respect

to their affirmative defenses and counterclaims and never responded with any allegation

of fraud. See, Exhibit O. Accordingly, Defendants cannot raise this purported defense.

Further, the assignment agreements between Thomas A. Van Scoy, Sr. and the

partnership and company controlled by Messrs. Hill and Mauer, respectively, recite in

Section 1.1 that Thomas A. Van Scoy, Sr. "is the owner of United States Trademark

Registration 1,140,958 for the mark "VAN SCOY DIAMOND MINE" for use in

connection with retail jewelry store services." (Section 1.1 of Defendants' Exhibits H

and I). These 1993 agreements were drafted by Defendants' counsel, Mr. Quinn, a year

before the bankruptcy proceeding. Mr. Quinn represented Messrs. Hill and Mauer in the

depositions in this proceeding. Accordingly, this statement constitutes an admission or at

least collateral estoppel against Defendants that Thomas A. Van Scoy, Sr. was indeed the owner or exercising sufficient control over the registrations at the time of the bankruptcy proceeding such that they were a part of the bankruptcy estate. It was these marks which were then transferred by the Bankruptcy Court Order of January 4, 2001. The reason that the Bankruptcy Court used the words in the plural form "Van Scoy Diamond Mines" is because there were two marks and two registrations, both for the mark VAN SCOY DIAMOND MINE.

Further, Defendants admit that the corporate stock of Van Scoy Diamond Mine, Inc. became a part of the bankruptcy estate. (Defendants' Answering Brief, page 3). The stock is also listed on the Bankruptcy Court's summary of schedules. (B0002, Defendants' Exhibit B). Accordingly, the entirety of the corporation was in the bankruptcy, including all of the assets controlled by Thomas A. Van Scoy, Sr. Further, it is noted that Defendants argue that it was the words of Thomas A. Van Scoy, Sr., not Van Scoy Diamond Mines, Inc., which gave them permission to use the mark VAN SCOY DIAMOND MINE in Newark, Delaware.

Further, as shown by Paragraph 12 of the Complaint, in the adversary proceeding seeking to enjoin family members from the use of the trademarks, the Trustee asserted the registered trademark as part of the bankruptcy estate. (Complaint, ¶ 12, Exhibit N). The Trustee could not be suing on the basis of the registered marks if they were not part of the bankruptcy estate. Accordingly, there was no fraud and the registered marks as a part of the bankruptcy estate were properly transferred to Plaintiff's Wayne Van Scoy. Further, as shown by Defendants' Exhibit F to their Answering Brief, Plaintiff Wayne Van Scoy submitted to the U.S. Patent and Trademark Office not only a memorandum

but also the Bankruptcy Court's Order of January 4, 2001.  Accordingly, all information

was disclosed to the U.S. Patent and Trademark Office.  Since there was no fraud in fact

and since fraud was never pled, Plaintiff's registrations are conclusive evidence of

Plaintiff's ownership of his registered marks.  There are no non-frivolous disputed issues

of fact, and summary judgment should be granted to Plaintiff.

**C.    Defendants Were Not Granted A Consent To Use The Mark And If Anything Defendants' Testimony Supported No More Than An Alleged, Terminable At Will License To Defendants; Defendants Are Estopped By Licensee Estoppel From Challenging Validity.**

Incredibly, Defendants argue that the written agreements between Plaintiff's

Father, Thomas A. Van Scoy, Sr., and Messrs. Mauer and Hill—which provide for a

grant of exclusive rights, termination of obligations on the behalf of Plaintiff's

predecessor to provide support and create independent territories—were licenses, not

consents to use, and argue that the vague words allegedly spoken to Kurt Van Scoy of

"good luck" without any specification of territory, term or the like, constituted a consent

to use and not a license.  (Defendants' Exhibits H and I).  Defendants are inconsistent to

the point of being frivolous.  The detailed written agreements between Plaintiff's

predecessor and Messrs. Mauer and Hill constituted as a matter of law assignments or

consents to use.  The vague words such as "good luck" by Plaintiff's predecessor to Kurt

Van Scoy constituted, at best, as a matter of law, an implied terminable at will license.

A trademark license is a grant of permission to use the grantor's trademark.

Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc., 88 F.Supp.2d 914, 920-921 (C.D. Ill.

2000).  Defendants testified in their deposition that they were granted permission to use

the mark VAN SCOY DIAMOND MINE by the exact words "[h]ere's the sign.  Good

Luck to you. I love you very much and I am proud of you." (Kurt 9, Exhibit D).

Defendants admit in their answering brief that "the testimony of Kurt Van Scoy reveals

that his father gave him permission to use the name." (Defendants' Answering Brief,

page 8). There was no set term, no terms and conditions and Defendants paid nothing for

the alleged permission. A license containing no time frame is generally terminable at

will. Bunn-O-Matic Corp., 88 F.Supp.2d 914 at 921. Defendants' alleged permission

constituted, as a matter of law, at best, a purported implied license, which is an issue of

law, not a disputed issue of fact. Accordingly, summary judgment should be granted to

Plaintiff.

It is also worth noting that Defendants have been operating their store in

accordance with a licensing scheme. Defendants admit that the warranty certificate that

they give to customers suggests that there is an affiliation with other Van Scoy Diamond

Mine stores. (Kurt: 40, Ex. R). Defendants' warranty certificate, for example, reads: "To

be sure that your diamond is safe from loss and damage, take it into any Van Scoy

Diamond Mine for cleaning and inspection for damaged prongs, etc. at least every 3

months or AS OFTEN AS YOU WISH, AT NO CHARGE." (Exhibit P). In fact,

Defendants' warranty certificate is substantially identical to the warranty certificate used

by Plaintiff. (Compare Exhibit P and Exhibit Q). This is strong evidence that it was an

implied terminable at will license and Defendants are estopped by licensee estoppel from

challenging the validity of Plaintiff's registered marks. Furthermore, the alleged licensor,

Tommy Van Scoy Sr., continued to participate in Defendants' business by allegedly

visiting Defendants' store, making sales in Defendants' store and even making radio

advertisements for Defendants' business.  This continued participation by Tommy Van Scoy Sr. is consistent with there being a license.

Defendants only argument as to why they believe that the permission allegedly granted to them was a consent to use and not a license was because the permission did not call for the payment of royalties.  Defendants are mistaken in their assumption that a license requires the payment of royalties as the cases have held otherwise.  In <u>Bunn-O-Matic</u> the defendant attempted unsuccessfully to convince the court that their agreement with the plaintiff was a consent to use and not a license by arguing that the agreement: (1) did not contain the word license, (2) <u>did not call for the payment of royalties</u>, (3) did not establish a quality control mechanism, (4) had no termination date, and (5) contemplated no affiliation or joint activity of the two enterprises.  In rejecting the defendants argument and in finding that a terminable, at will license existed between the parties the court said, "none of the omitted terms identified by [the defendant] are necessary to create a valid trademark license."  <u>Bunn-O-Matic Corp.</u>, 88 F.Supp.2d 914 at 921.

Finally, Defendants inconsistently argue that they were given a consent to use and that with a consent to use "a consentee is permitted to engage in defined actions which do not infringe the consenter's mark." (See Defendants' Answering Brief at 7).  Incredibly, Defendants have filed two Briefs with the Court, their Opening Memorandum for Summary Judgment (D.I. 115) and their Answering Brief in opposition to Defendants' Motion for Summary Judgment on Defendants' Laches, Acquiescence and Estoppel Defenses (D.I. 138), arguing that mere knowledge on the part of Plaintiff of Defendants' use of the marks in Delaware was basis to bring a suit for infringement.  If Defendants' mere use of the mark in Delaware was a basis for an infringement suit as Defendants

contend, then they clearly could not have been operating pursuant to a consent to use.

Additionally, Defendant Donna Van Scoy testified that the permission allegedly granted

to Defendants was for the Newark, Delaware area and not for anywhere else.  (Donna:

32, Ex. T).  As Plaintiff has argued all along, Defendants misappropriating the domain

name www.vanscoydiamondmine.com and offering products for sale over the internet in his

sales area constitutes a breach of whatever permission may have been granted to

Defendants.  (See, page from Defendants' website showing e-mail purchasability, Exhibit

U; Kurt: 149-150, Exhibit O).  Whether that permission was a license, as it should be

characterized under the law, or a consent to use, which it was not, it was validly

terminated by Plaintiff's Cease and Desist Letter.


### D.    Plaintiff Has Not Abandoned The Mark.

#### 1.    Defendants Are Estopped From Claiming That The Marks VAN SCOY DIAMOD MINE Are Abandoned.

Defendants are estopped from claiming that the marks "VAN SCOY DIAMOND

MINE" are invalid or otherwise abandoned under the doctrine of licensee estoppel.  See,

Creative Gifts, Inc. v. UFO, 235 F.3d 540, 548 (10th Cir. 2000).  Under this doctrine, a

licensee is equitably estopped from setting up a subsequent adverse claim against its

licensor.  In re New York City Shoes, Inc. v. Richard Royce Collection Ltd., 84 B.R. 947

(E.D.PA 1988).  Furthermore, a former licensee is estopped from challenging a trademark

holder's valid ownership on facts which arose prior to or during the license agreement.

Professional Golfers Association of America v. Bankers Life & Casualty Company, 514

F.2d 665, 671 (5th Cir. 1975).  Defendants only argument as to why Plaintiff Wayne Van

Scoy has allegedly abandoned the Marks is that he has failed to supervise the operations

of Mark Maurer and Lew Hill who Defendants erroneously claim are licensees of

Plaintiff. As discussed below, Messrs. Mauer and Hill have not been licensees of the

Marks since 1993. Defendants were not licensed to use the Mark until they were

allegedly granted permission by Tommy Van Scoy, Sr. in 1994. Any possible

invalidating acts clearly took place before Defendants were even licensed. Defendants

are therefore estopped from arguing that the marks are abandoned as a result of any

alleged licensing on the part of Plaintiff or Plaintiff's predecessor in title. Furthermore,

as former licensees Defendants are certainly estopped from arguing that either Wayne

Van Scoy's or his predecessors' alleged failure to maintain quality control over the

Delaware Store amounts to abandonment of the trademark.

## 2. The Agreements Show That Mauer And Hill Were Granted Exclusive Rights To Limited Geographic Territories, Not Licenses Requiring Quality Control.

The facts of record are clear that Mark Maurer and Lew Hill are not licensees of

Plaintiff. The written agreements executed in 1993 between Plaintiff's Father and Mark

Mauer and Lew Hill, respectively, show that they were granted an exclusive right, in a

limited geographic area, not a license requiring quality control. (Defendants' Exhibits H

and I). The written agreements specifically terminate all relationships between the

parties, expressly stating that Plaintiff's Father would not further be involved in the

conducting of the business of Messrs. Mauer and Hill. (See, Sections 7.1, 7.2 of

Defendants' Exhibits H and I). The agreements also provide that Van Scoy would not

operate a retail jewelry business or a wholesale jewelry business in the territory. (See

Sections 3.4, Defendants' Exhibits H and I). Accordingly, as an issue of law, not fact,

these agreements should be construed to be assignments or consents to use in the limited geographic territories defined in Section 2.1 of each agreement, not requiring quality control.

Licenses bring the parties together as a common entity in the marketplace. An assignment or a consent to use separates the parties. The license integrates while a consent differentiates. See, 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:79 (4th Ed. 2005). Hill testified that the 1993 agreement severed the relationship with Van Scoy. (Hill 44-46, Exhibit G). The Hill and Mauer agreements in question were a "grant" of an exclusive right, which is tantamount to an assignment. The Agreements specifically state that "Van Scoy shall not use the Mark in any part of the Territory in the course of conducting any retail business or in connection with any wholesale jewelry business." (See, Section 3.4 of both agreements, Defendants' Exhibits H and I). The words "and license" were unnecessary and superfluous as that right was already granted in the "exclusive right....to use and trade under the mark in the territory in the course of conducting diamond and jewelry business." (See, Section 4.1 of both agreements, Defendants' Exhibits H and I). Mauer testified that the agreement gave him exclusive rights to use the mark in the territory. Defendants' only argument as to why the agreements with Mauer and Hill are licenses is that the agreements use the words "and license". However, even though a contract states that it is a "license", a court will not be governed by form, and the contract will be upheld as an assignment if that is its actual legal effect. See, Sirocco Engineering Co. v. Monarch Ventilator Co., 184 F.84, 85 (S.D.N.Y. 1910). These agreements, as all contracts, must be interpreted as a whole. When all of the provisions of the agreement are viewed, they are clearly an assignment or

at a very minimum, a consent to use, but not a license requiring quality control. They

terminated the relationship between Messrs. Hill and Mauer on one hand and Van Scoy

on the other. Accordingly, Plaintiff's registered marks are not invalid as there was no

duty on the part of Plaintiff or Plaintiff's predecessor to exercise quality control, and

further, Plaintiff is estopped from raising these issues as to invalidity by the Doctrine of

Licensee Estoppel.

> **3.      Defendants' Claim That The Marks Are Abandoned Is
> Irrelevant Because There Is No Evidence That The Trademark
> Has Ever Been Abandoned In The Newark, Delaware Area.**

The construction of a legal instrument is an issue of law for the Court. When the

agreements with Messrs. Mauer and Hill are considered in their entirety, they are

assignments or consents to use for limited geographic areas which do not require quality

control. However, independent of the manner in which they are construed, they do not

present an obstacle to the granting of an injunction against infringement by Defendants.

Abandonment of a mark in other parts of the United States does not effect the forfeiture

of the trademark owner's rights to the mark in the geographic area of the defendants.

Tumblebus, Inc. v. Kranmer, 399 F.3d 754, 765 (6th Cir. 2005). If there is substantially

uncontrolled use confined to a particular geographic market, the Court may conclude that

the mark has been abandoned only in that geographic area and the trademark owner

retains its rights to the mark in other areas. Tumblebus, at 766. Defendants admitted that

Defendant Van Scoy Diamond Mine of Delaware, Inc. operates it jewelry business in a

geographic area which is, except for its infringing internet business, geographically

distinct from any market in which Mark Maurer or Lew Hill have ever operated a jewelry

store. (Defendants' Responses To Plaintiff's First Set Of Requests For Admissions, Nos. 26, 29, 30, 32, Ex. S) Defendants' admission is supported by the testimony of Messrs. Maurer and Hill who testified that the markets in which they operate are separate and distinct from the Wilmington, Delaware market. (Ex. F, 36-37; Ex. G, 37). Furthermore, Lew Hill, who was an adverse witness represented at his deposition by Defendants' counsel Charles Quinn, admitted for the store he operates in Wyomissing, Pennsylvania, under the name "Van Scoy Jewelers", that customers travel an average of only six miles from their houses to patronize his store. (Hill: 35, Exhibit G). Defendants admitted that Defendants' market is approximately 60 miles from the locations operated by Messrs. Maurer and Hill. (Defendants' Answering Brief, p. 11). Accordingly, any use of any marks by Mauer and Hill in isolated counties in Pennsylvania has no affect on the granting of an injunction against Defendants in Delaware. Defendants can not now take back their admission and attempt to argue that their use of the Mark is somehow not geographically separate from use by Messrs. Maurer and Hill. Further, in order to back out of their admission Defendants make an incoherent argument regarding Plaintiff's mark being known up and down the East Coast. Plaintiff has never even suggested that Wilmington, Delaware falls outside of the East Coast. The fact that Plaintiff's Mark may be well known on the East Coast, including Wilmington, Delaware, has nothing to do with the Mark's validity in Newark, Delaware where Defendants have only argued abandonment in a few geographically distinct counties in Pennsylvania. Further, Defendants failed to mention that Messrs. Mauer and Hill are not even using the mark VAN SCOY DIAMOND MINE on their stores. Hill uses Van Scoy Jewelers and Mauer uses Van Scoy, Mauer and Bash. (Hill 18, 25, 63, Exhibit V).

Finally, with respect to Defendants' argument that the alleged failure of Plaintiff or Plaintiff's Father to maintain quality control over the Delaware store amounts to abandonment, Defendants completely ignore the fact that they are estopped from arguing abandonment by the Doctrine of Licensee Estoppel. Furthermore, Defendants admit that the holding of the <u>Taco Cabana</u> case is that quality control is not required in situations where the license parties have engaged in a close working relationship. (Defendants' Answering Brief, page 3; <u>Taco Cabana Int'l, Inc. v. Two Pesos, Inc.</u>, 932 F.2d 1113, 1121 (5th Cir. 1991)). Defendant Kurt Van Scoy said of his alleged licensor: "[h]e's my father. I'm his son. He taught me the business." (Kurt: 34, Ex. C). This is exactly the type of scenario envisioned by <u>Taco Cabana</u> and accordingly alleged lack of quality control of the Defendants' Newark store would not result in abandonment of the Marks.

## CONCLUSION

The record is clear as to the material facts, there are no disputed material facts precluding the granting of Plaintiff's Motion for Summary Judgment. Accordingly, for the foregoing reasons, Plaintiff's Motion for Summary Judgment on Defendants' claims of invalidity and abandonment should be granted.

ASHBY & GEDDES

*/s/ John G. Day*

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888
*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856

Dated: December 29, 2005
165136.1

## <u>APPENDIX TABLE OF CONTENTS OF EXHIBITS</u>

EXHIBIT N    Adversary Complaint in Bankruptcy; Adversary Proceeding #5:96-00196A

EXHIBIT O    Defendants' Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories

EXHIBIT P    Defendants' Warranty Certificate

EXHIBIT Q    Plaintiff's Warranty Certificate

EXHIBIT R    Deposition Transcript of Kurt Van Scoy of October 3, 2005 **(Confidential – For Attorney Eyes Only)(REDACTED)**

EXHIBIT S    Defendants' Responses To Plaintiff's First Set Of Requests For Admissions, Nos. 26, 29, 30, 32

EXHIBIT T    Deposition Transcript of Donna Van Scoy of September 19, 2005

EXHIBIT U    Pages from Defendants' Website Showing E-mail Purchasability

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of January, 2006, the attached **REDACTED PUBLIC VERSION OF PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS' CLAIMS OF INVALIDITY AND ABANDONMENT** was served upon the below-named counsel of record at the address and in the manner indicated:

Francis G.X. Pileggi, Esquire                                  HAND DELIVERY
Sharon Oras Morgan, Esquire
Fox Rothschild LLP
Citizen Bank Center
919 North Market Street
Suite 1300
Wilmington, DE  19801-2323

Charles N. Quinn, Esquire                                  VIA ELECTRONIC MAIL
Fox Rothschild LLP                                          and FIRST CLASS MAIL
2000 Market Street
Tenth Floor
Philadelphia, PA  19103

*/s/ John G. Day*
_____
John G. Day