IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF DELAWARE

REDACTED

WAYNE VAN SCOY

               PLAINTIFF         :       C.A.NO. 05-108-KAJ

                            :

      V.                       :

                            :

VAN SCOY DIAMOND MINE OF
DELAWARE, INC.,                   :
KURT VAN SCOY AND           :
DONNA VAN SCOY              :

               DEFENDANTS     :

                            :

---

### PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' LACHES, ACQUIESCENCE AND ESTOPPEL DEFENSES (REDACTED)

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
ASHBY & GEDDES
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888

*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856
(610) 935-8600

Dated:  January 6, 2006

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................... 1

NATURE AND STAGE OF PROCEEDING.................................... 1

SUMMARY OF ARGUMENT................................................... 1

SUPPLEMENTAL STATEMENT OF UNCONTESTED FACTS.............. 3

ARGUMENT........................................................................ 5

I.    PLAINTIFF PROPERLY RELIED ON THE THIRD CIRCUIT
      PAPPAN CASE AND SINCE ANY PERIOD OF DELAY MUST
      BE MEASURED FROM THE TIME IN WHICH PLAINTIFF
      WAYNE VAN SCOY HAD THE RIGHT TO SEEK AN
      INJUNCTION FOR INFRINGEMENT, THERE WAS NO
      INEXCUSABLE DELAY.................................................. 5

II.   DEFENDANTS ARE NOT ENTITLED TO ANY
      PRESUMPTION OF PREJUDICE AND UNDER THE
      CIRCUMSTANCES OF THIS CASE DEFENDANTS HAVE
      NOT OFFERED ANY APPROPRIATE EVIDENCE THAT
      COULD SUPPORT A FINDING OF PREJUDICE....................... 13

III.  PLAINTIFF NEVER ACQUIESCED IN DEFENDANTS USE OF
      THE NAME AND DEFENDANTS' ARGUMENT THAT HE DID
      IS DISINGENUOUS AND MISLEADING................................ 15

IV.   PLAINTIFFS CLAIMS ARE NOT BARRED IN WHOLE OR IN
      PART BY EQUITABLE ESTOPPEL...................................... 17

V.    THE THEORY OF PROGRESSIVE ENCROACHMENT IS
      APPLICABLE TO THE FACTS OF THIS CASE AND BARS
      ANY CLAIM OF INEXCUSABLE DELAY ON THE PART
      OF PLAINTIFF........................................................... 18

CONCLUSION.................................................................... 19

## TABLE OF AUTHORITIES
## CASES

<u>Page</u>

<u>David L. Adams v. Freedom Forge Corporation</u>,
204 F.3d 475 (3d Cir. 2000)……………………………………………………     10

<u>Dial-A-Mattress Operating Corp.</u>,
847 F.Supp 18 (E.D.N.Y. 1994)…………………………………………………..     7

<u>First Keystone Federal Savings Bank v. First Keystone Mortgage, Inc.</u>,
923 F.Supp.693 (E.D.PA 1996)………………………………………………     13-16, 18

<u>Holiday Inns of America, Inc. v. B & B Corporation</u>,
409 F.2d 614 (3d Cir. 1969)…………………………………………………..     2, 8-10

<u>Johanna Farms, Inc. v. Citrus Bowl, Inc.</u>,
468 F.Supp. 866 (E.D.N.Y. 1978)……………………………………………     11,17

<u>New Dana Perfumes Corp. v. The Disney Store</u>,
131 F.Supp2d 616 (M.D. Pa. 2001)……………………………………………..     9

<u>Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.</u>,
143 F.3d 800 (3d Cir. 1998)……………………………………………………     5-7, 12

<u>STATUTES</u>

15 U.S.C. § 1125(c)(1)……………………………………………………….     9

15 U.S.C.A. § 1127………………………………………………………..     10

## TABLE OF CONTENTS OF EXHIBITS

EXHIBIT I.    Deposition Transcript of Kurt Van Scoy of October 3, 2005 **(Confidential – For Attorney Eyes Only)(REDACTED)**

EXHIBIT J.    Page from Defendants' Website Showing E-mail Purchasability

EXHIBIT K.    Deposition Transcript of **REDACTED** of October 4, 2005 **(Confidential)(REDACTED)**

EXHIBIT L.    Deposition Transcript of Lew Hill of October 5, 2005

EXHIBIT M.    Defendants' Responses to Plaintiff's First Set of Request for Admissions Under FRCiv.P 36

EXHIBIT N.    Deposition Transcript of Donna Van Scoy of September 19, 2005

## INTRODUCTION

Plaintiff Wayne Van Scoy respectfully submits this Reply Brief in support of his Motion For Summary Judgment On Defendants' Laches, Acquiescence And Estoppel Defenses.

## NATURE AND STAGE OF PROCEEDING

Plaintiff files this Reply Brief in support of his Motion for Summary Judgment On Defendants' Laches, Acquiescence And Estoppel Defenses, and this Reply Brief is due in accordance with the Scheduling Order, as amended, on December 29, 2005.

## SUMMARY OF ARGUMENT

1. Plaintiff is the owner of Federal Trademark Registration No. 1,140,711 and Federal Service Mark Registration No. 1,140,958 both for the mark VAN SCOY DIAMOND MINE. Both Registrations are in full force and effect, are issued in Plaintiff Wayne Van Scoy's name and have been made incontestable under Section 15 of the Trademark Act. Plaintiff addresses Defendants' unsupported allegations regarding ownership and validity of the federal registrations for the marks VAN SCOY DIAMOND MINE in Plaintiff's Reply Brief In Support of Plaintiff's Motion For Summary Judgment of Infringement and Willful Infringement and in his Reply Brief In Support of Plaintiff's Motion For Summary Judgment Against Defendants' Claims of Invalidity and Abandonment, both of which are incorporated by reference.

2. Contrary to Defendants' assertion Plaintiff had no basis or right to bring a suit for trademark infringement simply because he allegedly knew about Defendants' use of the mark in a separate geographic market. Such use was no different than the defendants'

use in the famous <u>Holiday Inn</u> case where the Third Circuit held that the plaintiff had no

basis to seek an injunction against the defendant's use of the HOLIDAY INN mark where

the defendant's use was in a separate geographic market from the plaintiff's use.

Defendants have cited no legal authority for their argument that mere knowledge of

another's use of a mark can serve as a basis for an injunction.

3. In a trademark infringement suit, the period of delay relevant to a laches and/or

acquiescence defense is measured from the time a plaintiff has a basis to seek an

injunction for the infringement.

4. Plaintiff did not have a right to bring a suit for trademark infringement until he

terminated the license allegedly held by Defendants by his Cease and Desist Letter of

November 18, 2004.

5. An injunction is warranted because Defendants have begun offering, through

an infringing website, jewelry products for sale in Plaintiff's sales area and because

Plaintiff has a potential licensee ready to move into Defendants' infringing territory.

6. It is undisputed that Plaintiff discovered Defendants' infringing website in July

2004 and has only recently developed concrete plans to open, through a licensee, a VAN

SCOY DIAMOND MINE store in Defendants' infringing territory.  Defendants'

allegation that Plaintiff made a comment to Defendant Kurt Van Scoy about the website

in August or September 2003 is not supported by anything in the record.  Defendants'

evidence that Plaintiff's potential licensee is not a "bona fide potential licensee" does not

support that conclusion.  The fact that **REDACTED** is presently employed as a band

manager can not serve as a basis to deny relief.

7. Any alleged delay on the part of Plaintiff in initiating this suit has been negligible and not sufficient to support a laches or acquiescence defense.

8. Furthermore, Defendants can not prove that they have been prejudiced by any alleged delay.

## SUPPLEMENTAL STATEMENT OF UNCONTESTED FACTS

Plaintiff incorporates by reference the facts set forth in his opening brief. (D.I. 113).

Plaintiff is the owner of Federal Trademark Registration No. 1,140,711 and Federal Service Mark Registration No. 1,140,958 both for the marks VAN SCOY DIAMOND MINE. (See Wayne Van Scoy Decl. ¶ 2, Exhibit A).[1] Both Registrations are in full force and effect, are issued in Plaintiff Wayne Van Scoy's name and have been made incontestable under Section 15 of the Trademark Act. (Wayne Van Scoy Decl. ¶ 2 & 3, Exhibit A including certified copies of registrations attached).

The marks VAN SCOY DIAMOND MINE were originally registered in 1980 by Van Scoy Diamond Mines, Inc., a company owned and operated by Plaintiff's father, Tommy Van Scoy, Sr. (Wayne Van Scoy Decl. ¶ 5, Exhibit A). Defendants purportedly received a license from Tommy Van Scoy, Sr. to use the marks. There is no writing reflecting Defendants' alleged permission to use the marks and the only evidence of this permission is provided by Defendant Kurt Van Scoy who testified that Tommy Van Scoy, Sr. gave him a sign that read "Diamond Mine" and said "[h]ere's the sign. Good luck to you. I love you very much and I'm proud of you." (Kurt: 9, 119, 138, Ex. B; Kurt: 14, 60, 91, Ex. I). Defendants have no basis to argue that what was allegedly orally

granted to them was anything other than an implied terminable license or an implied license at will and the interpretation of what was granted by that oral permission is a question of law.

Plaintiff Wayne Van Scoy terminated any permission Defendants had to use the marks by his Cease and Desist Letter of November 18, 2004. (Cease and Desist Letter, Ex. D). Plaintiff discovered Defendants' infringing website hosted at www.vanscoydiamondmine.com in July 2004. (Wayne Van Scoy Decl. ¶ 10, Exhibit A). The website offers products for sale over the internet and in Plaintiff's sales area. (Kurt: 149-150, Exhibit B; Defendants' website showing e-mail purchasability, Exhibit J). Defendants' allege for the first time in their Answering Brief that Plaintiff commented to Defendant Kurt Van Scoy about the website in August or September 2003. Defendants misrepresent that this allegation is supported by Exhibit H to Defendants' Answering Brief,[2] which is an affidavit of Defendant Kurt Van Scoy. Kurt Van Scoy's Affidavit, however, is devoid of any mention of alleged comments made by Wayne Van Scoy concerning Defendants' website. Furthermore, Defendants allege that they established a website on July 12, 2002. This allegation is inconsistent with previous testimony of Defendants since Defendants testified that they merely registered the domain name www.vanscoydiamondmine.com on July 12, 2002, but had no idea as to when or approximately when the website actually became operational. (Kurt: 140, Exhibit B; Kurt: 56, Ex. I). At any rate, exactly when the website became operational is immaterial

---

[1] Exhibits refers to exhibits in Plaintiff's opening brief and in the reply brief which are consecutively lettered. For example, Exhibit A is the first Exhibit in Plaintiff's opening brief on Plaintiff's Motion for Summary Judgment on Defendants' Laches, Acquiescence and Estoppel Defenses.

[2] "Defendants' Answering Brief" refers to Answering Brief of Defendants Van Scoy Diamond Mine of Delaware, Kurt Van Scoy & Donna Van Scoy to Plaintiff Wayne Van Scoy's Motion for Summary Judgment on Defendants' Laches, Acquiescence and Estoppel Defenses (D.I. 138 ).

since the relevant time period measuring any delay on the part of Plaintiff with respect to

a laches, acquiescence or estoppel defense did not begin until Plaintiff had actual

knowledge of the infringing website.

Plaintiff met **REDACTED** in the Summer or Fall of 2002. (Wayne: 97, Ex. C;

**REDACTED** 32-33, Ex. K).**REDACTED** testified that he is ready, willing and able to

open a Van Scoy Diamond Mine store in Defendants' infringing territory as a licensee of

Plaintiff.  (**REDACTED** : 40-41, 46, Exhibit K; Letter of Intent, Ex. E).  Defendants'

suggest in their Answering Brief that **REDACTED** is not a bona fide potential licensee

because he has no experience in the retail jewelry business.  This should not affect

Plaintiff's right to obtain relief.  The fact of the matter is that there is no requirement of

experience to successfully own and operate a VAN SCOY DIMAOND MINE store.  This

is evidenced by the testimony of Lew Hill, a former licensee of Plaintiff's predecessor,

who had no experience in the jewelry business before he very successfully opened a

VAN SCOY DIAMOND MINE store. (Lew Hill: 16, Ex. L).  Finally, part of the deal

between Plaintiff Wayne Van Scoy and **REDACTED** anticipates that Plaintiff would

provide training and other support to **REDACTED**.  (**REDACTED**: 39-40, Exhibit K).


## ARGUMENT

**I.    PLAINTIFF PROPERLY RELIED ON THE THIRD CIRCUIT PAPPAN CASE AND SINCE ANY PERIOD OF DELAY MUST BE MEASURED FROM THE TIME IN WHICH PLAINTIFF WAYNE VAN SCOY HAD THE RIGHT TO SEEK AN INJUNCTION FOR INFRINGMENT, THERE WAS NO INEXCUSABLE DELAY**

Plaintiff's reliance on Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc. in

his Opening Brief in Support of Plaintiff's Motion For Summary Judgment on

Defendants' Laches, Acquiescence and Estoppel Defenses ("Plaintiff's Opening Brief",

D.I. 113) is perfectly proper.  In Pappan, the Third Circuit held that with respect to a claim of inexcusable delay, the relevant time period begins only when the plaintiff has a basis upon which to seek an injunction. Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 804 (3d Cir. 1998).  Contrary to Defendants' assertion in their Answering Brief ("Defendants' Answering Brief", D.I. 138), and for the reasons outlined in both Plaintiff's Opening Brief and  Plaintiff's Answering Brief In Response To Motion Of Defendants Van Scoy Diamond Mine Of Delaware, Inc., Kurt Van Scoy and Donna Van Scoy For Summary Judgment  ("Plaintiff's Answering Brief", D.I. 134), which are incorporated herein by reference, Plaintiff did not have a basis to seek an injunction until recently.

Specifically, applying Third Circuit law, any period of delay on the part of Plaintiff in initiating this suit was well before the alleged three year statute of limitations for trademark infringement causes of action in Delaware expired.  In Pappan, the Court found that the plaintiff did not have a basis upon which to seek an injunction until the plaintiff terminated the defendant's franchise agreements, even though the defendant had for several years been defaulting on the franchise agreements it had with the plaintiff. Pappan Enterprises, Inc., 143 F.3d 800 at 804.  In this case, Defendants claim to have received permission from Tommy Van Scoy, Sr. to use the mark VAN SCOY DIAMOND MINE in connection with their store in Newark, Delaware. (Kurt: 9, 119, 138, Ex. B; Kurt: 14, 60, 91, Ex. I).  The facts regarding this oral permission are undisputed; the interpretation of what was granted by the words of Tommy Van Scoy, Sr. is a question of law for the Court to decide.  As discussed in depth in Plaintiff's Answering Brief (D.I. 134), the alleged permission is at best an implied license which

was terminated by Plaintiff's Cease and Desist Letter of November 18, 2004. There simply is no way to characterize the ambiguous grant of permission which Defendants allege came from Tommy Van Scoy's words "good luck, I love you and I'm proud of you" spoken to Defendant Kurt Van Scoy as anything other than an implied license, which is as a matter of law terminable at will by the licensor. <u>Dial-A-Mattress Operating Corp.</u>, 847 F.Supp. 18, n. 1;  (Kurt: 9, 119, 138, Ex. B; Kurt: 14, 60, 91, Ex. I).

 As such, Plaintiff had no right to seek an injunction until Defendants were in receipt of his Cease and Desist Letter on November 20, 2004. <u>Pappan Enterprises, Inc.</u>, 143 F.3d 800 at 804; (Cease and Desist Letter, Ex. D; Kurt 13, Exhibit B).  Since suit was promptly filed in February 2005, there was no inexcusable delay.  (Wayne Van Scoy Decl. ¶ 11, Ex A).

        Defendants claim in their Answering Brief that the fact Plaintiff told Defendant Kurt Van Scoy that Defendants had no right to use the mark VAN SCOY DIAMOND MINE because they were not paying for that use evidences that Plaintiff believed that Defendants were infringing upon his trademark.  Plaintiff, however, has no legal expertise and whether he believed that use of his trademark was an infringement or not would be in no way determinative of whether he was entitled to an injunction.  Plaintiff Wayne Van Scoy requesting that Defendants pay for use of his trademark is analogous to the situation in <u>Pappan</u> where the defendant franchisees of the plaintiff had for several years been defaulting on their franchise agreements.  <u>Pappan Enterprises, Inc.</u>, 143 F.3d 800 at 804.   As was the case in <u>Pappan</u>, Plaintiff Wayne Van Scoy did not have a basis upon which to seek an injunction until he terminated Defendants' alleged oral implied license agreement.

Defendants cite no legal authority for the proposition that mere knowledge of another's use of a mark can serve as a basis for an infringement suit. Besides the alleged knowledge of Wayne Van Scoy of Defendants' use of the mark, Defendants proffer no other basis for why they believe Plaintiff should have brought suit earlier. In fact, Defendants allege that they have been operating pursuant to a consent to use agreement with Tommy Van Scoy, Sr., which Defendants admit is an agreement whereby it is acknowledged that Defendants' defined use in Delaware would not be an infringing use. (See Answering Brief of Defendants To Plaintiff's Motion For Summary Judgment Against Defendants' Claims of Invalidity and Abandonment at page 7, D.I. 137). In other words, Defendants are inconsistently arguing in one brief that their use in Delaware was not infringing, but are arguing here that Plaintiff had a basis to bring an infringement suit based merely on his knowledge of their use in Delaware. Defendants should not be permitted to take inconsistent positions to mold the facts to fit their arguments.

Even if it were determined that Plaintiff did have a basis to seek an injunction some time prior to the time he terminated Defendants' alleged license through his Cease and Desist Letter, there still was not inexcusable delay. The fact of the matter is that until Plaintiff discovered that Defendants' website hosted at www.vanscoydiamondmine.com was offering products for sale in his sales area, Plaintiff had no basis to seek an injunction against Defendants use of the mark. Defendants admit that except for their website, their use of Plaintiff's mark is in a separate and distinct geographic market from Plaintiff's use. (Defendants' Responses to Plaintiff's First Set of Requests for Admissions, No. 27, Exhibit M). It is clear that such a factual setting does not provide grounds for an injunction. Holiday Inns of America, Inc. v. B & B Corporation, 409 F.2d

614 (3d Cir. 1969). Defendants attempt to abrogate established and long-standing Third

Circuit law by arguing that the Holiday Inn case is outdated and irrelevant. Defendants

point to no case law to support this contention and instead rely on 15 U.S.C. § 1125(c)(1),

which they apparently believe supersedes the Holiday Inn case. 15 U.S.C. § 1125(c)(1),

however, deals with trademark dilution, not infringement. First, Defendants misleadingly

suggest that in trademark dilution cases an injunction is available so long as the plaintiff

establishes the four elements listed in their Answering Brief and quoted from the New

Dana Perfumes Corp. v. The Disney Store, 131 F.Supp2d 616, 632 (M.D. Pa. 2001).

Defendants misleadingly quote only a portion of the holding in The Disney Store case. In

deciding that case the Court looked to numerous other factors in determining whether the

elements of dilution were proven, including the geographic location of the plaintiff and

defendant's use of the marks. New Dana Perfumes Corp., 131 F.Supp2d 616 at 633. In

other words, contrary to the Defendants' argument, the The Disney Store case does not

stand for the proposition that an injunction is available absent a consideration of the same

geographic factors discussed in the Holiday Inn case.

     Additionally, Defendants offer no reasoning whatsoever as to how a law that

supposedly defines when an injunction is available for one cause of action, namely

dilution, also defines when an injunction is available for another cause of action, namely,

trademark infringement. Instead, Defendants take it upon themselves to "overrule" the

Third Circuit and numerous other circuits by saying that 15 U.S.C. § 1125(c)(1) changes

the rules as to when an injunction is available in trademark infringement cases. The fact

of the matter is that dilution is a very different cause of action from trademark

infringement and, thus, when an injunction is available in dilution cases is not analogous

to when an injunction is available in infringement cases. Lanham Act § 45, 15 U.S.C.A. § 1127 states that the term "dilution" means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of a famous mark and other parties, or (2) the likelihood of confusion, mistake or deception. As such, a cause of action exists for dilution without even considering the gravamen of a trademark infringement cause of action, that is, likelihood of confusion. Clearly then, when an injunction is available for dilution cannot dictate when an injunction is available for infringement. The Holiday Inn case was concerned with trademark infringement, as is this case. As such, Defendants' arguments that Holiday Inn is no longer good law and that Plaintiff's infringement claims are barred because he allegedly could have brought a suit for dilution years ago are misguided. Plaintiff did not even plead trademark dilution. The only matter of relevance is when Plaintiff's right to seek an injunction for trademark infringement ripened, not when he may have had a claim for dilution or some other unrelated claim. Additionally, it is pointed out that the Third Circuit has cited to the Holiday Inn case for the very proposition that an injunction may be issued only against "conditions generating a presently existing actual threat" as recently as 2000. See David L. Adams v. Freedom Forge Corporation, 204 F.3d 475, 487 (3d Cir. 2000).

Consistent with the holding in Holiday Inn and numerous other cases cited in Plaintiff's Opening Brief, Plaintiff Wayne Van Scoy did not have a basis to seek an injunction for trademark infringement until there was "present debasement" of his mark. Holiday Inns of America, Inc. v. B & B Corporation, 409 F.2d 614, 618 (3d Cir. 1969). Similar to the facts in Holiday Inn, Plaintiff and Defendants operate, except for

Defendants' website, in separate and distinct geographic markets.  (Defendants'

Responses To Plaintiff's First Set Of Requests For Admissions No. 27, Ex. M).  As such,

there was no basis for Plaintiff to seek an injunction until he discovered Defendants'

infringing website (which offers products for sale in Plaintiff's sales area) or until he was

ready to expand through a licensee into Defendants infringing sales area.  See e.g.

Johanna Farms, Inc. v. Citrus Bowl, Inc., 468 F.Supp. 866, 881 (E.D.N.Y. 1978).  ("until

there exists an actual clash of interests, or until the expansion of the owner's mark into

the infringer's territory is on the verge of implementation so that the likelihood of public

confusion looms large, there is no basis for an infringement suit.")

     With respect to Defendants' website which was hosted at the domain name

www.vanscoydiamondmine.com at the time Plaintiff brought suit, a domain name that

was misappropriated by Defendants, Defendants are essentially arguing in their

Answering Brief that the website is not harming Plaintiff and therefore is inconsequential

to this suit.  The website, however, is offering products for sale in Plaintiff's sales area

using the mark VAN SCOY DIAMOND MINE and has pictures and prices of all of

Defendants products, many of which are also sold by Plaintiff.  (Kurt: 149-150, Ex. B;

Ex. J).  It is pointed out that Plaintiff has a legal obligation to bring suit at this time.

Regardless of whether Defendants are enjoying success with making sales through their

website, Plaintiff can not ignore the issue, wait for Defendants to potentially become a

successful on-line jewelry retailer and then seek an injunction.  This would create exactly

the type of laches problem Defendants are incorrectly asserting exists now.

     Accordingly, Plaintiff discovered Defendants' infringing website in July 2004 and

brought suit promptly thereafter.  (Wayne Van Scoy Decl.: § 10 & 11, Ex. A).  Third

Circuit law is very clear that until this time Plaintiff had no basis to seek an injunction. Pappan Enterprises, Inc., 143 F.3d 800 at 804.  Since there was no inexcusable delay on the part of Plaintiff in instituting suit, Defendants' laches and acquiescence defenses lack merit.  As discussed in Plaintiff's Answering Brief (D.I. 134), throughout their depositions Defendants testified that they had no idea as to when their website hosted at www.vanscoydiamondmine.com became operational.  (See e.g. Kurt: 56, Ex. I).  As such, Defendants can not now argue that Plaintiff knew about the website earlier than when he discovered it in July 2004.  Despite this, Defendants for the first time claim in their Answering Brief that there was a conversation between Wayne Van Scoy and Kurt Van Scoy in August or September 2003 respecting Defendants' website.  Although Defendants' point to Exhibit H of their Answering Brief (Kurt Van Scoy's Affidavit) as the only evidence of this conversation, nothing in Kurt Van Scoy's Affidavit even remotely refers to such a conversation.

      With respect to Plaintiff's potential licensee, **REDACTED,** who is now ready to open a VAN SCOY DIAMOND MINE store in the Wilmington, Delaware area, Defendants contend in their Answering Brief that **REDACTED** is not a "bona fide potential licensee."  This is simply not the case.**REDACTED** testified in his deposition that he has the desire and financial resources to open a VAN SCOY DIAMOND MINE STORE in Delaware.  (**REDACTED:** 40-41, 46, Ex. K; Letter of Intent, Ex. E).  There are no facts that contradict this testimony.  Defendants contend that the fact that **REDACTED**is a band manager and promoter and has no experience in the retail jewelry business creates an "appearance of impropriety" with respect to **REDACTED** testimony. There is no requirement, however, that a bona fide licensee have such experience.  It is

pointed out, for example, that Lew Hill who was a former licensee of Tommy Van Scoy, Sr. had no experience in the jewelry business before he very successfully opened a Van Scoy Diamond Mine Store.  (Lew Hill: 16, Ex. L). Furthermore, the testimony is clear that a material part of the deal between Plaintiff Wayne Van Scoy and **REDACTED**is that Plaintiff would help get the business going.

**REDACTED**

**II.**    **DEFENDANTS ARE NOT ENTITLED TO ANY PRESUMPTION OF PREJUDICE AND UNDER THE CIRCUMSTANCES OF THIS CASE DEFENDANTS HAVE NOT OFFERED ANY APPROPRIATE EVIDENCE THAT COULD SUPPORT A FINDING OF PREJUDICE**

Because any delay on the part of Plaintiff in initiating suit was well within the alleged three year statute of limitations, there is no presumption of prejudice. Accordingly,  Plaintiff incorporates herein by reference the arguments in his Opening Brief (D.I. 113) and his Answering Brief  (D.I. 134) regarding why Defendants can not show sufficient prejudice to support a laches defense.  Furthermore, Defendants' argument in their Answering Brief that prejudice may be shown by mere continuation of their business, such as through advertising expenses, is presumptuous and wrong. Defendants rely on First Keystone Federal Savings Bank v. First Keystone Mortgage, Inc. for the proposition that "mere continuation of business" can support a finding of

prejudice where an alleged infringer receives ambiguous notice and reasonably assumes

that any objections are withdrawn.  Defendants do not dispute that Plaintiff Wayne Van

Scoy has objected to Defendant Kurt Van Scoy's use without payment of the mark VAN

SCOY DIAMOND MINE and even attempt to use those conversations in their

Answering Brief to support their positions.  Wayne Scoy testified for example: "I told

him, you're using that name. You have no right to use that name.  You're not paying

anything for it.  Many a times." (Defendants' Answering Brief: 9; Wayne: 116, Ex. C).

Defendants, in conclusory fashion, contend that Plaintiff's objections amounted to

ambiguous notice that Defendants reasonably could have assumed were withdrawn.  It is

pointed out that Plaintiff's objections are a far cry from the objection that was received

by the defendant in First Keystone, the case relied on by Defendants to support their

position.  In First Keystone, a representative of the plaintiff contacted the defendant by

telephone to object to the defendant's use of a similar name.  When the defendant

discovered that the plaintiff's agent had no authority to discuss the matter with him, the

plaintiff's agent promised that a further call, from one with authority, would be

forthcoming.  However, no call or other communication came for five years.  In that

situation the Court found that the defendant received ambiguous notice by the plaintiff

that the defendants reasonably assumed was withdrawn.  First Keystone Federal Savings

Bank v. First Keystone Mortgage, Inc., 923 F.Supp.693, 701 (E.D.PA 1996).  This is

especially so because in First Keystone the plaintiff engaged in other affirmative acts

over the years which ultimately the Court found amounted to the plaintiff acquiescing in

Defendants' use of its mark.  In the present situation, however, the undisputed facts are

that Plaintiff Wayne Van Scoy expressed his objections to Defendants "many a times"

since he became owner of the marks in 2001.  (Defendants Answering Brief: 9; Wayne:

116, Ex. C).  There was nothing ambiguous about the way Plaintiff expressed his

objections to Defendants, and given that these objections were ongoing, there is no way

that Defendants' alleged belief that the objection was withdrawn could have been

reasonable.  As such, Plaintiff's conversations with Defendant Kurt Van Scoy concerning

Defendants' use of the mark should if anything be construed as unequivocal notice of

Plaintiff's objections to Defendants' use of his marks.  In such a case, where there is

unequivocal notice, the rule is that prejudice based on "mere continuation of business"

which includes "mere expenditures for advertising or continuation of infringement" is

appropriately <u>not</u> found.  <u>First Keystone Federal Savings Bank</u>, 923 F.Supp.693 at 702.


III.  **<u>PLAINTIFF NEVER ACQUIESCED IN DEFENDANTS USE OF THE
NAME AND DEFENDANTS' ARGUMENT THAT HE DID IS
DISINGENUOUS AND MISLEADING</u>**

      Defendants' claim that Plaintiff acquiesced in Defendants' use of the marks VAN

SCOY DIAMOND MINE is without merit.  In support of their acquiescence defense,

Defendants point to a single fax cover sheet from January 2002 which was sent from

Plaintiff Wayne Van Scoy to his brother Defendant Kurt Van Scoy.  First, Defendants

blatantly mischaracterize the nature of this fax in an attempt to bolster their position by

claiming that it was advising Defendants that a company mistakenly <u>sent a statement to</u>

<u>Defendants' Delaware store</u>.  The undisputed fact is, however, that this fax resulted from

invoices for jewelry products ordered by Defendants and sent to Defendants <u>mistakenly</u>

<u>being sent to Plaintiff</u>.  (Kurt: 33-34, Ex. I).  Certainly Plaintiff Wayne Van Scoy can not

be faulted for attempting to remedy in a cordial manner a situation in which his store was

being billed for goods that he neither ordered nor received.  Additionally, Defendants

mischaracterize the facts surrounding the finding of acquiescence in First Keystone. Defendants suggest that the fact that the plaintiff in that case forwarded mail and phone calls to the defendant supported a finding of acquiescence. Defendants fail to mention, however, that in First Keystone there was other evidence of acquiescence including a situation where the defendant made initial contact with the plaintiff to refer a client to the plaintiff. In that situation the plaintiff accepted the referral and ultimately made a loan based on the defendant's reference. First Keystone Federal Savings Bank, 923 F.Supp.693 at 703. In another situation the defendant's President spoke with one of the plaintiff's employees with respect to the defendant referring certain loan requests to the plaintiff, and the plaintiff's employee was amenable to the arrangement. First Keystone Federal Savings Bank, 923 F.Supp.693 at 703. Furthermore, with respect to the situation in First Keystone where the plaintiff forwarded mail and telephone calls to the defendant, the present situation is distinguishable. In First Keystone, the actions of forwarding mail and phone calls to the defendants took place on numerous occasions over a period of years and served no beneficial purpose for the plaintiff. First Keystone Federal Savings Bank, 923 F.Supp.693 at 703. In the present situation, the fax sent to Defendant Kurt Van Scoy represented a single such occurrence and was sent strictly to avoid a situation where Plaintiff was being billed for Defendants' goods. Furthermore, unlike the situation in First Keystone, in the present case Defendants were well aware of Plaintiff's objections to their use of the marks. (Defendants Answering Brief: 9; Wayne: 116, Ex. C).

Furthermore, Defendants' claim that Plaintiff Wayne Van Scoy complemented Defendant Kurt Van Scoy on the appearance of Defendant's website in 2003. Not only

does Plaintiff deny this but there is not a scintilla of evidence of record that such a conversation ever occurred. Defendants point the Court to the Affidavit of Kurt Van Scoy attached to their Answering Brief as Exhibit H in support of their contention that there was some conversation between Plaintiff and Defendant Kurt Van Scoy respecting Defendants' website. An examination of Kurt's Affidavit reveals, however, no mention of any such conversation. Defendants can not point to non-existent evidence in support of their position.

Finally, Plaintiff allegedly making a ring for Defendants in 1996 is of no consequence. 1996 is five years before Plaintiff even acquired the marks Van Scoy Diamond Mine. Plaintiff could not have been acquiescing in Defendants use of the mark well before he even had any right to the mark.

## IV.  PLAINTIFFS CLAIMS ARE NOT BARRED IN WHOLE OR IN PART BY EQUITABLE ESTOPPEL

As pointed out in Defendants' Answering Brief, equitable estoppel requires a showing of both delay and prejudice. First, with respect to delay on the part of Plaintiff in instituting suit, for all of the reasons discussed in this Brief, in Plaintiff's Opening Brief and in Plaintiff's Answering Brief To Defendants' Motion For Summary Judgment (D.I. 134), there has been no delay on the part of Plaintiff in instituting suit. If Plaintiff had attempted to bring this suit before he had a basis to seek an injunction, he would have been thrown out of court. As the Court said in Johanna Farms, Inc., "where expansion of the mark is but a dream in the owner's business scheme rather than a close reality, to estop the owner for failing to institute a suit which the courts have held would have been futile, would produce a ludicrous result." Johanna Farms, Inc., 468 F.Supp. 866 at 881. Once Plaintiff knew about Defendants' infringing website he promptly brought suit.

Q.      Why did you wait until November of ninety – of 2004 to give
        notice to Kurt Van Scoy regarding use of the mark Van Scoy
        Diamond Mine?

A.      I had been telling him, telling him, telling him, telling him.   Then
        he opens up the Internet website, which then comes up into my
        area.  People can go on, Click.  He can ship them merchandise.
        Now he's interfering with my business.
        (Wayne: 119-120, Ex. C).

Accordingly, there was no delay.

Second, Defendants can not show prejudice.  As already discussed, in a situation

such as this one where Defendants had unequivocal notice of Plaintiff's objections to

their use of his marks, Defendants can not show prejudice through "mere continuation of

business."  First Keystone Federal Savings Bank, 923 F.Supp.693 at 702.  As pointed out

in both Plaintiff's Opening Brief and Plaintiff's Answering Brief To Defendants Motion

For Summary Judgment (D.I. 134), Plaintiff can not show prejudice sufficient to show

laches.

## V.      THE THEORY OF PROGRESSIVE ENCROACHMENT IS APPLICABLE
TO THE FACTS OF THIS CASE AND BARS ANY CLAIM OF
INEXCUSABLE DELAY ON THE PART OF PLAINTIFF

As discussed in Plaintiff's Opening Brief, any alleged delay on the part of

Plaintiff should be excused under the doctrine of progressive encroachment.  Defendants'

website was hosted at www.vanscoydiamondmine.com at the time Plaintiff brought suit

and was offering products for sale in Plaintiff's sales area.  Defendant Kurt Van Scoy

admitted that customers visiting the website can click on an image "[a]nd if they want to

get more information about it, [they] get more information about it, click on it or

certainly E-mail [Defendants] if they are interested in purchasing."  (Kurt 149-150,

Exhibit B; Exhibit J).  This is a major expansion from the scope of any alleged license

that may have been granted to Defendants to use the marks VAN SCOY DIAMOND

MINE in the Newark, Delaware area. Defendant Donna Van Scoy even admitted that the

scope of any alleged permission from Tommy Van Scoy, Sr. to use the mark was limited

to Newark, Delaware since "[n]owhere else was ever brought up, I guess." (Donna: 32,

Ex. N). Defendants are attempting to argue that the fact that they allegedly have not

enjoyed great success at generating sales from Plaintiff's sales area means that

progressive encroachment is not applicable. Plaintiff discovered Defendants' infringing

website in July 2004. (Wayne Decl. ¶ 10, Ex. A). Plaintiff has an obligation to bring suit

at this time. Defendants are already arguing without merit that Plaintiff waited too long

to initiate suit. Yet at the same time, Defendants appear to be arguing that with respect to

their website, Plaintiff should sit back and wait to bring suit until Defendants are

enjoying great success trading on the internet with his registered marks. Clearly, Plaintiff

must bring suit at this time or risk having his claims barred. Furthermore, if Defendants

are allowed to continue with their internet business, Plaintiff will be in the dark as to

what kind of sales Defendants are making in his sales area and to what extent his business

is being damaged by Defendants' internet business.

**CONCLUSION**

In view of the foregoing, the record is clear as to the material facts, there are no

disputed material facts precluding the granting of Plaintiff's Motion for Summary

Judgment. Summary judgment rejecting Defendants' laches, acquiescence and estoppel

defenses should be granted against Defendants and in favor of Plaintiff.

ASHBY & GEDDES

*/s/ John G. Day*

_____

Steven J. Balick, Esquire (I.D. #2114)
John G. Day, Esquire (I.D. #2403)
P.O. Box 1150
222 Delaware Avenue
Wilmington, DE 19801
(302) 654-1888
*Attorneys for Wayne Van Scoy*

*Of Counsel:*

Michael F. Petock, Esquire
Michael C. Petock, Esquire
PETOCK & PETOCK, LLC
46 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA 19482-0856

Dated: December 29, 2005
165138.1

## APPENDIX TABLE OF CONTENTS OF EXHIBITS

EXHIBIT I.   Deposition Transcript of Kurt Van Scoy of October 3, 2005 **(Confidential – For Attorney Eyes Only)(REDACTED)**

EXHIBIT J.   Page from Defendants' Website Showing E-mail Purchasability

EXHIBIT K.   Deposition Transcript of **REDACTED** of October 4, 2005 **(Confidential)(REDACTED)**

EXHIBIT L.   Deposition Transcript of Lew Hill of October 5, 2005

EXHIBIT M.   Defendants' Responses to Plaintiff's First Set of Request for Admissions Under FRCiv.P 36

EXHIBIT N.   Deposition Transcript of Donna Van Scoy of September 19, 2005

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of January, 2006, the attached **REDACTED PUBLIC VERSION OF PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' LACHES, ACQUIESCENCE AND ESTOPPEL DEFENSES** was served upon the below-named counsel of record at the address and in the manner indicated:

Francis G.X. Pileggi, Esquire                                    <u>HAND DELIVERY</u>
Sharon Oras Morgan, Esquire
Fox Rothschild LLP
Citizen Bank Center
919 North Market Street
Suite 1300
Wilmington, DE  19801-2323

Charles N. Quinn, Esquire                                    <u>VIA ELECTRONIC MAIL</u>
Fox Rothschild LLP                                              <u>and FIRST CLASS MAIL</u>
2000 Market Street
Tenth Floor
Philadelphia, PA  19103

*/s/ John G. Day*
_____
John G. Day