# EXHIBIT F

EL870038674US

## MEMORANDUM RE: TRANSFER OF TRADEMARK AND SERVICE MARK, REGISTRATIONS, GOOD WILL AND RIGHT TO RECOVER FOR PAST INFRINGEMENT

This Memorandum is intended to be attached to the Order of the United States Bankruptcy Court for the Middle District of Pennsylvania dated January 4, 2001 in the matter of in re: Thomas Van Scoy, Debtor.

The attached Order of the Court reflects that all right, title and interest in the mark "VAN SCOY DIAMOND MINE" became the sole and exclusive property of Wayne Van Scoy for good and valuable consideration including a payment of $45,000.00 paid by Wayne Van Scoy. This included the good will of the business associated with the marks, the registrations covering the marks, and the right to recover for past infringement.

More specifically, Wayne Van Scoy acquired:

1.    Trademark Registration No. 1,140,711 for the mark "VAN SCOY DIAMOND MINE" for jewelry and precious stone which was originally issued on October 21, 1980, along with the mark covered by said registration, the good will of the business associated with the mark and the right to recover for past infringement; and

2.    Service Mark Registration No. 1,140,958 for the mark "VAN SCOY DIAMOND MINE" for rendering of technical aid and assistance in the establishment and/or operation of retail jewelry stores and for retail jewelry store services which was originally issued on October 28, 1980, along with the mark covered by said registration, the good will of the business associated with the mark and the right to recover for past infringement.

TiMemo04.111
443-1
443-2

-1-



EXHIBIT F

! 00038

## <u>MEMORANDUM RE: TRANSFER OF TRADEMARK AND SERVICE MARK, REGISTRATIONS, GOOD WILL AND RIGHT TO RECOVER FOR PAST INFRINGEMENT</u>

This Memorandum is intended to be attached to the Order of the United States Bankruptcy Court for the Middle District of Pennsylvania dated January 4, 2001 in the matter of in re: Thomas Van Scoy, Debtor.

The attached Order of the Court reflects that all right, title and interest in the mark "VAN SCOY DIAMOND MINE" became the sole and exclusive property of Wayne Van Scoy for good and valuable consideration including a payment of $45,000.00 paid by Wayne Van Scoy. This included the good will of the business associated with the marks, the registrations covering the marks, and the right to recover for past infringement.

More specifically, Wayne Van Scoy acquired:

1.    Trademark Registration No. 1,140,711 for the mark "VAN SCOY DIAMOND MINE" for jewelry and precious stone which was originally issued on October 21, 1980, along with the mark covered by said registration, the good will of the business associated with the mark and the right to recover for past infringement; and

2.    Service Mark Registration No. 1,140,958 for the mark "VAN SCOY DIAMOND MINE" for rendering of technical aid and assistance in the establishment and/or operation of retail jewelry stores and for retail jewelry store services which was originally issued on October 28, 1980, along with the mark covered by said registration, the good will of the business associated with the mark and the right to recover for past infringement.

TiMemo04.111
443-1
443-2

-1-

00039

The marks, associated good will and registrations became subject to the Bankruptcy Proceeding in the name of Thomas Van Scoy as Van Scoy Diamond Mines, Inc., the corporation named in the aforementioned registrations as the owner, was an asset of Thomas Van Scoy and was drawn into the Bankruptcy Proceeding along with the registrations, marks and associated good will. Accordingly, the Bankruptcy Court had jurisdiction over the previous owner named in the registrations (Van Scoy Diamond Mines, Inc.), the marks, associated good will and registrations as well as the rights to recover for past infringement. All of the rights and associated good will were transferred to Wayne Van Scoy by the Order of January 4, 2001 of the United States Bankruptcy Court of the Middle District of Pennsylvania.

The Undersigned declares: that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; and further that the statements were made with the knowledge that willful false statements and the like so made punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the registrations identified above.

_4-13-01_
Date

_Wayne Van Scoy_
Wayne Van Scoy

TiMemo04.111
443-1
443-2

# EXHIBIT G

162

WAYNE VAN SCOY - 8/17/05

off the record.)

* * *

(Whereupon, Exhibit D-9 was marked
for identification.)

* * *

THE VIDEOGRAPHER:  Back on the
record at 3:01.

BY MR. QUINN:

Q.      Mr. Van Scoy, we've placed in front
of you a document that's been marked as
Defendant's Exhibit 9.  Do you recognize that
document?

A.      Okay.  I think I got it.

Q.      Do you know what this document is?

A.      Talks about the bankruptcy and the
name and stuff.

Q.      Do you know who prepared it?

A.      No, I don't.

Q.      Do you know why it was prepared?

A.      Not exactly.

Q.      Do you know when --

A.      When.  I was going to say when was
this?

Q.      -- it was prepared?

EXHIBIT G

Esquire Deposition Services

WAYNE VAN SCOY - 8/17/05

A.        '01.  Might have been the settlement thing through the bankruptcy.  I don't remember for sure.

Q.        It bears your signature, does it not?

A.        Correct.  Yes.

Q.        Is this document true and correct, to the best of your knowledge?

A.        I'd have to have an attorney look at it again to tell me if it is for sure.

Q.        Did you believe it was correct when you signed it?

A.        I believe, yes.

Q.        Was Mr. Petock representing you at that time?

A.        Probably.

Q.        Is -- is your answer yes or you're not sure?

A.        My parents went through a bankruptcy and we were just going through so much.  So I probably had some counsel then, so I assume it's correct.

Q.        But you don't know who that was?

A.        No, not offhand.  Would you have

WAYNE VAN SCOY - 8/17/05

have any idea who this might have come from?

     Q.      This document?

     A.      Yes.

     Q.      It came from you guys.

     A.      What do you mean?  Oh.  We sent
it -- we gave it to you?

     Q.      See the number at the lower right?

     A.      Yes, Document No. 38.  Yes.  I don't
know.  I don't know where it came from exactly.  I
don't know if it's a bankruptcy or what it was.

               MR. QUINN:  And we're up to No. 10.

                    * * *

               (Whereupon, Exhibit D-10 was marked

     for identification.)

                    * * *

BY MR. QUINN:

     Q.      Mr. Van Scoy, I ask you to take a
moment and familiarize yourself with this document
that's been marked as Defendant's Exhibit 10.  And
I would note this was supplied to us, as you can
see from the numbers in the lower right-hand
corner, with Page 3 missing.  I would appreciate
it if you could find Page 3, that Page 3 be
forwarded to us.

# EXHIBIT H

1999 JUL -3    PH 3: 01

CLERK OF the BANKRUPTCY COURT

# In the United States Bankruptcy Court
# for the Middle District of Pennsylvania

In re:

Thomas A. Van Scoy t/a
Van Scoy Diamond Mines,

             Debtor.

Robert P. Sheils, Jr., Trustee in
Bankruptcy for Thomas A. Van Scoy t/a
Van Scoy Diamond Mines,

             Plaintiff,

     v.

Betsy Williams a/k/a/
Elizabeth Williams and Rich
Williams a/k/a Richard Williams
i/t/a Van Scoy Diamond Mines,
Pamela Sendrick and Richard
Sendrick i/t/a Van Scoy Diamond
Mines, and Wayne Van Scoy i/t/a
Van Scoy Diamond Mines,

             Defendants.

Case Number 5-94-01241
Chapter 7

CERTIFIED FROM THE RECORD this 5th
day of December , 20 05
Clerk, U.S. Bankruptcy Court
Per _____
             Deputy Clerk

Adversary Number:

5 - 96 - 0 0 1 9 6 A

## Complaint of Robert P. Sheils, Jr., Esquire, Trustee

Robert P. Sheils, Jr., Esquire, Trustee in Bankruptcy for Thomas A. Van Scoy



EXHIBIT H

t/a Van Scoy Diamond Mine, hereby makes the following complaint against Betsy Williams a/k/a/ Elizabeth Williams and Rich Williams a/k/a Richard Williams i/t/a Van Scoy Diamond Mines, Pamela Sendrick and Richard Sendrick i/t/a Van Scoy Diamond Mines, and Wayne Van Scoy i/t/a Van Scoy Diamond Mines:

## The Parties

1. The plaintiff is Robert P. Sheils, Jr., Esquire, the duly appointed and qualified trustee in bankruptcy for Thomas A. Van Scoy t/a Van Scoy Diamond Mines.

2. The defendants Betsy Williams a/k/a/ Elizabeth Williams and Rich Williams a/k/a Richard Williams are adult individuals who trade and do business as Van Scoy Diamond Mines. These defendants maintain a place of business at 4700 Vestal Parkway East, Vestal Plaza, Binghamton, New York 13903. It is believed and therefore averred that these defendants are married to each other.

3. The defendants Pamela Sendrick and Richard Sendrick are adult individuals who trade and do business as Van Scoy Diamond Mines. These defendants maintain a place of business at Keyser Oak Plaza, Scranton, Pennsylvania 18504. It is believed and therefore averred that these defendants are married to each other.

4. The defendant Wayne Van Scoy is an adult individual who trades and does business as Van Scoy Diamond Mines. The defendant maintain a place of business at 154 Mundy Street, Wilkes-Barre, Pennsylvania 18702. The defendant resides at 360 Joseph Drive, Kingston, Pennsylvania 18704.

- 2 -

5. Defendants Betsy Williams a/k/a Elizabeth Williams, Pamela Sendrick and Wayne Van Scoy are the children of Thomas A. Van Scoy, the debtor in this proceeding, and Elizabeth Van Scoy, husband and wife.

## Jurisdiction

6. This adversary proceeding arises out of and relates to the chapter 7 case of Thomas A. Van Scoy t/a Van Scoy Diamond Mines, Case Number 5-94-01241 on the docket of this court. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334 and 11 U.S.C. §§ 105, 542 and 548. This is a core proceeding under 28 U.S.C. § 157(b)(A), (E), (H), and (O).

## Facts

7. This proceeding was commenced on September 23, 1994 when Thomas A. Van Scoy filed a voluntary case under chapter 13 of the Bankruptcy Code. On November 29, 1994 the case was converted to a case under chapter 11. On December 29, 1994 the case was converted to a case under chapter 7 of the Bankruptcy Code.

10. Upon conversion of the case to a case under chapter 7 of the Bankruptcy Code, Robert P. Sheils, Jr., Esquire, was appointed trustee in this case, qualified to serve as trustee and has continued in that capacity since his appointment.

11. For many years prior to his bankruptcy Thomas A. Van Scoy conducted a retail jewelry business from diverse location under the name "Van Scoy Diamond Mines."

- 3 -

12. "Van Scoy Diamond Mines" is a registered trade mark of Thomas A. Van Scoy.

13. The trade mark of "Van Scoy Diamond Mines" is a scheduled, non-exempt asset of the Debtor, Thomas A. Van Scoy.

14. Within one year of his bankruptcy Thomas A. Van Scoy owned and operated Van Scoy Diamond Mine stores at the following locations: 154 Mundy Street, Wilkes-Barre, Pennsylvania; Keyser Oak Plaza, Scranton, Pennsylvania; and 4700 Vestal Parkway East, Vestal Plaza, Binghamton, New York.

15. Within one year of bankruptcy Thomas A. Van Scoy transferred the 4700 Vestal Parkway East, Vestal Plaza, Binghamton, New York store to Elizabeth Williams and Richard Williams and the Keyser Oak Plaza, Scranton, Pennsylvania store to Pamela Sendrick and Richard Sendrick.

16. Prior to bankruptcy and through the present time the Defendants Elizabeth William and Richard Williams and the Defendants Pamela Sendrick and Richard Sendrick have used the trade mark "Van Scoy Diamond Mines."

17. At some time subsequent to October 1, 1995 the Defendant Wayne Van Scoy began to use the trade mark "Van Scoy Diamond Mines."

18. The trade mark "Van Scoy Diamond Mines" is property of this estate.

19. The use of the trade mark "Van Scoy Diamond Mines" was never authorized by the Trustee or this Court.

20. The estate has been damaged and these Defendants have been unjustly

enriched by the illegal use of the trade mark "Van Scoy Diamond Mines."

*Wherefore*, the Trustee prays that these Defendants be permanently enjoined from using the trade mark "Van Scoy Diamond Mines" and that they be compelled to account to the Trustee for their profits from the illegal use of the trade mark.

Doran & Nowalis

Dated: July 3, 1996.

By: _____

Robert C. Nowalis, Esquire, I.D. 21970
69 Public Square, Suite 700
Wilkes-Barre, Pennsylvania 18701
717-823-9111
**Attorneys for Robert P. Sheils, Jr., Esquire, Trustee.**

(Rev. 8/87)    **ADVERSARY PROCEEDING COVER SHEET**
(Instruction On Reverse)

| | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Robert P. Sheils, Jr., Trustee in Bankruptcy for Thomas A. Van Scoy t/a Van Scoy Diamond Mines, | Betsy Williams a/k/a Elizabeth Williams and Rich Williams a/k/a Richard Williams i/t/a Van Scoy Diamond Mines, Pamela Sendrick and Richard Sendrick i/t/a Van Scoy Diamond Mines, and Wayne Van Scoy i/t/a Van Scoy Diamond Mines, |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Doran & Nowalis   (717) 823-9111<br>Robert C. Nowalis, Esquire<br>69 Public Square - Suite 700<br>Wilkes-Barre, Pennsylvania 18701-2588 | Not known |

PARTY (Check one box only)   ☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☒ 3 U.S. NOT A PARTY

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Trade Mark violation - Accounting and Injunction

**NATURE OF SUIT**
(Check the one most appropriate box only.)

| | | |
|---|---|---|
| ☒ 454 To Recover Money or Property | ☐ 455 To revoke an order of confirmation of a Chap. 11 or Chap. 13 Plan | ☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action |
| ☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property | ☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523 | |
| ☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property | ☐ 434 To obtain an injunction or other equitable relief | ☐ 459 To determine a claim or cause of action removed to a bankruptcy court |
| ☐ 424 To object or to revoke a discharge 11 U.S.C. §727 | ☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan | ☐ 498 Other (specify) |

| ORIGIN OF PROCEEDINGS (check one box only.) | ☒ 1 Original Proceeding | ☐ 2 Removed Proceeding | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another Bankruptcy Court | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| DEMAND | NEAREST THOUSAND $ Unliquidated | OTHER RELIEF SOUGHT Injunction | ☐ JURY DEMAND |
|---|---|---|---|

BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
|---|---|---|
| Thomas A. Van Scoy t/a Van Scoy Diamond Mines | 5-94-01241 | |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| Middle District of Pennsylvania Wilkes-Barre | | Judge Thomas |

RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| FILING FEE (Check one box only.) | ☐ FEE ATTACHED | ☐ FEE NOT REQUIRED | ☒ FEE IS DEFERRED |
|---|---|---|---|

| DATE | PRINT NAME | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|
| July 3, 1996 | Robert C. Nowalis | |

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

WAYNE VAN SCOY,                                )
                                              )
    Plaintiff and                             )
    Counterclaim-Defendant,                   )
                                              )
        v.                                )
                                              )
VAN SCOY DIAMOND MINE OF                       )        Case No. 05-108 (KAJ)
DELAWARE, INC., a Delaware Corporation         )
KURT VAN SCOY, and DONNA VAN SCOY,             )
                                              )
    Defendants and                            )
    Counterclaim-Plaintiff.                   )

### ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendant and Counterclaim-Plaintiff, Van Scoy Diamond Mine of Delaware, Inc., and

Defendants Kurt Van Scoy and Donna Van Scoy, by and through their undersigned attorneys,

hereby answer the complaint in correspondingly numbered paragraphs and include counterclaims

as follows:

    1.      Admitted that Wayne Van Scoy is an individual; admitted that Wayne Van Scoy

is the record owner of two federal registrations for the mark "Van Scoy Diamond Mine" as listed

on the records of the United States Patent and Trademark Office; admitted that there is business

conducted at 154 Mundy Street, Wilkes-Barre, PA 18702; lacking information and belief, denied

that such business is a related company as respecting Wayne Van Scoy.

    2.      Admitted.

    3.      Admitted that Kurt Van Scoy is an individual who is at least a part owner and an

officer of Van Scoy Diamond Mine of Delaware, Inc.; admitted that Kurt Van Scoy directs in

part the operations of Van Scoy Diamond Mine of Delaware, Inc.; denied that Kurt Van Scoy has



EXHIBIT I

marketing, selling and distributing diamonds and other jewelry under the mark "Van Scoy Diamond Mine"; otherwise, lacking information and belief, denied.

     10.    Admitted that plaintiff appears to be currently engaged in the business of marketing, selling and distributing diamonds and other jewelry under the mark "Van Scoy Diamond Mine"; otherwise, lacking information and belief, denied.

     11.    Admitted that plaintiff appears to be currently engaged in the business of marketing, selling and distributing diamonds and other jewelry under the mark "Van Scoy Diamond Mine"; otherwise, lacking information and belief, denied.

     12.    Admitted that plaintiff appears to be currently engaged in the business of marketing, selling and distributing diamonds and other jewelry under the mark "Van Scoy Diamond Mine"; otherwise, lacking information and belief, denied.

     13.    Lacking information and belief, denied.

     14.    Lacking information and belief, denied.

     15.    Lacking information and belief, denied.

     16.    Specifically denied that the mark "Van Scoy Diamond Mine" has become a famous mark; otherwise, lacking information and belief, denied.

     17.    Admitted that the records of the United States Patent and Trademark Office indicate that on 21 October 1980 United States trademark registration 1,140,711 was issued to Van Scoy Diamond Mines, Inc., a Pennsylvania corporation, located at Gateway Shopping Center, Edwardsville, Pennsylvania, 18704. Lacking information and belief, denied that the party to whom U.S. trademark registration 1,140,711 issued on 21 October 1980 was or is plaintiff's predecessor in title. Admitted that the records of the United States Patent and Trademark Office show that United States trademark registration 1,140,711 was renewed on 21

-3-

October 2000 in the name of plaintiff. Admitted that what appears to be a true copy of the renewal registration showing plaintiff as the record owner of U.S. registration 1,140,711 as renewed was attached to the complaint as plaintiff's Exhibit A. Lacking information and belief, denied that U.S. registration 1,140,711 is in full force and effect, has been made incontestable under Section 15 of the Trademark Act, or is actually owned by plaintiff.

18.     Admitted that the records of the United States Patent and Trademark Office indicate that on 28 October 1980 United States trademark registration 1,140,958 was issued to Van Scoy Diamond Mines, Inc., a Pennsylvania corporation, located at Gateway Shopping Center, Edwardsville, Pennsylvania, 18704. Lacking information and belief, denied that the party to whom U.S. trademark registration 1,140,958 issued on 28 October 1980 was or is plaintiff's predecessor in title. Admitted that the records of the United States Patent and Trademark Office show that United States trademark registration 1,140,958 was renewed on 28 October 2000 in the name of plaintiff. Admitted that what appears to be a true copy of the renewal registration showing plaintiff as the record owner of U.S. registration 1,140,958 as renewed was attached to the complaint as plaintiff's Exhibit B. Lacking information and belief, denied that U.S. registration 1,140,958 is in full force and effect, has been made incontestable under Section 15 of the Trademark Act, or is actually owned by plaintiff.

19.     Lacking information and belief, denied.

20.     Admitted that defendant Van Scoy Diamond Mine of Delaware, Inc. has rendered jewelry stores services and has sold diamonds, precious stones and jewelry under the mark "Van Scoy Diamond Mine of Delaware" from November of 1994 through the present; admitted that defendant Van Scoy Diamond Mine of Delaware, Inc. may have recently rendered jewelry store services and may have recently sold diamonds, precious stones or jewelry under the mark "Van

with any of them, from directly or indirectly making any threats, charges, or assertions related to any alleged infringement of, or institution of any action for infringement of, the mark "Van Scoy Diamond Mine" against defendants Van Scoy Diamond Mine of Delaware, Inc., Kurt Van Scoy or Donna Van Scoy, including any of their successors, assigns, persons in privity with any of them, agents, direct or indirect customers, or any other person by reason of offering to sell or selling the products of defendant Van Scoy Diamond Mine of Delaware, Inc.;

   i.    An award to defendants Van Scoy Diamond Mine of Delaware, Inc., Kurt Van Scoy and Donna Van Scoy of their costs and attorney fees incurred in this action;

   j.    An award to defendants Van Scoy Diamond Mine of Delaware, Inc., Kurt Van Scoy and Donna Van Scoy of such other and further relief against plaintiff Wayne Van Scoy as this Court deems just and equitable.

                         FOX ROTHSCHILD LLP


                         By:____/s/ Francis G.X. Pileggi_____
                             Francis G.X. Pileggi (Del. Bar No. 2624)
                             Citizen Bank Center
                             Suite 1300
                             919 North Market Street
                             Wilmington, DE 19801-2323
                             Phone: (302) 654-7444
                             E-mail: fpileggi@foxrothschild.com

                             Attorneys for Defendants and
                             Counterclaim Plaintiff

*OF COUNSEL:*

Charles N. Quinn
Fox Rothschild LLP
2000 Market Street
Tenth Floor
Philadelphia, PA 19103
(215) 299-2135

Dated: March 15, 2005

                              - 16 -

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE OF ANSWER

I hereby certify that on March 15, 2005, I electronically filed the foregoing Answer, Affirmative Defenses and Counterclaims with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Steven J. Balick, Esquire
John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

I hereby certify that on March 15, 2005, I have mailed by United States Postal Service, the foregoing document(s) to the following:

Steven J. Balick, Esquire
John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

/s/ Francis G.X. Pileggi
Francis G.X. Pileggi (I.D. No. 2624)
Fox Rothschild LLP
Suite 1300
919 N. Market Street
Wilmington, DE 19801
Phone: (302) 654-7444
E-mail: fpileggi@foxrothschild.com

# EXHIBIT J

Westlaw.

128 Fed.Appx. 284                                                    Page 1
128 Fed.Appx. 284, 2005 WL 954391 (C.A.3 (Pa.))
**(Cite as: 128 Fed.Appx. 284)**

**H**
Briefs and Other Related Documents

This case was not selected for publication in the Federal ReporterNOT PRECEDENTIALThis case was not selected for publication in the Federal Reporter.NOT PRECEDENTIAL  Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,Third Circuit.
Kenny R. VALENTIN, Appellant,
v.
PHILADELPHIA GAS WORKS; Joe Sullivan,
Individually and in his Capacity as a Supervisor of
Philadelphia Gas Works.
**No. 04–2229.**

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 5, 2005.
Decided April 26, 2005.

**Background:**   Former employee brought race discrimination action against municipal agency. The United States District Court for the Eastern District of Pennsylvania, John R. Padova, J., 2004 WL 690805, entered summary judgment for agency and denied former employee's motion to amend complaint. Former employee appealed.

**Holdings:** The Court of Appeals, Cowen, Circuit Judge, held that:

1(1) agency was not liable for any discriminatory acts by supervisor of its risk management department, supervisor of department to which employee was assigned, or director of agency's labor relations, and

3(2) District Court did not abuse its discretion in refusing employee's request to file amended complaint.

Affirmed.

West Headnotes

[1] Civil Rights 78 ⚷1351(5)

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other Governmental Bodies
            78k1351 Governmental Ordinance, Policy, Practice, or Custom
                78k1351(5) k. Employment Practices.
Most Cited Cases
Supervisor of municipal agency's risk management department, supervisor of department to which employee was assigned, and director of agency's labor relations were not policymakers with respect to alleged racially discriminatory actions they took against employee, and agency thus was not liable to employee for any such actions under § 1983, inasmuch as they had discretion to enforce agency's policies within their respective departments and make decisions regarding appropriate methods for handling situations in accordance with agency's policies, but lacked unfettered authority to make decisions or to enact ultimate policies for agency.  42 U.S.C.A. § 1983.

[2] Civil Rights 78 ⚷1128

78 Civil Rights
    78II Employment Practices
        78k1124 Public Employment
            78k1128 k. Discharge or Layoff. Most Cited Cases
Municipal agency offered legitimate non-discriminatory reason for terminating employee, in race discrimination action under § 1983, by stating that employee worked for another employer while collecting pay from agency for sick leave. 42 U.S.C.A. § 1983.

[3] Federal Civil Procedure 170A ⚷840

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(E) Amendments
            170Ak839 Complaint
                170Ak840 k. Time for Amendment. Most Cited Cases
District court did not abuse its discretion in refusing employee's request to file amended § 1983 complaint against municipal agency to assert claims for post-termination discrimination and retaliation, where his request to assert new cause of action under new legal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT J

128 Fed.Appx. 284
128 Fed.Appx. 284, 2005 WL 954391 (C.A.3 (Pa.))
(Cite as: 128 Fed.Appx. 284)

Page 2

theory was made after close of discovery, after agency's motion for summary judgment was fully briefed, after parties submitted their pre-trial memoranda, and only 12 days prior to scheduled trial, and facts underlying new legal theory were based on facts employee was aware of well before close of discovery. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**\*284** On Appeal from the United States District Court for the Eastern District of Pennsylvania. (D.C. Civil No. 03–cv–03833). District Judge: Hon. John R. Padova.

**\*285** Robert T. Vance, Jr., Philadelphia, PA, for Kenny R. Valentin.

Ann C. Lebowitz, Grant & Lebowitz, Philadelphia, PA, for Philadelphia Gas Works.

Before BARRY, AMBRO and COWEN, Circuit Judges.

OPINION

COWEN, Circuit Judge.

**\*\*1** Kenny Valentin appeals the District Court's order granting Philadelphia Gas Works' ("PGW") motion for summary judgement on the basis that there was no genuine issue of material fact with respect to Valentin's claim that he was subjected to racial discrimination, in accordance with a policy, custom or practice of PGW, and denying Valentin's motion for leave to amend his complaint. Valentin contends that there were genuine issues of material fact in dispute concerning: (1) whether certain high ranking employees of PGW were policymakers with respect to actions they took against him, and (2) whether he established a claim of racial discrimination. He further argues that the Court abused its discretion in denying his request for leave to amend his complaint to assert post-termination discrimination and retaliation.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. <sup>FN1</sup> We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm. As we write solely for the parties, we only provide a brief recitation of the facts.

> FN1. Valentin's complaint alleges discrimination under 42 U.S.C. § 1981. However, the District Court properly converted his claims into § 1983 claims

because PGW is considered a municipal agency. Valentin does not appeal this conversion.

Valentin, who is Hispanic, began working for PGW in the Distribution Department as a Laborer and then became a Junior Pipe Mechanic. After sustaining an injury at work, he transferred to a series of light duty positions. He was terminated in February 2002 for working a second job at Today's Man on three days when he had received sick leave pay from PGW.

On June 26, 2003, Valentin filed a complaint against PGW and Joseph Sullivan, the supervisor of Valentin's department. The Court dismissed all counts of the complaint except for Valentin's racial discrimination claim against PGW. On January 29, 2004, the Court granted PGW's motion for summary judgment on the racial discrimination claims and denied Valentin's motion for leave to amend the complaint, and this appeal ensued.

## I. *Section 1983 Claims*

We exercise plenary review over a District Court's order granting summary judgment. *See Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 679 (3d Cir.2003). Summary judgment is appropriate if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In evaluating the evidence, we "take the facts in the light most favorable to the nonmoving party ... and draw all reasonable inferences in [its] favor." *Doe v. County of Centre*, 242 F.3d 437, 446 (3d Cir.2001).

To establish a cause of action under § 1983, Valentin needed to show the existence of a policy, practice or custom of discrimination. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Other than a formal policy or standard operating procedure, discrimination by a municipality can be shown through the affirmative conduct of a **\*286** person who has been identified as the ultimate policymaker. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ( "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.") For liability to attach, "the official must ... be responsible for establishing government policy respecting such activity." *Id.* at 482–83 ("We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 284                                                Page 3
128 Fed.Appx. 284, 2005 WL 954391 (C.A.3 (Pa.))
**(Cite as: 128 Fed.Appx. 284)**

follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). The question of whether an official has final policymaking authority must be determined under state law. *Id.*

**\*\*2** The necessary involvement of the policymaker can be demonstrated either through "allegations of personal direction or of actual knowledge and acquiescence." *Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir.1990)* (quoting *Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988))* (internal quotation marks omitted).

[1] Valentin alleges that summary judgment was improperly granted because there were facts in dispute concerning whether, for purposes of § 1983, Jane Lewis (who supervised the risk management department), Joseph Sullivan (who supervised the department within PGW to which Valentin was assigned), and Albert D'Attilio (who was the director of PGW Labor Relations) were policymakers with respect to the actions they took against him. He does not claim, and has not shown, that PGW had a policy, practice or custom of discrimination. Rather, Valentin claims that the individual managers abused their discretion in the administration of neutral work force rules.

Specifically, Valentin argues that the following acts depict the policymaking authority of managers to support a § 1983 claim for racial discrimination: (1) Sullivan exercising his complete discretion to request Valentin's medical records following his placement on light duty; (2) Lewis exercising her complete discretion to subject Valentin to investigations of his residency; (3) Lewis exercising her final authority to deny Valentin's claim for workers' compensation; (4) D'Attilio exercising his final authority to make the final decision to terminate Valentin for sick leave fraud; (5) Sullivan exercising his final authority not to notify Valentin of his termination within 20 working days; and (6) D'Attilio exercising his final authority to refuse reinstatement after Valentin's termination.

As the District Court concluded in its thorough and well-reasoned opinion, Valentin has not established that any of these members of management was a policymaker with respect to actions taken vis a vis his employment. Valentin has set forth sufficient evidence that Sullivan, D'Attilio and Lewis had discretion to enforce PGW policies within their respective departments and make decisions regarding

the appropriate methods for handling situations in accordance with PGW policies. However, he has not demonstrated that any of them had unfettered authority to make decisions or had authority to enact ultimate policies for PGW.

[2] We further conclude that Valentin has not established a disparate treatment claim against PGW. He concedes that PGW offered a legitimate non-discriminatory reason for firing him—working at Today's Man while collecting pay from PGW for sick leave. However, he has failed to show that the reasons stated for his termination and the other allegedly adverse actions were pretext for discrimination. After\*287 reviewing the record and arguments, we conclude that Valentin has not set forth sufficient evidence to establish pretext—he has not demonstrated that similarly situated white employees were treated differently than him.

## II. Leave To Amend Complaint

**\*\*3** We review a District Court's order denying a motion for leave to amend a complaint for abuse of discretion. *Lake v. Arnold, 232 F.3d 360, 373 (3d Cir.2000)*. Valentin argues that the District Court abused its discretion when it denied his motion for leave to amend his complaint to assert claims for post-termination discrimination and retaliation.

The Federal Rules of Civil Procedure provide that, after a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). The Rule further states that "leave shall be freely given when justice so requires." *Id.* It is clearly established that leave shall be granted unless there is an apparent reason for the denial—"such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of amendment, etc." *Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).*

[3] Here, Valentin's request to file an amended complaint to assert a new cause of action under a new legal theory was made "after the close of discovery, after Defendants' Motion for Summary Judgment was fully briefed, after the parties submitted their pre-trial memoranda, and a mere twelve days prior to the scheduled trial." (App. at 39a.) The facts underlying the new legal theory are based on facts

128 Fed.Appx. 284
128 Fed.Appx. 284, 2005 WL 954391 (C.A.3 (Pa.))
**(Cite as: 128 Fed.Appx. 284)**

Page 4

Valentin was aware of well before the close of discovery. Under these circumstances, the District Court's denial of leave to amend on the basis of undue delay and prejudice to PGW was not an abuse of discretion.

For the foregoing reasons, the judgment of the District Court entered on March 30, 2004, will be affirmed.

C.A.3 (Pa.),2005.
Valentin v. Philadelphia Gas Works
128 Fed.Appx. 284, 2005 WL 954391 (C.A.3 (Pa.))

Briefs and Other Related Documents (Back to top)

• 04-2229 (Docket) (May. 04, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: JAN 25,2006

## KEYCITE

**H** <u>Valentin v. Philadelphia Gas Works,</u> 128 Fed.Appx. 284 (3rd Cir.(Pa.), Apr 26, 2005) (Not selected for publication in the Federal Reporter) NO. 04-2229)

**Citing References**
**Secondary Sources (U.S.A.)**

<u>1</u>   Motions in Federal Court s 5:216, s 5:216. Time for making motion -- Effect of delay (2005)

<u>2</u>   Motions in Federal Court s 5:220, s 5:220. Ruling on motion, generally (2005)

**Court Documents**
**Trial Court Documents (U.S.A.)**

**Trial Motions, Memoranda and Affidavits**

<u>3</u>   Anthony HAYNES and Marguerite Frambes-Haynes, Plaintiffs, v. James W. SMITH, as Acting Commissioner of the New Jersey Department of Human Services, et al., Defendants., 2005 WL 3172648, *3172648+ (Trial Motion, Memorandum and Affidavit) (D.N.J. Oct 13, 2005) **Defendants' Brief in Reply to Plaintiff's ...** (NO. 03-3080, RBK) ★ ★

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

Westlaw.

Date of Printing: JAN 25,2006

**KEYCITE**

**H**Valentin v. Philadelphia Gas Works, 128 Fed.Appx. 284 (3rd Cir.(Pa.), Apr 26, 2005) (Not selected for publication in the Federal Reporter) NO. 04-2229)

**Citing References**

**Secondary Sources (U.S.A.)**

<u>1</u>    Motions in Federal Court s 5:216, s 5:216. Time for making motion -- Effect of delay (2005)

<u>2</u>    Motions in Federal Court s 5:220, s 5:220. Ruling on motion, generally (2005)


**Court Documents**

**Trial Court Documents (U.S.A.)**


**Trial Motions, Memoranda and Affidavits**

<u>3</u>    Anthony HAYNES and Marguerite Frambes-Haynes, Plaintiffs, v. James W. SMITH, as Acting Commissioner of the New Jersey Department of Human Services, et al., Defendants., 2005 WL 3172648, *3172648+ (Trial Motion, Memorandum and Affidavit) (D.N.J. Oct 13, 2005)

**Defendants' Brief in Reply to Plaintiff's ...** (NO. 03-3080, RBK) **\* \***

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

# EXHIBIT K

Westlaw.

148 Fed.Appx. 82                                                                                                    Page 1
148 Fed.Appx. 82, 2005 WL 1950761 (C.A.3 (N.J.))
**(Cite as: 148 Fed.Appx. 82)**

# H

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.NOT PRECEDENTIAL     Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,Third Circuit.
DIMENSIONAL COMMUNICATIONS, INC.
v.
OZ OPTICS, LTD., Appellant.
No. 04-1817.

Submitted Under Third Circuit LAR 34.1(a) May 10, 2005.
Decided Aug. 12, 2005.

**Background:** Trade-show booth manufacturer brought breach of contract action against client that refused to pay for maintenance and set-up costs. The United States District Court for the District of New Jersey, William G. Bassler, J., denied client's motion for leave to file counterclaim, as well as its post-trial motion for judgment as a matter of law or, in the alternative, for a new trial. Client appealed.

**Holdings:** The Court of Appeals, Pollak, Senior District Judge, sitting by designation, held that:

1(1) motion for leave to file counterclaim was properly denied;

3(2) evidence supported jury's finding that client had authorized ancillary charges;

4(3) evidence supported jury's determination that client was not entitled to a set-off; and

5(4) client waived its challenges to jury instructions by failing to raise them at trial.

Affirmed.

For related reference, see 218 F.Supp.2d 653.

West Headnotes

[1] Federal Civil Procedure 170A 1935.1

170A Federal Civil Procedure
    170AXIV Pre-Trial Conference
        170Ak1935 Order
            170Ak1935.1 k. In General. Most Cited Cases
Failure to satisfy good cause requirement of rule governing modifications of a court's schedule was sufficient to deny motion for leave to file counterclaim that was filed after the amendment deadline had elapsed. Fed.Rules Civ.Proc.Rule 16(b), 28 U.S.C.A.

[2] Federal Civil Procedure 170A 840

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(E) Amendments
            170Ak839 Complaint
                170Ak840 k. Time for Amendment.
Most Cited Cases

Federal Civil Procedure 170A 847

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(E) Amendments
            170Ak844 Answer
                170Ak847 k. Counterclaim. Most Cited Cases
Leave to file counterclaim after responsive pleading had been served in breach of contract action was not warranted, where defendant's delay was undue and the requested amendment would be prejudicial to plaintiff. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

[3] Sales 343 383

343 Sales
    343VII Remedies of Seller
        343VII(F) Actions for Damages
            343k380 Evidence
                343k383 k. Weight and Sufficiency.
Most Cited Cases
Testimony that subcontractor of trade-show booth manufacturer overheard client approve markups, that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT K

employee of manufacturer had explained to client that there would be handling charges, and that client had been quoted a per-show estimate of refurbishment costs was sufficient to support jury's finding in breach of contract action that client had authorized ancillary charges.

[4] Sales 343 ☞383

343 Sales
    343VII Remedies of Seller
        343VII(F) Actions for Damages
            343k380 Evidence
                343k383 k. Weight and Sufficiency.
Most Cited Cases
Evidence suggesting that client of trade-show booth manufacturer had authorized ancillary charges and thus was unjustified in refusing to pay them, coupled with testimony from manufacturer stating that it would have returned retained property upon receipt of payment from client, was sufficient to support jury's determination in breach of contract action that client was not entitled to a set-off.

[5] **Federal Courts 170B** ☞631

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(D) Presentation and Reservation in Lower Court of Grounds of Review
            170BVIII(D)2 Objections and Exceptions
                170Bk630 Instructions
                    170Bk631 k. Requests and Failure to Give Instructions. Most Cited Cases
Defendant in breach of contract action that neither requested jury instruction on permissibility of self-help, nor objected to the omission of such an instruction, could not assert on appeal that trial court erred in failing to give that instruction.

[6] **Federal Courts 170B** ☞633

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(D) Presentation and Reservation in Lower Court of Grounds of Review
            170BVIII(D)2 Objections and Exceptions
              170Bk633 k. Verdict or Findings. Most Cited Cases
Defendant in breach of contract action that failed to object to jury verdict form before trial court could not raise an objection to that form on appeal.

[7] **Federal Courts 170B** ☞631

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(D) Presentation and Reservation in Lower Court of Grounds of Review
            170BVIII(D)2 Objections and Exceptions
              170Bk630 Instructions
                170Bk631 k. Requests and Failure to Give Instructions. Most Cited Cases
Defendant that did not object to judge's asserted failure to instruct jury on alleged breach of contract at trial could not raise that claim on appeal.

*83 On Appeal from the United States District Court for the District of New Jersey. (D.C. Civil No. 01-cv-4893). District Judge: Honorable William G. Bassler.

Timothy J. O'Neill, Windels, Marx, Lone & Mittendorf, Princeton, NJ, for Dimensional Communications, Inc.
Peter A. Ouda, Somerville, NJ, for OZ Optics, Ltd.

Before SLOVITER and FISHER, Circuit Judges. and POLLAK,[FN*] District Judge.

> **FN*** Honorable Louis H. Pollak, Senior District Judge for the United States District Court of the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

POLLAK, District Judge.
**1 This diversity case arises out of a contract dispute between Dimensional Communications, Inc., ("DCI"), and Oz Optics, Ltd. ("Oz").[FN1] Oz, a manufacturer of optical *84 fiber communications equipment, had a jury verdict entered against it on a breach of contract claim brought by DCI, a corporation that designs, manufactures, and installs trade-show booths. Oz appeals from the District Court's orders (1) denying Oz's motion for leave to file a counterclaim, and (2) denying Oz's post-trial motion for judgment as a matter of law or, in the alternative, for a new trial. The District Court exercised jurisdiction over this suit under 28 U.S.C. § 1332(a)(2),[FN2] and this court has appellate jurisdiction under 28 U.S.C. § 1291. For the reasons which follow, we will affirm.

> FN1. Oz has been alternately referred to as

148 Fed.Appx. 82
148 Fed.Appx. 82, 2005 WL 1950761 (C.A.3 (N.J.))
(Cite as: 148 Fed.Appx. 82)

Page 3

"Oz" or "OZ" in the parties' submissions and in the District Court docket. For the sake of uniformity, we will use only "Oz" here.

FN2. Oz is a Canadian corporation with its principal place of business in Ontario; DCI is a New Jersey corporation with its principal place of business in Northvale, New Jersey.

## I.

Inasmuch as we write chiefly for the parties it is not necessary to recite the facts of this case in detail. Oz and DCI had entered into a contract according to which DCI was to design and construct a trade-show booth for Oz. After the booth was completed, DCI coordinated the transportation of the booth to four trade-shows, and performed maintenance and set-up activities at each show. DCI billed Oz separately for the maintenance and set-up costs, and Oz refused to pay for any of these ancillary charges on the ground that it had not authorized them. While Oz had most of the electronic equipment used in its booth shipped back to its New Jersey facility, DCI retained the booth itself and some of the electronic equipment pending Oz's payment of the outstanding invoices. On October 22, 2001, DCI filed its complaint in the United States District Court for the District of New Jersey, asserting claims for breach of contract, book account, and quantum meruit. Oz's answer asserted the affirmative defense of set-off/recoupment, but it contained no counterclaims.

On November 12, 2002, Magistrate Judge Madeline Cox Arleo entered a Pretrial Scheduling Order that, *inter alia*, set December 31, 2002, as the deadline for filing motions to amend the pleadings. On May 16, 2003, Oz filed a motion to amend its answer to assert a counterclaim for conversion for the seizure of the trade-show booth and other property. After briefing and argument, Magistrate Judge Arleo denied Oz's motion, finding, pursuant to Fed. R. Civ. Proc. 16(b), that Oz had not shown good cause for its failure to comply with the Pretrial Scheduling Order. Magistrate Judge Arleo further found that Oz's actions constituted undue delay and evidenced dilatory motive, such that Oz could not meet the liberal amendment provisions of Fed. R. Civ. Proc. 15(a). Oz appealed Magistrate Judge Arleo's denial of its motion to amend, and the District Court affirmed the denial. This affirmance is the first subject of this appeal.

The case was tried before a jury in December, 2003. The jury rendered a verdict in favor of DCI in the amount of $492,766.01. The jury also found that Oz was not entitled to any recoupment or setoff. On January 13, 2004, Oz filed a motion for judgment as a matter of law or, in the alternative, a new trial. The District Court denied that motion, finding that Oz was entitled neither to judgment as a matter of law nor to a new trial. The District Court's denial of this post-trial motion gives rise to Oz's second and third grounds of appeal.

## II

**2 We review a district court's denial of leave to amend a pleading for abuse of *85 discretion. *See* Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir.1993). "An abuse of discretion occurs when the District Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 445 (3d Cir.2003) (citation and quotation marks omitted).

We exercise plenary review over a district court's denial of a Rule 50(b) motion for judgment as a matter of law. *See, e.g., Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 200 (3d Cir.1996).

We review a district court's denial of a new trial motion for abuse of discretion. *Honeywell, Inc. v. American Standards Testing Bureau, Inc.*, 851 F.2d 652, 655 (3d Cir.1988).

## III.

### A. Motion to Amend

Where, as here, a party seeks to amend a pleading after a responsive pleading has been served, it may do so "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. Proc. 15(a). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997). In addition, a court's "schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Fed. R. Civ.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

148 Fed.Appx. 82
148 Fed.Appx. 82, 2005 WL 1950761 (C.A.3 (N.J.))
**(Cite as: 148 Fed.Appx. 82)**

Proc. 16(b).

Magistrate Judge Arleo found that Oz could not satisfy Rule 16(b)'s good cause requirement because Oz was in possession of the facts underlying its proposed counterclaim well before the amendment deadline. The Magistrate Judge found further that Rule 15(a)'s liberal amendment provision did not extend to Oz because Oz's delay was undue and prejudicial, and because it evidenced a dilatory motive. The District Court agreed with the Magistrate Judge's findings, and concluded that the Magistrate Judge's denial of Oz's motion to amend did not constitute clear error.

[1] [2] Oz now argues that the Third Circuit has not adopted a "good cause" requirement in determining the propriety of a motion to amend a pleading after the deadline has elapsed, and that the District Court thus abused its discretion in denying the motion to amend. We disagree. In *Eastern Minerals & Chems. Co. v. Mahan,* 225 F.3d 330, 340 (3d Cir.2000)-a case with a similar procedural history-this court approved the district court's determination that a failure to satisfy Rule 16(b)'s "good cause" requirement was sufficient to deny a motion to amend filed six months after the deadline for amendments to pleadings. Further, we find no error in the Magistrate Judge's finding, which the District Court approved, that Oz could not satisfy even the liberal amendment provisions of Rule 15(a) because Oz's delay was undue and its requested amendment would be prejudicial to DCI. In short, there is no ground for disturbing the District Court's order.

### B. Motion for Judgment As a Matter of Law

**\*\*3** A denial of a post-trial motion for judgment as a matter of law shall be affirmed where "there is sufficient evidence to support the verdict, drawing all reasonable inferences in favor of the verdict winner." *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 372 (3d Cir.1987).

[3] Oz contests two elements of the verdict on the ground that there was, Oz **\*86** contends, no rational basis for them. First, Oz asserts that the jury erred in finding that Oz had authorized ancillary charges, which included markups for subcontractor work, and freight, handling, refurbishing and storage charges.[FN2] Yet the jury could reasonably have inferred that Oz had authorized the ancillary charges. For example, the jury heard testimony that a sub-contractor of DCI had overheard Oz's president

approve the markups; that a DCI employee had explained to Oz's president that there would be handling charges; and that Oz's president had been quoted a per-show estimate of refurbishment costs. Further, as the District Court found, there was evidence of an oral agreement for storage charges. This testimony formed a legitimate basis for the jury's finding that Oz had authorized the charges. Thus, Oz's first claim of error is baseless.

> FN3. As a subsidiary element of its claim that the jury erred in finding that Oz had approved the ancillary charges, Oz argues that the jury erred further in adopting DCI's calculation of the handling charges inasmuch as DCI, so Oz contends, relied upon a "myster[ious]," "undisclosed mathematical equation" to arrive at this calculation. As the District Court found, however, DCI presented testimony describing how it arrived at the handling charges. The jury thus had a reasonable basis upon which to conclude that Oz did in fact owe DCI money in the asserted amount.

[4] Second, Oz contends that the jury erred in failing to reduce its verdict by the monies that Oz lost as a result of DCI's seizure of Oz's booth and some of the electronic equipment used in that booth. Yet having found that Oz had authorized the ancillary charges and hence was unjustified in refusing to pay for them, and having heard testimony from DCI stating that it would have returned the retained property upon receipt of payment from Oz, the jury could have reasonably concluded that Oz was not entitled to a set-off. Accordingly, Oz's claim that the jury erred in rejecting its recoupment/set-off defense is also baseless.

In sum, because sufficient evidence supported the jury's verdict, the District Court did not err in denying Oz's motion for judgment as a matter of law.

### C. Motion for a New Trial

Oz argues that three grounds supported its motion for a new trial. First, Oz contends that, even though neither party requested a jury instruction on whether DCI was entitled to use self-help, the District Court should have issued *sua sponte* an instruction disapproving the use of self-help. Second, the District Court should have provided a jury verdict sheet that itemized the charges Oz would be found to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

148 Fed.Appx. 82
148 Fed.Appx. 82, 2005 WL 1950761 (C.A.3 (N.J.))
**(Cite as: 148 Fed.Appx. 82)**

Page 5

have owed DCI since, without such itemization and in light of the jury's verdict that Oz owed less than DCI claimed it did, the parties cannot determine which charges the jury in fact found that Oz was obligated to pay.    Finally, Oz charges that the District Court should have found, as a matter of law, that DCI breached the contract with Oz, and instructed the jury accordingly.

[5] Oz's charge that the District Court erred in failing to instruct on the permissibility of the use of self-help is unavailing. "[A]n appellate court will not consider trial errors [involving alleged deficiencies in jury instructions] to which no objection was made." *Hoffman v. Sterling Drug, Inc., 485 F.2d 132, 138 (3d Cir.1973).* Before the District Court, Oz neither requested a jury instruction on the permissibility of self-help nor objected to the omission of such an instruction.    We will not entertain Oz's objection to the jury instructions now.

**\*87 \*\*4** [6] Oz's claim that the judge ought to have furnished the jury with an itemized jury verdict form is no more meritorious.    "It is well established that the trial court may exercise broad discretion in determining whether to use a general verdict or the procedures described in Rule 49 of the Federal Rules of Civil Procedure." *Kazan v. Wolinski, 721 F.2d 911, 915 (3d Cir.1983).*    Further, there is no evidence in the record that Oz objected below to the jury verdict form, and its failure to do so before the District Court bars it from raising that objection before this court.    Accordingly, we decline to find that the District Court erred in constructing the jury verdict form as it did.

[7] For similar reasons, we find no merit in Oz's claim that the District Court should have found, as a matter of law, that DCI breached the contract with Oz, and instructed the jury accordingly.    The District Court judge properly determined that the parties had adduced evidence sufficient to create an issue of fact on this matter.    Further, Oz did not at trial raise any objections to the judge's asserted failure to instruct the jury on the alleged breach of contract, and so we will not consider these objections now.

In sum, we find that the District Court did not abuse its discretion in denying Oz's motion for a new trial.

IV.

For the foregoing reasons, we do not find merit in any of Oz's claims of error.    Accordingly, the

challenged orders of the District Court will be affirmed.

C.A.3 (N.J.),2005.
Dimensional Communications, Inc. v. OZ Optics, Ltd.
148 Fed.Appx. 82, 2005 WL 1950761 (C.A.3 (N.J.))

Briefs and Other Related Documents (Back to top)

• 04-1817 (Docket) (Mar. 26, 2004)

END OF DOCUMENT

Westlaw.

Date of Printing: JAN 26,2006

KEYCITE

**H**Dimensional Communications, Inc. v. OZ Optics, Ltd., 148 Fed.Appx. 82 (3rd Cir.(N.J.), Aug 12, 2005)
(Not selected for publication in the Federal Reporter) NO. 04-1817)
History
Direct History

=>        1    **Dimensional Communications, Inc. v. OZ Optics, Ltd.,** 148 Fed.Appx. 82 (3rd Cir.(N.J.) Aug
               12, 2005) (Not selected for publication in the Federal Reporter, NO. 04-1817)
                         *Petition for Certiorari Filed, 74 USLW 3371 (Dec 12, 2005)(NO. 05-789)*


                         **Related References (U.S.A.)**
**H**     2    Dimensional Communications, Inc. v. OZ Optics Ltd., 218 F.Supp.2d 653 (D.N.J. Sep 06, 2002)
               (NO. CIV.01-CV-4893 (WGB))


                         **Court Documents**
                         **Dockets (U.S.A.)**

C.A.3
          3    DIMENSIONAL COMM INC v. OZ OPTICS LTD, NO. 04-1817 (Docket) (C.A.3 Mar. 26, 2004)

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058
914 668, or their Licensors. All rights reserved.

Westlaw.

Date of Printing: JAN 26,2006

**KEYCITE**

**H** Dimensional Communications, Inc. v. OZ Optics, Ltd., 148 Fed.Appx. 82 (3rd Cir.(N.J.), Aug 12, 2005)
(Not selected for publication in the Federal Reporter) NO. 04-1817)
    No references were found within the scope of KeyCite's citing case coverage.

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058
914 668, or their Licensors. All rights reserved.

# EXHIBIT L

## Westlaw.

122 Fed.Appx. 559                                      Page 1
122 Fed.Appx. 559, 2004 WL 2850108 (C.A.3 (N.J.))
**(Cite as: 122 Fed.Appx. 559)**

**H**
Briefs and Other Related Documents

This case was not selected for publication in the Federal ReporterNOT PRECEDENTIALThis case was not selected for publication in the Federal Reporter.NOT PRECEDENTIAL  Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,Third Circuit.
Carol RENART, Appellant,
v.
CHARTWELLS, a corporate subsidiary of Compass Group, a corporation; Compass Group, a corporation; XYZ Partnership; ABC Corp; John Does, 1 through 10 inclusive, fictitious named defendants, jointly, severally and in the alternative.
**No. 03-4381.**

Submitted Under Third Circuit LAR 34.1(a) Nov. 1, 2004.
Decided Dec. 13, 2004.

**Background:** Employee who was terminated after she took leave nine days before her one-year anniversary date appealed from judgment of the United States District Court for the District of New Jersey, Irenas, Senior District Judge, granting employer's motion for summary judgment on her implied-in-fact contract claim, 2003 WL 22454931, and from other rulings.

**Holdings:** The Court of Appeals held that:

1(1) employer was entitled to summary judgment on claim under New Jersey Family Leave Act (FLA) since employee was ineligible for leave thereunder;

2(2) employer was entitled to summary judgment on implied-in-fact contract claim since employee executed express agreement of at-will employment;

4(3) district court did not abuse its discretion in denying employee leave to amend complaint to add claims under Family and Medical Leave Act (FMLA) and for equitable estoppel, because proposed amendments were futile; and

6(4) issue of whether Magistrate Judge erred or abused his discretion in awarding employer attorney fees as sanction for filing that was untimely by one day was waived.

Affirmed.

### West Headnotes

**[1] Labor and Employment 231H ☞340**

231H Labor and Employment
   231HVI Time Off;  Leave
      231Hk337 Eligible Employees
         231Hk340 k. Length of Service;  Minimum Hours. Most Cited Cases
Employee whose leave began nine days before one-year anniversary of her employment, and beginning of her eligibility under New Jersey Family Leave Act (FLA), could be freely terminated for taking that leave.  N.J.S.A. 34:11B-3, 34:11B-7.

**[2] Labor and Employment 231H ☞36**

231H Labor and Employment
   231HI In General
      231Hk31 Contracts
         231Hk36 k. Implied Contracts. Most Cited Cases

**Labor and Employment 231H ☞40(1)**

231H Labor and Employment
   231HI In General
      231Hk37 Term, Duration, and Termination
         231Hk40 Definite or Indefinite Term; Employment At-Will
            231Hk40(1) k. In General. Most Cited Cases
Although under New Jersey law implied contracts may be found in terms of widely distributed employee manuals, formation of implied contract may be avoided by execution of express agreement of at-will employment.

**[3] Federal Civil Procedure 170A ☞824**

170A Federal Civil Procedure
   170AVII Pleadings and Motions

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT L

122 Fed.Appx. 559                                                                                    Page 2
122 Fed.Appx. 559, 2004 WL 2850108 (C.A.3 (N.J.))
**(Cite as: 122 Fed.Appx. 559)**

170AVII(E) Amendments
170Ak824 k. Time for Amendment in General. Most Cited Cases

**Federal Civil Procedure 170A ☞834**

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(E) Amendments
170Ak834 k. Injustice or Prejudice. Most Cited Cases

**Federal Civil Procedure 170A ☞851**

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(E) Amendments
170Ak851 k. Form and Sufficiency of Amendment. Most Cited Cases
In deciding whether to grant leave to amend pleading, court may consider (1) any undue delay, bad faith, or dilatory motives on part of movant, (2) futility of amendment, and (3) prejudice to other party. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ☞851**

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(E) Amendments
170Ak851 k. Form and Sufficiency of Amendment. Most Cited Cases
District court did not abuse its discretion in denying employee leave to amend complaint against her employer to add claims under Family and Medical Leave Act (FMLA) and under New Jersey law for equitable estoppel, insofar as proposed amendments were futile; employee was ineligible for FMLA leave, and her own testimony that she took time off only because her supervisor had told her she could, not because she believed she was eligible for family leave or because her supervisor had characterized her leave as such, foreclosed argument she had relied on any of employer's representations about her eligibility for leave. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.; Family and Medical Leave Act of 1993, § 2 et seq., 29 U.S.C.A. § 2601 et seq.

**[5] Estoppel 156 ☞55**

156 Estoppel
156III Equitable Estoppel
156III(A) Nature and Essentials in General
156k55 k. Reliance on Adverse Party. Most

Cited Cases
Under New Jersey law, detrimental reliance is necessary element of claim for equitable estoppel.

**[6] United States Magistrates 394 ☞31**

394 United States Magistrates
394k31 k. Further Review; Direct Appeal. Most Cited Cases
Issue of whether Magistrate Judge erred or abused his discretion in awarding employer attorney fees as sanction for filing that was untimely by one day was waived where employee's brief did not mention issue outside statement of issues presented and offered no reason for disturbing award.

**\*560** On Appeal from the United States District Court for the District of New Jersey. (Dist. Court No. 01-cv-01478). District Court Judge: Honorable Joseph E. Irenas.

George N. Polis, Ventnor, NJ, for Appellant.

Eric A. Savage, Littler Mendelson, Newark, NJ, for Appellee.

Before ALITO, BARRY, and FUENTES, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.
**\*\*1** Because we write for the parties only, we do not set forth the facts of this case. Renart argues that the District Court erred in awarding Chartwells summary judgment on her claim under the New Jersey Family Leave Act (FLA) and her implied-in-fact contract claim. She further argues that the Court abused its discretion in denying her leave to amend her complaint to add a claim under the federal Family and Medical Leave Act (FMLA) and an equitable estoppel claim. For the reasons set forth below, we affirm.

I.

[1] According to Renart's own timeline, she began working for Chartwells on November 4, 1998, took leave on October 26, 1999, and was terminated on November 5, 1999. This last date, though hotly contested, is a red herring. Like its federal counterpart, the FLA focuses on the employee's status not at the time of termination but on the date leave commences. See N.J. Stat. Ann. § 34:11B-7

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

122 Fed.Appx. 559                                                                 Page 3
122 Fed.Appx. 559, 2004 WL 2850108 (C.A.3 (N.J.))
**(Cite as: 122 Fed.Appx. 559)**

(West 2000) (requiring employers to restore employees**561** to positions equivalent to those held "when the leave commenced"); *cf.* 29 C.F.R. § 825.110(d) (2004) (providing that eligibility for leave under the FMLA shall be determined "as of the date leave commences"). An individual must have been employed for 12 months at the time leave commences in order to be eligible under the FLA. *See* N.J. Stat. Ann. § 34:11B-3(e). Renart's leave began on October 26, 1999-nine days shy of the anniversary of her employment and the beginning of her eligibility. Since she was not eligible for that leave, she could be freely terminated for taking it. The District Court did not err in awarding Chartwells summary judgment.

[2] Chartwells was also entitled to summary judgment on Renart's contract claim. Although the New Jersey Supreme Court has found implied contracts in the terms of widely distributed employee manuals, *see* *Woolley v. Hoffmann-La Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257, 1264 (1985), the formation of an implied contract may be avoided by the execution of an express agreement of at-will employment. *Radwan v. Beecham Labs.,* 850 F.2d 147, 150 (3d Cir.1988); *Ware v. Prudential Ins. Co.,* 220 N.J.Super. 135, 531 A.2d 757, 761 (1987). Renart executed such an agreement when she signed, as part of her employment application, a statement that she "underst[oo]d that my employment and compensation can be terminated with or without cause or notice, at any time, at the option of either the company or myself." This statement, expressly providing that her employment was at will, more than sufficed to prevent the formation of an implied agreement to the contrary. Since there can be no breach without a contract, Chartwells was entitled to summary judgment on Renart's claim for breach of contract.

## II.

[3] Renart next argues that the District Court abused its discretion in denying her leave to amend her complaint. Once a responsive pleading has been served, a party may amend her pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In deciding whether to grant leave, the court may consider (1) any undue delay, bad faith, or dilatory motives on the part of the movant; (2) the futility of the amendment; and (3) prejudice to the other party. *Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir.2000).

**\*\*2** [4] [5] Renart was properly denied leave because her proposed amendments were futile. Her FMLA claim had to fail for the same reason that her FLA claim failed-namely, because she was ineligible for leave. Her equitable estoppel claim had to fail because her own testimony foreclosed the argument that she had relied on any of Chartwells's representations about her eligibility for leave. Detrimental reliance is a necessary element of a claim for equitable estoppel. *See, e.g., Barone v. Leukemia Soc'y of Am.,* 42 F.Supp.2d 452, 464 (D.N.J.1998). Renart testified that she took time off only because her supervisor had told her she could, not because she believed she was eligible for family leave or because her supervisor had characterized her leave as such. *See* Pl.'s Dep. at 137 ("It wasn't a family leave. She just told me to take a week off and take care of my problems."). Since Chartwells had made no statements about her eligibility on which she relied, Renart could not recover on a theory of equitable estoppel, and the District Court acted within its discretion in denying her leave to add this claim to her complaint.

## 562III.

[6] Finally, Renart argues that the Magistrate Judge erred or abused his discretion in awarding Chartwells $1,268.51 in attorney's fees as a sanction for a filing that was untimely by one day. Renart's brief does not mention this issue outside the statement of issues presented and offers no reason for disturbing the award. We deem the issue waived and affirm.

## IV.

We have carefully considered Renart's arguments and see no basis for reversal. The judgment of the District Court is affirmed.

C.A.3 (N.J.),2004.
Renart v. Chartwells
122 Fed.Appx. 559, 2004 WL 2850108 (C.A.3 (N.J.))

Briefs and Other Related Documents (Back to top)

• 03-4381 (Docket) (Nov. 10, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: JAN 25,2006

### KEYCITE

**H** **Renart v. Chartwells,** 122 Fed.Appx. 559 (3rd Cir.(N.J.), Dec 13, 2004) (Not selected for publication in the Federal Reporter) NO. 03-4381



### History
### Direct History

**H**    1   Renart v. Chartwells, 2003 WL 22454931 (D.N.J. Oct 06, 2003) (NO. CIV.A. 01-1478(JEI))
            *Order Issued by*

**H**    2   Renart v. Chartwells, a corporate subsidiary of Compass Group, 2003 WL 22327525 (D.N.J. Oct 06, 2003) (NO. CIV.A. 01-1478 (JEI))
            *AND Affirmed by*

=>    3   **Renart v. Chartwells,** 122 Fed.Appx. 559 (3rd Cir.(N.J.) Dec 13, 2004) (Not selected for publication in the Federal Reporter, NO. 03-4381)

### Court Documents
### Dockets (U.S.A.)

**C.A.3**

   4   RENART v. CHARTWELLS, ET AL, NO. 03-4381 (Docket) (C.A.3 Nov. 10, 2003)

**D.N.J.**

   5   RENART v. CHARTWELLS, ET AL, NO. 1:01CV01478 (Docket) (D.N.J. Mar. 23, 2001)

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

Westlaw.

Date of Printing: JAN 25,2006

### KEYCITE

**H** Renart v. Chartwells, 122 Fed.Appx. 559 (3rd Cir.(N.J.), Dec 13, 2004) (Not selected for publication in the Federal Reporter) NO. 03-4381)

#### Citing References
#### Secondary Sources (U.S.A.)

1   Motions in Federal Court s 5:216, s 5:216. Time for making motion -- Effect of delay (2005)
2   Motions in Federal Court s 5:220, s 5:220. Ruling on motion, generally (2005)
3   Motions in Federal Court s 5:221, s 5:221. Ruling on motion, generally -- Effect of prejudice (2005)
4   Motions in Federal Court s 5:222, s 5:222. Ruling on motion, generally -- Consideration of merits (2005)
5   Motions in Federal Court s 5:223, s 5:223. Ruling on motion, generally -- Bad faith; Lack of diligence (2005)
6   18 N.J. Prac. Series s 7.3, s 7.3. Eligible employees (2005)  **HN: 1 (Fed.Appx.)**

#### Court Documents
#### Trial Court Documents (U.S.A.)

**Trial Motions, Memoranda and Affidavits**

7   William H. BURSTEIN, M.D., et al., Plaintiffs, v. RETIREMENT ACCOUNT PLAN FOR EMPLOYEES OF ALLEGHENY HEALTH EDUCATION AND RESEARCH FOUNDATION, ET AL., Defendants., 2005 WL 2849864, *2849864 (Trial Motion, Memorandum and Affidavit) (E.D.Pa. Sep 12, 2005) **Reply Memorandum of Law in Support of Defendant ...** (NO. 98CV6768) ★

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

# EXHIBIT M

# FOX • ROTHSCHILD LLP

### ATTORNEYS AT LAW

2000 MARKET STREET • TENTH FLOOR • PHILADELPHIA, PA 19103-3291
215.299.2000 • FAX 215.299.2150 • www.foxrothschild.com

Charles N. Quinn
Direct Dial: (215) 299-2135
Internet Address: cquinn@foxrothschild.com

June 7, 2005

Michael C. Petock, Esquire
Michael F. Petock, Esquire
Petock & Pectock LLC
4 The Commons at Valley Forge
1220 Valley Forge Road
P.O. Box 856
Valley Forge, PA  19482-0856

and

John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. B1150
Wilmington, DE 19899

> **Re:   Wayne Van Scoy v. Kurt Van Scoy, Donna Van Scoy, and Van Scoy**
> **Diamond Mine of Delaware, Inc.**
> **Case No. 05-108 (KAJ)**
> **Our File:  94214.90101**

Dear Messrs. Petock and Day:

　　Enclosed are documents produced in response to Plaintiff's First and Second Requests for Production of Documents, identified by Bates numbering , numbers D000001 through D000076.

Best regards,

Charles N. Quinn

CNQ:ger
Enclosures

PENNSYLVANIA • NEW JERSEY • DELAWARE

**EXHIBIT M**

PH2 230224v1 06/07/05

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

IN RE                                    :        CHAPTER 7

                                         :

THOMAS VAN SCOY                          :

                                         :

            DEBTOR                       :        NO.: 5-94-01241

5-96-00195A

*****************************************************************

### ORDER APPROVING AGREEMENT IN SETTLEMENT OF ADVERSARY PROCEEDINGS AND CONTESTED MATTERS, WITH RELEASES AND OTHER PROVISIONS

AND NOW this 4th day of _____, 2000, upon consideration

and review of the Agreement In Settlement of Adversary Proceedings and

Contested Matters; with Releases and Other Provisions; and after notice and a

hearing, it is

ORDERED, that the Agreement in Settlement of Adversary Proceedings

and Contested Matters, with Releases and Other Provisions is hereby APPROVED

as an order of this Court and the parties are directed to comply with its terms; and

it is further

ORDERED, that in Adversary No. 5-95-00347A, the order entered on

September 16, 1999, denying the Debtor, Thomas Van Scoy his chapter 7

discharge is hereby VACATED; the Debtor shall receive a chapter 7 discharge by

a separate order of this Court; and this adversary proceeding is hereby dismissed

with prejudice; and it is further

D000021

ORDERED, that the order dated October 5, 1999, in the main bankruptcy case, allowing an administrative claim in the amount of $21,225.00 is hereby VACATED; and the motion filed by Thomas and Elizabeth Van Scoy seeking an administrative expense is hereby dismissed with prejudice; and it is further

ORDERED, that in Adversary No. 5-96-00180A, the judgment entered against Mr. and Mrs. Thomas Van Scoy in the amount of $146,683.43 is hereby VACATED; and the Complaint filed by the Trustee is hereby dismissed with prejudice; and it is further

ORDERED, that in Adversary No. 5-96-00196A, the order enjoining the use of the trademark "Van Scoy Diamond Mines" is hereby VACATED, except as to Richard and Betsy Williams, who are not parties to the Agreement; and any order requiring an accounting by any party is hereby VACATED, , except as to Richard and Betsy Williams, who are not parties to the Agreement; and any order of civil contempt is hereby VACATED, except as to Richard and Betsy Williams, who are not parties to the Agreement; and the Complaint is hereby dismissed with prejudice, except as to Richard and Betsy Williams, who are not parties to the Agreement; and it is further

ORDERED, in Adversary No. 5-96-00195A, the judgment against Richard and Betsy Williams shall not be VACATED, and the Complaint of the

2

D000022

Plaintiff/Trustee shall not be dismissed; Wayne Van Scoy is hereby substituted for the Trustee as the party Plaintiff in the adversary; and it is further

ORDERED, that in Adversary No. 5-96-00194A, the judgment against Richard and Pamela Sendrick is hereby VACATED; and the Complaint of the Plaintiff/Trustee is dismissed with prejudice; and it is further

ORDERED, that in Adversary No. 5-99-00077A, the Complaint of the Plaintiff/Trustee is hereby dismissed with prejudice; and it is further

ORDERED, that the objections filed by the Debtor to the Trustee's Application to Compensate Accountants are hereby dismissed with prejudice; and it is further

ORDERED, that the Motion to Compel Abandonment and for Valuation filed by Thomas Van Scoy in the main bankruptcy case is hereby dismissed with prejudice; and it is further

ORDERED, that the above-captioned chapter 7 estate shall hereafter have no further right, title and interest in the trademark "Van Scoy Diamond Mines" and such trademark shall become the sole and exclusive property of Wayne Van Scoy; and it is further

ORDERED, that settlement proceeds of $70,000.00 shall be paid to Robert P. Sheils, Trustee, as follows: $45,000.00 shall be paid by Wayne Van Scoy; and

3

D000023

$25,000.00 shall be paid by Richard and Pamela Sendrick; and these amounts shall be paid no later that January 2, 2001.

BY THE COURT:

JOHN J. THOMAS, JUDGE
U.S. BANKRUPTCY COURT

Wilkes-Barre, Pennsylvania

cc:    Joseph G. Murray, Esquire
       Robert C. Nowalis, Esquire
       Richard and Betsy Williams
       Peter J. Hoegen, Esquire
       U.S. Trustee's Office
       Robert P. Sheils, Jr., Esquire

ATT:

4

D000024

CLOSED

# U.S. Bankruptcy Court
## Middle District of Pennsylvania (Wilkes-Barre)
### Adversary Proceeding #: 5:96-ap-00194-JJT
#### Internal Use Only

*Assigned to:* John J. Thomas
*Related BK Case:* 94-01241
*Related BK Title:* Thomas A. Van Scoy
*Demand:* 0
*Nature of Suit:* 454

*Date Filed:* 07/03/96
*Date Terminated:* 10/27/1999

**Plaintiff**

**Robert Sheils Esq Trustee**

represented by **Doran & Nowalis**
69 PUBLIC SQUARE, STE. 700
WILKES-BARRE, PA 18701
570 823-9111

**V.**

**Defendant**

**Pamela & Richard Sendrick**

represented by **Peter J. Hoegen, Jr., Esq**
152 South Franklin Street
PO BOX 346
WILKES BARRE, PA 18703-0346
570 820-3332

| Filing Date | # | Docket Text |
|---|---|---|
| 07/03/1996 | 1 | COMPLAINT Filed [Disposed], [JK], ORIGINAL NIBS DOCKET ENTRY #1 (Entered: 07/03/1996) |
| 07/03/1996 | 2 | SUMMONS: answer date is 8/2/96: pretrial fixed on 10/08/96 at 10:00 a.m. at Courtroom 1, Max Rosenn U.S. Courthouse, 197 South Main Street, Wilkes-Barre, PA Re: Item # 1, [JK], ORIGINAL NIBS DOCKET ENTRY #2 (Entered: 07/03/1996) |
| 07/05/1996 | 3 | CERTIFICATE of service Re: Item # 1 [Entered: 07/08/96], [JK] CERTIFICATE of service Re: Item # 2, [JK], ORIGINAL NIBS |

# U.S. Bankruptcy Court
## Middle District of Pennsylvania (Wilkes-Barre)
## Adversary Proceeding #: 5:96-ap-00195-JJT
### Internal Use Only

*Assigned to:* John J. Thomas                    *Date Filed:* 07/03/96
*Related BK Case:* 94-01241
*Related BK Title:* Thomas A. Van Scoy
*Demand:* 0
*Nature of Suit:* 454

**Plaintiff**

**Wayne Van Scoy**                 represented by   **Doran & Nowalis**
                                                    69 PUBLIC SQUARE, STE. 700
                                                    WILKES-BARRE, PA 18701
                                                    570 823-9111

V.

**Defendant**

**Betsy and Richard Williams**      represented by   **Joseph G. Murray, Esq**
                                                    10 East South Street, Suite B
                                                    Wilkes Barre, PA 18701
                                                    570 822-1959

| Filing Date | # | Docket Text |
|---|---|---|
| 07/03/1996 | 1 | COMPLAINT Filed [Disposed], [JK], ORIGINAL NIBS DOCKET ENTRY #1 (Entered: 07/03/1996) |
| 07/03/1996 | 2 | SUMMONS: answer date is 8/2/96; pretrial fixed on 10/08/96 at 10:00 a.m. at Courtroom 1, Max Rosenn U.S. Courthouse, 197 South Main Street, Wilkes-Barre, PA Re: Item # 1, [JK], ORIGINAL NIBS DOCKET ENTRY #2 (Entered: 07/03/1996) |
| 07/05/1996 | 3 | CERTIFICATE of service Re: Item # 1 [Entered: 07/08/96], [JK] CERTIFICATE of service Re: Item # 2, [JK], ORIGINAL NIBS DOCKET ENTRY #3 (Entered: 07/08/1996) |
| 08/02/1996 | 4 | ANSWER by Richard and Betsy Williams Re: Item # 1, [GP], ORIGINAL NIBS DOCKET ENTRY #4 (Entered: 08/05/1996) |

D000026

11/22/2004 10:04 AM

CLOSED

# U.S. Bankruptcy Court
## Middle District of Pennsylvania (Wilkes-Barre)
### Adversary Proceeding #: 5:96-ap-00180-JJT
#### Internal Use Only

*Assigned to:* John J. Thomas
*Related BK Case:* 94-01241
*Related BK Title:* Thomas A. Van Scoy
*Demand:* 0
*Nature of Suit:* 454

*Date Filed:* 06/20/96
*Date Terminated:* 11/14/2000

### Plaintiff

**Robert Sheils Esq Trustee**

represented by **Doran & Nowalis**
69 PUBLIC SQUARE, STE. 700
WILKES-BARRE, PA 18701
570 823-9111

**V.**

### Defendant

**Thomas & Elizabeth Van Scoy**

represented by **Thomas K. Feissner, Esq**
218 NORTH WYOMING STREET
HAZLETON, PA 18201
570 455-4558

**Betsy and Richard Williams**

**Pamela & Richard Sendrick**

**Wayne Van Scoy**

**Kenneth Van Scoy**

| Filing Date | # | Docket Text |
|---|---|---|
| 06/20/1996 | 1 | COMPLAINT Filed [Disposed], [JK], ORIGINAL NIBS DOCKET ENTRY #1 (Entered: 06/25/1996) |
| 06/25/1996 | 2 | ORDER dismissing, without prejudice, Counts IV through VII of adversary. Re: Item # 1, [JK], ORIGINAL NIBS DOCKET ENTRY #2 |

Trademark.com Report
© 2001 Trademark.com

**Database(s):** Federal
**Mark:** van scoy

2 records. 

Search

### Table of Contents

    Final Report Format

**Federal**

1. 73-169527    VAN SCOY DIAMOND MINE    Int'l 35 42    Renewed
2. 73-169526    VAN SCOY DIAMOND MINE    Int'l 14    Renewed

Return to Table of Contents

## Record 1

| | |
|---|---|
| **Mark** | VAN SCOY DIAMOND MINE |
| **Status** | Renewed |
| **Status Date** | Aug 22, 2001 |
| **Register** | Principal |
| **Ser./App. No.** | 73-169527 |
| **Registration No.** | 1140958 |
| **Int'l Class** | 35 - Advertising and Business |
| **Goods/Services** | [ RENDERING OF TECHNICAL AID AND ASSISTANCE IN THE ESTABLISHMENT AND/OR OPERATION OF RETAIL JEWELRY STORES ] |
| **Class Status** | Cancelled, Sec. 8 - Aug 22, 2001 |
| **U.S. Class** | 100, 101, 102 |
| **1st Use** | May 26, 1977 |
| **Commerce Use** | May 26, 1977 |
| **Int'l Class** | 42 - Miscellaneous Services |
| **Goods/Services** | RETAIL JEWELRY STORE SERVICES |
| **U.S. Class** | 101 |
| **1st Use** | Nov, 1976 |
| **Commerce Use** | Mar 11, 1977 |
| **Filing Date** | May 8, 1978 |
| **Published (Last)** | Apr 29, 1980 |
| **Registered** | Oct 28, 1980 |
| **Renewed** | Oct 28, 2000 |
| **Affidavits** | Sec. 8 accepted; Sec. 15 acknowledged |
| **Disclaimer** | APPLICANT MAKES NO CLAIM TO THE EXCLUSIVE USE OF THE WORD "DIAMOND" APART FROM THE MARK AS SHOWN IN THE DRAWINGS, BUT RESERVES ANY COMMONLAW RIGHTS IT MAY HAVE THEREIN. |
| **Other Data** | Amendments: Amended Aug, 1999. |
| **TTAB Proceeding** | Cancellation 12279 |
| **Defendant** | THE DIAMOND MINE, LTD. |
| **Serial No.** | 73-164475    Registration No.1111524 |
| **Filed** | Apr 11, 1979 |
| **Status** | Terminated  Nov 21, 1979 |

D000028

| | |
|---|---|
| **Correspondent** | MICHAEL F. PETOCK<br>PO BOX 856<br>VALLEY FORGE PA 19482-0856 |
| **Registrant** | VAN SCOY DIAMOND MINES, INC. (PA CORP.)<br>GATEWAY SHOPPING CENTER<br>EDWARDSVILLE, PA 18704 |
| **Last Owner** | VAN SCOY, WAYNE (UNITED STATES INDIVIDUAL)<br>154 MUNDY STREET<br>WILKES-BARRE, PA 18702 |

**ASSIGNMENTS**

| | |
|---|---|
| **Reel/Frame** | 2307/0686 |
| **Assignor(s)** | VAN SCOY DIAMOND MINES, INC. (PA CORP.) |
| **Assignee(s)** | VAN SCOY, WAYNE (USX INDIVIDUAL), 154 MUNDY STREET,<br>WILKES-BARRE, PA, 18702 |
| **Correspondt** | MICHAEL F. PETOCK, 46 THE COMMONS AT VALLEY FORGE,<br>1220 VALLEY FORGE RD., P.O.BOX 856, VALLEY FORGE, PA 19482 |
| **Date Sgnd/Ack** | Jan 4, 2001 |
| **Date Recorded** | Apr 16, 2001 |
| **Brief** | BANKRUPTCY COURT ORDER & MEMORANDUM |

---

Return to Table of Contents

# Record 2

| | |
|---|---|
| **Mark** | VAN SCOY DIAMOND MINE |
| **Status** | Renewed |
| **Status Date** | Aug 22, 2001 |
| **Register** | Principal |
| **Ser./App. No.** | 73-169526 |
| **Registration No.** | 1140711 |
| **Int'l Class** | 14 - Jewelry |
| **Goods/Services** | JEWELRY AND PRECIOUS STONES |
| **U.S. Class** | 28 |
| **1st Use** | Mar 11, 1977 |
| **Commerce Use** | Mar 11, 1977 |
| **Filing Date** | May 8, 1978 |
| **Published (Last)** | Apr 29, 1980 |
| **Registered** | Oct 21, 1980 |
| **Renewed** | Oct 21, 2000 |
| **Affidavits** | Sec. 8 accepted; Sec. 15 acknowledged |
| **Disclaimer** | APPLICANT MAKES NO CLAIM TO THE EXCLUSIVE USE OF THE<br>WORD "DIAMOND" APART FROM THE MARK AS SHOWN, BUT RESERVES<br>ANY COMMON LAW RIGHTS IT MAY HAVE THEREIN. |
| **Other Data** | Amendments: Amended Aug, 1999. |
| **Correspondent** | MICHAEL F. PETOCK<br>PO BOX 856<br>VALLEY FORGE PA 19482-0856 |

D000029

**Registrant**       VAN SCOY DIAMOND MINES, INC. (PA CORP.)
                     GATEWAY SHOPPING CENTER
                     EDWARDSVILLE, PA 18704

**Last Owner**       VAN SCOY, WAYNE (UNITED STATES INDIVIDUAL)
                     154 MUNDY STREET
                     WILKES-BARRE, PA 18702

**ASSIGNMENTS**

**Reel/Frame**       2307/0686
**Assignor(s)**      VAN SCOY DIAMOND MINES, INC. (PA CORP.)
**Assignee(s)**      VAN SCOY, WAYNE (USX INDIVIDUAL), 154 MUNDY STREET,
                     WILKES-BARRE, PA, 18702
**Correspondt**      MICHAEL F. PETOCK, 46 THE COMMONS AT VALLEY FORGE,
                     1220 VALLEY FORGE RD., P.O.BOX 856, VALLEY FORGE, PA 19482
**Date Sgnd/Ack**    Jan 4, 2001
**Date Recorded**    Apr 16, 2001
**Brief**            BANKRUPTCY COURT ORDER & MEMORANDUM

Return to Table of Contents

D000030